# In the United States Court of Appeals for the Eleventh Circuit

LEAGUE OF WOMEN VOTERS OF FLORIDA, INC., et al.
*Plaintiffs-Appellees*,

v.

LAUREL M. LEE, et al.
*Defendants-Appellants*

and

NATIONAL REPUBLICAN SENATORIAL COMMITTEE, et al.
*Intervenor-Defendants–Appellants*

On Appeal from the United States District Court
for the Northern District of Florida
No. 4:21-cv-186 (Walker, C.J.)

*League* **Plaintiffs-Appellees' Opposition to
Appellants' Time-Sensitive Motion for Stay Pending Appeal**

Frederick S. Wermuth
KING, BLACKWELL, ZEHNDER &
WERMUTH, P.A.
P.O. Box 1631
Orlando, FL 32802-1631
Telephone: (407) 422-2472

Marc E. Elias
Elisabeth C. Frost
Aria C. Branch*
David R. Fox
Lalitha D. Madduri
Christina A. Ford
Francesca Gibson*
ELIAS LAW GROUP LLP
10 G St NE, Suite 600
Washington, DC 20002
Telephone: (202) 968-4490

*Counsel for Plaintiffs-Appellees in No. 22-11143*
*\* Application to Eleventh Circuit Bar pending*

## CERTIFICATE OF INTERESTED PERSONS

Under Eleventh Circuit Rule 26.1, Plaintiffs-Appellees certify that the CIP contained in Appellants' Time-Sensitive Motion for Stay Pending Appeal is complete.

## CORPORATE DISCLOSURE STATEMENT

Under Federal Rule of Appellate Procedure 26.1, Plaintiffs-Appellees certify that the League of Women Voters of Florida, Inc.; the League of Women Voters of Florida Education Fund, Inc.; Black Voters Matter Fund, Inc.; and the Florida Alliance of Retired Americans, Inc. each has no parent corporation, and no publicly held corporation owns 10% or more of any of those entities' stock. The remaining Plaintiffs-Appellees are individual persons.

*s/ David R. Fox*

*Counsel to Plaintiffs-Appellees in No. 22-11143*

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................1

BACKGROUND .................................................................................................2

    A. The Registration Disclaimer Provision .....................................................3

    B. The Solicitation Definition .......................................................................5

STANDARD OF REVIEW ...................................................................................9

ARGUMENT .....................................................................................................10

   I. Appellants are unlikely to succeed on the merits of their appeal of the judgment in the *League* Plaintiffs' case. .......................................................10

    A. The Registration Disclaimer Provision ...................................................10

       1. The Registration Disclaimer Provision unconstitutionally compels speech. ...................................................................................10

       2. Plaintiffs' challenge to the Registration Disclaimer Provision is not moot. ..........................................................................................12

    B. The Solicitation Definition .....................................................................15

       1. The Solicitation Definition is unconstitutionally vague and overbroad. ........................................................................................15

       2. Appellants lack standing to appeal the injunction of the Solicitation Definition in the *League* Plaintiffs' case. ........................17

   II. Appellants will not be irreparably harmed absent a stay of the judgment in the *League* Plaintiffs' case. .......................................................19

   III. A stay would injure Plaintiffs and others and harm the public interest. .......20

   IV. *Purcell* does not require a stay. .............................................................21

CONCLUSION ..................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Access Now, Inc. v. Sw. Airlines Co.*,
  385 F.3d 1324 (11th Cir. 2004)...................................................... 14, 21

*Burns v. Town of Palm Beach*,
  999 F.3d 1317 (11th Cir. 2021)............................................................ 6

*Chafin v. Chafin*,
  742 F.3d 934 (11th Cir. 2013) (per curiam)........................................ 9

*Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*,
  901 F.3d 1235 (11th Cir. 2018)............................................................ 6

*Garica-Mir v. Meese*,
  781 F.2d 1450 (11th Cir. 1986)............................................................ 9

*Hall v. Hall*,
  138 S. Ct. 1118 (2018) ....................................................................... 17

*Jacobson v. Fla. Sec'y of State*,
  974 F.3d 1236 (11th Cir. 2020).......................................................... 18

*League of Women Voters of Fla., Inc. v. Lee*,
  No. 4:21-cv-186 (N.D. Fla. 2021).................................................*passim*

*Lewis v. Governor of Ala.*,
  944 F.3d 1287 (11th Cir. 2019).......................................................... 18

*McClendon v. Long*,
  22 F.4th 1330 (11th Cir. 2022)........................................................... 11

*McIntyre v. Ohio Elections Comm'n*,
  514 U.S. 334 (1995) ........................................................................... 11

*NIFLA v. Becerra*,
  138 S. Ct. 2361 (2018) ................................................................. 11, 12

*Nken v. Holder*,
  556 U.S. 418 (2009) ................................................................. 9, 19, 20

ii

*Purcell v. Gonzalez*,
    549 U.S. 1 (2006) ....................................................................................2, 21, 22

*Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*,
    487 U.S. 781 (1988) .................................................................................11, 12

*Va. House of Delegates v. Bethune-Hill*,
    139 S. Ct. 1945 (2019) ............................................................................17, 18

**Statutes**

Fla. Stat. § 16.01 ............................................................................................. 18

Fla. Stat. § 97.0575(3)(a) ............................................................................3, 11

Fla. Stat. § 102.031(4)(b) .......................................................................3, 6, 15

**Other Authorities**

Fla. S., CS/CS/SB 524: Election Admin., https://www.flsenate.gov/
    Session/Bill/2022/524 ................................................................................ 13

**INTRODUCTION**

Each of these four consolidated appeals from a consolidated fourteen-day bench trial involves different plaintiffs, different claims, and a different judgment. The judgment in the *League* Plaintiffs' case[1] is narrow. It enjoins Secretary Lee and Attorney General Moody from enforcing the "Registration Disclaimer Provision," which requires private voter registration groups to deliver a government-drafted message, and it enjoins a single Supervisor of Elections in Bay County, Florida, from enforcing the "Solicitation Definition," a vague and overbroad portion of Florida's prohibition on solicitation near polling places, which otherwise remains in force.

Appellants' Stay Motion focuses on the claims and judgments in the other cases and provides no basis for staying the narrow judgment in the *League* Plaintiffs' case. Appellants are unlikely to succeed on the merits of their appeal of that judgment. The District Court correctly held that the Registration Disclaimer Provision compels speech in violation of the First Amendment and that the Solicitation Definition is unconstitutionally vague and overbroad in violation of the First and Fourteenth Amendments. Appellants face no irreparable injury absent a stay, because they say Florida imminently intends to repeal the Registration Disclaimer Provision regardless, and the record shows that the Solicitation

---

[1] *League of Women Voters of Fla., Inc. v. Lee*, No. 4:21-cv-186 (N.D. Fla. filed May 5, 2021). All citations to ECF numbers in this Opposition are to this docket.

Definition has little effect on Supervisors' on-the-ground enforcement actions—it just serves to chill the *League* Plaintiffs' and others' expressive conduct. Rather than address these issues, Appellants focus on the *Purcell* principle, but they waived reliance on that principle by failing to raise it below, even after the District Court expressly invited briefing and evidence on the question. The Court should therefore deny the Motion and resolve this appeal on an ordinary schedule.

## BACKGROUND

This is an appeal from the consolidated trial of four challenges to Florida's Senate Bill 90, an omnibus election law enacted in May 2021. After a fourteen-day bench trial that included hundreds of exhibits and testimony from forty-two witnesses, the District Court entered a 288-page final order with findings of fact and conclusions of law. *See* Final Order Following Bench Trial, ECF No. 665 (Mar. 31, 2022) (hereinafter "Op."), Ex. A to Time Sensitive Motion for Stay Pending Appeal (Apr. 11, 2022) (hereinafter "Mot."). The District Court then entered separate judgments in each of the four cases. *See* Op. 284–88. Appellants—some, but not all, of the Defendants against whom judgment was entered—filed a notice of appeal one week later. Not. of Appeal, ECF No. 667 (Apr. 7, 2022).

Appellants' Motion focuses on the District Court's ruling that several provisions of Senate Bill 90 intentionally discriminate against Black voters. The *League* Plaintiffs did not bring such claims, and the judgment in the *League*

Plaintiffs' case does not depend on any finding of intentional race discrimination. Clerk's J., ECF No. 666. Rather, the *League* Plaintiffs' judgment turned exclusively on rights to free expression under the First and Fourteenth Amendments. *Id.* The District Court entered judgment for the *League* Plaintiffs on two claims: the Registration Disclaimer Provision, Fla. Stat. § 97.0575(3)(a), and the Solicitation Definition, Fla. Stat. § 102.031(4)(b). *Id.*

### A. The Registration Disclaimer Provision

The Registration Disclaimer Provision requires private organizations collecting voter registration forms to warn potential voters that the organization may not turn in their form on time, and to inform those potential voters of other ways to register to vote. Fla. Stat. § 97.0575(3)(a). The District Court held that the Provision compels private organizations to engage in expression in violation of the First Amendment. Op. 202–18.

The District Court subjected the Registration Disclaimer Provision to strict scrutiny because it compels private speakers to deliver a government-drafted message. *Id.* at 204–19 (citing *NIFLA v. Becerra*, 138 S. Ct. 2361 (2018), and *McClendon v. Long*, 22 F.4th 1330 (11th Cir. 2022)). And the District Court found that the Disclaimer Provision could not survive strict scrutiny because it neither served a compelling interest nor was narrowly tailored.

3

First, the District Court held that the state's asserted interest in informing the public about the risks of registering with a private organization, and of available alternative registration methods, was not compelling. "[T]he simple interest in providing voters with additional relevant information does not justify a state requirement that a [speaker] make statements or disclosures she would otherwise omit." Op. 210 (quoting *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 348 (1995)) (second alteration in original). And the extensive factual record showed that "the chance that a [private organization] will return any particular voter's registration late is vanishingly small." *Id.* at 210–14. The District Court therefore found the required warning "misleading," because organizations "seldom submit applications late," and the warning "mislead[s] registrants into thinking it [is] likely." *Id.* at 208.

Second, the District Court held that the Registration Disclaimer Provision was not narrowly tailored, because a less restrictive alternative was readily available: the state could "communicat[e] its message itself" by adding a warning to the state's voter registration form. *Id.* at 215–16 (citing *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 800 (1988)).

Finally, the District Court ruled in the alternative that, even if exacting rather than strict scrutiny applied, the Registration Disclaimer Provision was still

unconstitutional because it did not serve a sufficiently important government interest and was not narrowly tailored. *Id.* at 216–218.

Based on these findings, the District Court entered a declaratory judgment that the Registration Disclaimer Provision is unconstitutional, and enjoined Defendants Lee and Moody from enforcing it. ECF No. 666.

## B.  The Solicitation Definition

The "Solicitation Definition" is Senate Bill 90's amendment to Florida's statutory definition of the "solicitation" that is prohibited, as a *criminal* violation, within 150-feet of a polling place or ballot drop box. Specifically, Senate Bill 90 broadened the definition of prohibited "solicitation" by adding the following underlined text:[2]

> (b) For the purpose of this subsection, the terms 'solicit' or 'solicitation' shall include, but not be limited to, seeking or attempting to seek any vote, fact, opinion, or contribution; distributing or attempting to distribute any political or campaign material, leaflet, or handout; conducting a poll except as specified in this paragraph; seeking or attempting to seek a signature on any petition; selling or attempting to sell any item; **and engaging in any activity with the intent to influence or effect of influencing a voter**. The terms 'solicit' or 'solicitation' may not be construed to prohibit an employee of, or a volunteer with, the supervisor from providing nonpartisan assistance to

---

[2] Senate Bill 90 also added the proviso that the definition "not be construed to prohibit an employee of, or a volunteer with, the supervisor from providing nonpartisan assistance to voters within the no-solicitation zone such as, but not limited to, giving items to voters," but the *League* Plaintiffs did not challenge that addition.

> voters within the no-solicitation zone such as, but not limited to, giving items to voters, or to prohibit exit polling.

Fla. Stat. § 102.031(4)(b) (emphasis added). The District Court held that the underlined text was unconstitutionally vague and overbroad. Op. 157–87.

The District Court first held that the Solicitation Definition implicates the First Amendment because it regulates Plaintiffs' expressive conduct near polling places. *Id.* at 160–67. The District Court applied the test this Court articulated in *Burns v. Town of Palm Beach*, 999 F.3d 1317, 1336 (11th Cir. 2021), and *Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*, 901 F.3d 1235 (11th Cir. 2018). Op. 160–67. In doing so, the District Court found that reasonable persons would interpret Plaintiffs' activities near polling places as expressive, based on "uncontradicted testimony" that Plaintiffs' activities at polling places are accompanied by banners and educational materials, relate to matters of public concern, and are in fact understood by voters as communicating a message of support for the important act of voting. *Id.*

Next, the District Court held the Solicitation Definition impermissibly vague. *Id.* at 167–81. The District Court explained that "the question is whether a person of ordinary intelligence can understand what the statute prohibits," and concluded that such a person could not understand the Solicitation Definition. *Id.* at 171–81. True, "some conduct clearly falls within the definition's scope," but "the Supreme Court has squarely rejected the argument that 'a vague provision is constitutional merely

because there is some conduct that clearly falls within the provision's grasp.'" *Id.* at 172 (quoting *Johnson v. United States*, 576 U.S. 591, 602 (2015)).

The District Court explained that "the statutory text is clear that 'any activity' is illegal if one either (1) engages in it within the 150-foot buffer zone with the specific 'intent to influence' a voter, or (2) such activity occurs within the 150-foot buffer zone and has the 'effect of influencing a voter,' regardless of one's intent." *Id.* at 173. This provision was "akin to other statutes that the Supreme Court has struck down for tying criminal culpability to whether the defendant's conduct was unacceptable based on 'wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings.'" *Id.* at 176–77 (quoting *United States v. Williams*, 553 U.S. 285, 306 (2008)).

Moreover, testimony from Supervisors of Elections—the officials tasked with enforcing the Solicitation Definition—showed no "clear consensus as to what this new definition means or how it should apply." *Id.* at 178. One Supervisor agreed that the new language was "vague," and interpreted it to prohibit *all* contact with voters in line to vote; another Supervisor interpreted the definition to prohibit only encouraging someone to vote in a particular way but said it "would depend on the situation" to determine what conduct qualified. *Id.* at 178–79. Florida's Director of Elections testified that whether a nonpartisan organization could hand out water to voters under the Solicitation Definition would depend on the "facts and

circumstances" of a particular case. *Id.* at 179. The District Court therefore concluded that the Solicitation Definition "both fails to put Floridians of ordinary intelligence on notice of what acts it criminalizes and encourages arbitrary and discriminatory enforcement." *Id.* at 180.

The District Court also held the Solicitation Definition unconstitutionally overbroad. *Id.* at 181–85. It explained that the Solicitation Definition's vagueness "consumes vast swaths of core First Amendment speech." *Id.* at 183. "Instead of tailoring the ban on solicitation to activities that pose a risk of confusing or intimidating voters around the polls, Florida has outlawed all activities that 'influence' voters in some unidentified way." *Id.* at 184.

Finally, the District Court held that the challenged text—"engaging in any activity with the intent to influence or effect of influencing a voter"—was severable from the rest of Florida's prohibition of solicitation outside polling places, such that enforcement of the challenged text could be enjoined while leaving "the remainder of that definition provision and the overall statute governing order at the polls intact." *Id.* at 185–87. The District Court therefore enjoined certain Supervisors of Elections from enforcing the challenged portion of the definition, while emphasizing that they "still maintain authority to define the no-solicitation zone, enforce its prohibitions, and remove 'disruptive and unruly persons' from the zone." *Id.* at 186–87. In the *League* Plaintiffs' case, the only Supervisor subject to the injunction is

Supervisor Mark Andersen of Bay County. Clerk's J., ECF No. 666. Supervisor

Andersen has neither filed a notice of appeal nor sought a stay of the injunction.

## STANDARD OF REVIEW

"A stay is an intrusion into the ordinary processes of administration and

judicial review." *Nken v. Holder*, 556 U.S. 418, 427 (2009) (quoting *Va. Petroleum*

*Jobbers Ass'n v. FPC*, 259 F.2d 921, 925 (D.C. Cir. 1958)). It is an "exceptional

response," and appellate courts "must always be diffident in interposing the power

of an appellate court into the province of the trial court and its orders save upon full

briefing and mature reflection." *Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th

Cir. 1986). When evaluating a motion to stay, courts consider four factors to "ensure

that [they] do not grant stays pending appeal improvidently." *Chafin v. Chafin*, 742

F.3d 934, 937 n.7 (11th Cir. 2013) (per curiam). Those factors are: "(1) whether the

stay applicant has made a strong showing that he is likely to succeed on the merits;

(2) whether the applicant will be irreparably injured absent a stay; (3) whether

issuance of the stay will substantially injure the other parties interested in the

proceeding; and (4) where the public interest lies." *Nken*, 556 U.S. at 426 (quoting

*Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

# ARGUMENT

## I.     Appellants are unlikely to succeed on the merits of their appeal of the judgment in the *League* Plaintiffs' case.

Appellants focus most of their fire on the District Court's intentional discrimination holdings and the resulting bail-in ruling under Section 3 of the Voting Rights Act. Those are important issues, but they are not part of the *League* Plaintiffs' case, and they therefore can provide no justification for a stay of the judgment entered in the *League* Plaintiffs' favor. Rather, the judgment entered in the *League* Plaintiffs' case involved two free-expression claims under the First and Fourteenth Amendments: a challenge to the Registration Disclaimer Provision as compelled speech, and a challenge to the Solicitation Definition as unconstitutionally vague and overbroad. The District Court rightly entered judgment for the *League* Plaintiffs on both claims, and this Court is likely to affirm.

### A.     The Registration Disclaimer Provision

#### 1.     The Registration Disclaimer Provision unconstitutionally compels speech.

The Registration Disclaimer Provision constitutes compelled speech because it forces private organizations that collect voter registration forms to deliver a government-drafted message they would not otherwise deliver. Specifically, they must tell voters "that the organization might not deliver the application to the division or the supervisor of elections in the county in which the applicant resides in

less than 14 days or before registration closes for the next ensuing election and must advise the applicant that he or she may deliver the application in person or by mail," and "must also inform the applicant how to register online with the division and how to determine whether the application has been delivered." Fla. Stat. § 97.0575(3)(a).

The District Court correctly held that the Registration Disclaimer Provision is subject to strict scrutiny as a law that "compel[s] individuals to speak a particular message." Op. 202–09; *see NIFLA*, 138 S. Ct. at 2371; *Riley*, 487 U.S. at 795. "When the government 'compel[s] speakers to utter or distribute speech bearing a particular message,' . . . such a policy imposes a content-based burden on speech and is subject to strict-scrutiny review." *McClendon*, 22 F.4th at 1337–38. It makes no difference that Plaintiffs may comply with the Registration Disclaimer Provision by displaying a written sign or disclaimer rather than through literal speech. *NIFLA*, 138 S. Ct. at 2369; *McClendon*, 22 F.4th at 1333–34.

The District Court also correctly held that the Registration Disclaimer Provision fails strict scrutiny because it does not serve a compelling interest and is not narrowly tailored. Op. 209–16. Appellants attempted to justify the Provision as needed to inform voters of the dangers of registering with a private organization and of alternative means of registration. But "[t]he simple interest in providing voters with additional relevant information does not justify a state requirement that a [speaker] make statements or disclosures she would otherwise omit." *McIntyre*, 514

U.S. at 348. And the trial record showed that Florida had no significant problem with private organizations turning in voter registration forms late. Op. 210–14. Moreover, a less restrictive alternative was available: Florida could communicate its message itself, including by printing the warning directly on the registration forms. *See Riley*, 487 U.S. at 800 (law compelling speech not narrowly tailored where "the State may itself publish" information via an advertising campaign instead of compelling private parties to speak, and thereby "communicate the desired information to the public without burdening a speaker with unwanted speech"); *NIFLA*, 138 S. Ct. at 2376 (compelled disclosure unconstitutional even under intermediate scrutiny because the state "could inform the women itself with a public-information campaign").

### 2. Plaintiffs' challenge to the Registration Disclaimer Provision is not moot.

Appellants' Motion does not challenge the District Court's conclusion that the Registration Disclaimer Provision is unconstitutional. *See* Mot. 12–13. Rather, Appellants argue that Plaintiffs' challenge to the Provision will soon be moot, because the Florida Legislature has passed a bill, Senate Bill 524, that repeals the Provision, and Appellants represent that "Governor DeSantis plans to sign SB524 imminently." *Id.* at 12. Appellants further argue—citing nothing—that the District Court should have waited for the Governor to sign Senate Bill 524 before entering judgment. *Id.* at 12–13. But as Appellants themselves argued below, Senate Bill 524 will moot Plaintiffs' challenge to the Disclaimer Provision only if it is transmitted

to the Governor and the Governor signs it. Resp. to Order Requiring Supp. Br. on Potential Effect of Fla. SB524, ECF No. 662 at 6 (Mar. 23, 2022). More than a month after the Legislature passed Senate Bill 524 on March 9, that still has not happened.[3] *See* Fla. S., CS/CS/SB 524: Election Admin., https://www.flsenate.gov/Session/Bill/2022/524 (as last accessed Apr. 21, 2022).

Appellants waived any argument that the District Court should have waited before entering judgment when they failed to make that argument below in response to a direct order from the District Court requiring the parties to brief the effect of Senate Bill 524 on these cases. *See* Order for Expedited Supp. Briefing, ECF No. 659 (Mar. 21, 2022); Resp. to Order Requiring Supp. Br. on Potential Effect of Fla. SB524, ECF No. 662. The Florida Legislature passed Senate Bill 524 on March 9, three weeks before the District Court entered judgment. *See* Fla. S., CS/CS/SB 524: Election Admin., https://www.flsenate.gov/Session/Bill/2022/524. Appellants did nothing to inform the District Court of the bill for the next two weeks.

---

[3] Appellants argue that "[t]he only thing stopping [repeal] is the district court's preclearance order," Mot. 12, but the Legislature could have transmitted the bill to the Governor, and the Governor could have signed it, during the three weeks between the passage of the bill and the entry of the District Court's judgment. Even now, the District Court's preclearance order does not prevent the Governor from signing the bill—it just means the bill would not take effect until precleared. Whatever the reason for the Legislature's delay in transmitting Senate Bill 524 to the Governor, it is not the District Court's preclearance order.

The District Court raised Senate Bill 524 *sua sponte* on March 21 and ordered the parties to file supplemental briefs addressing that bill's effect on the case. Order for Expedited Supp. Briefing, ECF No. 659. In response, Appellants emphasized that "Senate Bill 524 is not yet law because the Florida Legislature has neither presented the bill to the Governor for his consideration nor has the time for consideration expired." Resp. to Order Requiring Supp. Br. on Potential Effect of Fla. SB524 at 6, ECF No. 662. Appellants argued that "*if and when* Senate Bill 524 becomes law, the Court should dismiss all claims related to the [Registration Disclaimer Provision]." *Id.* at 7 (emphasis added). Nowhere in their seven-page brief did Appellants argue that the District Court should "hold this claim in abeyance or enter a partial stay," as Appellants now argue. Mot. 13.

Appellants' failure to request a stay or abeyance from the District Court—despite an order expressly mandating briefing on the effect of Senate Bill 524—waives any argument on appeal that such action was required. *See, e.g.*, *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) ("This Court has 'repeatedly held that an issue not raised in the district court and raised for the first time in an appeal will not be considered by this court.'" (quoting *Walker v. Jones*, 10 F.3d 1569, 1572 (11th Cir. 1994)).

Waiver aside, Appellants had it right the first time. Plaintiffs' challenge to the Registration Disclaimer Provision is not yet moot and may never become moot. The

Legislature *still* has not sent Senate Bill 524 to the Governor, and it *still* has not become law. Unless and until it does, the Registration Disclaimer Provision remains in effect, and remains unconstitutional. It is only the District Court's injunction that protects the *League* Plaintiffs and others from enforcement of the unconstitutional law. That Florida may someday repeal the Provision provides no basis for staying the injunction and allowing Florida to enforce the Provision again unless and until it is repealed.

**B.    The Solicitation Definition**

**1.    The Solicitation Definition is unconstitutionally vague and overbroad.**

The District Court correctly held that the Solicitation Definition is unconstitutionally vague and overbroad. Op. 157–87. By criminalizing "any activity with the intent to influence or effect of influencing a voter," apparently in any respect, the Definition makes it impossible for Plaintiffs or others to know what conduct is impermissible. Fla. Stat. § 102.031(4)(b). The trial record showed that Supervisors of Elections had inconsistent and unpredictable interpretations of the language, and that the definition was chilling organizations across the state from engaging in constitutionally protected expressive activities. Op. 178–79. The Solicitation Definition is also overbroad, prohibiting far more than the limited set of activities that pose a risk of confusing or intimidating voters—which was Appellants' asserted justification for the provision. *Id.* at 184–85.

In arguing otherwise, Appellants ignore the narrow scope of the *League* Plaintiffs' challenge and the District Court's injunction. *See* Mot. 13–14. Appellants argue that the word "solicit" has a plain meaning even without a definition, and that the statute includes a "long list of examples" of what is prohibited. *Id.* at 13. But the District Court's injunction leaves those portions of the statue undisturbed and enforceable: it is only the prohibition on "any activity with the intent to influence or effect of influencing a voter" that may not be enforced. Op. 185–87. Thus, everything Appellants say is the "clear core" of the statute—"bribes," "selling goods," "outright electioneering"—is still prohibited. Mot. 13–14. All that is not enforceable is the new, vague language that was added in Senate Bill 90. Appellants have *never* been able to identify any conduct that is properly prohibited by that language that is not otherwise prohibited by Florida law.

Appellants also argue that the Solicitation Definition does not implicate expressive conduct, Mot. 14–15, but the District Court concluded otherwise based on a factual record that included far more affected conduct than just the distribution of food and water. Op. 160–67. Appellants' Motion ignores the extensive record evidence on that issue and therefore provides no reason to conclude that this Court will set aside the District Court's amply supported findings.

### 2. Appellants lack standing to appeal the injunction of the Solicitation Definition in the *League* Plaintiffs' case.

Appellants are also unlikely to succeed on the merits with respect to the District Court's injunction against enforcement of the Solicitation Definition in the *League* Plaintiffs' case because they lack standing to appeal it. Consolidation "does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another." *Hall v. Hall*, 138 S. Ct. 1118, 1127 (2018) (quoting *Johnson v. Manhattan Ry. Co.*, 289 U.S. 479, 496–97 (1933)). In the *League* Plaintiffs' case, the District Court enjoined only one defendant from enforcing the Solicitation Definition—the Supervisor of Elections for Bay County, Mark Andersen. Op. 284. And Supervisor Andersen did not appeal. *See* Not. of Appeal, ECF No. 667 (appealing on behalf of Defendants Lee, Moody, Hays, Doyle, the RNC, and the NRSC, and no one else).

True, three of Appellants—Secretary Lee, the RNC, and the NRSC—intervened as defendants to defend the Solicitation Definition in the District Court. *See* Order Granting Mot. to Intervene, ECF No. 72 (June 4, 2021); Order Granting Mot. to Intervene, ECF No. 359 (Dec. 6, 2021). But "to appeal a decision that the primary party does not challenge, an intervenor must independently demonstrate standing." *Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1951 (2019). Appellants make no such showing. None is subject to the District Court's injunction in the *League* Plaintiffs' case, so none is "obliged . . . in any binding sense . . . to

honor an incidental legal determination [this] suit produce[s]." *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1254 (11th Cir. 2020) (quoting *Lewis v. Governor of Ala.*, 944 F.3d 1287, 1302 (11th Cir. 2019)). Secretary Lee has no meaningful role in enforcing the Solicitation Definition. Order on Mots. to Dismiss at 25, ECF No. 274 (Oct. 8, 2021).[4] Nor, of course, do the RNC and the NRSC, and there is no evidence that either has any other concrete interest in the enforcement of the Solicitation Definition in Bay County. Finally, while Supervisors Hays and Doyle enforce the Solicitation Definition in their own counties, they are unaffected by the injunction in the *League* Plaintiffs' case, which does not apply to them. *See* Op. 284. The District Court's opinion might have some persuasive effect if their own actions are challenged, but such an effect is inadequate to convey standing. *See Lewis*, 944 F.3d at 1305.

---

[4] Secretary Lee also does not show she has authority to represent the sovereign interests of Florida itself. *Bethune-Hill*, 139 S. Ct. at 1951–52. Florida law authorizes the Attorney General, not the Secretary of State, to "appear in and attend to" matters "in which the state may be a party, or in anywise interested." Fla. Stat. § 16.01(4), (5) (emphasis added). And even that statute expressly does not "authorize the joinder of the Attorney General as a party in . . . suits" in federal court. *Id.* § 16.01(5).

**II.    Appellants will not be irreparably harmed absent a stay of the judgment in the *League* Plaintiffs' case.**

Obtaining a stay pending appeal also requires a showing of irreparable injury absent a stay. *Nken*, 556 U.S. at 426. Appellants make no such showing, particularly with respect to the limited judgment entered in the *League* Plaintiffs' case.

The sole form of irreparable injury Appellants identify is the bare assertion that Florida will be irreparably harmed if it is prevented from conducting this year's elections under the challenged provisions of Senate Bill 90. Mot. 15–16 (citing *New Ga. Project v. Raffensperger*, 976 F.3d 1278, 1283 (11th Cir. 2020)). But if Appellants were really concerned about that, they could have filed their notice of appeal more quickly—they waited a full week—and they could have asked this Court to expedite the briefing schedule to enable it to resolve this case on the merits well in advance of Florida's August 23 primary. That Appellants did neither confirms what the factual record also illustrates: far from causing the administrative harms and voter confusion that Appellants say they fear, the District Court's injunction will only improve elections administration in Florida. Op. 265–67.

The lack of irreparable injury is especially clear with respect to the Registration Disclaimer Provision and the Solicitation Definition, the sole subjects of the *League* Plaintiffs' judgment. As for the Registration Disclaimer Provision, Florida surely is not irreparably injured by being prevented from enforcing a provision that—Appellants assure the Court—will be imminently repealed, and

would have been repealed already but for the District Court's preclearance order. Mot. 12. And while the Solicitation Definition had severe consequences for the *League* Plaintiffs and other private groups that were forced to self-censor in response to the threat presented by the vague criminal provision, Op. 139–40, the record suggests that the injunction will have only a limited effect on what Supervisors of Election actually do: the injunction restores the pre-Senate Bill 90 definition, and many Supervisors testified that they enforced the same prohibition on solicitation before and after Senate Bill 90 was enacted. *Id.* at 178–79. Appellants therefore have made no showing that maintaining the judgment in favor of the *League* Plaintiffs pending appeal would irreparably injure them.

## III. A stay would injure Plaintiffs and others and harm the public interest.

The Court must also consider injury to other parties and the public interest, *Nken*, 556 U.S. at 426, and these factors strongly weigh against a stay. Until the Court enjoined it, the Registration Disclaimer Provision was actively requiring the *League* Plaintiffs and other voter registration organizations to express a message with which they disagree, and which undermined their mission of registering eligible Floridians to vote. If the Court stays the District Court's injunction, these organizations will again be compelled to speak in this way, in violation of their First Amendment rights. Similarly, the *League* Plaintiffs and other groups were self-censoring their activities at polling places in response to the threat of prosecution

under the vague Solicitation Definition. If the Court stays the District Court's injunction, that self-censorship will have to resume.

## IV. *Purcell* does not require a stay.

Rather than address the required factors of irreparable injury, injury to others, and the public interest, Appellants focus entirely on *Purcell v. Gonzalez*, 549 U.S. 1 (2006). Mot. 15–19. But Appellants waived any argument that *Purcell* precludes the District Court's permanent injunction by failing to raise the *Purcell* principle below, much less make a factual record in support of it. *See, e.g.*, *Access Now*, 385 F.3d at 1331.

Appellants' 88-page post-trial brief (there was no page limit) cited *Purcell* just once, to argue that Florida had a compelling interest in "preventing voter fraud and preserving the integrity of its election process." Trial Br. at 56, ECF No. 648 (Feb. 26, 2022). Appellants never invoked the "*Purcell* principle" or argued that the District Court should avoid entering an injunction because elections were imminent. *See generally id.* Appellants chose not to make that argument even though the District Court made clear that it was interested in arguments on that issue: at trial, the District Court Judge stated that he was "not unmindful that we are approaching an election," was concerned that if proceedings took too long, it would become "a self-fulfilling prophesy that it's too late to do anything," and invited briefing from the Supervisors and others on remedial issues, including briefing arguing that "if you

do grant any relief, it shouldn't be for this election cycle." Tr. Day 11 at 3070–71, 3073, ECF No. 601 (Feb. 11, 2022). Appellants ignored the District Court's invitation below, and they may not raise the issue for the first time now.

In any event, at least in the *League* Plaintiffs' case, there is no *Purcell* issue. The provisions at issue have only a tangential relationship to the electoral process. There is nothing in the record, and no argument in the Motion, that the inability to enforce those two provisions while an appeal is pending will in any way impair Florida's ability to administer its elections. Thus, *Purcell* provides no justification for a stay of the *League* Plaintiffs' judgment.

## CONCLUSION

The Court should deny the Motion.

Dated: April 21, 2022

Respectfully submitted,

Frederick S. Wermuth
KING, BLACKWELL, ZEHNDER
& WERMUTH, P.A.
P.O. Box 1631
Orlando, FL 32802-1631
Telephone: (407) 422-2472
fwermuth@kbzwlaw.com

*s/ David R. Fox*
Marc E. Elias
Elisabeth C. Frost
Aria C. Branch*
David R. Fox
Lalitha D. Madduri
Christina A. Ford
Francesca Gibson*
ELIAS LAW GROUP LLP
10 G Street NE, Suite 600
Washington, DC 20002
Telephone: (202) 968-4490
melias@elias.law
efrost@elias.law
abranch@elias.law
dfox@elias.law
lmadduri@elias.law
cford@elias.law
fgibson@elias.law

*Counsel to Plaintiffs-Appellees in No.
22-11143*

*\* Application to Eleventh Circuit Bar
pending.*

**CERTIFICATE OF COMPLIANCE**

This response complies with Fed. R. App. P. 27(d) because it contains 5182 words, excluding the parts that may be excluded. This response also complies with Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface, 14-point Times New Roman.

*s/ David R. Fox*

**CERTIFICATE OF SERVICE**

This response has been filed by CM/ECF and served via CM/ECF on all counsel of record.

*s/ David R. Fox*