# UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

HARRIET TUBMAN FREEDOM FIGHTERS, CORP.,
*Plaintiff-Appellee,*

v.

FLORIDA SECRETARY OF STATE, et al.
*Defendants-Appellants,*

NATIONAL REPUBLICAN SENATORIAL COMMITTEE and
REPUBLICAN NATIONAL COMMITTEE,
*Intervenor-Defendants—Appellants.*

LEAGUE OF WOMEN VOTERS OF FLORIDA, INC., et al.
*Plaintiffs-Appellees,*

v.

FLORIDA SECRETARY OF STATE, et al.
*Defendants-Appellants,*

NATIONAL REPUBLICAN SENATORIAL COMMITTEE and
REPUBLICAN NATIONAL COMMITTEE,
*Intervenor-Defendants—Appellants.*

FLORIDA STATE CONFERENCE OF BRANCHES
AND YOUTH UNITS OF THE NAACP, et al.
*Plaintiffs-Appellees,*

v.

FLORIDA SECRETARY OF STATE, et al.
*Defendants-Appellants,*

NATIONAL REPUBLICAN SENATORIAL COMMITTEE and
REPUBLICAN NATIONAL COMMITTEE,
*Intervenor-Defendants—Appellants.*

[*continued on next page*]

FLORIDA RISING TOGETHER, et al.
*Plaintiffs-Appellees,*

v.

FLORIDA SECRETARY OF STATE, et al.
*Defendants-Appellants,*

NATIONAL REPUBLICAN SENATORIAL COMMITTEE and
REPUBLICAN NATIONAL COMMITTEE,
*Intervenor-Defendants–Appellants.*

On Appeal from the U.S. District Court for the Northern District of Florida,
Nos. 4:21-cv-242, 4:21-cv-186, 4:21-cv-187, 4:21-cv-201 (Walker, C.J.)

## REPLY IN SUPPORT OF TIME-SENSITIVE MOTION FOR STAY PENDING APPEAL

Mohammad O. Jazil
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
119 South Monroe Street, Suite 500
Tallahassee, FL 32301
(850) 274-1690

*Lead Counsel for Secretary Lee*

Andy Bardos
GRAYROBINSON, P.A.
301 South Bronough Street,
Suite 600
Tallahassee, FL 32301
(850) 577-9090

*Lead Counsel for Supervisors Hays and Doyle*

Tyler R. Green
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard,
Suite 700
Arlington, VA 22209
(703) 243-9423

*Lead Counsel for RNC & NRSC*

Henry C. Whitaker
FLORIDA ATTORNEY
GENERAL OFFICE
PL-01 The Capitol
Tallahassee, FL 3300
(850) 414-3300

*Lead Counsel for Attorney General Moody*

No. 22-11133, *Harriet Tubman Freedom Fighters, Corp. v. Fla. Sec'y of State*
No. 22-11143, *League of Women Voters of Fla. v. Fla. Sec'y of State*
No. 22-11144, *Fla. State Conf. of Branches & Youth Units of NAACP v. Fla. Sec'y of State*
No. 22-11145, *Fla. Rising Together v. Fla. Sec'y of State*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Per Circuit Rule 26.1, Appellants certify that the CIP contained in their initial motion, as modified by their subsequent CIPs and the other parties' CIPs on the docket, are complete.

Dated: April 28, 2022

 /s/ *Mohammad O. Jazil*
Counsel for Secretary Lee

 /s/ *Andy Bardos*
Counsel for Supervisors Hays & Doyle

 /s/ *Tyler R. Green*
Counsel for RNC and NRSC

 /s/ *Henry C. Whitaker*
Counsel for Attorney General Moody

**INTRODUCTION**

The Supreme Court has "'repeatedly'" held that federal injunctions of state election laws should be stayed pending appeal. *New Ga. Proj. v. Raffensperger*, 976 F.3d 1278, 1283-84 & n.2 (11th Cir. 2020). During the 2020 cycle, all 17 of these injunctions met the same fate: either the court of appeals granted a stay, or the Supreme Court did. *See, e.g., RNC v. DNC*, 140 S. Ct. 1205 (2020); *Tex. Democratic Party v. Abbott*, 961 F.3d 389 (5th Cir. 2020), *application to vacate stay denied*, 140 S. Ct. 2015; *Thompson v. Dewine*, 959 F.3d 804 (6th Cir. 2020), *application to vacate stay denied*, 2020 WL 3456705 (U.S.); *Merrill v. People First of Ala.*, 141 S. Ct. 190 (2020); *Little v. Reclaim Idaho*, 140 S. Ct. 2616 (2020); *Ariz. Democratic Party v. Hobbs*, 976 F.3d 1081 (9th Cir. 2020); *Clarno v. People Not Politicians Ore.*, 141 S. Ct. 206 (2020); *Merrill v. People First of Ala.*, 141 S. Ct. 25 (2020); *Andino v. Middleton*, 141 S. Ct. 9 (2020); *A. Philip Randolph Inst. of Ohio v. Larose*, 831 F. App'x 188, 189 (6th Cir. 2020); *Texas All. for Retired Ams. v. Hughs*, 976 F.3d 564 (5th Cir. 2020); *Richardson v. Tex. Sec'y of State*, 978 F.3d 220 (5th Cir. 2020); *Priorities USA v. Nessel*, 978 F.3d 976, 978 (6th Cir. 2020); *Common Cause Ind. v. Lawson*, 978 F.3d 1036, 1039 (7th Cir. 2020); *Curling v. Sec'y of State of Ga.*, 2020 WL 6301847 (11th Cir. Oct. 24); *DNC v. Bostelmann*, 977 F.3d 639 (7th Cir. 2020), *application to vacate stay denied, DNC v. Wis. State Leg.*, 141 S. Ct. 28.

Plaintiffs want this case to be the exception. *This* case. The one where a district court tarred the Florida legislature with bad-faith discrimination against its black constituents. And the one where a judge put the entire State of Florida under preclearance. It's bad enough to enjoin the reasonable, nondiscriminatory rules that Florida enacted to regulate its elections. It's altogether different to preemptively enjoin *all similar* rules that Florida *could enact* over the next decade—at least until the State "go[es] hat in hand" to Chief Judge Walker. *Shelby Cty. v. Holder*, 679 F.3d 848, 885 (D.C. Cir. 2012) (Williams, J., dissenting), *rev'd*, 570 U.S. 529 (2013).

This case is not the exception. It is the poster child for federal courts "usurping the authority of state legislatures to regulate elections." *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1269 (11th Cir. 2020). While Plaintiffs are right that stays are "'exceptional,'" LWV-Opp.9, it is far more exceptional for a district court to commandeer a State's elections midcycle. This Court should enter a stay as soon as possible.

## ARGUMENT

This Court can grant Appellants' motion on two independent grounds. It can hold that Appellants are likely to succeed on the merits (and so the other stay factors necessarily favor them), or it can hold that the equities alone warrant a stay (under the *Purcell* principle). Mot.16. Plaintiffs do not dispute that both paths are available. Plaintiffs lose under both.

## I. Movants will likely prevail on appeal.

No part of the district court's injunction will likely survive this appeal.

## A. Intentional racial discrimination

The district court did not apply the presumption of legislative good faith. Plaintiffs do not dispute that the presumption applies; they insist that the district court applied it. NAACP/FR-Opp.3-4. But the district court never *said* it was applying the presumption. While opinions need not incant "'magic words,'" NAACP/FR-Opp.3, courts should mention the key presumption that dictates how they're supposed to weigh the evidence. And the district court certainly didn't *afford* Florida the presumption. Appellants identified several examples where the court presumed bad faith, Mot.7-8, and Plaintiffs neither respond to those examples nor provide counterexamples where the district court presumed good faith.

The district court's discussion of the "most important" floor statement illustrates the point. Op.88. The court cited a statement from a Republican senator, who pointed out that, just because minorities currently use one method of voting, you cannot assume that they won't vote if the rules governing that method change. It's more likely they will simply learn the new rules and comply. *See* Op.88 ("'Now to look at patterns of use and say, well, you may have to go about it a little different way. There's a learning curve.'"). The district court treated that statement as evidence that the senator "kn[ew]" the "data shows Black voters will be impacted by SB90." Op.88-89. But the senator *denied* that conclusion and criticized the faulty methodology behind it. A court applying the presumption of good faith would have credited what the senator actually said. (And the

assumption that minorities are less capable of learning and following the rules is, itself, offensive.)

The district court also failed to apply *Greater Birmingham* and *Brnovich*. The point is not how many times it cited those cases for boilerplate propositions of law. *Contra* NAACP/FR-Opp.4. The point is that the court's analysis flouted the specific holdings of those cases.

The district court did not apply the parts of those cases that clarify—as a matter of law—what kinds of evidence count under *Arlington Heights*. As explained, partisan motives don't count, but the district court counted them. History disconnected from the bill's passage doesn't count, but the district court counted it. Statements from individual legislators don't count, but the district court counted them. Ordinary disparate impacts don't count, but the district court counted them. Alternatives proposed by opponents of the bill don't count, but the district court counted them. *See* Mot.8-9. In response, Plaintiffs regurgitate the district court's findings without grappling with their legal irrelevance. NAACP/FR-Opp.5-11. Pointing to the clear-error standard does not solve the problem because the district court's errors were *legal*. *Sohyde Drilling & Marine v. Coastal States Gas Producing Co.*, 644 F.2d 1132, 1138 (5th Cir. May 1981).

Consider its analysis of disparate impact. The court made no finding of "'a clear pattern, unexplainable on grounds other than race.'" *GBM*, 992 F.3d at 1322. It admitted that its data was "limited," "unclear," and "not necessarily representative." Op.103,

111-12, 100, 98. It did not quantify most of the disparate impacts, and the ones it quantified were small. Op.90-116.

And throughout, the court's analysis stacked unsupported inference on top of unsupported inference. It concluded that the solicitation provision, for example, would have disparate impacts on this logic: minorities wait in longer lines now, SB90 makes it harder to vote by mail so more people will join the lines on election day (instead of simply complying with the new law or voting early), and this net difference in line length will cause black voters to not vote unless third parties can give them food or water in the last 150 feet before entering the polling place. Op.109-13. Every link in that chain is speculative, unsupported by evidence, and facially implausible. Even more of a stretch is the assumption that the legislature *knew* about this tortured chain of causation and passed SB90 *because* it wanted to harm minorities. The district court's analysis will likely be rejected on appeal.

## B. Preclearance

Plaintiffs concede that only a valid finding of "intentional discrimination" can justify preclearance under §3(c). NAACP/FR-Opp.14. Because this Court is likely to reverse on intentional discrimination, it is likely to reverse on preclearance too. Mot.9-10.

Even if this Court somehow affirmed on intentional discrimination, it would still likely reverse the preclearance remedy. As Plaintiffs admit, NAACP/FR-Opp.13-14, preclearance is not "automatically" available once a court finds violations of the

Fourteenth or Fifteenth Amendments. *Perez v. Abbott*, 390 F. Supp. 3d 803, 818 (W.D. Tex. 2019). This drastic remedy is "'rarely used.'" *Veasey v. Abbott*, 888 F.3d 792, 804 (5th Cir. 2018). It has always been reserved for cases of "'systematic'" discrimination. *Conway Sch. Dist. v. Wilhoit*, 854 F. Supp. 1430, 1442 (E.D. Ark. 1994). And it has never been available when an ordinary "injunction" would do. *N.C. State Conf. of NAACP v. McCrory*, 831 F.3d 204, 241 (4th Cir. 2016).

Like the district court, Plaintiffs claim that preclearance is warranted under the multi-factor balancing test from *Jeffers*, a decades-old decision from the Eastern District of Arkansas. NAACP/FR-Opp. 14-15. But Appellants satisfy even that test. *See* Mot.11-12. All six *Jeffers* factors weigh firmly against preclearance:

**1-2.** The district court pointed to *no* prior violations of the Fourteenth or Fifteenth Amendments by Florida, let alone "persistent," "repeated," and "recent" ones. *Jeffers v. Clinton*, 740 F. Supp. 585, 601 (E.D. Ark. 1990). The district court's "20 year" history of supposed Republican-led discrimination against black Floridians covers the governorship of now-Democrat Charlie Crist. Op.275-76. It discusses issues that the enjoined provisions of SB90 do not regulate (like list maintenance, the length of in-person early voting, and felon voting). Op.52-65. And it admits that no court held that any of these incidents amounted to intentional racial discrimination (and several courts rejected that claim). Op.52-65. These *non-findings* of intentional discrimination, it should go without saying, do not prove a recent history of repeated intentional discrimination. *Perez*, 390 F. Supp. 3d at 820.

**3.** Even if they were probative, the district court's examples would not be "prevented, in the future, by preclearance." *Jeffers*, 740 F. Supp. at 601. The district court put Florida in preclearance for laws governing "3PVROs, drop boxes, or 'line warming' activities." Op.288. This remedy would have covered only one of the district court's examples, and that law (which imposed various regulations on 3PVROs) was never found to be intentionally racially discriminatory. Op.61-62.

**4.** The district court's examples are even more irrelevant because, as Plaintiffs concede, they have "already been remedied." *Jeffers*, 740 F. Supp. at 601; *see* NAACP/FR-Opp.14. The district court admitted that its injunction remedies any violations in this case. Op.277. And it acknowledged that injunctions would be sufficient in the future when it highlighted Florida's past compliance. Op.7 n.4.

**5-6.** Plaintiffs hardly defend the district court's sole basis for predicting that Florida will engage in racial discrimination in the future: that Florida's governor and legislative majority are Republicans. Op.277. That evidence-free prediction is offensive, confuses partisan motives with racial motives, and would justify preclearance in every case where Republicans are in power.

Separately, *Jeffers* is not the test; *Shelby County* is. Though *Shelby County* did not involve §3(c), it involved preclearance; and like §4 of the Voting Rights Act, §3(c) is a trigger for preclearance. Those triggers must be carefully guarded, according to *Shelby County*, because preclearance is a drastic remedy that offends basic principles of federalism and equal sovereignty. 570 U.S. at 542-45. It can be justified only by a finding of

"exceptional conditions" akin to 1965, when black turnout was abysmal, literacy tests were common, and southern States were circumventing injunctions. *Id.* at 545-48. The costs of preclearance—and the need to justify them with exceptional circumstances—do not disappear when the State's federal overseer is the Northern District of Florida, rather than the Justice Department or the D.D.C.

*Shelby County*'s "exceptional conditions" are not present here. The district court found none. While it certainly cited *Shelby County*, NAACP/FR-Opp.16, it did not apply that precedent's exceptional-conditions test. Plaintiffs do not identify any exceptional conditions either. They do not dispute that Florida has never been subject to statewide preclearance, that Florida makes it easy to vote, or that black Floridians register and vote at rates above many Democrat-run States. *See* Mot.2, 10-11. Further cutting against preclearance, Florida has a history of *winning* lawsuits alleging racial discrimination, Op.52-65, and nearly all of SB90 was unchallenged or upheld in this case, Mot.11. The claim that SB90 was motivated by racial discrimination is so weak that only two groups of Plaintiffs raised it.

Plaintiffs' only response is that SB524 is a "perfect example" for why preclearance is needed, since one provision increases the fines on 3PVROs who return applications late. NAACP/FR-Opp.15. But Plaintiffs do not explain why increasing the penalty is unconstitutional, let alone intentionally racially discriminatory. And the Court must presume that this new bill is *not* intentionally discriminatory until a plaintiff carries its burden of proving otherwise. *Abbott v. Perez*, 138 S. Ct. 2305, 2324-25 (2018).

Plaintiffs complain that they will have to challenge SB524 in litigation (rather than pre-clearance proceedings), and they complain that Florida could use "new tactics in the 2023 session" (meaning it could pass new legislation). NAACP/FR-Opp.15. But those complaints are not arguments for preclearance; they are a consequence of living in a constitutional republic where States are sovereign and legislatures set the rules for elections.

Plaintiffs conclude by arguing that Appellants cannot challenge the constitutionality of §3(c). NAACP/FR-Opp.17. But Appellants don't need to. Even if §3(c) relief is appropriate in some case, the question is whether it's appropriate here. That question, Plaintiffs agree, turns on whether preclearance was an "appropriate exercise of discretion." NAACP/FR-Opp.15. Plaintiffs do not dispute that this equitable discretion must be guided by *Shelby County*'s principles of federalism and equal sovereignty. *See* Mot.10 (citing *Rizzo v. Goode*, 423 U.S. 362, 379 (1976)). Appellants have explained why preclearance was inappropriate under those principles, and Plaintiffs do not dispute their right to make those arguments. *See* NAACP/FR-Opp.17.

But to be clear, the constitutionality of §3(c) is not off the table. That the issue was not extensively briefed below is an indictment of the district court, not Appellants. As the court observed, *both* sides treated §3(c) "as an afterthought" in their post-trial briefs, Op.270—understandably, as they were focused on liability. After finding liability, courts usually "orde[r] the commencement of a VRA §3(c) preclearance bail-in hearing." *Veasey*, 888 F.3d at 798. Appellants were thus blindsided when the district court

imposed preclearance in its post-trial opinion, especially after the court had ordered supplemental briefing on seemingly every topic *but* preclearance. Mot.5.

Tellingly, the district court did not conclude that Appellants forfeited their right to challenge preclearance; it concluded, on the merits, that preclearance is available, appropriate, and constitutional. Op.269-81. Appellants can now challenge those conclusions on appeal. "There can be no forfeiture when the district court nevertheless addressed the merits of the issue." *Hi-Tech Pharms., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1194 (11th Cir. 2018) (cleaned up). And having resisted preclearance below, Appellants can "make any argument in support of [that] position" now. *Bourtzakis v. United States Att'y Gen.*, 940 F.3d 616, 621 (11th Cir. 2019).[1]

### C.    Registration disclaimer

This Court will likely vacate the district court's judgment on the registration disclaimer. Everyone concedes that SB524's repeal of that provision moots Plaintiffs' challenges to it. Op.190. And the normal remedy when a repeal moots an issue on appeal is vacatur. Mot.12 (citing *Flanigan's Enters., Inc. of Ga. v. City of Sandy Springs*, 868 F.3d 1248, 1271 n.24 (11th Cir. 2017) (en banc)).

---

[1] Plaintiffs are wrong to suggest that Appellants cannot challenge §3(c) unless they first notify the United States. *See* NAACP/FR-Opp.17 (citing 28 U.S.C. §2403; Fed. R. Civ. P. 5.1). Their authorities give the United States a right to intervene; they do not prevent litigants from making arguments. *See* Fed. R. Civ. P. 5.1(d); *Wallach v. Lieberman*, 366 F.2d 254, 257-58 (2d Cir. 1966). And the United States is closely monitoring this litigation already. *See* Doc. 304, No. 4:21-cv-187 (statement of interest).

No Plaintiff argues that vacatur would be inappropriate here once SB524 goes into effect, and the arguments they do make are all irrelevant because Governor De-Santis signed the bill on Monday. *See* Doc. 680, No. 4:21-cv-186. So the only thing blocking SB524's repeal of the registration disclaimer is the district court's preclearance remedy. Once this Court stays it, SB524 will go into effect and the district court's judgment cannot survive. An injunction that must be *vacated* on appeal should, at a minimum, be *stayed* pending appeal. Or, because Plaintiffs do not dispute that SB524 moots their challenges, this Court could vacate that part of the district court's judgment now. *See N. Calif. Power Agency v. NRC*, 393 F.3d 223, 225 (D.C. Cir. 2004) (*Munsingwear* "[v]acatur should be ordered *sua sponte* when the circumstances so warrant").

If that weren't enough, the district court erred by rushing to enjoin the registration disclaimer before it could be repealed and then blocking the repeal. Mot.12-13. After the district court asked for simultaneous, supplemental briefs on the effect of SB524, *Plaintiffs agreed with Appellants* that SB524 would moot their challenge. *See* Doc. 661 at 7, No. 4:21-cv-186. Once the parties agreed that this dispute would soon be moot, basic principles of constitutional avoidance should have led the district court to stay its hand. *E.g., Richardson v. Wright*, 405 U.S. 208, 209 (1972); *Waldron v. McAtee*, 723 F.2d 1348, 1351 (7th Cir. 1983); *Spicer v. Hilton*, 618 F.2d 232, 240 (3d Cir. 1980).[2]

---

[2] One Plaintiff accuses Appellants of waiting too long to transmit SB524 to the governor for his signature. *See* HT-Opp.19. But Appellants are not the legislature or the governor and have no control over either. That the bill was signed before the parties finished briefing this motion proves that the district court could have waited.

But the district court's refusal to wait was not its main error. Its quick decision would have been inconsequential if SB524 were allowed to take effect, since this Court would have vacated the district court's decision under *Munsingwear*. The problem was that the district court also *put Florida in preclearance*, thus blocking SB524 from taking effect. In other words, the district court invalidated the registration disclaimer before it could be repealed and then insulated its decision by blocking the repeal.

Appellants had no idea this one-two punch was coming. If they had, they would have asked the district court to stay or abey its decision. *E.g.*, *Stinnie v. Holcomb*, 396 F. Supp. 3d 653, 660 (W.D. Va. 2019); *Pavek v. Simon*, 2020 WL 4013982, at *2 (D. Minn. July 16). But Appellants never got that chance because the district court considered and denied a stay *sua sponte*. Op.268-69. Now that the district court has taken this strange course of action, Appellants can challenge it on appeal. *Hi-Tech Pharms.*, 910 F.3d at 1194. And no challenge will be necessary if this Court enters a stay, allowing SB524 to repeal the registration-disclaimer provision.

### D. Solicitation provision

The solicitation provision is not *facially* vague or overbroad. Plaintiffs do not try to argue that it's vague "in all of its applications," or that it "regulate[s] a substantial amount of conduct protected by the First Amendment." *First Vagabonds Church of God v. City of Orlando*, 610 F.3d 1274, 1288 (11th Cir. 2010), *reinstated*, 638 F.3d 756, 763 (11th Cir. 2011). Nor did the district court find that the provision "'punishes a substantial

amount of protected free speech.'" *Tracy v. Fla. Atl. Univ. Bd. of Trs.*, 980 F.3d 799, 808 (11th Cir. 2020). Plaintiffs don't even bother using the word "facial" in their briefs.

As explained, the solicitation provision has a clear core (bribes, selling goods, electioneering, etc.), and most of its applications are plainly lawful. Mot.13-14. Its terms "provide[] a sufficiently clear and definite standard," and its "constitutionality does not hang on whether every" supervisor "would understand" it "in the same way in every conceivable factual circumstance." *First Vagabonds*, 610 F.3d at 1287. Because facial challenges "are disfavored," *id.* at 1288, Plaintiffs' failure to respond to these basic points warrants a stay. *See FF Cosmetics FL, Inc. v. City of Miami Beach*, 866 F.3d 1290, 1303 (11th Cir. 2017) (plaintiffs "bear the burden"); *Brakebill v. Jaeger*, 905 F.3d 553, 559 (8th Cir. 2018) (staying an injunction because facial relief was likely unwarranted).

Plaintiffs' as-applied arguments fare no better. In defending the district court's finding that their line-warming activities are speech, Plaintiffs confirm its fatal flaw. The district court's finding, they stress, was "based on" the fact that Plaintiffs' activities "are accompanied by banners and educational materials." LWV-Opp.6. But the fact that reasonable observers need actual speech to discern whether their conduct conveys a message means it is "not inherently expressive." *Rumsfeld v. FAIR*, 547 U.S. 47, 66 (2006). Nor do Plaintiffs' unilateral distributions of tangible items resemble the meal-sharing activities that this Court deemed expressive in *Food Not Bombs*. Mot.14-15.

Plaintiffs recast their challenge as "narrow" and claim that Appellants cannot identify "any conduct" prohibited by the solicitation provision that "is not otherwise

prohibited by Florida law." LWV-Opp.16. But *Plaintiffs* are the ones challenging the solicitation provision, and *Plaintiffs* are the ones who claimed it bans their activities. If the same activities are prohibited both "before and after" SB90, LWV-Opp.20, then Plaintiffs should lose not only on the merits, but also on Article III standing. Plaintiffs do not get to argue that the solicitation provision covers everything in district court, win, and then argue that it covers nothing on appeal. If SB90's amendment to the solicitation definition truly doesn't require "any" changes, NAACP/FR-Opp.22, then Plaintiffs will lose this appeal.

Lastly, Plaintiffs claim that Appellants lack standing to appeal the injunctions against the solicitation provision. Those injunctions run against 10 of Florida's 67 counties, Plaintiffs note, so those 10 supervisors are the only ones with appellate standing. LWV-Opp.17-18; NAACP/FR-Opp.12.

Though they don't discuss it, Plaintiffs' standing argument was implicitly rejected in *People First of Alabama v. Merrill*. There, the district court enjoined "only three counties" from enforcing a certain election law. 815 F. App'x 505, 511 (11th Cir. 2020) (Rosenbaum & Jill Pryor, JJ., concurring). Because only the State appealed, there was "uncertain[ty]" about whether "the proper parties have appealed." *Id.* at 516 (Grant, J., concurring). After this Court denied a stay, Alabama asked the Supreme Court to grant one, and the plaintiffs again challenged Alabama's standing. *See* Stay Response 13-17, bit.ly/37HgmdZ. Alabama defended its appellate standing, explaining that "'a State'— whether directly enjoined or not—'clearly has a legitimate interest in the continued

enforceability of its own statutes.'" Stay App. 5, bit.ly/38uqkPS (quoting *Maine v. Taylor*, 477 U.S. 131, 137 (1986)). The Supreme Court ruled for Alabama. 141 S. Ct. 190.

So too here. A State is injured when a federal court blocks "statutes enacted by representatives of its people," *Hand v. Scott*, 888 F.3d 1206, 1214 (11th Cir. 2018), so the State always "has standing to defend the constitutionality of its statutes." *Diamond v. Charles*, 476 U.S. 54, 62 (1986). And here, Secretary Lee represents the State. She is the State's "chief election officer." Fla. Stat. §97.012(1). The State charges her with "maintaining uniformity" in state elections, §97.012(1); §106.23(2)—something the district court's ten-counties-only injunction violates, *see Bush v. Gore*, 531 U.S. 98, 104-06 (2000). Indeed, this Court has recognized that Secretary Lee is an appropriate *Ex parte Young* defendant—meaning she stands in for the State—even when the challenged election law is administered by county supervisors. *See Jacobson*, 974 F.3d at 1256. This case is nothing like *Bethune-Hill*, where only the *legislative* branch tried to appeal. Florida's executive branch is appealing here, and Florida has no statute that gives the attorney general "exclusiv[e]" authority to represent the State in "[a]ll … civil matters." *Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1951 (2019).

While only one appellant needs standing and the Secretary's is sufficient, *Brnovich*, 141 S. Ct. at 2336, the Republican Intervenors also have appellate standing. Plaintiffs had standing to bring this case, according to the district court, because they must "'divert personnel and time to educating potential voters on compliance with the laws.'" *DEC of Fla. v. NRSC*, 950 F.3d 790, 794 (11th Cir. 2020). But that "same" injury occurs

to political parties when district courts enter "orders" that "modify election laws." *Id.* If the district court's order stands, the Republican Intervenors must adjust their campaign strategy and "diver[t] personnel and time to educating voters about … the district court's order." *Id.* Those injuries confer appellate standing. *Id.*

## II.   The equities alone warrant a stay.

Plaintiffs' arguments on the remaining stay factors all assume, incorrectly, that they will likely win this appeal. They claim that Florida is not harmed if it cannot enforce "unconstitutional" laws, NAACP/FR-Opp.19-20, and they claim that they will be harmed if their constitutional "rights" are violated pending appeal, LWV-Opp.20. But these arguments fail because the challenged laws are likely *constitutional. New Ga. Project*, 976 F.3d at 1283.

Plaintiffs' arguments fail on their own terms too. No one's "right to vote" is at stake here. NAACP/FR-Opp.20. The district court did not accept Plaintiffs' *Anderson-Burdick* claims, Op.244-55, and Plaintiffs do not dispute that Florida provides many ways to vote, Mot.2. Requiring 3PVROs to return applications on time *facilitates* voting, and voters remain free to register themselves. And "no one is 'disenfranchised'" if they cannot use a dropbox in the middle of the night—especially since voters can still put their ballot in the mailbox or vote in person. *New Ga. Project*, 976 F.3d at 1282. Similarly, no actual human being is unable to vote by mail, unable to vote by dropbox, unable to vote early when lines are short, *and* unable to vote on election day unless a *third party*

gives them food or water. Given Floridians' "numerous" options for voting, SB90 "does not implicate the right to vote at all." *Id.* at 1281.

Plaintiffs' arguments regarding the registration disclaimer, moreover, are backwards. Now that Governor DeSantis has signed SB524, a stay could not possibly injure Plaintiffs. Granting a stay will ensure that plaintiffs do not "remain subject" to this provision. HT-Opp.20.

The fact that a stay will effectively repeal this part of SB90 does not diminish Appellants' need for it. *Contra* LWV-Opp.19-20. The district court's preclearance remedy blocks Florida from enacting *other* provisions of SB524—as well as any *future* bills—that regulate 3PVROs, dropboxes, and line warming. And given that most Floridians have never lived under preclearance, the district court's order exacerbates voter confusion. *Contra* HT-Opp.21-22. Florida now has election laws that aren't really laws, and it must preclear them through time-consuming litigation where the district court could deny preclearance (and potentially get reversed on appeal). Plaintiffs' suggestion that preclearance "does not implicate *Purcell* at all" is unserious. NAACP/FR-Op.22. If injunctions of state elections laws implicate *Purcell*, then preclearance—which preemptively enjoins *all* elections laws that Florida *could* pass—implicates *Purcell* far more.

Plaintiffs repeat some of the district court's reasons for not applying *Purcell*, but they do not remedy their glaring defects. The district court's injunction does not "preserv[e]" the status quo. NAACP/FR-Opp.20. The electoral status quo is set by the state legislature. *Merrill v. Milligan*, 142 S. Ct. 879, 881 (2022) (Kavanaugh, J., concurral).

Plaintiffs do not dispute that SB90 has been law for a year, or that SB90 has been applied in numerous Florida elections. Mot.17-18. And the district court's order came too late to avoid a stay. Plaintiffs do not dispute that it came down in the middle of two elections; in the middle of voter registration, poll-worker training, and site selection; and only three months (now two months) away from the start of voting in the statewide primaries. Mot.17. While Plaintiffs' vision of *Purcell* has been endorsed in dissents, *e.g., Milligan*, 142 S. Ct. at 888 (Kagan, J., dissenting), this Court must follow the majorities.

Plaintiffs also insist that Appellants somehow "waived" *Purcell* by not raising it in its post-trial brief. LWV-Opp.21; NAACP/FR-Opp.21. Aside from saying "waiver" when they mean "forfeiture," *Hi-Tech Pharms.*, 910 F.3d at 1193, Plaintiffs' argument has three main flaws:

**1.** This Court is deciding whether to exercise *its* equitable discretion to issue a stay. It does not matter whether an argument was made below because this Court is not reviewing the district court's denial of a stay. Mot.17 (citing *Trump v. IRAP*, 137 S. Ct. 2080, 2087 (2017)).

**2.** Even if this Court were reviewing the district court, *Purcell* is not a defense on the merits here, but a reason to "stay" the district court's permanent injunction. *E.g., Ariz. Democratic Party*, 976 F.3d at 1086. So it does not matter whether *Purcell* was addressed in the parties' liability-focused post-trial briefs. Appellants would have raised *Purcell* in their stay motion, but they never got the chance because the district court considered and denied a stay sua sponte. And its decision addressed *Purcell* head on,

rather than suggesting that Appellants somehow waived it. Op.261-68. Again, issues that the lower court addressed cannot be forfeited. *Hi-Tech Pharms.*, 910 F.3d at 1194.

**3.** *Purcell* cannot be forfeited anyway. By combatting "voter confusion and [the] consequent incentive to remain away from the polls," *Purcell* protects the interests and rights of individuals not before the Court. *Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006). It is the type of important doctrine that courts exercising their equitable discretion should raise "sua sponte." *Schlesinger v. Councilman*, 420 U.S. 738, 743 (1975); *accord Sindi v. El-Moslimany*, 896 F.3d 1, 29 (1st Cir. 2018).[3]

Finally, Plaintiffs claim that Appellants failed to prove a *Purcell* violation with "record evidence." NAACP/FR-Opp.22; LWV-Opp.21-22; HT-Opp.23. But again, Plaintiffs wrongly assume that *Purcell* goes to the merits (instead of a stay) and that this Court is reviewing the district court's denial of a stay (instead of making its own equitable judgment). Courts do not demand "record evidence" in fast-moving stay motions like this one. Nor is evidence needed to confirm the obvious point that late-breaking injunctions burden election administrators and confuse voters. Evidence trying to disprove these harms is never persuasive because "[e]ven seemingly innocuous late-in-the-day judicial alterations" can "cause unanticipated consequences." *Wis. State Legislature*, 141 S. Ct. at 31 (Kavanaugh, J., concurral). Plaintiffs' supposed contrary evidence—two

---

[3] Some Plaintiffs fault Appellants for seeking a stay, instead of asking this Court to "expedite the briefing schedule … on the merits." LWV-Opp.19. But Appellants sought a stay—as States typically do when their election laws are enjoined—to avoid irreparable harm *while this appeal is pending*.

supervisors who oppose parts of SB90 and have distinct procedures—is a case in point. Mot.19. They cannot speak for all supervisors. *See, e.g.*, Tr.3168:9 (Miami-Dade supervisory testifying that enjoining enforcement of the registration-delivery provision would be "burdensome"); Tr.3166:11-3168:15 (similar); Tr.3119:8-3120:18 (supervisors support the registration-delivery provision and made it a priority during the legislative session). And no supervisor testified that election administration or voter confidence would be improved by placing the entire State, for the first time ever, in federal preclearance.

Record evidence is especially unnecessary here because Appellants are likely to succeed on appeal. A stay thus avoids the "clearly … irreparable" harm of preventing Florida from "enforcing its duly enacted" election laws. *Abbott*, 138 S. Ct. at 2324 n.17. And it does not meaningfully hurt Plaintiffs, as it merely "ensur[es] that [the State's] duly enacted election laws remain in place before a merits panel of this Court can rule." *New Ga. Project*, 976 F.3d at 1289 (Lagoa, J., concurring). The Court should order that preservation of the status quo here.

## CONCLUSION

This Court should grant a stay pending appeal as soon as reasonably possible.

Respectfully submitted,

/s/ *Mohammad O. Jazil*
Mohammad O. Jazil
Gary V. Perko
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
119 South Monroe Street, Suite 500
Tallahassee, FL 32301
(850) 274-1690 / (540) 341-8809 (fax)
mjazil@holtzmanvogel.com
gperko@holtzmanvogel.com

Phillip M. Gordon
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
15405 John Marshall Hwy
Haymarket, VA 20169
(540) 341-8808 / (540) 341-8809 (fax)
pgordon@holtzmanvogel.com

Bradley R. McVay
  *General Counsel*
Ashley E. Davis
  *Deputy General Counsel*
Colleen E. O'Brien
  *Assistant General Counsel*
William Chappel
  *Assistant General Counsel*
FLORIDA DEPARTMENT OF STATE
R.A. Gray Building Suite 100
500 South Bronough Street
Tallahassee, Florida 32399-0250
(850) 245-6536 / (850) 245-6127 (fax)
brad.mcvay@dos.myflorida.com
ashley.davis@dos.myflorida.com
colleen.obrien@dos.myflorida.com
David.chappell@dos.myflorida.com

*Counsel for Secretary Lee*

/s/ *Tyler R. Green*
Tyler R. Green
Cameron T. Norris
Daniel Shapiro
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
(703) 243-9423
tyler@consovoymccarthy.com
cam@consovoymccarthy.com
daniel@consovoymccarthy.com

Benjamin J. Gibson
Daniel E. Nordby
George N. Meros Jr.
Frank A. Zacherl
Amber Stoner Nunnally
Tara R. Price
SHUTTS & BOWEN LLP
215 South Monroe Street, Suite 804
Tallahassee, Florida 32301
(850) 241-1717
bgibson@shutts.com
dnordby@shutts.com
gmeros@shutts.com
fzacherl@shutts.com
anunnally@shutts.com
tprice@shutts.com

*Counsel for Republican National Committee*
*& National Republican Senatorial Committee*

/s/ Andy Bardos
Andy Bardos
GRAYROBINSON, P.A.
301 South Bronough Street, Suite 600
Tallahassee, FL 32301
(850) 577-9090
(850) 577-3311 (fax)
andy.bardos@gray-robinson.com

*Counsel for Supervisors Hays and Doyle*

/s/ Henry C. Whitaker
Henry C. Whitaker
 *Solicitor General*
Daniel W. Bell
 *Chief Deputy Solicitor General*
Bilal Ahmed Faruqui
 *Senior Assistant Attorney General*
Karen Ann Brodeen
 *Special Counsel*
William Edward Chorba
 *Senior Assistant Attorney General*
William Henry Stafford, III
 *Senior Assistant Attorney General*
FLORIDA ATTORNEY GENERAL OFFICE
PL-01 The Capitol
Tallahassee, FL 32399
(850) 414-3300
henry.whitaker@myfloridalegal.com
daniel.bell@myfloridalegal.com
bilal.faruqui@myfloridalegal.com
karen.brodeen@myfloridalegal.com
william.chorba@myfloridalegal.com
william.stafford@myfloridalegal.com

*Counsel for Attorney General Moody*

**CERTIFICATE OF COMPLIANCE**

This reply complies with the Court's April 26 order because it contains 5,129 words, excluding the parts that can be excluded. This reply also complies with Rule 32(a)(5)-(6) because it's prepared in a proportionally spaced face using Microsoft Word 2016 in 14-point Garamond font.

Dated: April 28, 2022                                  */s/ Mohammad O. Jazil*

**CERTIFICATE OF SERVICE**

I e-filed this reply on ECF, which will email everyone requiring notice.

Dated: April 28, 2022                                  */s/ Mohammad O. Jazil*