Nos. 22-11133-GG, 22-11143-GG, 22-11144-GG, 22-11145-GG (consolidated)

## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

LEAGUE OF WOMEN VOTERS OF FLORIDA, INC., et al.,
*Plaintiffs-Appellees*,

v.

FLORIDA SECRETARY OF STATE, et al.,
*Defendants-Appellants.*

Appeals from the U.S. District Court for the Northern District of Florida,
Nos. 4:21-cv-242, 4:21-cv-186, 4:21-cv-187, 4:21-cv-201 (Walker, C.J.)

## BRIEF OF APPELLANTS REPUBLICAN NATIONAL COMMITTEE
## AND NATIONAL REPUBLICAN SENATORIAL COMMITTEE

Benjamin J. Gibson
Daniel E. Nordby
George N. Meros Jr.
Frank A. Zacherl
Amber Stoner Nunnally
Tara R. Price
SHUTTS & BOWEN LLP
215 South Monroe Street, Suite 804
Tallahassee, Florida 32301
(850) 241-1717

Cameron T. Norris
Jeffrey S. Hetzel
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, Virginia 22209
(703) 243-9423
cam@consovoymccarthy.com

Tyler R. Green
CONSOVOY MCCARTHY PLLC
222 South Main Street, 5th Floor
Salt Lake City, Utah 84101

*Counsel for RNC & NRSC*

No. 22-11143, *League of Women Voters of Fla., Inc. v. Fla. Sec'y of State*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Per Rule 26.1 and Circuit Rule 26.1, appellants certify that the following have an interest in the outcome of this appeal:

1. Adkins, Janet, *Defendant*
2. Abudu, Nancy, *Attorney for Plaintiffs-Appellees*
3. Advancement Project National Office, *Attorneys for Plaintiffs-Appellees*
4. Aguilera, Cecilia, *Attorney for Plaintiffs-Appellees*
5. Alachua County Attorney's Office, *Attorneys for Defendant*
6. Andersen, Mark, *Defendant*
7. Anderson, Christopher, *Defendant*
8. Anderson, Shirley, *Defendant*
9. Anstaett, David, *Attorney for Plaintiffs-Appellees*
10. Arnold & Porter, LLP, *Attorneys for Plaintiffs-Appellees*
11. Arnold, Melissa, *Defendant*
12. Arrington, Mary, *Defendant*
13. Baird, Maureen, *Defendant*
14. Baker McKenzie, LLP, *Attorney for Plaintiffs-Appellees*
15. Bardos, Andy, *Attorney for Defendants*
16. Barton, Kim, *Defendant*
17. Beasley, Bobby, *Defendant*
18. Beato, Michael, *Attorney for Defendant-Appellant*
19. Begakis, Steven, *Attorney for Intervenor-Defendants-Appellants*
20. Bell, Daniel, *Chief Deputy Solicitor General of Florida*
21. Benda, Kyle, *Attorney for Defendant*
22. Bennett, Michael, *Defendant*
23. Bennette, Matletha, *Attorney for Plaintiffs-Appellees*
24. Bentley and Bruning PA, *Attorney for Defendant*
25. Bentley, Morgan, *Attorney for Defendant*

26. Bernstein, Daniel, *Attorney for Plaintiffs-Appellees*

27. Bishop, Marty, *Defendant*

28. Black Voters Matter Fund LLC, *Plaintiff-Appellee*

29. Bledsoe, William, *Attorney for Defendant*

30. Branch, Aria, *Attorney for Plaintiffs-Appellees*

31. Brewton Plante PA, *Attorneys for Defendants*

32. Brigham, Robert, *Plaintiff-Appellee*

33. Brodeen, Karen, *Attorney for Defendants-Appellants*

34. Broward County Attorney's Office, *Attorney for Defendant*

35. Brown, Summer, *Attorney for Defendant*

36. Brown, Tomi, *Defendant*

37. Budhu, Ryan, *Attorney for Plaintiffs-Appellees*

38. Byrd, Cord, *Defendant-Appellant*

39. Cannon, Starlet, *Defendant*

40. Case, Andrew, *Attorney for Plaintiffs-Appellees*

41. Cavataro, Benjamin, *Attorney for Plaintiffs-Appellees*

42. Chambless, Chris, *Defendant*

43. Chappell, William, *Attorney for Defendant-Appellant*

44. Chason, Sharon, *Defendant*

45. Choi, Ellen, *Attorney for Plaintiffs-Appellees*

46. Chorba, William, *Attorney for Defendant-Appellant*

47. City of Jacksonville, Office of General Counsel, *Attorneys for Defendant*

48. Clark Partington, *Attorneys for Defendant*

49. Common Cause, *Plaintiff-Appellee*

50. Consovoy McCarthy PLLC, *Attorneys for Intervenor-Defendants-Appellants*

51. Conyers, Grant, *Defendant*

52. Corley, Brian, *Defendant*

53. County of Volusia, *Attorneys for Defendant*

54. Covington & Burling LLP, *Attorneys for Plaintiffs-Appellees*

55. Cowles, Bill, *Defendant*

56.    Cycon, John, *Attorney for Defendant-Appellant*

57.    Daines, Kenneth, *Attorney for Defendant-Appellant*

58.    Dandeneau, Debra, *Attorney for Plaintiffs-Appellees*

59.    Darrow Everett LLP, *Attorneys for Plaintiffs-Appellees*

60.    Davis, Ashley, *Attorney for Defendant-Appellant*

61.    Davis, Vicki, *Defendant*

62.    De Paul, Romane, *Attorney for Plaintiffs-Appellees*

63.    Demos, *Attorneys for Plaintiffs-Appellees*

64.    Devaney, William, *Attorney for Plaintiffs-Appellees*

65.    Disability Rights Florida, *Plaintiff-Appellee*

66.    Doyle, Tommy, *Defendant-Appellant*

67.    Driggers, Heath, *Defendant*

68.    Duke, P. Benjamin, *Attorney for Plaintiffs-Appellees*

69.    Dukkipati, Uttara, *Attorney for Plaintiffs-Appellees*

70.    Dunaway, Carol, *Defendant*

71.    Earley, Mark, *Defendant*

72.    Edwards, Brendalyn, *Attorney for Defendant*

73.    Edwards, Jennifer, *Defendant*

74.    Edwards, Lori, *Defendant*

75.    Elias Law Group, *Attorneys for Plaintiffs-Appellees*

76.    Elias, Marc, *Attorney for Plaintiffs-Appellees*

77.    Ellis, Elizabeth, *Attorney for Defendant*

78.    Equal Ground Education Fund, *Plaintiff-Appellee*

79.    Erdelyi, Susan, *Attorney for Defendants*

80.    Escambia County Attorney's Office, *Attorneys for Defendant*

81.    Ester, Jason Charles, *Attorney for Defendant*

82.    Fair Elections Center, *Attorneys for Plaintiffs-Appellees*

83.    Fajana, Francisca, *Attorney for Plaintiffs-Appellees*

84.    Fajana, Morenike, *Attorney for Plaintiffs-Appellees*

85.    Farnam, Alteris, *Defendant*

86.    Faruqui, Bilal, *Attorney for Defendants-Appellants*

87.    Feiser, Craig, *Attorney for Defendant*

88.    Ferenc, Samuel, *Attorney for Plaintiffs-Appellees*

89.    Fletcher, Michael, *Attorney for Plaintiffs-Appellees*

90.    Florida Alliance for Retired Americans Inc., *Plaintiff-Appellee*

91.    Florida Department of State, *Attorneys for Defendant-Appellant*

92.    Florida Office of the Attorney General, *Attorneys for Defendants-Appellants*

93.    Florida Rising Together, *Plaintiff-Appellee*

94.    Florida State Conference of the NAACP, *Plaintiff-Appellee*

95.    Ford, Christina, *Attorney for Plaintiffs-Appellees*

96.    Fouhey, Elizabeth, *Attorney for Plaintiffs-Appellees*

97.    Fox, David, *Attorney for Plaintiffs-Appellees*

98.    Fram, Robert, *Attorney for Plaintiffs-Appellees*

99.    Freedman, John, *Attorney for Plaintiffs-Appellees*

100.   Frost, Elisabeth, *Attorney for Plaintiffs-Appellees*

101.   Galbraith, Miles, *Attorney for Plaintiffs-Appellees*

102.   Galindo, Emily, *Attorney for Plaintiffs-Appellees*

103.   Gardner Bist Bowden et al, *Attorneys for Defendants*

104.   Genberg, Jack, *Attorney for Plaintiffs-Appellees*

105.   Giannini, Mary, *Attorney for Defendant*

106.   Gibson, Benjamin, *Attorney for Intervenor-Defendants-Appellants*

107.   Gibson, Francesca, *Attorney for Plaintiffs-Appellees*

108.   Gordon, Phillip, *Attorney for Defendant-Appellant*

109.   Gray Robinson PA, *Attorneys for Defendant*

110.   Green, Tyler, *Attorney for Intervenor-Defendants-Appellants*

111.   Griffin, Joyce, *Defendant*

112.   Grimm, Dillon, *Attorney for Plaintiffs-Appellees*

113.   Hanlon, John, *Defendant*

114.   Harriett Tubman Freedom Fighters Corp., *Plaintiff-Appellee*

115.   Hart, Travis, *Defendant*

No. 22-11143, *League of Women Voters of Fla., Inc. v. Fla. Sec'y of State*

116.    Hays, Alan, *Defendant-Appellant*

117.    Healy, Karen, *Highlands County Supervisor of Elections*

118.    Heard, Bradley, *Attorney for Plaintiffs-Appellees*

119.    Henderson Franklin Starnes etc., *Attorneys for Defendants*

120.    Hernando County Attorney's Office, *Attorneys for Defendant*

121.    Herron, Mark, *Attorney for Defendant*

122.    Hillsborough County Office of the County Attorney, *Attorneys for Defendant*

123.    Hirschel, Andrew, *Attorney for Plaintiffs-Appellees*

124.    Hispanic Federation, *Plaintiff-Appellee*

125.    Hogan, Mike, *Defendant*

126.    Holt, Dallin, *Attorney for Defendant-Appellant*

127.    Holtzman Vogel Baran, et al., *Attorneys for Defendants-Appellants*

128.    Hoots, Brenda, *Defendant*

129.    Houlihan, Ashley, *Attorney for Defendant*

130.    Hutto, Laura, *Defendant*

131.    Janousek, John, *Attorney for Defendants*

132.    Jarone, Joseph, *Attorney for Defendant*

133.    Jazil, Mohammad, *Attorney for Defendant-Appellant*

134.    Johnson, Diana, *Attorney for Defendant*

135.    Johnson, Kia, *Attorney for Defendant*

136.    Jones, Tammy, *Defendant*

137.    Jouben, Jon, *Attorney for Defendant*

138.    Joyner, Nia, *Attorney for Plaintiffs-Appellees*

139.    Kanter Cohen, Michelle, *Attorney for Plaintiffs-Appellees*

140.    Karpatkin, Jeremy, *Attorney for Plaintiffs-Appellees*

141.    Keen, William, *Defendant*

142.    Khan, Sabrina, *Attorney for Plaintiffs-Appellees*

143.    Khazem, Jad, *Attorney for Plaintiffs-Appellees*

144.    King Blackwell Zehnder, etc PA, *Attorneys for Plaintiffs-Appellees*

145.    King, Nellie, *Attorney for Plaintiffs-Appellees*

146.  Kinsey, Jennifer, *Defendant*

147.  Kirk, Stephen, *Plaintiff-Appellee*

148.  Klitsberg, Nathaniel, *Attorney for Defendant*

149.  Knight, Shirley, *Defendant*

150.  Labasky, Ronald, *Attorney for Defendants*

151.  Latimer, Craig, *Defendant*

152.  Latino Justice PRLDEF, *Attorneys for Plaintiffs-Appellees*

153.  Lavia, John, *Attorney for Defendants*

154.  Law Offices of Nellie King PA, *Attorneys for Plaintiffs-Appellees*

155.  League of Women Voters of Florida Education Fund Inc., *Plaintiff-Appellee*

156.  League of Women Voters of Florida, *Plaintiff-Appellee*

157.  Lenhart, Kaiti, *Defendant*

158.  Lewis, Lisa, *Defendant*

159.  Link, Wendy, *Defendant*

160.  Lux, Paul, *Defendant*

161.  Madduri, Lalitha, *Attorney for Plaintiffs-Appellees*

162.  Madison, Alan, *Plaintiff-Appellee*

163.  Marcus, Julie, *Defendant*

164.  Mari, Frank, *Attorney for Defendants*

165.  Marks Gray PA, *Attorneys for Defendant*

166.  McNeil, Justin, *Jefferson County Supervisor of Elections*

167.  McVay, Bradley, *Attorney for Defendant-Appellant*

168.  Meadows, Therisa, *Defendant*

169.  Meros, George, *Attorney for Intervenor-Defendants-Appellants*

170.  Messer Caparello & Self PA, *Attorneys for Defendant*

171.  Miami-Dade County Attorney's Office, *Attorneys for Defendant*

172.  Miller, Jeffrey, *Attorney for Plaintiff-Appellees*

173.  Milton, Chris, *Defendant*

174.  Mood, Kirsten, *Attorney for Defendant*

175.  Moody, Ashley, *Defendant-Appellant*

176.   Moore, James, *Attorney for Defendants*

177.   Morgan, Joseph, *Defendant*

178.   Morris, John, *Attorney for Plaintiffs-Appellees*

179.   NAACP Legal Defense & Education Fund, Inc., *Attorneys for Plaintiffs-Appellees*

180.   Nabors Giblin, & Nickerson PA, *Attorneys for Defendant*

181.   Nasseri, Cyrus, *Attorney for Plaintiffs-Appellees*

182.   National Center for Law and Economic Justice, *Attorneys for Plaintiffs-Appellees*

183.   National Republican Senatorial Committee, *Intervenor-Defendant-Appellant*

184.   Negley, Mark, *Defendant*

185.   Nordby, Daniel, *Attorney for Intervenor-Defendants-Appellants*

186.   Norris, Cameron, *Attorney for Intervenor-Defendants-Appellants*

187.   Nunnally, Amber, *Attorney for Intervenor-Defendants-Appellants*

188.   Oakes, Vicky, *Defendant*

189.   O'Bryant, Patrick, *Attorney for Defendant*

190.   O'Callaghan, Brendan, *Attorney for Plaintiffs-Appellees*

191.   Ogg, Penny, *Defendant*

192.   Olivo, Geraldo, *Attorney for Defendants*

193.   Osborne, Deborah, *Defendant*

194.   Ott, London, *Attorney for Defendant*

195.   Overturf, Charles, *Defendant*

196.   Palm Beach County Supervisor of Elections, *Attorneys for Defendant*

197.   Paralyzed Veterans of America Central Florida Chapter, *Plaintiff-Appellee*

198.   Paralyzed Veterans of America Florida Chapter, *Plaintiff-Appellee*

199.   Perkins Coie LLP, *Attorneys for Plaintiffs-Appellees*

200.   Perko, Gary, *Attorney for Defendant-Appellant*

201.   Pinellas County Attorney's Office, *Attorneys for Defendant*

202.   Poder Latinx, *Plaintiff-Appellee*

203.   Poliak, Shira, *Attorney for Plaintiffs-Appellees*

204.   Price, Tara, *Attorney for Intervenor-Defendant-Appellants*

205.   Republican National Committee, *Intervenor-Defendant-Appellant*

206. Riley, Heathers, *Defendant*

207. Rogers, Susan, *Plaintiff-Appellee*

208. Romero-Craft, Kira, *Attorney for Plaintiffs-Appellees*

209. Roper PA, *Attorneys for Defendants*

210. Rosenthal, Oren, *Attorney for Defendant*

211. Rudd, Carol, *Defendant*

212. Salzillo, Benjamin, *Attorney for Defendant*

213. Sanchez, Connie, *Defendant*

214. Scoon, Cecile, *Plaintiff-Appellee*

215. Scott, Dale, *Attorney for Defendant*

216. Scott, Joe, *Defendant,*

217. Scott, Lori, *Defendant*

218. Scott, Sharion, *Attorney for Plaintiffs-Appellees*

219. Segarra, Esperanza, *Attorney for Plaintiffs-Appellees*

220. Seyfang, Amanda, *Defendant*

221. Shannin Law Firm PA, *Attorneys for Defendants*

222. Shannin, Nicholas, *Attorney for Defendant*

223. Shapiro, Peter, *Attorney for Plaintiffs-Appellees*

224. Shaud, Matthew, *Attorney for Defendant*

225. Shearman, Robert, *Attorney for Defendants*

226. Sherman, Jonathan, *Attorney for Plaintiffs-Appellees*

227. Shutts & Bowen LLP, *Attorneys for Intervenor-Defendants-Appellants*

228. Siegel, Rachel, *Attorney for Defendant-Appellant*

229. Sivalingam, Danielle, *Attorney for Plaintiffs-Appellees*

230. Smith, Diane, *Defendant*

231. Southerland, Dana, *Defendant*

232. Southern Poverty Law Center, *Attorneys for Plaintiffs-Appellees*

233. Stafford, David, *Defendant*

234. Stafford, William, *Attorney for Defendants-Appellants*

235. Stamoulis, Paula, *Defendant*

236. Stewart, Gregory, *Attorney for Defendant*

237. Stiefel, Aaron, *Attorney for Plaintiffs-Appellees*

238. Swain, Robert, *Attorney for Defendant*

239. Swan, Leslie, *Defendant*

240. Tarpley, Carlton, *Attorney for Plaintiffs-Appellees*

241. Theodore, Elisabeth, *Attorney for Plaintiffs-Appellees*

242. Todd, Stephen, *Attorney for Defendant*

243. Trigg, Amia, *Attorney for Plaintiffs-Appellees*

244. Tuetken, Adam, *Attorney for Amicus*

245. Turner, Ron, *Defendant*

246. UnidosUS, *Plaintiff-Appellee*

247. Valdes, Michael, *Attorney for Defendant*

248. Vicari, Kelly, *Attorney for Defendant*

249. Vigil, Angela, *Attorney for Plaintiffs-Appellees*

250. Villane, Tappie, *Defendant*

251. Volusia County Attorney, *Attorneys for Defendant*

252. Walker, Gertrude, *Defendant*

253. Walker, Mark, *District Court Judge*

254. Washington, D.C., Office of the Attorney General, *Attorneys for Amicus*

255. Wermuth, Frederick, *Attorney for Plaintiffs-Appellees*

256. Whitaker, Henry C., *Solicitor General of Florida*

257. White, Christina, *Defendant*

258. Wilcox, Wesley, *Defendant*

259. Wright, Brenda, *Attorney for Plaintiffs-Appellees*

260. Zacherl, Frank, *Attorney for Intervenor-Defendants-Appellants*

261. Zender, Thomas, *Attorney for Plaintiffs-Appellees*

The Republican National Committee and National Republican Senatorial Committee have no parent corporation, and no corporation owns 10% or more of their stock. No publicly traded company or corporation has an interest in the outcome of this case or appeal. Per Circuit Rule 26.1-2(c), appellants certify that the CIP contained in this motion is complete.

Dated: July 11, 2022                    _/s/ Cameron T. Norris_____
                                        Counsel for RNC and NRSC

## STATEMENT REGARDING ORAL ARGUMENT

These consolidated cases are scheduled for oral argument on September 15 in Miami. The RNC and NRSC agree with the Court that this appeal warrants argument. The district court enjoined Florida's duly enacted election laws, imposed the draconian remedy of preclearance, and transgressed important precedents of this Court and the Supreme Court. Those errors led the motions panel to stay the district court's decision, and those errors should lead the merits panel to hear argument and then reverse.

# TABLE OF CONTENTS

Certificate of Interested Persons and Corporate Disclosure Statement ..........................1

Statement Regarding Oral Argument ..................................................................................i

Table of Citations ...........................................................................................................iii

Introduction .....................................................................................................................1

Jurisdictional Statement ..................................................................................................1

Statement of Issues .........................................................................................................1

Statement of the Case .....................................................................................................2

    I.     The registration disclaimer ..................................................................3

    II.    The solicitation definition ...................................................................5

Standard of Review ........................................................................................................10

Summary of Argument ..................................................................................................11

Argument ........................................................................................................................12

    I.     The district court's decision enjoining the registration disclaimer should be vacated under *Munsingwear*..................................................13

        A.    Now that the legislature has repealed it, the parties' dispute over the registration disclaimer is moot. ...............................13

        B.    The equities, as they normally do, favor vacatur..................14

    II.    The district court's decision enjoining the solicitation definition should be reversed. ..................................................................17

        A.    The solicitation definition is not overbroad. ........................17

        B.    The solicitation definition is not facially vague. ...................34

Conclusion......................................................................................................................42

Certificate of Compliance .............................................................................................43

Certificate of Service .....................................................................................................43

# TABLE OF CITATIONS

*primary authority

**Cases**

*Anderson v. Celebrezze,*
  460 U.S. 780 (1983) ................................................................... 27, 30

*Azar v. Garza,*
  138 S. Ct. 1790 (2018) ...................................................................10

*Bar-Navon v. Brevard Cnty. Sch. Bd.,*
  290 F. App'x 273 (11th Cir. 2008)..............................................24

*Barnes v. Glen Theatre, Inc.,*
  501 U.S. 560 (1991) ......................................................................24

*Bowen v. Kizer,*
  485 U.S. 386 (1988 ........................................................................14

*Brnovich v. DNC,*
  141 S. Ct. 2321 (2021) ............................................................. 6, 32

*Broadrick v. Oklahoma,*
  413 U.S. 601 (1973) ......................................................................20

*Burdick v. Takushi,*
  504 U.S. 428 (1992) ................................................................ 27, 30

*Burns v. Town of Palm Beach,*
  999 F.3d 1317 (11th Cir. 2021) ...................................................24

*Burson v. Freeman,*
  504 U.S. 191 (1992) ...............................................6, 9, 20, 30, 32, 33

*Cameron v. Johnson,*
  390 U.S. 611 (1968) ......................................................................35

*Camreta v. Greene,*
  563 U.S. 692 (2011) ......................................................................13

*Cheshire Bridge Holdings, LLC v. City of Atlanta, Ga.,*
  15 F.4th 1362 (11th Cir. 2021) .................................... 18, 19, 21, 22

*Church of Scientology Flag Serv. Org., Inc. v. City of Clearwater,*
  777 F.2d 598 (11th Cir. 1985) .....................................................15

*Citizens for Police Account. Pol. Comm. v. Browning,*
  572 F.3d 1213 (11th Cir. 2009) ..........................6, 7, 9, 20, 21, 32, 33, 37, 38

*Clark v. Cmty. for Creative Non-Violence,*
    468 U.S. 288 (1984) ................................................................. 27, 28, 29, 31

*Diffenderfer v. Cent. Baptist Church of Miami, Inc.,*
    404 U.S. 412 (1972) ................................................................. 13, 15

*Ellis v. Meeks,*
    957 S.W.2d 213 (Ky. 1997) .....................................................23

*FEC v. Wis. Right to Life, Inc.,*
    551 U.S. 449 (2007) ................................................................19

*Feldman v. Ariz. Sec'y of State's Off.,*
    840 F.3d 1057 (9th Cir. 2016) ...............................................25, 26

*First Vagabonds Church of God v. City of Orlando,*
    638 F.3d 756 (11th Cir. 2011) (en banc)..............................28, 29, 31

*Flanigan's Enters., Inc. of Ga. v. City of Sandy Springs,*
    868 F.3d 1248 (11th Cir. 2017) (en banc) ...........................2, 14, 17

*Fleming v. Munsingwear, Inc.,*
    162 F.2d 125 (8th Cir. 1947) ..................................................15

*Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale (Food Not Bombs I),*
    901 F.3d 1235 (11th Cir. 2018) .............................................24, 26

*Ft. Lauderdale Food Not Bombs v. City of Ft. Lauderdale (Food Not Bombs II),*
    11 F.4th 1266 (11th Cir. 2021) .............................................22, 23

*Gelber v. Akal Sec., Inc.,*
    14 F.4th 1279 (11th Cir. 2021) ...............................................10

*Grayned v. City of Rockford,*
    408 U.S. 104 (1972) ................................................. 35, 36, 38, 39

*Harris County Comm'rs Court v. Moore,*
    420 U.S. 77 (1975) ..................................................................35

*Hartford Cas. Ins. Co. v. Crum & Forster Specialty Ins. Co.,*
    828 F.3d 1331 (11th Cir. 2016) ...............................................16

*High Ol' Times, Inc. v. Busbee,*
    673 F.2d 1225 (11th Cir. 1982) ...............................................34

*Holder v. Humanitarian Law Proj.,*
    561 U.S. 1 (2010).....................................................................39

*Humane Soc. of U.S. v. Kempthorne,*
    527 F.3d 181 (D.C. Cir. 2008 ..................................................15

*Indigo Room, Inc. v. City of Fort Myers*,
  710 F.3d 1294 (11th Cir. 2013) .......................................................34

*Jacobson v. Fla. Sec'y of State*,
  974 F.3d 1236 (11th Cir. 2020) .......................................................30

*Khodara Env't, Inc. ex rel. Eagle Env't L.P. v. Beckman*,
  237 F.3d 186 (3d Cir. 2001) .............................................................16

*Knox v. Brnovich*,
  907 F.3d 1167 (9th Cir. 2018) .................................................. 25, 26

*League of Women Voters of Fla., Inc. v. Fla. Sec'y of State (LWVF)*,
  32 F.4th 1363 (11th Cir. 2022)..................1, 2, 5, 10, 13, 14, 19, 22, 37

*Lichtenstein v. Hargett*,
  489 F. Supp. 3d 742 (M.D. Tenn. 2020) ..........................................25

*Maestas v. State*,
  76 So. 3d 991 (Fla. Dist. Ct. App. 2011) .........................................41

*Manufs. Life Ins. v. Capitol Datsun, Inc.*,
  566 F.2d 354 (D.C. Cir. 1977)..........................................................36

*Martin v. State*,
  259 So. 3d 733 (Fla. 2018) ...............................................................41

*Merrill v. Milligan*,
  142 S. Ct. 879 (2022) ........................................................................33

*Minn. Voters All. v. Mansky*,
  138 S. Ct. 1876 (2018) ...............................6, 23, 26, 29, 30, 32, 33, 38

*Mona Elec. Grp., Inc. v. Truland Serv. Corp.*,
  56 F. App'x 108 (4th Cir. 2003)........................................................37

*N.Y. State Club Ass'n, Inc. v. City of N.Y.*,
  487 U.S. 1 (1988).......................................................................18, 19

*N.Y. State Rifle & Pistol Ass'n, Inc. v. City of N.Y.*,
  140 S. Ct. 1525 (2020) ......................................................................14

*Nash v. United States*,
  229 U.S. 373 (1913) ..........................................................................35

*Nat'l Black Police Ass'n v. D.C.*,
  108 F.3d 346 (D.C. Cir. 1997)..............................................15, 16, 17

*Nev. Comm'n on Ethics v. Carrigan*,
  564 U.S. 117 (2011) ..........................................................................25

*New Ga. Proj. v. Raffensperger,*
    976 F.3d 1278 (11th Cir. 2020) ........................................................33

*Ohralik v. Ohio State Bar Ass'n,*
    436 U.S. 447 (1978) ........................................................................20

*Pine v. City of W. Palm Beach,*
    762 F.3d 1262 (11th Cir. 2014) ................................................ 35, 38

*Rio Grande Silvery Minnow v. Bureau of Reclamation,*
    601 F.3d 1096 (10th Cir. 2010) ................................................ 16, 17

*Rumsfeld v. FAIR,*
    547 U.S. 47 (2006) .............................................................24, 25, 27

*Sands v. NLRB,*
    825 F.3d 778 (D.C. Cir. 2016) ......................................................16

*Schleifer v. Charlottesville,*
    159 F.3d 843 (4th Cir. 1998) .........................................................36

*Sessions v. Dimaya,*
    138 S. Ct. 1204 (2018) ..................................................................34

*Smith v. Goguen,*
    415 U.S. 566 (1974) ......................................................................34

*Sproles v. Binford,*
    286 U.S. 374 (1932) ......................................................................35

*Stein v. Ala. Sec'y of State,*
    774 F.3d 689 (11th Cir. 2014) ......................................................30

*Tanner Advert. Grp., LLC v. Fayette Cnty.,*
    451 F.3d 777 (11th Cir. 2006) (en banc) ................................. 13, 14

*Texas v. Johnson,*
    491 U.S. 397 (1989) ......................................................................24

*Timmons v. Twin Cities Area New Party,*
    520 U.S. 351 (1997) ......................................................................30

*U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship,*
    513 U.S. 18 (1994) ........................................................................15

*U.S. Dep't of Treasury v. Galioto,*
    477 U.S. 556 (1986) ......................................................................14

*United Food & Com. Workers Loc. 1099 v. City of Sidney,*
    364 F.3d 738 (6th Cir. 2004) .........................................................29

*United States v. Aguilar*,
515 U.S. 593 (1995) ...........................................................................41

*United States v. Brantley*,
68 F.3d 1283 (11th Cir. 1995) ...........................................................41

*United States v. Brenson*,
104 F.3d 1267 (11th Cir. 1997) ..........................................................40

*United States v. Fleury*,
20 F.4th 1353 (11th Cir. 2021) .................................................... 18, 20

*United States v. Munsingwear, Inc.*,
340 U.S. 36 (1950) ........................................................................ 2, 15

*United States v. O'Brien*,
391 U.S. 367 (1968) ...........................................................................27

*United States v. Powell*,
423 U.S. 87 (1975) ...................................................................... 34, 35

*United States v. Sepulveda*,
115 F.3d 882 (11th Cir. 1997) ....................................................... 35, 40

*United States v. Sineneng-Smith*,
140 S. Ct. 1575 (2020) .......................................................................18

*United States v. Thomas*,
916 F.2d 647 (11th Cir. 1990) ...........................................................42

*United States v. Williams*,
553 U.S. 285 (2008) .......................... 10, 18, 19, 23, 27, 35, 37, 39, 40, 41, 42

*United States v. Woods*,
684 F.3d 1045 (11th Cir. 2012) ..................................................... 10, 17

*Valero Terrestrial Corp. v. Paige*,
211 F.3d 112 (4th Cir. 2000) .............................................................15

*Voting for Am., Inc. v. Steen*,
732 F.3d 382 (5th Cir. 2013) .............................................................25

*Wash. State Grange v. Wash. State Republican Party*,
552 U.S. 442 (2008) ...........................................................................21

*Wis. Dep't of Rev. v. William Wrigley, Jr., Co.*,
505 U.S. 214 (1992) ...........................................................................37

**Statutes**

15 Del. Code §3167 ........................................................................6

18 U.S.C. §1503 ...........................................................................41

28 U.S.C. §1291 .............................................................................1

28 U.S.C. §1331 .............................................................................1

52 U.S.C. §10508 ...........................................................................8

Fla. Stat. §102.031(4) ...............................2, 5, 8, 23, 36, 37, 38, 39

Minn. Stat. §204C.06(1) ................................................................6

Mont. Code §13-35-211(2) .............................................................6

N.Y. Elec. Law §17-140 .................................................................6

SB524 §5 .......................................................................................3

SB524 §7 .......................................................................................3

SB90 §29 .......................................................................................6

SB90 §7 .........................................................................................3

**Other Authorities**

*CS/CS/SB 524: Election Administration – Bill History*,
   Fla. Senate, bit.ly/3IjYlA6 (last visited July 11, 2022) .................3

Scalia & Garner, *Reading Law* (2012) ....................................36, 39

## INTRODUCTION

The State's brief explains why the district court's finding of intentional discrimination and its remedy of preclearance should be reversed. The RNC and NRSC join that brief in full. They write to address the rest of the district court's decision—specifically, its invalidation of SB90's "registration disclaimer" and "solicitation" provisions under the First and Fourteenth Amendments. *See League of Women Voters of Fla., Inc. v. Fla. Sec'y of State* (*LWVF*), 32 F.4th 1363, 1369 (11th Cir. 2022) (using this terminology).

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. §1331 because the plaintiffs alleged violations of the U.S. Constitution. This Court has jurisdiction under 28 U.S.C. §1291 because appellants timely appealed from final, post-trial judgments that disposed of all claims. The district court entered those judgments on March 31, and appellants filed notices of appeal on April 7. *See, e.g.*, Docs. 665-67.[*]

## STATEMENT OF ISSUES

This brief addresses two issues:

**I.** The district court enjoined SB90's registration-disclaimer provision. That provision was then repealed by the Florida legislature, and all agree that the repeal moots the plaintiffs' challenges. When a claim becomes moot on appeal due to an intervening

---

[*] All "Doc." citations refer to the docket entries for *League of Women Voters of Florida, Inc. v. Byrd*, No. 4:21-cv-186-MW-MAF (N.D. Fla.).

repeal, this Court "ordinarily" dismisses the appeal, vacates the district court's judgment, and remands with instructions to dismiss. *Flanigan's Enters., Inc. of Ga. v. City of Sandy Springs*, 868 F.3d 1248, 1271 n.24 (11th Cir. 2017) (en banc); *see United States v. Munsingwear, Inc.*, 340 U.S. 36, 39-40 (1950). Should the Court follow that ordinary practice here?

**II.** The district court enjoined SB90's changes to the definition of "solicitation," which clarified that solicitation includes "engaging in any activity with the intent to influence or effect of influencing a voter." Fla. Stat. §102.031(4)(b). This phrase is surrounded by other examples of third parties giving or taking things from voters in line, like "seeking … any … opinion," "distributing … any … handout," or "selling … any item." *Id.* And it has countless lawful applications, like giving voters cash, peddling goods, electioneering, and even distributing food and water. Did the district court err by deeming this provision facially overbroad and vague?

## STATEMENT OF THE CASE

SB90, an election-integrity bill that Florida passed after the 2020 election, has thirty-two substantive provisions. Most were never challenged. Of the ones that were, the district court invalidated four: a dropbox provision, registration-delivery provision, registration-disclaimer provision, and definition of solicitation. *LWVF*, 32 F.4th at 1369. All but the registration disclaimer were enjoined under a theory of intentional discrimination—incorrectly, as the State's brief explains. The registration disclaimer and

solicitation definition were also enjoined under the First and Fourteenth Amendments. *See* Doc. 665 at 189-218 (registration disclaimer); *id.* at 136-88 (solicitation definition). This brief addresses those rulings.

## I.    The registration disclaimer

SB90 required third-party voter-registration organizations (or "3PVROs," for short) to provide certain information to applicants. Specifically, if 3PVROs collected completed voter-registration applications, the 3PVROs had to disclose that they "might not deliver" applications within the deadline, that applications can instead be returned "in person or by mail," and that applicants can go online to register or check whether their applications were timely delivered. SB90 §7.

Four groups of plaintiffs challenged this disclaimer, and they all made the same argument: that the disclaimer compels speech in violation of the First Amendment. The district court denied plaintiffs' motion for summary judgment. Doc. 380 at 21. Months before that decision, SB524 was introduced in the Florida Senate. *CS/CS/SB 524: Election Administration – Bill History*, Fla. Senate, bit.ly/3IjYlA6 (last visited July 11, 2022) (*Bill History*). An amended version of SB524 passed the senate in March 2022. *Id.* One provision eliminates the registration disclaimer and replaces it with a requirement that the State itself, rather than 3PVROs, provide the disclaimer. SB524 §7; §5.

The district court conducted a Zoom trial in February 2022. After the trial but before the decision, the Florida House also passed SB524. *See Bill History*. The district court then ordered the parties to brief how SB524 would affect the case "in the event

the Governor signs the legislation into law." Doc. 659. In their briefs, both sides agreed that SB524 would moot the plaintiffs' challenges to the disclaimer. *See* Doc. 661 at 7 (plaintiffs: "[I]f and when SB 524 takes effect, Plaintiffs' challenges to the Registration Disclaimer Provision will become moot."); Doc. 662 at 1 (defendants: "If … Senate Bill 524 … becomes law, all claims related to the … disclaimer provision would become moot.").

Yet the district court issued its decision before the governor signed SB524. "All agree," the court acknowledged, "that SB 524 moots Plaintiffs' claims challenging the registration disclaimer." Doc. 665 at 190. But the court said that it had "waited" for the governor to sign the bill and could "wait no longer." *Id.* Applying strict scrutiny, the Court ruled that the registration disclaimer unlawfully compels speech. *Id.* at 218. The court even cited SB524's forthcoming changes as proof that the registration disclaimer "is not narrowly tailored." *Id.* at 215. Though the court thought "this issue will likely become moot soon," *id.* at 190, its decision blocked that from happening. Its preclearance remedy banned Florida from passing any law "governing 3PVROs," including SB524's repeal of the disclaimer, without the court's approval. *Id.* at 288. So even after Governor DeSantis signed SB524 in late April, the law could not go into effect immediately. (The plaintiffs later notified the district court that they did not oppose preclearance for the relevant part of SB524. *See* Doc. 682.)

This Court stayed the district court's decision, including its preclearance remedy, in early May. That stay, the Court acknowledged, allowed SB524 to "go into effect."

4

*LWVF*, 32 F.4th at 1372 n.9. The plaintiffs' challenges to the registration disclaimer thus became "moo[t]," and this Court "decline[d] to weigh in" on that provision. *Id.* In light of this Court's decision, appellants filed a motion asking the Court to vacate the district court's ruling on the disclaimer and to remand with instructions to dismiss the plaintiffs' challenges as moot. (Because the registration disclaimer is the *only* provision at issue in No. 22-11133, appellants also asked the Court to dismiss that appeal in full.) *See* Mot. for Partial Dismissal/Vacatur (May 24, 2022). A motions panel declined to resolve appellants' motion and instead ordered that it be carried with the case. *See* Order (June 9, 2022).

## II. The solicitation definition

Another provision of SB90—which has *not* been repealed—amends Florida's definition of "solicitation." Florida makes it illegal to "solicit voters" either "inside the polling place" or "within 150 feet" of a polling place, early voting site, or office where vote-by-mail ballots are printed. Fla. Stat. §102.031(4)(a). SB90 amended this provision by specifying that it also applies within 150 feet of a ballot "drop box" and by amending the definition of "solicit" to include other activities like giving items to voters:

> For the purpose of this subsection, the terms "solicit" or "solicitation" shall include, but not be limited to, seeking or attempting to seek any vote, fact, opinion, or contribution; distributing or attempting to distribute any political or campaign material, leaflet, or handout; conducting a poll except as specified in this paragraph; seeking or attempting to seek a signature on any petition; ~~and~~ selling or attempting to sell any item**; and engaging in any activity with the intent to influence or effect of influencing a voter**. The terms "solicit" or "solicitation" may not be construed **to prohibit an employee of, or a volunteer with, the supervisor from**

**providing nonpartisan assistance to voters within the no-solicitation zone such as, but not limited to, giving items to voters, or** to prohibit exit polling.

SB90 §29 (emphasis added).

Other States have similar laws. With narrow exceptions, New York makes it a crime to "induce" voting by giving an individual any "refreshment or provision." N.Y. Elec. Law §17-140. Delaware also prohibits giving any "valuable thing" to "induc[e]" or "influenc[e]" someone's decision to vote or not vote. 15 Del. Code §3167. And Montana erects a 100-foot buffer zone where campaigns cannot give voters "food, drink, or anything of value," even if the campaigns do so silently or without electioneering. Mont. Code §13-35-211(2). In Minnesota, third parties cannot even "stand" within 100 feet of a polling place. Minn. Stat. §204C.06(1).

These laws serve important purposes. They allow a State to establish "peace and order around" their "polling places." *Citizens for Police Account. Pol. Comm. v. Browning*, 572 F.3d 1213, 1220 (11th Cir. 2009). They "preserv[e] the integrity and dignity of the voting process and encourag[e] people to come and to vote." *Id.* They protect voters from "confusion," "undue influence," and "fraud," as well as "pressure" and "intimidation." *Burson v. Freeman*, 504 U.S. 191, 199-201 (1992) (plurality op.); *Brnovich v. DNC*, 141 S. Ct. 2321, 2325 (2021). And they "ensure that partisan discord [does] not follow the voter up to the voting booth." *Minn. Voters All. v. Mansky*, 138 S. Ct. 1876, 1888 (2018). This Court has long recognized the need for "a zone of order around the polls" because it is "probable that some—maybe many—voters … will refrain from partici-

pating in the election process merely to avoid the … commotion." *Citizens for Police Account.*, 572 F.3d at 1220-21. It thus upheld the pre-SB90 version of Florida's solicitation ban against First Amendment challenge. *See id.* at 1222.

In Florida, the need to update the existing solicitation law was strong. Before SB90 was enacted, agitators at polling places in Florida were broadcasting messages over bullhorns and initiating fights. Tr. 1388:9-14. It was also difficult for election officials to tell whether a given interaction between third parties and voters involved improper electioneering, fraud, or undue influence. As the supervisor of Miami-Dade County explained, during voting "it can be impossible to discern what is solicitation" from "what is not." Tr. 1376:15-1377:3. She encountered people who would "try to take advantage" of loopholes in the law by "say[ing]," for instance, "Oh, no, I'm just going to the bathroom, and then, you know, they start talking to voters." *Id.* Similarly, when polling places were in libraries, people would "pretend like they are just going to be a patron reading a book … but then … leave campaign materials everywhere." *Id.* The supervisor explained that it's "impossible with the volume of sites and the volume of people that we are dealing with out there to discern who is engaging in activity to influence, who is not, … who is providing nonpartisan assistance, who is not." *Id.* SB90 thus strengthened Florida's solicitation ban by expressly eliminating more opportunities for unlawful solicitation and evasion.

Nevertheless, three groups of plaintiffs challenged SB90's amended definition of solicitation—specifically, its addition of the phrase "engaging in any activity with the

intent to influence or effect of influencing a voter." Fla. Stat. §102.031(4)(b). They took "no issue" with the rest of Florida's ban. Doc. 665 at 173. Regarding the new phrase, the plaintiffs complained that it bans them from distributing food and water to Floridians who are waiting in line to vote on election day. *Id.* at 12. The plaintiffs call this practice "line warming." *Id.*

The phrase added by SB90 is, according to the plaintiffs, unconstitutional under four theories: distributing food and water is protected speech; banning voter assistance contradicts the Voting Rights Act, 52 U.S.C. §10508; the new phrase is overbroad; and the new phrase is facially vague. The district court granted summary judgment against the plaintiffs to the extent that their first claim raised a facial challenge. *See* Doc. 380 at 20-21. But after trial, the district court ruled for the plaintiffs on their overbreadth and facial vagueness claims. The court declined to address their remaining claims. *See* Doc. 665 at 218 n.65. It permanently enjoined the supervisors of ten counties—the ones where the plaintiffs said they wanted to engage in line warming—from enforcing the challenged phrase. *Id.* at 187.

The district court first held that the challenged phrase was facially vague. The court acknowledged that "some conduct clearly falls within the definition's scope." *Id.* at 172. For example, "[b]ribing someone" or "asking every voter in line to vote for or against a certain candidate" clearly count. *Id.* But the definition was still unconstitutionally vague, according to the court, because it "outlaws 'any activity' within a 150-foot zone if you intend that it influences a voter or it has the unintended effect of influencing

8

a voter." *Id.* at 173. The court faulted the legislature for not defining the word "activity" and for using the broad word "any." *Id.* at 174-75. It also thought "the words around the challenged language" provided "no clarification or limitation" and dismissed the relevance of "the plain or ordinary meaning" of the word "solicit." *Id.* at 175, 173. It hypothesized several close cases that could test the meaning of the word "influence," such as "a person who helps an unsteady voter to the door" or a "jogger wearing a 'MAGA' t-shirt" who passes by. *Id.* at 177-78. And it expressed concerns about the word "effect," which it deemed subjective. *Id.* at 178. Finally, citing testimony from trial, the court said the challenged phrase was unconstitutionally vague because supervisors had not come to a "clear consensus" on what it means. *Id.* at 178-79. It acknowledged, though, that several supervisors testified that the definition would not change what they were already doing prior to 2020. *Id.* at 179-80.

The district court then held that the challenged phrase was overbroad under the First Amendment. It acknowledged that this Court and the Supreme Court have upheld laws that prohibit much of the same conduct—namely, Tennessee's ban on the "solicitation of votes" within a 100-foot buffer zone, and Florida's "ban on signature solicitation targeting voters exiting polling places." *Id.* at 183 (citing *Burson*, 504 U.S. at 193, and *Citizens for Police Account.*, 572 F.3d at 1215). But it reasoned that this case was more like *Minnesota Voters Alliance*, where the Supreme Court invalidated a ban on wearing "political" clothing inside polling places. *Id.* at 183-84. Like Minnesota's law, the district

court reasoned, the challenged phrase in Florida's law is too ambiguous and covers too much protected speech. *Id.* at 184.

This Court stayed the district court's decision pending appeal. The court's analysis was "sufficiently vulnerable" to reversal, this Court explained, because appellants have a "substantial argument" that the solicitation definition "passes constitutional muster." *LWVF*, 32 F.4th at 1372, 1374. "[A]s to vagueness," this Court credited the appellants' argument that the challenged phrase is "limited by the surrounding examples of prohibited conduct." *Id.* at 1374 (citing *United States v. Williams*, 553 U.S. 285, 294 (2008)). "[T]urning to overbreadth," this Court observed that the law requires any overbreadth to be "'substantial,'" and yet the district court "failed to contend with any of the [provision's] 'plainly legitimate' applications." *Id.* (quoting *Williams*, 553 U.S. at 292).

## STANDARD OF REVIEW

After a bench trial, this Court reviews legal conclusions de novo and factual findings for clear error. *Gelber v. Akal Sec., Inc.*, 14 F.4th 1279, 1288 n.10 (11th Cir. 2021). Whether this Court should grant the equitable remedy of vacatur is committed to its discretion. *Azar v. Garza*, 138 S. Ct. 1790, 1793 (2018). Whether a statute is "unconstitutionally vague or overbroad" is a legal conclusion that this Court "reviews *de novo*." *United States v. Woods*, 684 F.3d 1045, 1057 n.10 (11th Cir. 2012).

## SUMMARY OF ARGUMENT

This Court predicted, at the stay stage, that the district court's rulings on the registration disclaimer and solicitation definition were vulnerable to reversal. That prediction was correct. The registration disclaimer is now gone. And the solicitation definition has many lawful applications and a core lawful meaning. Neither provision should remain enjoined. And no part of the district court's decision should be affirmed.

**I.** This Court should vacate the district court's ruling on the registration disclaimer. The parties' dispute over that provision is moot. Now that this Court allowed SB524 to go into effect, everyone agrees that the disclaimer is gone, its replacement is constitutional, and this aspect of the case is over. The only question is whether this Court will vacate the district court's decision under *Munsingwear*. It should. The plaintiffs cite no case where the legislature repealed a challenged law on appeal, the appeal became moot, and this Court did *not* vacate the district court's decision. That scenario is common and represents what the caselaw calls mootness through "happenstance": Appellants are not the Florida legislature (or even the governor), and they did not cause SB524 to pass or the registration disclaimer to be repealed. When mootness occurs through happenstance, the equities favor wiping the slate clean. It is not fair to let the district court's decision spawn any legal consequences—such as a justification for attorney's fees against the State, or an authority for the plaintiffs to use against intervenors in other pending litigation—when appellants had no opportunity to challenge that decision on appeal.

**II.** As for SB90's amendment to the definition of "solicitation," the district court's decision should be reversed. The challenged phrase is not overbroad. It has countless lawful applications and virtually no unlawful ones. The plaintiffs claim only *one* unlawful application—their specific "line warming" activities—but one unlawful application does not an overbroad statute make. And that application is lawful too. Giving people food and water is pure conduct, in a nonpublic forum, that receives at most light scrutiny, and is so rooted in history, tradition, and weighty state interests that it would survive even strict scrutiny. Nor is the challenged phrase facially vague. Especially when read with its surrounding context, the phrase has a discernible core: It stops third parties from influencing Floridians' decision whether or how to vote by, right before they enter the polling place, approaching them and giving them things or asking them for things. It is certainly not vague as applied to the plaintiffs' asserted desire to give food and water to voters in the no-solicitation zone.

In short, this Court should vacate on the registration-disclaimer provision, reverse on the solicitation definition, and—for the reasons in the State's brief—reverse on everything else.

## ARGUMENT

Neither the district court's ruling on SB90's registration disclaimer nor its ruling on SB90's solicitation definition can stand. The former should be vacated as moot. The latter should be reversed on the merits.

## I.    The district court's decision enjoining the registration disclaimer should be vacated under *Munsingwear*.

The parties' dispute over the registration disclaimer became moot when the legislature repealed that provision while this appeal was pending. The "normal rule" when this kind of repeal happens is that the parties are put back on a level playing field by vacating the lower court's decision. *Camreta v. Greene*, 563 U.S. 692, 713 (2011). The normal rule controls here.

### A.    Now that the legislature has repealed it, the parties' dispute over the registration disclaimer is moot.

This Court already found that the plaintiffs' challenges to the registration disclaimer are moot. When this Court stayed the district court's decision, it recognized that SB524 would "go into effect." *LWVF*, 32 F.4th at 1372 n.9. This Court also observed that, because SB524 totally repeals the challenged disclaimer, its enactment "moot[s] any challenge to the Registration-Disclaimer Provision." *Id.* Indeed, "'[t]his Court and the Supreme Court have repeatedly held that the repeal or amendment of an allegedly unconstitutional statute moots legal challenges to the legitimacy of the repealed legislation.'" *Tanner Advert. Grp., LLC v. Fayette Cnty.*, 451 F.3d 777, 789 (11th Cir. 2006) (en banc); *accord Diffenderfer v. Cent. Baptist Church of Miami, Inc.*, 404 U.S. 412, 414-15 (1972) ("The only relief sought in [Plaintiff's] complaint was a declaratory judgment that the now repealed Fla. Stat. … is unconstitutional … and an injunction against its application …. This relief is, of course, inappropriate now that the statute has been repealed.").

13

The plaintiffs agree. Both here and below, they conceded that the enactment of SB524 would moot their challenges to the registration disclaimer. *See* Opp. to Mot. to Vacate 1, 3; Doc. 661 at 7. The plaintiffs invoke no exception to mootness (like voluntary cessation or capable of repetition), and none applies. SB524 has taken effect, so the plaintiffs' challenges to the disclaimer that it repealed are now moot.

### B. The equities, as they normally do, favor vacatur.

Because the parties' dispute over the registration disclaimer is moot, this Court should dismiss one of these four consolidated appeals. In No. 22-11133, the *Harriet Tubman* plaintiffs challenged "only the Registration-Disclaimer Provision." *LWVF*, 32 F.4th at 1369 n.3. Because the sole claim in that appeal is now moot, that entire appeal should be dismissed. *See Tanner Advert.*, 451 F.3d at 791. The plaintiffs do not disagree. *See* Opp. to Mot. to Vacate 1.

This Court should also vacate the district court's judgment concerning the registration-disclaimer provision in all four appeals. "When a case has become moot, [this Court] ordinarily dismiss[es] the appeal, vacate[s] the district court's judgment, and remand[s] with instructions to dismiss the case." *Flanigan's*, 868 F.3d at 1271 n.24. Both this Court and the Supreme Court have repeatedly ordered *Munsingwear* vacatur in precisely these circumstances—where a law is challenged, enjoined, and then repealed while the appeal is pending. *See, e.g.*, *N.Y. State Rifle & Pistol Ass'n, Inc. v. City of N.Y.*, 140 S. Ct. 1525, 1526-27 (2020); *Flanigan's*, 868 F.3d at 1271 & n.24; *Bowen v. Kizer*, 485 U.S. 386, 387 (1988); *U.S. Dep't of Treasury v. Galioto*, 477 U.S. 556, 559-60 (1986); *Church*

*of Scientology Flag Serv. Org., Inc. v. City of Clearwater*, 777 F.2d 598, 605 & n.19 (11th Cir. 1985); *Diffenderfer*, 404 U.S. at 414-15. In *Munsingwear* itself, "[t]he suit for injunctive relief … became moot on appeal because the regulations sought to be enforced … were annulled." *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 25 n.3 (1994) (citing *Fleming v. Munsingwear, Inc.*, 162 F.2d 125, 127 (8th Cir. 1947)).

The plaintiffs argue that the exception to vacatur recognized in *Bancorp* applies here, but they are mistaken. The *Bancorp* exception does not apply when the legislature repeals a challenged statute on appeal. If it did, then all the cases cited above were wrongly decided. *Bancorp* does not apply unless a case becomes moot through a "voluntary action" by the losing party, like a "settlement." *Id.* at 24-25. But appellants did not take voluntary action to moot this case; the Florida legislature did.

Vacatur is appropriate here because "the mootness was … caused by the state *legislature's* amendment … and not by the actions of any of the defendants before this court, all of whom are state *executive* officials." *Valero Terrestrial Corp. v. Paige*, 211 F.3d 112, 121 (4th Cir. 2000). And two are *county* executive officials. The "executive branch" is like "a party who finds its case mooted on appeal by 'happenstance,' rather than events within its control." *Nat'l Black Police Ass'n v. D.C.*, 108 F.3d 346, 353 (D.C. Cir. 1997) (quoting *Munsingwear*, 340 U.S. at 39). The Republican intervenors, especially, are not the legislature or the State; so "any doubt about the [state] appellants' entitlement to vacatur is removed by intervenor[s'] entitlement thereto." *Humane Soc. of U.S. v. Kempthorne*, 527 F.3d 181, 187 (D.C. Cir. 2008). Because "the acts of the legislature are

15

not the acts of executive branch agencies, states, or private parties," the *Bancorp* exception does not apply here. *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1131-33 (10th Cir. 2010).

Even if the *Bancorp* exception applied, the equities would still warrant vacatur. *See Hartford Cas. Ins. Co. v. Crum & Forster Specialty Ins. Co.*, 828 F.3d 1331, 1336 (11th Cir. 2016) (declining to apply *Bancorp*, even in a case involving a settlement, because the equities warranted vacatur). There is "no evidence indicating that the legislation was enacted in order to overturn an unfavorable precedent." *Nat'l Black Police Ass'n*, 108 F.3d at 351. The Florida legislature passed SB524 *before* the district court ruled that the disclaimer was unconstitutional. And this Court must presume that the Florida legislature repealed the disclaimer not to "manipulat[e]" the judicial process, but out of legitimate legislative considerations like promoting uniformity in the voter-registration process. *See id.*; *Khodara Env't, Inc. ex rel. Eagle Env't L.P. v. Beckman*, 237 F.3d 186, 195 (3d Cir. 2001). The "presumption of integrity that attaches to legislative action" and the "difficulties that separation of powers creates for attributing one branch's actions to another" require as much. *Nat'l Black Police Ass'n*, 108 F.3d at 354.

Vacatur also would "serve the public interest by furthering the traditional purpose of the [*Munsingwear*] doctrine: clearing the path for future relitigation of the issues." *Sands v. NLRB*, 825 F.3d 778, 786 (D.C. Cir. 2016). Vacating the district court's decision promotes the "well-established principle that courts should avoid unnecessarily deciding constitutional questions." *Nat'l Black Police Ass'n*, 108 F.3d at 353. And it

"diminishes the chances that the [district court's decision] can be used for [its] persuasive value against any of the parties in subsequent proceedings." *Rio Grande Silvery Minnow*, 601 F.3d at 1133. Litigants are currently citing the district court's decision against the Republican intervenors in similar litigation in Georgia, for example. *See, e.g.*, *VoteAmerica v. Raffensperger*, Doc. 103 at 15-16, No. 1:21-cv-1390 (N.D. Ga. Apr. 26, 2022).

In sum, "the general rule in favor of vacatur still applies" when "mootness results on appeal because of legislative action." *Nat'l Black Police Ass'n*, 108 F.3d at 354. This Court should vacate the district court's judgment on the registration disclaimer and order the district court to dismiss the plaintiffs' challenges to that provision as moot. *Flanigan's*, 868 F.3d at 1271 n.24. And it should dismiss appeal No. 22-11133 outright as moot.

## II. The district court's decision enjoining the solicitation definition should be reversed.

The district court ruled that SB90's amendment to the definition of "solicitation" was overbroad and void for vagueness under the First and Fourteenth Amendments. Reviewing de novo, *Woods*, 684 F.3d at 1057 n.10, this Court should reverse both rulings.

### A. The solicitation definition is not overbroad.

Overbreadth requires that a statute violate the Free Speech Clause in a *substantial* number of applications. But the solicitation definition has countless lawful applications: to pure conduct, to speech that gets lower levels of protection, to speech in nonpublic

17

forums, to speech where the State can satisfy the appropriate level of scrutiny, and more. In fact, the statute is constitutional even as applied to the specific "line warming" activities that the plaintiffs identify. It has no unconstitutional applications, let alone enough to warrant the strong medicine of wholesale invalidation for overbreadth.

**1.** Overbreadth claims are a special kind of facial challenge peculiar to the First Amendment. For facial challenges under other provisions of the Constitution, a plaintiff must prove that the challenged law is unconstitutional *as applied to him* and unconstitutional in *all other* applications. *See United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1585 (2020) (Thomas, J., concurring). But for overbreadth challenges under the First Amendment, a plaintiff needn't prove that the challenged law is unconstitutional as applied to him and must show only that the challenged law is unconstitutional in a *substantial* number of applications. *See id.* at 1583-85.

Despite relaxing some of the requirements for facial challenges, the overbreadth doctrine remains "strong medicine that is used sparingly and only as a last resort." *N.Y. State Club Ass'n, Inc. v. City of N.Y.*, 487 U.S. 1, 14 (1988) (cleaned up). The challenger carries the burden of proving overbreadth. *United States v. Fleury*, 20 F.4th 1353, 1362 (11th Cir. 2021). And "succeeding" on that showing "is not easy to do." *Cheshire Bridge Holdings, LLC v. City of Atlanta, Ga.*, 15 F.4th 1362, 1371 (11th Cir. 2021). For good reason: "invalidating a law that in some of its applications is perfectly constitutional—particularly a law directed at conduct so antisocial that it has been made criminal—has obvious harmful effects." *Williams*, 553 U.S. at 292.

Accordingly, the Supreme Court has "vigorously" enforced the rule that a statute's unconstitutional applications be "*substantial*," both "in an absolute sense" and "relative to the statute's plainly legitimate sweep." *Id.* It's not enough that a statute has "'some impermissible applications'" or has "certain provisions" that "reach too far." *Cheshire Bridge*, 15 F.4th at 1377. Nor need a State prove that "the 'vast majority' of a statute's applications [are] legitimate." *FEC v. Wis. Right to Life, Inc.*, 551 U.S. 449, 476 n.8 (2007) (op. of Roberts, C.J.). "'[P]erfection is not required.'" *Cheshire Bridge*, 15 F.4th at 1377. After all, "'whatever overbreadth may exist'" can be "'cured through case-by-case analysis'" later through as-applied challenges, when and if they ever arise. *N.Y. State Club Ass'n*, 487 U.S. at 14.

**2.** The solicitation definition is not substantially overbroad. As this Court observed at the stay stage, the district court "failed to contend with any of the 'plainly legitimate' applications" of that statute. *LWVF*, 32 F.4th at 1374. And there are many. Within the 150-foot buffer zone, the phrase "any activity with the intent to influence or effect of influencing a voter" would cover, for example:

- "[b]ribing someone to vote for your preferred candidate," Doc. 665 at 172
- "asking every voter in line to vote for or against a certain candidate," *id.*
- threatening to hurt voters if they do not vote a certain way
- pulling a fire alarm to make voters flee
- handing out cash to voters
- announcing (falsely) that the voting machines are broken
- brandishing guns to intimidate voters
- inviting voters to leave the line to go to a party

19

- stealing voters' driver's licenses and running away
- dragging voters into the polling place against their will
- plying voters with alcohol or tobacco
- offering to go on a date with voters if they select a certain candidate
- making loud and annoying noises to keep voters away
- handing out food laced with laxatives to voters
- parking a car to obstruct voters' access to the polls

Indeed, "'it is plain from the statute's text that it covers countless amounts of unprotected conduct.'" *Fleury*, 20 F.4th at 1363. Most applications of the statute would regulate pure conduct, which isn't protected by the First Amendment to begin with. *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973). Even if some applications covered speech, countless applications would survive the applicable level of scrutiny. The First Amendment allows Florida to create a buffer zone where no one can electioneer, campaign, or make other verbal attempts to persuade voters how to vote—either because these laws survive strict scrutiny, *see Burson*, 504 U.S. at 211 (plurality op.), or because they reasonably regulate speech in a nonpublic forum, *see id.* at 214-16 (Scalia, J., concurring in the judgment). For the same reasons, Florida can ban other forms of political speech in the buffer zone, even if that speech is unrelated to voting or the issues and candidates on the ballot. *See Citizens for Police Account.*, 572 F.3d at 1219. Still other applications of the statute would permissibly regulate less-protected forms of expression, like commercial speech. *See Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 455-64 & n.20 (1978). Even if some applications remained that actually violated the First Amendment, those applications would be dwarfed by the many lawful ones.

On the flip side, "most protected activity" is unaffected by the solicitation definition. *Cheshire Bridge*, 15 F.4th at 1378. Persons interested in speaking about the election, informing voters about the resources available to them, encouraging people to vote, expressing appreciation for voting, or even providing food, water, or other items can do so. They simply must stay 150 feet away from voting places a few days a year. That restriction is a tiny portion of their overall freedom to speak. And it's a small price to pay to give voters a moment of peace while they prepare to exercise *their* right to vote. *See Citizens for Police Account.*, 572 F.3d at 1221.

The district court didn't meaningfully disagree. It admitted that "the statute criminalizes a large amount of unprotected activity." Doc. 665 at 182-83. The court stressed the supposed "ambiguity" and breadth of the phrase "any activity with the intent to influence or effect of influencing a voter" and fretted that the phrase could cover "speech." *Id.* at 183. But that phrase is not so broad and not so ambiguous in context. *See infra* II.B. And to the extent it covers speech, the district court failed to explain why it would *unconstitutionally regulate* that speech. If scenarios exist where the provision regulates speech unconstitutionally, those few-and-far-between cases do not justify the strong medicine of facial overbreadth. The plaintiffs "fail[ed] to describe" these scenarios in sufficient detail. *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 n.6 (2008). And the record contains "no evidence" that the solicitation definition has "been applied in the scenarios posited." *Cheshire Bridge*, 15 F.4th at 1377. "[A]ny

potential overreach" thus should be "handled on a case-by-case basis," rather than strik-ing down the whole statute now. *Id.*

**3.** In fact, the plaintiffs provided only one example of an allegedly unconstitu-tional application of the solicitation definition: its application to their "line warming" activities. According to the plaintiffs, they want to give voters food, water, and other tangible items within the 150-foot buffer zone. This activity, they say, is a form of ex-pressive conduct that is protected by the First Amendment. It is how they allegedly convey the message that voters' "determination to exercise the franchise is important and celebrated," that voters should "stick it out and stay in line," or that the plaintiffs are there for "support, solidarity, and celebration." Doc. 665 at 164-67. This theory has many problems.

**a.** For starters, even if this kind of "line warming" were speech that Florida could not regulate within the buffer zone, the plaintiffs would have identified only *one* uncon-stitutional application of the statute. A statute that has "'some impermissible applica-tions'" is not facially overbroad. *Cheshire Bridge*, 15 F.4th at 1377.

**b.** Nor does the plaintiffs' argument meaningfully add to the "balance" between the statute's "legitimate applications" and any "unconstitutional applications." *LWVF*, 32 F.4th at 1374. As the district court acknowledged when it granted partial summary judgment against the plaintiffs, *see* Doc. 380 at 12, the distribution of food and water is usually *not* protected speech. *See Ft. Lauderdale Food Not Bombs v. City of Ft. Lauderdale* (*Food Not Bombs II*), 11 F.4th 1266, 1292 (11th Cir. 2021) ("most social-service food

22

sharing events will *not* be expressive"); *id.* ("the provision of clothing, shelter, and medical care … usually do not involve expressive conduct").

Even if distributing food and water to voters in the buffer zone could be speech in certain contexts, many of those contexts would be ones that Florida could constitutionally regulate. For example, the plaintiffs do not contest the statute's application to *candidates* and *campaigns* distributing food and water to voters in line. *See Ellis v. Meeks*, 957 S.W.2d 213, 216 (Ky. 1997) (election overturned because candidate was handing out chicken to voters at the polling place). The plaintiffs do not contest the statute's application to *commercial* vendors giving out free samples of food and water in line either. Nor do the plaintiffs say they could legally distribute food and water to voters who are "*inside* the polling place." Fla. Stat. §102.031 (emphasis added); *see Minn. Voters Alliance*, 138 S. Ct. at 1886. The plaintiffs also do not contend that the distribution of food and water would communicate any discernible message within 150 feet of a dropbox, an office where vote-by-mail ballots are requested or printed, or a polling place where the lines aren't long. Yet the definition they challenge applies to all those places as well. *See* Fla. Stat. §102.031(4)(a).

**c.** It's also worth noting that the solicitation definition is not unconstitutional even in the narrow context that the plaintiffs identify. Though not necessary for defeating their overbreadth claim, the fact that even the plaintiffs' hypothetical applications are "unproblematic" helps illustrate why the solicitation provision is not substantially overbroad. *Williams*, 553 U.S. at 305.

23

**i.** The plaintiffs' identified conduct is not expressive. The First Amendment does not protect conduct simply because "the person engaging in [it] intends thereby to express an idea." *Rumsfeld v. FAIR*, 547 U.S. 47, 65-66 (2006). Such an "expansive" definition would allow a "limitless variety of conduct" to be labeled speech, since it's "possible to find some kernel of expression in almost every activity." *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 570 (1991) (cleaned up). Instead, conduct is protected only when it is "inherently expressive." *Texas v. Johnson*, 491 U.S. 397, 404 (1989). Conduct is inherently expressive when the person engaging in it "inten[ds] to convey a particularized message" *and* "the likelihood [is] great that the message would be understood by those who viewed it." *Id.* The second requirement means that a "reasonable person would interpret" the conduct as communicating "some sort of message." *Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale* (*Food Not Bombs I*), 901 F.3d 1235, 1240 (11th Cir. 2018). While the message needn't be narrow or succinctly articulable, it still must be "identifiable." *Bar-Navon v. Brevard Cnty. Sch. Bd.*, 290 F. App'x 273, 276 (11th Cir. 2008). And the message must be "overwhelmingly apparent." *FAIR*, 547 U.S. at 66.

Distributing food and water to voters in line is not inherently expressive; it conveys no identifiable message that is overwhelmingly apparent. Plaintiffs give gifts, such as bottled water or pretzels, to voters in line. But there is not a "great likelihood" that the voters interpret these gifts to convey an identifiable message. *Burns v. Town of Palm Beach*, 999 F.3d 1317, 1347 (11th Cir. 2021). Receiving a bottle of water could mean nothing ("Here's a bottle of water"). Or it could mean "You look thirsty," "Be my

friend," "Drinking water is good for your health," "Try this brand," "Join my church," or "Vote for my party." A recipient cannot tell which of these messages (or countless others) is being expressed without additional speech—a telltale sign that the conduct is "not ... inherently expressive." *FAIR*, 547 U.S. at 66. Without some accompanying speech, a recipient could only "speculate" what "discernible message" is being expressed by the plaintiffs' "mere act" of distributing gifts. *Lichtenstein v. Hargett*, 489 F. Supp. 3d 742, 767-68 (M.D. Tenn. 2020).

While the plaintiffs believe that their conduct encourages people to vote, "facilitating voting" is "not ... communicating a message." *Feldman v. Ariz. Sec'y of State's Off.*, 840 F.3d 1057, 1084 (9th Cir. 2016). Conduct does not automatically become speech when it is "the product of deeply held personal belief," has "social consequences," or "discloses" their approval of voting (or their disapproval of lines). *Nev. Comm'n on Ethics v. Carrigan*, 564 U.S. 117, 126-27 (2011). Giving each voter a briefcase full of cash also facilitates voting and conveys approval of the franchise (probably more effectively than food and drink), but the plaintiffs do not claim a First Amendment right to pay voters to stay in line.

In fact, courts have held that far more direct methods of facilitating voting are not expressive. Collecting and returning absentee ballots for voters is not speech. *See Knox v. Brnovich*, 907 F.3d 1167, 1181 (9th Cir. 2018). Neither is collecting and returning their voter-registration applications. *See Voting for Am., Inc. v. Steen*, 732 F.3d 382, 391 & n.4 (5th Cir. 2013). The plaintiffs have never argued that these cases are wrongly

25

decided. But the groups in those cases also argued that their actions conveyed messages of support for voting, voters, and the democratic process. *See, e.g.*, *Knox*, 907 F.3d at 1181; *Feldman*, 840 F.3d at 1083. The plaintiffs cannot explain why providing food and water to people in line communicates a pro-voting message, but literally helping people vote does not.

Nor can the plaintiffs rely on this Court's decision in *Food Not Bombs*. That decision held that a group engaged in expressive activity when it used meals at its weekly events at a public park to bring attention to its message about "end[ing] hunger and poverty." 901 F.3d at 1238. The court emphasized the importance of the "factual context and environment" of the group's activities. *Id.* at 1245. And it was bound to construe all the relevant facts in favor of the group because the group was appealing a grant of summary judgment. *Id.* at 1239. This Court found that the group's event was speech because it used "tables and banners" at the events, used food at an "undisputed public forum," and used "the sharing of food as the means for conveying its message." *Id.* at 1238, 1242-43.

The problem for the plaintiffs is that they are not sharing meals; they are unilaterally giving voters items. Nor are the plaintiffs spreading a message about hunger or thirst, so they lack the same special symbolic justification and connection that was present in *Food Not Bombs*. Further, the plaintiffs want to conduct their activities in a marked no-solicitation zone near a polling place, which is a far cry from a traditional public forum like a park. *See Minn. Voters All.*, 138 S. Ct. at 1883, 1886-88. The plaintiffs

26

also do not consistently conduct their activities so as part of one large production with tables and banners integrated into their message, but rather through discrete acts with utilitarian goals. Combine all this with the less favorable procedural posture of this case, and *Food Not Bombs* is little help to the plaintiffs.

The plaintiffs' provision of gifts is conduct, subject to the same regulations that apply to the distribution of a wide range of goods and services in countless other contexts. Of course, many laws prohibiting conduct impose "incidental" burdens on speech, but that "hardly means [they] should be analyzed as one[s] regulating … speech rather than conduct." *FAIR*, 547 U.S. at 62; *see Williams*, 553 U.S. at 298 (laws regulating offers and conspiracies to engage in unlawful acts regulate conduct, not expression). The plaintiffs' attempt to constitutionalize all their activities—and effectively remove them from reasonable state regulation of the immediate vicinity surrounding the polling place—should be rejected.

**ii.** But even assuming that the plaintiffs' conduct is speech, the solicitation definition would not be subject to strict scrutiny. Instead, if the plaintiffs are entitled to any constitutional scrutiny, it would be a relaxed standard: either the test for time, place, or manner restrictions; the test for regulations of expressive conduct from *United States v. O'Brien*, 391 U.S. 367 (1968); or the test for election regulations from *Anderson v. Celebrezze*, 460 U.S. 780 (1983), and *Burdick v. Takushi*, 504 U.S. 428 (1992).

Even protected "[e]xpression, whether oral or written or symbolized by conduct, is subject to reasonable time, place, or manner restrictions." *Clark v. Cmty. for Creative*

27

*Non-Violence*, 468 U.S. 288, 293 (1984). This Court's decision in *First Vagabonds Church* is instructive. There the Court assumed (but did not decide) that the plaintiff was engaged in expressive activity when it conducted group food-sharing events at parks to address the plight of the homeless. *First Vagabonds Church of God v. City of Orlando*, 638 F.3d 756, 758 (11th Cir. 2011) (en banc). But the Court explained that, if this activity constituted protected expression at all, then a law limiting it was not subject to strict scrutiny. Instead, the law was constitutional so long as it was "reasonable" and regulated the time, place, or manner of the supposedly expressive activity. *Id.* The law there restricted the plaintiff to only two such food-sharing events per year, which this Court held was constitutional. *Id.* at 759-61. That conclusion followed from the Supreme Court's decision in *Clark*, which upheld a restriction on camping in parks as applied to expressive demonstrators. 468 U.S. at 297.

Here, the challenged phrase in Florida's solicitation definition should be scrutinized as a time, place, or manner restriction. Under the terms of the challenged phrase, food and drink can be distributed and voters can be influenced in other ways—just not at a certain place (the no-solicitation zone) and at a certain time (during voting). *Clark*, 468 U.S. at 294-95. To the extent that the plaintiffs engage in expressive conduct, they are no different from the plaintiffs in *First Vagabonds Church* and *Clark*. So their claims should be subject to the same lenient "reasonableness" standard that applied there.

Alternatively, if the challenged phrase is not analyzed as a time, place, or manner restriction, then it should be analyzed under *O'Brien*'s test for regulations of expressive

28

conduct. Even the plaintiffs agree that giving food and drinks to voters is, at most, "expressive conduct" rather than pure speech. *See* Doc. 665 at 161. As they must, since any expression occurs via the symbolism of delivery of goods and services rather than spoken words.

Under *O'Brien*, a regulation of expressive conduct is constitutional if the law is within "the constitutional power of the government," the government has a "substantial interest" that the law "plainly serve[s]," that interest is "unrelated to the suppression of expression," and the restriction on expression is "no greater than necessary." *First Vagabonds Church*, 638 F.3d at 761 (citing *Clark*, 468 U.S. at 298-99). In *First Vagabonds Church*, for example, this Court alternatively upheld the restriction on food-sharing events under *O'Brien*. The law passed muster because of the city's unquestioned power to regulate food sharing, its "interest in managing park property," and its wide latitude to determine what restrictions were necessary to further that interest. *Id.* at 762.

Separately, the solicitation definition is not subject to strict scrutiny because it regulates speech in a nonpublic forum. The district court was wrong to conclude that the 150-foot buffer zone around polling places is a "traditional public forum." Doc. 665 at 166. The question is not what that area is in the abstract—such as "streets" and "sidewalks," *id.*—but what it is "on Election Day," *Minn. Voters All.*, 138 S. Ct. at 1886. This Court is free to conclude that, on election day, "the parking lots and walkways leading to the polling places are nonpublic forums." *United Food & Com. Workers Loc. 1099 v. City of Sidney*, 364 F.3d 738, 750 (6th Cir. 2004). As the Supreme Court explained

in *Minnesota Voters Alliance*, its fractured decision in *Burson* did not resolve "whether the public sidewalks and streets surrounding a polling place qualify as a nonpublic forum." 138 S. Ct. at 1883. Justice Scalia, who provided the key fifth vote, documented the long tradition in this country of treating those areas as nonpublic forums. *See Burson*, 504 U.S. at 214-16 (Scalia, J., concurring in the judgment). A majority of the Supreme Court cited his opinion approvingly in *Minnesota Voters Alliance*, stressing that States have long restricted speech "in *and around* polling places on Election Day." 138 S. Ct. at 1883 (emphasis added). These areas are classic nonpublic forums during voting, so even content-based regulations of them need only be reasonable. *Id.* at 1885.

Even if the solicitation provision applied within a traditional public forum, it would be subject not to strict scrutiny, but rather to the *Anderson-Burdick* balancing test for election regulations. When election regulations implicate constitutional rights, they are analyzed under *Anderson-Burdick*'s more forgiving analysis. *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1261 (11th Cir. 2020). *Anderson-Burdick* governs First Amendment claims against election laws no less than other claims. *E.g.*, *Stein v. Ala. Sec'y of State*, 774 F.3d 689, 694 (11th Cir. 2014); *Burdick*, 504 U.S. at 434; *Anderson*, 460 U.S. at 789. Under *Anderson-Burdick*, a restriction on First Amendment activity is valid so long as it imposes only "reasonable, nondiscriminatory restrictions" and is justified by "a State's important regulatory interests." *Stein*, 774 F.3d at 694 (quoting *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997)). And as particularly relevant here, the Supreme Court

30

has "repeatedly upheld reasonable, politically neutral regulations that have the effect of channeling expressive activity at the polls." *Burdick,* 504 U.S. at 438.

**iii.** Finally, the solicitation provision's regulation of the plaintiffs' activities would satisfy any level of scrutiny—even strict scrutiny. It satisfies the "reasonableness" standard for time, place, and manner regulations because it imposes a less restrictive limit on the plaintiffs' allegedly expressive activities than the restrictions upheld in *First Vagabonds Church* and *Clark. See* 638 F.3d at 759-61; 468 U.S. at 297. In *First Vagabonds Church,* the plaintiff could engage in its food-related activities twice a year, whereas here the challenged clause allows the plaintiffs to engage in those activities anywhere, anytime, except around voting places during elections. If the plaintiffs' activities are treated as protected expression at all, then *First Vagabonds Church* means that Florida's regulation of those activities should be upheld as a reasonable time, place, or manner restriction.

The solicitation provision also satisfies *O'Brien*'s test for expressive conduct. Nobody questions that the provision is within the "power of the government." *First Vagabonds Church,* 638 F.3d at 761. The challenged phrase is not aimed at "the suppression of expression" but rather at curtailing improper influence. *Id.* And any "incidental restrictions of the alleged freedoms under the First Amendment" are "no greater than necessary to further the interest of the government" because the clause specifically targets influencing voters in a narrowly circumscribed area while allowing other expression to continue unimpeded. *Id.*

31

As for the State's "substantial interest[s]," *id.*, it has several. Its interests are "substantial" under the *O'Brien* test and strong enough to satisfy *Anderson-Burdick* or strict scrutiny. The State has a "compelling interest" in protecting voters from "confusion," "undue influence," "fraud," "pressure," and "intimidation." *Burson*, 504 U.S. at 199-200 (plurality op.); *Brnovich*, 141 S. Ct. at 2325. It can "reasonably take steps to ensure" that "discord not follow the voter up to the voting booth, and distract from a sense of shared civic obligation at the moment it counts the most." *Min. Voters All.*, 138 S. Ct. at 1888. And this Court has long recognized the need for "a zone of order around the polls" because it is "probable" that, without it, "some—maybe many—voters faced … will refrain from participating in the election process." *Citizens for Police Account.*, 572 F.3d at 1220-21. Even if these concerns are not always present or can be punished case by case, strict scrutiny does not prevent the State from acting prophylactically in this context. *See id.*; *Burson*, 504 U.S. at 206-07 (plurality op.).

Although narrow tailoring should not be required here, the State narrowly tailored its solicitation law to serve its interests. The clause ensures that, in the most sensitive places and at the most sensitive times, voters are free from interactions that cause disorder, pressure, intimidation, confusion, undue influence, and fraud. Before the challenged clause was added, people used bullhorns and got in fights with each other at polling places. *See* Tr. 1388:9-14. Florida was not powerless to act.

A prophylactic ban on influencing voters was appropriate given the impossibility of screening out improper interactions on election day. As Miami-Dade's supervisor

32

explained, "[I]t can be impossible to discern what is solicitation" and "what is not so-licitation" during the hubbub of voting. Tr. 1376:15-1377:3. "People try to take ad-vantage" of any loopholes by "say[ing], Oh, no, I'm just going to the bathroom, and then, you know, they start talking to voters." *Id.* People at libraries "pretend like they are just going to be a patron reading a book … but then … they leave campaign mate-rials everywhere." *Id.* It is thus "impossible with the volume of sites and the volume of people that we are dealing with out there to discern who is engaging in activity to influ-ence." *Id.* The State's ban protects voters in a carefully tailored manner given the nature of the problem. The First Amendment allows that approach in this context. *See Citizens for Police Account.*, 572 F.3d at 1220-21.

As it should. "Running elections" is "extraordinarily complicated and difficult." *Merrill v. Milligan*, 142 S. Ct. 879, 880 (2022) (Kavanaugh, J., concurral). States "wan[t] peace and order around" their "polling places" because "it preserves the integrity and dignity of the voting process and encourages people to come and to vote." *Citizens for Police Account.*, 572 F.3d at 1220. After all, voting "is a time for choosing, not campaign-ing." *Minn. Voters All.*, 138 S. Ct. at 1887. Regulations like the solicitation provision also reduce burdens on administrators, *see New Ga. Proj. v. Raffensperger*, 976 F.3d 1278, 1282 (11th Cir. 2020), and prevent the unfairness of last-second electioneering, *see Burson*, 504 U.S. at 199 (plurality op.).

Accordingly, the challenged phrase should not be subject to strict scrutiny be-cause it governs either unprotected conduct or, at most, less-protected speech that is

33

subject to a lenient standard. But regardless, it survives any level of scrutiny. So even the strongest case that the plaintiffs can muster is, itself, not an unconstitutional application of the solicitation provision. Other applications are even easier calls. The statute is not substantially overbroad.

### B.    The solicitation definition is not facially vague.

A law is facially vague only when it lacks any core. But the solicitation definition has a core: essentially, do not approach voters in the no-solicitation zone to ask them for things or give them things. The district court's contrary analysis reads the challenged part of the statute incorrectly, without context, uncharitably, and inconsistently with the governing test for facial vagueness.

**1.** A law is not facially vague unless it "simply has no core." *United States v. Powell*, 423 U.S. 87, 92 (1975). A vague law proscribes "no comprehensible course of conduct at all." *High Ol' Times, Inc. v. Busbee*, 673 F.2d 1225, 1228 (11th Cir. 1982). It is "utterly devoid" of a standard to guide citizens who are attempting to comply with it. *Id.* To determine whether a law is unconstitutionally vague, courts look for the "absence of *any ascertainable standard* for inclusion and exclusion." *Smith v. Goguen*, 415 U.S. 566, 578 (1974) (emphasis added). A vague statute involves not just points of imprecision or confusion, but "hopeless indeterminacy" and "grave uncertainty." *Sessions v. Dimaya*, 138 S. Ct. 1204, 1213-14 (2018). "Conversely, if persons of reasonable intelligence can derive a core meaning from a statute," that alone "precludes facial invalidity." *Indigo Room, Inc. v. City of Fort Myers*, 710 F.3d 1294, 1302 (11th Cir. 2013).

As reflected in these articulations of the legal standard, facial vagueness is hard to prove. That a statute fails to "define each and every word" does not make it vague. *United States v. Sepulveda*, 115 F.3d 882, 886 n.9 (11th Cir. 1997). Nor does the fact that the statute creates "close cases," applies unclearly in "marginal fact situations," or applies uncertainly in "a particular situation"—virtually every law does that. *Williams*, 553 U.S. at 305-06; *Powell*, 423 U.S. at 93; *Harris County Comm'rs Court v. Moore*, 420 U.S. 77, 87 n.9 (1975). "We can never expect mathematical certainty from our language." *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972). And "the law is full of instances where a man's fate depends on his estimating rightly … some matter of degree." *Nash v. United States*, 229 U.S. 373, 377 (1913). "'[P]erfect clarity and precise guidance have never been required even of regulations that restrict expressive activity,'" *Williams*, 553 U.S. at 304, though as explained the solicitation provision does not facially restrict expressive activity, *supra* II.A.

Examples from the caselaw of statutes that are *not* facially vague include:

- A ban on picketing "in such a manner as to obstruct or unreasonably interfere with" the "free ingress or egress to and from" any courthouse. *Cameron v. Johnson*, 390 U.S. 611, 616 (1968).

- A ban on making a sound that "unreasonably disturbs, injures, or endangers" the "comfort, repose, health, peace, or safety of others" in certain areas. *Pine v. City of W. Palm Beach*, 762 F.3d 1262, 1276 (11th Cir. 2014).

- A requirement that people travel only by the "shortest practicable route." *Sproles v. Binford*, 286 U.S. 374, 393 (1932).

- A ban on "willfully mak[ing] or assist[ing] in the making of any noise or diversion" that "disturbs or tends to disturb the peace or good order" of a school or classroom. *Grayned*, 408 U.S. at 108.

In short, "[s]triking down [laws] as facially void for vagueness is a disfavored judicial exercise." *Schleifer v. Charlottesville*, 159 F.3d 843, 853 (4th Cir. 1998).

**2.** Florida's solicitation provision is not vague. The operative word of the statute is "solicit." Fla. Stat. §102.031(4)(a). No one contends that a flat ban on "soliciting voters" would be vague. To make things even clearer, Florida also defined "solicit" in part. *Cf. Manufs. Life Ins. v. Capitol Datsun, Inc.*, 566 F.2d 354, 359 (D.C. Cir. 1977) (encouraging definitions because they "minimiz[e] … uncertainty"). That definition is really a nonexhaustive list of examples of prohibited solicitation. *See* Fla. Stat. §102.031(4)(b) ("the terms 'solicit' or 'solicitation' shall include, but not be limited to"). One example in the list is "engaging in any activity with the intent to influence or effect of influencing a voter." *Id.*

The legislature did not make a clear statute unconstitutionally vague by adding this phrase. The challenged phrase has a core: it gives voters in the no-solicitation zone the right to be free from attempts to change how or whether they vote. Third parties looking to "steer between lawful and unlawful conduct" can easily do so by simply leaving these voters alone. *Grayned*, 408 U.S. at 108-09. Innocent parties have nothing to fear because the law excludes innocent and normal interactions within the no-solicitation zone. Several textual and contextual points make this core meaning plain.

36

**a.** Although the challenged phrase appears in a definition of the word "solicit," the "normal sense" of that word still bears "significantly on the meaning of" the challenged phrase. Scalia & Garner, *Reading Law* 232 (2012); *accord id.* at 228 (explaining that, when "a definition itself contains a term that is not clear," courts clarify its meaning by consulting "the word actually being defined"). Solicitation means "asking for, or enticing to, something." *Wis. Dep't of Rev. v. William Wrigley, Jr., Co.*, 505 U.S. 214, 223 (1992) (cleaned up). And it "requires the initiation of contact." *Mona Elec. Grp., Inc. v. Truland Serv. Corp.*, 56 F. App'x 108, 110 (4th Cir. 2003). So nothing in the solicitation provision forbids small talk between voters waiting in line, spontaneous kindnesses like "help[ing] an unsteady voter to the door," or uninitiated interactions where voters happen to see what someone is wearing. *Cf.* Doc. 665 at 177–78.

**b.** The challenged phrase also appears in a list of examples of prohibited solicitation, and those "neighboring words" give "more precise content" to the challenged phrase. *Williams*, 553 U.S. at 294. Again, solicitation means asking someone for something or trying to persuade someone to do something. *Wis. Dep't of Rev.*, 505 U.S. at 223. Fittingly, the statute's other examples of forbidden solicitation all involve either asking a voter to provide something (a vote, fact, opinion, contribution, poll response, or money) or giving something to a voter (a material, leaflet, handout, or good). *See* Fla. Stat. §102.031(4)(b). The challenged phrase thus prohibits that same kind of conduct. *See LWVF*, 32 F.4th at 1374.

Indeed, the solicitation definition did not come out of nowhere; it reflects a multi-state "consensus" that was formed over "our country's long history." *Citizens for Police Account.*, 572 F.3d at 1221. According to that consensus, a "solicitation-free zone around polling places is necessary to protect voters from confusion and undue influence and to preserve the integrity and dignity of the election process." *Id.* at 1221 & n.16. The idea is that "the last 15 seconds before [voters] enter the polling place should be their own, as free from interference as possible." *Minn. Voters All.*, 138 S. Ct. at 1886 (cleaned up). The statute "codifies the Florida legislature's view that the right of Florida's citizens to vote warrants substantial protection from commotion—that is, bustle, stir, confusion—around the voting place." *Citizens for Police Account.*, 572 F.3d at 1215.

This history links the examples in the statute together. Giving things to voters obviously affects whether and how they vote. The plaintiffs admit that they give out food and water, for example, to encourage voters to stay in line and actually go inside and pull the lever. And though asking voters questions and selling them items isn't necessarily connected to their vote, those solicitations "dete[r] potential voters from coming to the polls" in the first place. *Citizens for Police Account.*, 572 F.3d at 1219. If solicitation is freely allowed, then "some—maybe many—voters faced with running the gauntlet will refrain from participating in the election process merely to avoid the resulting commotion." *Id.* at 1220 (cleaned up).

**c.** The challenged phrase also requires the covered activities to occur at a specific place (the designated no-solicitation zone) at a specific time (during voting) and

targeting specific people (voters). *See* Fla. Stat. §102.031(4)(a)-(e). "Given this particular context," the challenged phrase "gives fair notice to those to whom it is directed." *Grayned*, 408 U.S. at 112; *accord Pine*, 762 F.3d at 1275 (that law was limited to areas "near health care facilities" prevented it from being facially vague). Florida did not enact "a vague, general" law that bans any activity that influences someone; it enacted a law "written specifically for the [voting] context, where the prohibited disturbances are easily measured by their impact on the normal activities of the [polling place]." *Grayned*, 408 U.S. at 112. In other words, the impact on a voter's decision whether and how to vote.

**d.** The statute's exceptions also clarify its scope. After defining "solicit" to include "seeking … any … fact[ or] opinion" or "conducting any poll," the statute carves out "exit polling" from its scope. Fla. Stat. §102.031(4)(b). In the same way, after defining "solicit" to include "engaging in any activity with the intent to influence or effect of influencing a voter," the statute carves out election officials "giving items to voters" from its scope. *Id.* That the legislature needed to include this exception highlights that the challenged phrase otherwise *does* cover non-officials "giving items to voters." Indeed, the plaintiffs sued to challenge that phrase precisely because they understood that it bans distributing food and water to voters in line. But that clear application of the statute alone defeats their facial-vagueness challenge. *See Holder v. Humanitarian Law Proj.*, 561 U.S. 1, 20 (2010).

**III.** The district court's contrary analysis was mistaken. The court refused to consult the "plain or ordinary meaning" of the word "solicit," Doc. 665 at 173, even though that information is "the most significant" contextual evidence of what the challenged phrase means. *Reading Law* 232. The district court also looked at the challenged phrase in a vacuum, without using the nearby examples, history, or the statute's limited, voting-specific context to inform its meaning. *Cf. Williams*, 553 U.S. at 306 (instructing courts to consider any "narrowing context" or "settled legal meanings"). That surrounding context would have answered the court's rhetorical questions about what the statute doesn't want to be influenced (a voter's decision whether or how to vote) and the kind of activities that influence voters (giving them or asking them things). *Cf.* Doc. 665 at 174-77.

After failing to accurately define the statute's core, the district court made several legal errors as well. It fretted that certain terms remain "undefined," *id.* at 174, and that certain hypotheticals present close cases, *id.* at 177-78. Yet both lines of reasoning have been rejected by binding precedent. *See Sepulveda*, 115 F.3d at 886 n.9 (definitions not needed); *Williams*, 553 U.S. at 306 (close cases not relevant). The court's concern that the statute says "*any* activity," Doc. 665 at 174, confused vagueness for breadth. *See United States v. Brenson*, 104 F.3d 1267, 1281 (11th Cir. 1997) ("The mere fact that a term 'covers a broad spectrum of conduct,' does not render it unconstitutionally vague.").

And even assuming the testimony of county officials could make a statute facially vague, the district court took the wrong lesson from the supervisors' testimony. As the

court noted, the supervisors generally testified that SB90 *would not change* how they applied the solicitation provision. Those counties were already banning third parties from distributing food and water in the no-solicitation zone before SB90, presumably because they understood that conduct to fall within the preexisting, nonexhaustive definition of "solicit." *See* Doc. 665 at 178-80. That the statute makes explicit what was previously implicit, and codifies what was already happening on the ground, does not somehow make it vague.

The district court's main point was its concern that the phrase "effect of influencing a voter" was impermissibly subjective. *See id.* at 178. But as explained, influencing a voter in this context means changing his decision about whether or how to vote. Whether someone's conduct had that effect on a voter "is a true-or-false determination, not a subjective judgment such as whether conduct is 'annoying' or 'indecent.'" *Williams*, 553 U.S. at 306. While it might be difficult to prove that effect in many cases (unless a specific voter comes forward and testifies), that difficulty does not implicate the vagueness doctrine. "What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is." *Id.*

Nor would a court tasked with enforcing the statute adopt the district court's draconian reading. *See* Doc. 665 at 173-78. Though the phrase "effect of influencing" does not contain a scienter requirement, courts would read one in. *See United States v. Brantley*, 68 F.3d 1283, 1289 (11th Cir. 1995); *Maestas v. State*, 76 So. 3d 991, 994 (Fla.

41

Dist. Ct. App. 2011). And they would read all the terms with lenity toward the defend-ant. *See Martin v. State*, 259 So. 3d 733, 741 (Fla. 2018). After all that construing, courts would read the challenged phrase to require that the defendant's conduct not just *influ-ence* whether or how someone voted, but also had that "'natural and probable effect.'" *E.g.*, *United States v. Aguilar*, 515 U.S. 593, 599 (1995) (reading the catchall provision of 18 U.S.C. §1503, which prohibits "influenc[ing]" the "due administration of justice," to require that the defendant's conduct "have the 'natural and probable effect' of interfer-ing with the due administration of justice"); *United States v. Thomas*, 916 F.2d 647, 651 (11th Cir. 1990) (same). Any difficulties in applying this standard in actual prosecutions are "addressed, not by the doctrine of vagueness, but by the requirement of proof be-yond a reasonable doubt." *Williams*, 553 U.S. at 306.

## CONCLUSION

For the reasons in this brief, the Court should reverse the district court with respect to the solicitation definition. For the reasons in the State's brief, the Court should reverse the district court with respect to intentional discrimination and preclear-ance. On the registration disclaimer, this Court should grant appellants' pending motion and dismiss No. 22-11133, vacate the relevant portions of the district court's decision, and remand with instructions to dismiss the plaintiffs' challenges as moot.

42

Respectfully submitted,

*/s/ Cameron T. Norris*

| | |
|---|---|
| Benjamin J. Gibson | Cameron T. Norris |
| Daniel E. Nordby | Jeffrey S. Hetzel |
| George N. Meros Jr. | CONSOVOY MCCARTHY PLLC |
| Frank A. Zacherl | 1600 Wilson Boulevard, Suite 700 |
| Amber Stoner Nunnally | Arlington, VA 22209 |
| Tara R. Price | (703) 243-9423 |
| SHUTTS & BOWEN LLP | cam@consovoymccarthy.com |
| 215 South Monroe Street, Suite 804 | jhetzel@consovoymccarthy.com |
| Tallahassee, Florida 32301 | |
| (850) 241-1717 | Tyler R. Green |
| bgibson@shutts.com | CONSOVOY MCCARTHY PLLC |
| dnordby@shutts.com | 222 South Main Street, 5th Floor |
| gmeros@shutts.com | Salt Lake City, Utah 84101 |
| fzacherl@shutts.com | tyler@consovoymccarthy.com |
| anunnally@shutts.com | |
| tprice@shutts.com | |

*Counsel for Republican National Committee*
*& National Republican Senatorial Committee*

## CERTIFICATE OF COMPLIANCE

This brief complies with Rule 32(a)(7) because it contains 11,164 words, excluding the parts that can be excluded. This reply also complies with Rule 32(a)(5)-(6) because it's prepared in a proportionally spaced face using Microsoft Word 2016 in 14-point Garamond font (plus 14-point Helvetica font for headings).

Dated: July 11, 2022                          */s/ Cameron T. Norris*

## CERTIFICATE OF SERVICE

I e-filed this brief with the Court, which will email everyone requiring notice.

Dated: July 11, 2022                          */s/ Cameron T. Norris*