Nos. 22-11133-GG, 22-11143-GG, 22-11144-GG, 22-11145-GG (consolidated)

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

LEAGUE OF WOMEN VOTERS OF FLORIDA, INC., et al.,

*Plaintiffs-Appellees,*

v.

FLORIDA SECRETARY OF STATE, et al.,

*Defendants-Appellants.*

Appeal from the U.S. District Court for the Northern District of Florida,
Nos. 4:21-cv-242, 4:21-cv-186, 4:21-cv-187, 4:21-cv-201 (Walker, C.J.)

## APPELLANTS' APPENDIX – VOLUME I OF XXVI

Mohammad O. Jazil
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
119 South Monroe Street, Suite 500
Tallahassee, FL 32301
(850) 274-1690

*Lead Counsel for Secretary Byrd*

Andy Bardos
GRAYROBINSON, P.A.
301 South Bronough Street,
Suite 600
Tallahassee, FL 32301
(850) 577-9090

*Lead Counsel for Supervisors Hays and Doyle*

Tyler R. Green
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard,
Suite 700
Arlington, VA 22209
(703) 243-9423

*Lead Counsel for RNC & NRSC*

Henry C. Whitaker
FLORIDA ATTORNEY
GENERAL OFFICE
PL-01 The Capitol
Tallahassee, FL 3300
(850) 414-3300

*Lead Counsel for Attorney General Moody*

## INDEX TO APPENDIX

| Volume | Tab | Title |
|---|---|---|
| 1 | Dkt1 | *FRT v. Secretary*, **4:21-cv-00201** |
| 1 | 1 | Complaint (Doc. 1) |
| 1 | 2 | Amended Complaint (Doc. 59) |
| 2 | 3 | RNC & NRSC Answer (Doc. 103) |
| 2 | 4 | Doyle Answer (Doc. 149) |
| 2 | 5 | Hays Answer (Doc. 165) |
| 2-3 | 6 | Secretary Answer (Doc. 225) |
| 3 | Dkt2 | *HTFF v. Secretary*, **4:21-cv-00242** |
| 3 | 7 | Complaint (Doc. 1) |
| 3 | 8 | Amended Complaint (Doc. 44) |
| 3 | 9 | RNC & NRSC Answer (Doc. 73) |
| 3 | 10 | Doyle Answer (Doc. 150) |
| 3 | 11 | Hays Answer (Doc. 167) |
| 3-4 | 12 | Secretary Answer (Doc. 206) |
| 4 | 13 | Attorney General Answer (Doc. 207) |
| 4 | Dkt3 | *NAACP v. Secretary*, **4:21-cv-00187** |
| 4 | 14 | Complaint (Doc. 1) |
| 4 | 15 | Amended Complaint (Doc. 45) |
| 4-5 | 16 | Hays Answer (Doc. 182) |
| 5 | 17 | Doyle Answer (Doc. 183) |
| 5 | 18 | Secretary Answer (Doc. 266) |
| 5 | 19 | Order on Secretary's Motion for Summary Judgement (Doc 328) |
| 5 | Dkt-4 | *LWV v. Secretary*, **4:21-cv-00186** |
| 5-6 | 20 | Complaint (Doc. 1) |
| 6 | 21 | Amended Complaint (Doc. 124) |
| 6 | 22 | RNC & NRSC Answer (Doc. 174) |
| 6 | 23 | Hays Answer (Doc. 189) |
| 6 | 24 | Doyle Answer (Doc. 190) |
| 6 | 25 | Order on Secretary's Motion to Dismiss (Doc. 274) |
| 6-7 | 26 | Secretary Answer (Doc. 293) |
| 7 | 27 | Attorney General Answer (Doc. 294) |
| 7 | 28 | Order on Cross-Motions for Summary Judgment (Doc. 380) |
| 7 | 29 | Florida House Public Integrity & Elections Transcript (Doc. 461-35) (Exh. 426) |
| 7 | 30 | Florida House Appropriations Transcript (Doc. 461-36) (Exh. 427) |

| 7-8 | 31 | Florida House State Affairs Transcript (Doc. 461-38) (Exh. 429) |
|---|---|---|
| 8 | 32 | Florida Senate Public Integrity & Elections Transcript (Doc. 461-54) (Exh. 445) |
| 8-9 | 33 | Florida Senate Debate (Doc. 461-98) (Exh. 489) |
| 9 | 34 | Florida House Transcript (Doc. 462-9) (Exh. 508) |
| 9-10 | 35 | Florida House Transcript (Doc. 462-29) (Exh. 528) |
| 10 | 36 | Second Amended Herron Report (Doc. 467-5) |
| 10-11 | 37 | Smith Report (Doc. 467-7) |
| 11-12 | 38 | Florida House Public Integrity & Elections Transcript (Doc. 466-87) (Exh. 1596) |
| 12 | 39 | Legislative Memoranda (Docs. 481-1, 481-3) |
| 12 | 40 | Order Granting in Part Defendants' Request for Judicial Notice (Doc. 523) |
| 12-13 | 41 | Hays Deposition (Doc. 549-2) |
| 13 | 42 | State Election Director Communication (Doc. 608-68) (Exh. 318) |
| 13 | 43 | Miami-Dade County Memorandum (Doc. 608-74) (Exh. 382) |
| 13 | 44 | Miami-Dade County Memorandum (Doc. 608-80) (Exh. 390) |
| 13 | 45 | Counsel for Secretary Communication (Doc. 608-114) (Exh. 1576) |
| 13 | 46 | Lee, Leon, and Lake County Public Integrity & Elections Survey Questions (Doc. 634-10, 634-12, 634-13) (Exh. 137, 148, 177) |
| 13-14 | 47 | Secretary, Attorney General, RNC, & NRSC Post-Trial Brief (Doc. 648) |
| 14-15 | 48 | LWV Post-Trial Brief (Doc. 649) |
| 15 | 49 | HTFF Post-Trial Brief (Doc. 650) |
| 16-18 | 50 | NAACP & FRT Post-Trial Brief (Doc. 652) |
| 18 | 51 | Order for Expedited Supplemental Briefing (Doc. 659) |
| 18 | 52 | Plaintiffs' Joint Brief in Response to Court's Order Requesting Briefing on SB 524 (Doc. 661) |
| 18 | 53 | Defendants' Brief in Response to Court's Order Requesting Briefing on SB 524 (Doc. 662) |
| 18-20 | 54 | Final Order (Doc. 665) |
| 20 | 55 | Plaintiffs' Notice of Partial Non-Objection to Preclearance of SB 524 (Doc. 682) |
| 20 | 56 | Bench Trial Transcript, Day 1 |
| 20-21 | 57 | Bench Trial Transcript, Day 2 |
| 21 | 58 | Bench Trial Transcript, Day 3 |

| 21-22 | 59 | Bench Trial Transcript, Day 4 |
| 22-23 | 60 | Bench Trial Transcript, Day 5 |
| 23 | 61 | Bench Trial Transcript, Day 6 |
| 23 | 62 | Bench Trial Transcript, Day 7 |
| 23-24 | 63 | Bench Trial Transcript, Day 8 |
| 24-25 | 64 | Bench Trial Transcript, Day 9 |
| 25 | 65 | Bench Trial Transcript, Day 10 |
| 25 | 66 | Bench Trial Transcript, Day 11 |
| 25-26 | 67 | Bench Trial Transcript, Day 12 |
| 26 | 68 | Bench Trial Transcript, Day 13 |
| 26 | 69 | Bench Trial Transcript, Day 14 |

# DKT1

U.S. District Court
**Northern District of Florida (Tallahassee)**
**CIVIL DOCKET FOR CASE #: 4:21-cv-00201-MW-MJF**

FLORIDA RISING TOGETHER et al v. LEE et al
Assigned to: CHIEF JUDGE MARK E WALKER
Referred to: MAGISTRATE JUDGE MICHAEL J FRANK
Case in other court:  USCA, 22-11145-G
Cause: 42:1983 Civil Rights Act

Date Filed: 05/17/2021
Date Terminated: 03/31/2022
Jury Demand: None
Nature of Suit: 441 Civil Rights: Voting
Jurisdiction: Federal Question

**Plaintiff**

**FLORIDA RISING TOGETHER**                    represented by   **SABRINA S KHAN**
ADVANCEMENT PROJECT - WASHINGTON
DC
1220 L STREET NW
SUITE 850
WASHINGTON, DC 20005
202-728-9557
Email: skhan@advancementproject.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**AARON STIEFEL**
ARNOLD & PORTER LLP - NEW YORK NY
250 WEST 55TH STREET
NEW YORK, NY 10019
212-836-8000
Email: aaron.stiefel@arnoldporter.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**ANDREW C CASE**
LATINO JUSTICE PRLDEF - NEW YORK NY
475 RIVERSIDE DRIVE
SUITE 1901
NEW YORK, NY 10115
212-739-4506
Email: acase@latinojustice.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**ANDREW RICHARD HIRSCHEL**
ARNOLD & PORTER LLP - NEW YORK NY
250 WEST 55TH STREET
NEW YORK, NY 10019
212-836-7827
Email: andrew.hirschel@arnoldporter.com
*ATTORNEY TO BE NOTICED*

**BRENDA WRIGHT**
DEMOS - NEW YORK NY
80 BROAD STREET
4TH FLOOR

NEW YORK, NY 10004
646-948-1621
Email: [email protected]
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**DANIEL ROSS BERNSTEIN**
ARNOLD & PORTER LLP - NEW YORK NY
250 WEST 55TH STREET
NEW YORK, NY 10019
212-836-8000
Email: [email protected]
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**ELISABETH SUSAN THEODORE**
ARNOLD & PORTER LLP - WASHINGTON
DC
601 MASSACHUSETTS NW
WASHINGTON, DC 20001
202-942-5545
Fax: 202-942-5000
Email: [email protected]
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**EMILY MIRANDA GALINDO**
LATINO JUSTICE PRLDEF - TAMPA FL
3813 HORATIO STREET
APT B
TAMPA, FL 33609
917-209-7834
Email: [email protected]
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**ESPERANZA SEGARRA**
DARROW EVERETT LLP - NEW YORK NY
450 SEVENTH AVENUE
SUITE 1802
NEW YORK, NY 10123
212-335-2090
Fax: 212-335-2091
Email: [email protected]
*ATTORNEY TO BE NOTICED*

**FRANCISCA D FAJANA**
NATIONAL CENTER FOR LAW AND
ECONOMIC JUSTICE
275 7TH AVENUE
SUITE 1506
NEW YORK, NY 10001
212-633-6967
Email: [email protected]
*ATTORNEY TO BE NOTICED*

**JANINE MARIE LOPEZ**
ARNOLD & PORTER LLP - WASHINGTON

DC
601 MASSACHUSETTS NW
WASHINGTON, DC 20001
202-942-5545
Fax: 202-942-5000
Email: janine.lopez@arnoldporter.com
*TERMINATED: 04/28/2022*

**JEFFREY ANDREW MILLER**
ARNOLD & PORTER LLP - PALO ALTO CA
3000 EL CAMINO REAL
FIVE PALO ALTO SQUARE
SUITE 500
PALO ALTO, CA 94306-3807
650-319-4538
Email: jeffrey.miller@arnoldporter.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**JEREMY KARPATKIN**
ARNOLD & PORTER LLP - WASHINGTON
DC
601 MASSACHUSETTS NW
WASHINGTON, DC 20001
202-942-5545
Fax: 202-942-5000
Email: jeremy.karpatkin@arnoldporter.com
*ATTORNEY TO BE NOTICED*

**JOHN A FREEDMAN**
ARNOLD & PORTER LLP - WASHINGTON
DC
601 MASSACHUSETTS NW
WASHINGTON, DC 20001
202-942-5545
Fax: 202-942-5000
Email: john.freedman@arnoldporter.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**LESLIE CLAIRE BAILEY**
ARNOLD & PORTER LLP - WASHINGTON
DC
601 MASSACHUSETTS NW
WASHINGTON, DC 20001
202-942-5545
Fax: 202-942-5000
Email: leslie.bailey@arnoldporter.com
*TERMINATED: 04/12/2022*

**RYAN D BUDHU**
ARNOLD & PORTER LLP - NEW YORK NY
250 WEST 55TH STREET
NEW YORK, NY 10019
212-836-8000
Email: ryan.budhu@arnoldporter.com
*ATTORNEY TO BE NOTICED*

**SAMUEL ISAAC FERENC**
ARNOLD & PORTER LLP - WASHINGTON DC
601 MASSACHUSETTS NW
WASHINGTON, DC 20001
202-942-5545
Fax: 202-942-5000
Email: sam.ferenc@arnoldporter.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**SHARION TRENELL SCOTT**
ADVANCEMENT PROJECT NATIONAL OFFICE
1220 L STREET NW
SUITE 850
WASHINGTON, DC 20005
202-728-9557
Email: sscott@advancementproject.org
*ATTORNEY TO BE NOTICED*

**KIRA ROMERO-CRAFT**
DEMOS - NEW YORK NY
80 BROAD STREET
4TH FLOOR
NEW YORK, NY 10004
212-389-1415
Email: kromero-craft@demos.org *(Inactive)*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**UNIDOSUS**                    represented by   **AARON STIEFEL**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**ANDREW C CASE**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**ANDREW RICHARD HIRSCHEL**
(See above for address)
*ATTORNEY TO BE NOTICED*

**BRENDA WRIGHT**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**DANIEL ROSS BERNSTEIN**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**ELISABETH SUSAN THEODORE**
(See above for address)
*PRO HAC VICE*

*ATTORNEY TO BE NOTICED*

**EMILY MIRANDA GALINDO**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**ESPERANZA SEGARRA**
(See above for address)
*ATTORNEY TO BE NOTICED*

**FRANCISCA D FAJANA**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**JANINE MARIE LOPEZ**
(See above for address)
*TERMINATED: 04/28/2022*

**JEFFREY ANDREW MILLER**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**JEREMY KARPATKIN**
(See above for address)
*ATTORNEY TO BE NOTICED*

**JOHN A FREEDMAN**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**LESLIE CLAIRE BAILEY**
(See above for address)
*TERMINATED: 04/12/2022*

**RYAN D BUDHU**
(See above for address)
*ATTORNEY TO BE NOTICED*

**SAMUEL ISAAC FERENC**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**SHARION TRENELL SCOTT**
(See above for address)
*ATTORNEY TO BE NOTICED*

**KIRA ROMERO-CRAFT**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**EQUAL GROUND EDUCATION FUND**          represented by **KIRA ROMERO-CRAFT**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**AARON STIEFEL**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**ANDREW C CASE**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**ANDREW RICHARD HIRSCHEL**
(See above for address)
*ATTORNEY TO BE NOTICED*

**BRENDA WRIGHT**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**DANIEL ROSS BERNSTEIN**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**ELISABETH SUSAN THEODORE**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**EMILY MIRANDA GALINDO**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**ESPERANZA SEGARRA**
(See above for address)
*ATTORNEY TO BE NOTICED*

**FRANCISCA D FAJANA**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**JANINE MARIE LOPEZ**
(See above for address)
*TERMINATED: 04/28/2022*

**JEFFREY ANDREW MILLER**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**JEREMY KARPATKIN**
(See above for address)
*ATTORNEY TO BE NOTICED*

**JOHN A FREEDMAN**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**LESLIE CLAIRE BAILEY**
(See above for address)
*TERMINATED: 04/12/2022*

**RYAN D BUDHU**
(See above for address)
*ATTORNEY TO BE NOTICED*

**SAMUEL ISAAC FERENC**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**SHARION TRENELL SCOTT**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**FAITH IN FLORIDA**                    represented by    **AARON STIEFEL**
*TERMINATED: 10/29/2021*                                  (See above for address)
                                                          *PRO HAC VICE*
                                                          *ATTORNEY TO BE NOTICED*

**ANDREW C CASE**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**ANDREW RICHARD HIRSCHEL**
(See above for address)
*ATTORNEY TO BE NOTICED*

**BRENDA WRIGHT**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**DANIEL ROSS BERNSTEIN**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**ELISABETH SUSAN THEODORE**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**EMILY MIRANDA GALINDO**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**ESPERANZA SEGARRA**
(See above for address)
*ATTORNEY TO BE NOTICED*

**FRANCISCA D FAJANA**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**JANINE MARIE LOPEZ**
(See above for address)
*TERMINATED: 04/28/2022*

**JEFFREY ANDREW MILLER**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**JEREMY KARPATKIN**
(See above for address)
*ATTORNEY TO BE NOTICED*

**JOHN A FREEDMAN**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**LESLIE CLAIRE BAILEY**
(See above for address)
*TERMINATED: 04/12/2022*

**RYAN D BUDHU**
(See above for address)
*ATTORNEY TO BE NOTICED*

**SAMUEL ISAAC FERENC**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**SHARION TRENELL SCOTT**
(See above for address)
*ATTORNEY TO BE NOTICED*

**KIRA ROMERO-CRAFT**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**HISPANIC FEDERATION**        represented by  **AARON STIEFEL**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**ANDREW C CASE**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**ANDREW RICHARD HIRSCHEL**
(See above for address)
*ATTORNEY TO BE NOTICED*

**BRENDA WRIGHT**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**DANIEL ROSS BERNSTEIN**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**ELISABETH SUSAN THEODORE**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**EMILY MIRANDA GALINDO**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**ESPERANZA SEGARRA**
(See above for address)
*ATTORNEY TO BE NOTICED*

**FRANCISCA D FAJANA**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**JANINE MARIE LOPEZ**
(See above for address)
*TERMINATED: 04/28/2022*

**JEFFREY ANDREW MILLER**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**JEREMY KARPATKIN**
(See above for address)
*ATTORNEY TO BE NOTICED*

**JOHN A FREEDMAN**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**LESLIE CLAIRE BAILEY**
(See above for address)
*TERMINATED: 04/12/2022*

**RYAN D BUDHU**
(See above for address)

*ATTORNEY TO BE NOTICED*

**SAMUEL ISSACHAROFF**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**SHARION TRENELL SCOTT**
(See above for address)
*ATTORNEY TO BE NOTICED*

**KIRA ROMERO-CRAFT**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**PODER LATINX**                    represented by    **AARON STIEFEL**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**ANDREW C CASE**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**ANDREW RICHARD HIRSCHEL**
(See above for address)
*ATTORNEY TO BE NOTICED*

**BRENDA WRIGHT**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**DANIEL ROSS BERNSTEIN**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**ELISABETH SUSAN THEODORE**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**EMILY MIRANDA GALINDO**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**ESPERANZA SEGARRA**
(See above for address)
*ATTORNEY TO BE NOTICED*

**FRANCISCA D FAJANA**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**JANINE MARIE LOPEZ**
(See above for address)
*TERMINATED: 04/28/2022*

**JEFFREY ANDREW MILLER**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**JEREMY KARPATKIN**
(See above for address)
*ATTORNEY TO BE NOTICED*

**JOHN A FREEDMAN**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**LESLIE CLAIRE BAILEY**
(See above for address)
*TERMINATED: 04/12/2022*

**RYAN D BUDHU**
(See above for address)
*ATTORNEY TO BE NOTICED*

**SAMUEL ISAAC FERENC**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**SHARION TRENELL SCOTT**
(See above for address)
*ATTORNEY TO BE NOTICED*

**KIRA ROMERO-CRAFT**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**HAITIAN NEIGHBORHOOD CENTER
SANT LA**                                    represented by   **AARON STIEFEL**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**ANDREW C CASE**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ANDREW RICHARD HIRSCHEL**
(See above for address)
*ATTORNEY TO BE NOTICED*

**BRENDA WRIGHT**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**DANIEL ROSS BERNSTEIN**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**ELISABETH SUSAN THEODORE**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**EMILY MIRANDA GALINDO**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**ESPERANZA SEGARRA**
(See above for address)
*ATTORNEY TO BE NOTICED*

**FRANCISCA D FAJANA**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**JANINE MARIE LOPEZ**
(See above for address)
*TERMINATED: 04/28/2022*

**JEFFREY ANDREW MILLER**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**JEREMY KARPATKIN**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**JOHN A FREEDMAN**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**KIRA ROMERO-CRAFT**
(See above for address)
*ATTORNEY TO BE NOTICED*

**LESLIE CLAIRE BAILEY**
(See above for address)
*TERMINATED: 04/12/2022*

**RYAN D BUDHU**
(See above for address)
*ATTORNEY TO BE NOTICED*

**SAMUEL ISAAC FERENC**
(See above for address)

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**SHARION TRENELL SCOTT**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**MI FAMILIA VOTA EDUCATION FUND**    represented by    **AARON STIEFEL**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**ANDREW C CASE**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**ANDREW RICHARD HIRSCHEL**
(See above for address)
*ATTORNEY TO BE NOTICED*

**BRENDA WRIGHT**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**DANIEL ROSS BERNSTEIN**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**ELISABETH SUSAN THEODORE**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**EMILY MIRANDA GALINDO**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**ESPERANZA SEGARRA**
(See above for address)
*ATTORNEY TO BE NOTICED*

**FRANCISCA D FAJANA**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**JANINE MARIE LOPEZ**
(See above for address)
*TERMINATED: 04/28/2022*

**JEFFREY ANDREW MILLER**
(See above for address)
*PRO HAC VICE*

*ATTORNEY TO BE NOTICED*

**JEREMY KARPATKIN**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**JOHN A FREEDMAN**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**KIRA ROMERO-CRAFT**
(See above for address)
*ATTORNEY TO BE NOTICED*

**LESLIE CLAIRE BAILEY**
(See above for address)
*TERMINATED: 04/12/2022*

**RYAN D BUDHU**
(See above for address)
*ATTORNEY TO BE NOTICED*

**SAMUEL ISAAC FERENC**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**SHARION TRENELL SCOTT**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**LAUREL M LEE**                                   represented by **ASHLEY E DAVIS**
                                                   FLORIDA DEPARTMENT OF STATE
                                                   RA GRAY BUILDING
                                                   500 SOUTH BRONOUGH STREET
                                                   SUITE 100
                                                   TALLAHASSEE, FL 32399
                                                   850-245-6531
                                                   Email: ashley.davis@dos.myflorida.com
                                                   *ATTORNEY TO BE NOTICED*

                                                   **BRADLEY ROBERT MCVAY**
                                                   FLORIDA DEPARTMENT OF STATE
                                                   OFFICE OF GENERAL COUNSEL
                                                   500 S BRONOUGH STREET
                                                   TALLAHASSEE, FL 32399
                                                   352-219-5195
                                                   Email: brad.mcvay@dos.myflorida.com
                                                   *ATTORNEY TO BE NOTICED*

                                                   **COLLEEN E O'BRIEN**
                                                   FLORIDA DEPARTMENT OF STATE
                                                   500 S BRONOUGH STREET

SUITE 100
TALLAHASSEE, FL 32399
850-245-6302
Email: colleen.obrien@dos.myflorida.com
*ATTORNEY TO BE NOTICED*

**DALLIN B HOLT**
HOLTZMAN VOGEL BARAN ET AL -
HAYMARKET VA
15405 JOHN MARSHALL HWY
HAYMARKET, VA 20169
540-341-8808
Email: dholt@hvjt.law
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**GARY VERGIL PERKO**
HOLTZMAN VOGEL BARAN ET AL -
TALLAHASSEE FL
119 S MONROE STREET
SUITE 500
TALLAHASSEE, FL 32301
850-391-0502
Email: gperko@HoltzmanVogel.com
*ATTORNEY TO BE NOTICED*

**JOHN J CYCON**
HOLTZMAN VOGEL BARAN ET AL -
HAYMARKET VA
15405 JOHN MARSHALL HWY
HAYMARKET, VA 20169
212-701-3402
Email: jcycon@holtzmanvogel.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**KENNETH CLARK DAINES**
HOLTZMAN VOGEL BARAN ET AL -
HAYMARKET VA
15405 JOHN MARSHALL HWY
HAYMARKET, VA 20169
540-341-8808
Email: kdaines@holtzmanvogel.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**MOHAMMAD OMAR JAZIL**
HOLTZMAN VOGEL BARAN ET AL -
TALLAHASSEE FL
119 S MONROE STREET
SUITE 500
TALLAHASSEE, FL 32301
850-391-0503
Email: mjazil@holtzmanvogel.com
*ATTORNEY TO BE NOTICED*

**PHILLIP MICHAEL GORDON**
HOLTZMAN VOGEL BARAN ET AL -

HAYMARKET VA
15405 JOHN MARSHALL HWY
HAYMARKET, VA 20169
540-341-8808
Email: pgordon@holtzmanvogel.com
*ATTORNEY TO BE NOTICED*

**WILLIAM DAVID CHAPPELL**
OFFICE OF THE ATTORNEY GENERAL
CAPITAL COLLATERAL APPEALS
PL-01 THE CAPITOL
TALLAHASSEE, FL 32399
850-414-3567
Email: david.chappell@dos.myflorida.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**CRAIG LATIMER**                              represented by   **STEPHEN MARK TODD**
OFFICE OF THE COUNTY ATTORNEY
HILLSBOROUGH COUNTY
601 E KENNEDY BLVD
27TH FLOOR
TAMPA, FL 33602
813-272-5670
Fax: 813-272-5758
Email: todds@hillsboroughcounty.org
*ATTORNEY TO BE NOTICED*

**Defendant**

**MARY JANE ARRINGTON**                        represented by   **JOHN T LAVIA , III**
GARDNER BIST BOWDEN ET AL -
TALLAHASSEE FL
1300 THOMASWOOD DR
TALLAHASSEE, FL 32308
850-385-0070
Fax: 850-385-5416
Email: jlavia@gbwlegal.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**RONALD A LABASKY**
BREWTON PLANTE PA - TALLAHASSEE FL
215 S MONROE STREET
SUITE 825
TALLAHASSEE, FL 32301
850-222-7718
Fax: 850-222-8222
Email: rlabasky@bplawfirm.net
*ATTORNEY TO BE NOTICED*

**Defendant**

**PENNY OGG**                                  represented by   **FRANK MICHAEL MARI**
ROPER PA - ORLANDO FL
2707 E JEFFERSON STREET
ORLANDO, FL 32803
407-897-5150
Email: fmari@roperpa.com
*ATTORNEY TO BE NOTICED*

**JOHN M JANOUSEK**
ROPER, P.A. - ORLANDO FL
2707 E JEFFERSON STREET
ORLANDO, FL 32803
407-897-5150
Email: jjanousek@roperpa.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**SHIRLEY G KNIGHT**                    represented by   **EDWARD PAUL CUFFE**
MARKS GRAY PA - JACKSONVILLE FL
1200 RIVERPLACE BLVD
STE 800
JACKSONVILLE, FL 32207
904-807-2110
Email: pcuffe@marksgray.com
*TERMINATED: 06/01/2022*
*LEAD ATTORNEY*

**SUSAN SMITH ERDELYI**
MARKS GRAY PA - JACKSONVILLE FL
1200 RIVERPLACE BLVD
STE 800
JACKSONVILLE, FL 32207
904-398-0900
Fax: 904-399-8440
Email: sse@marksgray.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**KIM A BARTON**                    represented by   **DIANA MASTERS JOHNSON**
ALACHUA COUNTY ATTORNEYS OFFICE
12 SE 1ST STREET
GAINESVILLE, FL 32601
352-374-5218
Fax: 352-374-5216
Email: dmjohnson@alachuacounty.us
*ATTORNEY TO BE NOTICED*

**ROBERT CHARLES SWAIN**
ALACHUA COUNTY ATTORNEY'S OFFICE
12 SE FIRST ST
PO BOX 2877
GAINESVILLE, FL 32602
352-374-5218
Email: bswain@alachuacounty.us
*ATTORNEY TO BE NOTICED*

**Defendant**

**CHRIS MILTON**                    represented by   **EDWARD PAUL CUFFE**
(See above for address)
*TERMINATED: 06/01/2022*
*LEAD ATTORNEY*

**SUSAN SMITH ERDELYI**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**MARK ANDERSEN**                          represented by **EDWARD PAUL CUFFE**
(See above for address)
*TERMINATED: 06/01/2022*
*LEAD ATTORNEY*

**SUSAN SMITH ERDELYI**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**AMANDA SEYFANG**                         represented by **EDWARD PAUL CUFFE**
(See above for address)
*TERMINATED: 06/01/2022*
*LEAD ATTORNEY*

**SUSAN SMITH ERDELYI**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**LORI A SCOTT**                           represented by **FRANK MICHAEL MARI**
(See above for address)
*ATTORNEY TO BE NOTICED*

**JOHN M JANOUSEK**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**JOE SCOTT**                              represented by **BENJAMIN SALZILLO**
BROWARD COUNTY ATTORNEYS OFFICE
- FORT LAUDERDALE FL
115 S ANDREWS AVE
STE 423
FORT LAUDERDALE, FL 33301
561-245-0360
Email: bsalzillo@broward.org
*ATTORNEY TO BE NOTICED*

**BRENDALYN EDWARDS**
BROWARD COUNTY ATTORNEY'S OFFICE
115 S ANDREWS AVENUE
SUITE 423
FORT LAUDERDALE, FL 33301
954-357-7600
Fax: 954-357-7641
Email: brendalynedwards@gmail.com
*ATTORNEY TO BE NOTICED*

**JOSEPH K JARONE**
BROWARD COUNTY ATTORNEY
115 S ANDREWS AVENUE
RM 423
FORT LAUDERDALE, FL 33301
954-357-7600
Fax: 954-347-7641

Email: jkjarone@broward.org
*ATTORNEY TO BE NOTICED*

**NATHANIEL ADAM KLITSBERG**
BROWARD COUNTY ATTORNEYS OFFICE
- FORT LAUDERDALE FL
115 S ANDREWS AVE
STE 423
FORT LAUDERDALE, FL 33301
954-357-7600
Fax: 954-357-7641
Email: nklitsberg@broward.org
*ATTORNEY TO BE NOTICED*

**Defendant**

**SHARON CHASON**                            represented by  **EDWARD PAUL CUFFE**
(See above for address)
*TERMINATED: 06/01/2022*
*LEAD ATTORNEY*

**SUSAN SMITH ERDELYI**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**PAUL STAMOULIS**                            represented by  **ANDY V BARDOS**
GRAYROBINSON PA - TALLAHASSEE FL
301 S BRONOUGH ST STE 600
TALLAHASSEE, FL 32301
850-577-9090
Fax: 850-577-3311
Email: andy.bardos@gray-robinson.com
*ATTORNEY TO BE NOTICED*

**JAMES TIMOTHY MOORE , JR**
GRAYROBINSON PA - TALLAHASSEE FL
301 S BRONOUGH ST STE 600
TALLAHASSEE, FL 32301
850-577-9090
Fax: 850-577-3311
Email: tim.moore@gray-robinson.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**MAUREEN BAIRD**                            represented by  **DALE A SCOTT**
ROPER PA - ORLANDO FL
2707 E JEFFERSON STREET
ORLANDO, FL 32803
407-897-5150
Fax: 407-897-3332
Email: dscott@bellroperlaw.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**CHRIS H CHAMBLESS**                            represented by  **JOHN T LAVIA , III**
(See above for address)
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**RONALD LABRASCA**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**JENNIFER J EDWARDS**                 represented by   **ANDY V BARDOS**
                                                       (See above for address)
                                                       *ATTORNEY TO BE NOTICED*

                                                       **JAMES TIMOTHY MOORE , JR**
                                                       (See above for address)
                                                       *ATTORNEY TO BE NOTICED*

**Defendant**

**TOMI S BROWN**                       represented by   **EDWARD PAUL CUFFE**
                                                       (See above for address)
                                                       *TERMINATED: 06/01/2022*
                                                       *LEAD ATTORNEY*

                                                       **SUSAN SMITH ERDELYI**
                                                       (See above for address)
                                                       *ATTORNEY TO BE NOTICED*

**Defendant**

**MARK F NEGLEY**                      represented by   **FRANK MICHAEL MARI**
                                                       (See above for address)
                                                       *ATTORNEY TO BE NOTICED*

                                                       **JOHN M JANOUSEK**
                                                       (See above for address)
                                                       *ATTORNEY TO BE NOTICED*

**Defendant**

**STARLET CANNON**                     represented by   **EDWARD PAUL CUFFE**
                                                       (See above for address)
                                                       *TERMINATED: 06/01/2022*
                                                       *LEAD ATTORNEY*

                                                       **SUSAN SMITH ERDELYI**
                                                       (See above for address)
                                                       *ATTORNEY TO BE NOTICED*

**Defendant**

**MIKE HOGAN**                         represented by   **MARY MARGARET GIANNINI**
                                                       CITY OF JACKSONVILLE
                                                       OFFICE OF GENERAL COUNSEL
                                                       117 W DUVAL STREET
                                                       SUITE 480
                                                       JACKSONVILLE, FL 32202
                                                       904-255-5079
                                                       Email: mgiannini@coj.net
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*

                                                       **CRAIG DENNIS FEISER**

OFFICE OF GENERAL COUNSEL
117 W DUVAL STREET
SUITE 480
JACKSONVILLE, FL 32202
904-255-5052
Fax: 904-255-5120
Email: cfeiser@coj.net
*ATTORNEY TO BE NOTICED*

**Defendant**

**DAVID H STAFFORD**                    represented by    **KIA M JOHNSON**
                                                          CLARK PARTINGTON - PENSACOLA FL
                                                          125 E INTENDENCIA STREET
                                                          PENSACOLA, FL 32502
                                                          850-434-9200
                                                          Fax: 850-432-7340
                                                          Email: kjohnson@clarkpartington.com
                                                          *ATTORNEY TO BE NOTICED*

                                                          **MATTHEW REED SHAUD**
                                                          ESCAMBIA COUNTY ATTORNEYS OFFICE
                                                          - PENSACOLA FL
                                                          221 PALAFOX PLACE
                                                          SUITE 430
                                                          PENSACOLA, FL 32502
                                                          850-595-4970
                                                          Email: mrshaud@myescambia.com
                                                          *ATTORNEY TO BE NOTICED*

**Defendant**

**KAITI LENHART**                        represented by    **FRANK MICHAEL MARI**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

                                                          **JOHN M JANOUSEK**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

**Defendant**

**HEATHER RILEY**                        represented by    **EDWARD PAUL CUFFE**
                                                          (See above for address)
                                                          *TERMINATED: 06/01/2022*
                                                          *LEAD ATTORNEY*

                                                          **SUSAN SMITH ERDELYI**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

**Defendant**

**CONNIE SANCHEZ**                       represented by    **FRANK MICHAEL MARI**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

                                                          **JOHN M JANOUSEK**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

**Defendant**

**ALETRIS FARNAM**

represented by **GERALDO FRANCIS OLIVO , III**
HENDERSON FRANKLIN STARNES ETC -
FORT MYERS FL
1715 MONROE ST [33901]
PO BOX 280
FORT MYERS, FL 33902
239-344-1168
Email: jerry.olivo@henlaw.com
*ATTORNEY TO BE NOTICED*

**ROBERT C SHEARMAN**
HENDERSON FRANKLIN STARNES ETC -
FORT MYERS FL
1715 MONROE ST [33901]
PO BOX 280
FORT MYERS, FL 33902
239-344-1346
Email: robert.shearman@henlaw.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**JOHN HANLON**

represented by **FRANK MICHAEL MARI**
(See above for address)
*ATTORNEY TO BE NOTICED*

**JOHN M JANOUSEK**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**LAURA HUTTO**

represented by **EDWARD PAUL CUFFE**
(See above for address)
*TERMINATED: 06/01/2022*
*LEAD ATTORNEY*

**SUSAN SMITH ERDELYI**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**DIANE SMITH**

represented by **GERALDO FRANCIS OLIVO , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ROBERT C SHEARMAN**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**BRENDA HOOTS**

represented by **GERALDO FRANCIS OLIVO , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ROBERT C SHEARMAN**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**SHIRLEY ANDERSON**

represented by **JON A JOUBEN**
HERNANDO COUNTY
20 N MAIN STREET
SUITE 462
BROOKESVILLE, FL 34601-2850
351-754-4122
Fax: 352-754-4001
Email: jjouben@co.hernando.fl.us
*ATTORNEY TO BE NOTICED*

**KYLE J BENDA**
HERNANDO COUNTY ATTORNEYS
OFFICE
20 N MAIN ST
STE 462
BROOKESVILLE, FL 34601-2850
352-754-4122
Email: kbenda@co.hernando.fl.us
*ATTORNEY TO BE NOTICED*

**Defendant**

**THERISA MEADOWS**

represented by **GERALDO FRANCIS OLIVO , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ROBERT C SHEARMAN**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**LESLIE SWAN**

represented by **ANDY V BARDOS**
(See above for address)
*ATTORNEY TO BE NOTICED*

**JAMES TIMOTHY MOORE , JR**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**CAROL DUNAWAY**

represented by **EDWARD PAUL CUFFE**
(See above for address)
*TERMINATED: 06/01/2022*
*LEAD ATTORNEY*

**SUSAN SMITH ERDELYI**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**MARTY BISHOP**

represented by **FRANK MICHAEL MARI**
(See above for address)
*ATTORNEY TO BE NOTICED*

**JOHN M JANOUSEK**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**TRAVIS HART**

represented by **EDWARD PAUL CUFFE**
(See above for address)
*TERMINATED: 06/01/2022*
*LEAD ATTORNEY*

**SUSAN SMITH ERDELYI**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**ALAN HAYS**                              represented by **ANDY V BARDOS**
(See above for address)
*ATTORNEY TO BE NOTICED*

**JAMES TIMOTHY MOORE , JR**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**TOMMY DOYLE**                            represented by **ANDY V BARDOS**
(See above for address)
*ATTORNEY TO BE NOTICED*

**JAMES TIMOTHY MOORE , JR**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**MARK EARLEY**                            represented by **PATRICK SCOTT O'BRYANT**
MESSER CAPARELLO & SELF PA -
TALLAHASSEE FL
2618 CENTENNIAL PL
TALLAHASSEE, FL 32308
850-553-3469
Email: pobryant@lawfla.com
*LEAD ATTORNEY*

**MARK HERRON**
MESSER CAPARELLO & SELF PA -
TALLAHASSEE FL
2618 CENTENNIAL PL
TALLAHASSEE, FL 32308
850-222-0720
Fax: 850-224-4359
Email: mherron@lawfla.com
*ATTORNEY TO BE NOTICED*

**SUMMER DENAY BROWN**
MESSER CAPARELLO & SELF PA -
TALLAHASSEE FL
2618 CENTENNIAL PL
TALLAHASSEE, FL 32308
850-425-5209
Fax: 850-558-0657
Email: dbrown@lawfla.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**TAMMY JONES**

represented by **GERALDO FRANCIS OLIVO , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ROBERT C SHEARMAN**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**GRANT CONYERS**

represented by **EDWARD PAUL CUFFE**
(See above for address)
*TERMINATED: 06/01/2022*
*LEAD ATTORNEY*

**SUSAN SMITH ERDELYI**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**HEATH DRIGGERS**

represented by **FRANK MICHAEL MARI**
(See above for address)
*ATTORNEY TO BE NOTICED*

**JOHN M JANOUSEK**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**MICHAEL BENNETT**

represented by **ANDY V BARDOS**
(See above for address)
*ATTORNEY TO BE NOTICED*

**JAMES TIMOTHY MOORE , JR**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**WESLEY WILCOX**

represented by **ANDY V BARDOS**
(See above for address)
*ATTORNEY TO BE NOTICED*

**JAMES TIMOTHY MOORE , JR**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**VICKI DAVIS**

represented by **RONALD A LABASKY**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**CHRISTINA WHITE**

represented by **MICHAEL BENY VALDES**
MIAMI-DADE COUNTY ATTORNEYS
OFFICE
111 NW FIRST STREET
SUITE 2810

MIAMI, FL 33128
305-375-5620
Fax: 305-375-5634
Email: michael.valdes@miamidade.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**JOYCE GRIFFIN**                                    represented by **ANDY V BARDOS**
(See above for address)
*ATTORNEY TO BE NOTICED*

**JAMES TIMOTHY MOORE , JR**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**JANET H ADKINS**                                   represented by **EDWARD PAUL CUFFE**
(See above for address)
*TERMINATED: 06/01/2022*
*LEAD ATTORNEY*

**SUSAN SMITH ERDELYI**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**PAUL A LUX**                                       represented by **ELIZABETH DESLOGE ELLIS**
NABORS GIBLIN & NICKERSON PA -
TALLAHASSEE FL
1500 MAHAN DR STE 200
TALLAHASSEE, FL 32308
850-224-4070
Email: eellis@ngnlaw.com
*ATTORNEY TO BE NOTICED*

**GREGORY THOMAS STEWART**
NABORS GIBLIN & NICKERSON PA -
TALLAHASSEE FL
1500 MAHAN DR STE 200
TALLAHASSEE, FL 32308
850-224-4070
Fax: 850-224-4073
Email: gstewart@ngn-tally.com
*ATTORNEY TO BE NOTICED*

**KIRSTEN H MOOD**
NABORS GIBLIN & NICKERSON PA -
TALLAHASSEE FL
1500 MAHAN DR STE 200
TALLAHASSEE, FL 32308
850-224-4070
Email: kmood@ngnlaw.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**MELISSA ARNOLD**                                   represented by **GERALDO FRANCIS OLIVO , III**
(See above for address)

*ATTORNEY TO BE NOTICED*

**ROBERT J SHEARMAN**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**BILL COWLES**                              represented by   **NICHOLAS ARI SHANNIN**
SHANNIN LAW FIRM PA - ORLANDO FL
214 EAST LUCERNE CIRCLE
SUITE 200
ORLANDO, FL 32801
407-985-2222
Email: nshannin@shanninlaw.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**WENDY LINK**

**Defendant**

**BRIAN CORLEY**                             represented by   **ANDY V BARDOS**
(See above for address)
*ATTORNEY TO BE NOTICED*

**JAMES TIMOTHY MOORE , JR**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**JULIE MARCUS**                             represented by   **KELLY LYNN VICARI**
PINELLAS COUNTY ATTORNEYS OFFICE
315 COURT STREET
6TH FLOOR
CLEARWATER, FL 33756
727-464-3354
Email: kvicari@pinellascounty.org
*ATTORNEY TO BE NOTICED*

**Defendant**

**LORI EDWARDS**                             represented by   **JOHN T LAVIA , III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**RONALD A LABASKY**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**CHARLES OVERTURF**                         represented by   **EDWARD PAUL CUFFE**
(See above for address)
*TERMINATED: 06/01/2022*
*LEAD ATTORNEY*

**SUSAN SMITH ERDELYI**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**TAPPIE A VILLANE**                                   represented by    **EDWARD PAUL CUFFE**
(See above for address)
*TERMINATED: 06/01/2022*
*LEAD ATTORNEY*

**SUSAN SMITH ERDELYI**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**RON TURNER**                                        represented by    **MORGAN RAY BENTLEY**
BENTLEY & BRUNING PA - SARASOTA FL
783 SOUTH ORANGE AVENUE
SUITE 300
ASARASOTA, FL 34236
941-556-9030
Email: mbentley@bentleyandbruning.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**CHRISTOPHER ANDERSON**                              represented by    **ANDY V BARDOS**
(See above for address)
*ATTORNEY TO BE NOTICED*

**JAMES TIMOTHY MOORE , JR**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**VICKY OAKES**                                       represented by    **EDWARD PAUL CUFFE**
(See above for address)
*TERMINATED: 06/01/2022*
*LEAD ATTORNEY*

**SUSAN SMITH ERDELYI**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**GERTRUDE WALKER**                                   represented by    **JOHN T LAVIA , III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**RONALD A LABASKY**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**WILLIAM KEEN**                                      represented by    **EDWARD PAUL CUFFE**
(See above for address)
*TERMINATED: 06/01/2022*
*LEAD ATTORNEY*

**SUSAN SMITH ERDELYI**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**JENNIFER M KINSEY**                     represented by **EDWARD PAUL CUFFE**
(See above for address)
*TERMINATED: 06/01/2022*
*LEAD ATTORNEY*

**SUSAN SMITH ERDELYI**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**DANA SOUTHERLAND**                     represented by **EDWARD PAUL CUFFE**
(See above for address)
*TERMINATED: 06/01/2022*
*LEAD ATTORNEY*

**SUSAN SMITH ERDELYI**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**DEBORAH OSBORNE**                     represented by **EDWARD PAUL CUFFE**
(See above for address)
*TERMINATED: 06/01/2022*
*LEAD ATTORNEY*

**SUSAN SMITH ERDELYI**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**LISA LEWIS**                     represented by **WILLIAM KEVIN BLEDSOE**
COUNTY OF VOLUSIA
123 WEST INDIANA AVENUE
ROOM 301
DELAND, FL 32720
386-736-5950
Fax: 386-736-5990
Email: kbledsoe@volusia.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**LONDON LEE OTT**
VOLUSIA COUNTY ATTORNEY
123 W INDIANA AVENUE
3RD FLOOR LEGAL
DELAND, FL 32720
386-736-5950
Fax: 386-736-5990
Email: lott@volusia.org
*ATTORNEY TO BE NOTICED*

**Defendant**

**JOSEPH MORGAN**                     represented by **EDWARD PAUL CUFFE**

(See above for address)
*TERMINATED: 06/01/2022*
*LEAD ATTORNEY*

**SUSAN SMITH ERDELYI**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**BOBBY BEASLEY**                    represented by    **EDWARD PAUL CUFFE**
(See above for address)
*TERMINATED: 06/01/2022*
*LEAD ATTORNEY*

**SUSAN SMITH ERDELYI**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**CAROL FINCH RUDD**                    represented by    **EDWARD PAUL CUFFE**
(See above for address)
*TERMINATED: 06/01/2022*
*LEAD ATTORNEY*

**SUSAN SMITH ERDELYI**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**GOVERNOR OF FLORIDA**                    represented by    **MOHAMMAD OMAR JAZIL**
HOLTZMAN VOGEL - TALLAHASSEE FL
119 S MONROE STREET
SUITE 500
TALLAHASSEE, FL 32301
850-391-0503
Email: mjazil@holtzmanvogel.com
*ATTORNEY TO BE NOTICED*

V.

**Intervenor Defendant**

**REPUBLICAN NATIONAL COMMITTEE**                    represented by    **BENJAMIN J GIBSON**
SHUTTS & BOWEN LLP - TALLAHASSEE
FL
215 S MONROE ST - STE 804
TALLAHASSEE, FL 32301
850-241-1720
Fax: 850-241-1718
Email: bgibson@shutts.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**CAMERON THOMAS NORRIS**
CONSOVOY MCCARTHY PLLC -
ARLINGTON VA
1600 WILSON BOULEVARD

SUITE 700
ARLINGTON, VA 22209
Email: cam@consovoymccarthy.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**GEORGE N MEROS , JR**
SHUTTS & BOWEN LLP - TALLAHASSEE
FL
215 S MONROE ST - STE 804
TALLAHASSEE, FL 32301
850-241-1717
Fax: 850-241-1716
Email: gmeros@shutts.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**STEVEN CHRISTOPHER BEGAKIS**
CONSOVOY MCCARTHY PLLC -
ARLINGTON VA
1600 WILSON BOULEVARD
SUITE 700
ARLINGTON, VA 22209
703-243-9423
Email: steven@consovoymccarthy.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**TYLER R GREEN**
CONSOVOY MCCARTHY PLLC - SALT
LAKE CITY UT
222 S MAIN STREET
5TH FLOOR
SALT LAKE CITY, UT 84101
703-243-9423
Email: tyler@consovoymccarthy.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**AMBER STONER NUNNALLY**
SHUTTS & BOWEN LLP - TALLAHASSEE
FL
215 S MONROE ST - STE 804
TALLAHASSEE, FL 32301
850-241-1717
Email: anunnally@shutts.com
*ATTORNEY TO BE NOTICED*

**DANIEL ELDEN NORDBY**
SHUTTS & BOWEN LLP - TALLAHASSEE
FL
215 S MONROE ST - STE 804
TALLAHASSEE, FL 32301
850-241-1720
Email: dnordby@shutts.com

*ATTORNEY TO BE NOTICED*

**DANIEL JOSEPH SHAPIRO**
CONSOVOY MCCARTHY PLLC -
ARLINGTON VA
1600 WILSON BOULEVARD
SUITE 700
ARLINGTON, VA 22209
727-504-8994
Email: daniel@consovoymccarthy.com
*TERMINATED: 06/24/2022*

**FRANK A ZACHERL**
SHUTTS & BOWEN LLP - MIAMI FL
200 S BISCAYNE BLVD
SUITE 4100
MIAMI, FL 33131
Email: FZacherl@shutts.com
*ATTORNEY TO BE NOTICED*

**TARA R PRICE**
SHUTTS & BOWEN LLP - TALLAHASSEE
FL
215 S MONROE ST - STE 804
TALLAHASSEE, FL 32301
850-241-1734
Email: tprice@shutts.com
*ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**NATIONAL REPUBLICAN SENATORIAL**           represented by    **BENJAMIN J GIBSON**
**COMMITTEE**                                                 (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **CAMERON THOMAS NORRIS**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *PRO HAC VICE*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **GEORGE N MEROS , JR**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **STEVEN CHRISTOPHER BEGAKIS**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *PRO HAC VICE*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **TYLER R GREEN**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **AMBER STONER NUNNALLY**

(See above for address)
*ATTORNEY TO BE NOTICED*

**DANIEL ELDEN NORDBY**
(See above for address)
*ATTORNEY TO BE NOTICED*

**DANIEL JOSEPH SHAPIRO**
(See above for address)
*TERMINATED: 06/24/2022*

**FRANK A ZACHERL**
(See above for address)
*ATTORNEY TO BE NOTICED*

**TARA R PRICE**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**District of Columbia**                              represented by  **ADAM J TUETKEN**
OFFICE OF THE ATTORNEY GENERAL
WASHINGTON DC
400 6TH STREET NW
SUITE 8100
WASHINGTON, DC 20009
202-735-7474
Email: adam.tuetken@dc.gov
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 05/17/2021 | 1 | COMPLAINT against All Defendants ( Filing fee $ 402 receipt number AFLNDC-6095790.), filed by Poder Latinx, Equal Ground Education Fund, UNIDOSUS, FAITH IN FLORIDA, Florida Rising Together, HISPANIC FEDERATION. (Attachments: # 1 Civil Cover Sheet Civil Cover Sheet, # 2 Exhibit Summons to Lee, # 3 Exhibit Summons to Knight, # 4 Exhibit Summons to Arrington, # 5 Exhibit Summons to Ogg, # 6 Exhibit Summons to Latimer) (ROMERO-CRAFT, KIRA) (Entered: 05/17/2021) |
| 05/18/2021 | 2 | DOCKET ANNOTATION BY COURT: - TO ATTORNEY KIRA ROMERO-CRAFT - re: 1 Complaint. In this District, party names (including aliases) are to be added using all caps and no punctuation. (See "Style Guide for Electronic Case Filing," available on Clerk's website.) The party names will be corrected by the clerk. Further, counsel is advised by this entry, that a Civil Cover Sheet must be filed as a separate entry using the event selection "Civil Cover Sheet" which is found under "Other Filings" under "Other Documents". PLEASE RE-FILE THE CIVIL COVER SHEET. (cle) (Entered: 05/18/2021) |
| 05/18/2021 | 3 | CIVIL COVER SHEET. (ROMERO-CRAFT, KIRA) (Entered: 05/18/2021) |
| 05/18/2021 | 4 | NOTICE *of Related Cases* by Equal Ground Education Fund, FAITH IN FLORIDA, Florida Rising Together, HISPANIC FEDERATION, Poder Latinx, UNIDOSUS (ROMERO-CRAFT, KIRA) (Entered: 05/18/2021) |
| 05/18/2021 | 5 | Corporate Disclosure Statement/Certificate of Interested Persons by Equal Ground Education Fund, UNIDOSUS. (ROMERO-CRAFT, KIRA) (Entered: 05/18/2021) |
| 05/18/2021 | 6 | Corporate Disclosure Statement/Certificate of Interested Persons by FAITH IN FLORIDA. (ROMERO-CRAFT, KIRA) (Entered: 05/18/2021) |
| 05/18/2021 | 7 | Corporate Disclosure Statement/Certificate of Interested Persons by Florida Rising Together. |

| | | |
|---|---|---|
| | | (ROMERO-CRAFT, KIRA) (Entered: 05/18/2021) |
| 05/18/2021 | 8 | Corporate Disclosure Statement/Certificate of Interested Persons by HISPANIC FEDERATION. (ROMERO-CRAFT, KIRA) (Entered: 05/18/2021) |
| 05/18/2021 | 9 | Corporate Disclosure Statement/Certificate of Interested Persons by Poder Latinx. (ROMERO-CRAFT, KIRA) (Entered: 05/18/2021) |
| 05/18/2021 | 10 | Corporate Disclosure Statement/Certificate of Interested Persons by UNIDOSUS. (ROMERO-CRAFT, KIRA) (Entered: 05/18/2021) |
| 05/19/2021 | 11 | NOTICE of Appearance by STEPHEN MARK TODD on behalf of CRAIG LATIMER (TODD, STEPHEN) (Entered: 05/19/2021) |
| 05/27/2021 | 12 | Summons Issued as to MARY JANE ARRINGTON, (Attachments: # 1 SHIRLEY G KNIGHT, # 2 CRAIG LATIMER, # 3 LAUREL M LEE, # 4 PENNY OGG) (blb) (Entered: 05/27/2021) |
| 05/28/2021 | 13 | NOTICE of Appearance by JEREMY KARPATKIN on behalf of EQUAL GROUND EDUCATION FUND, FAITH IN FLORIDA, FLORIDA RISING TOGETHER, HISPANIC FEDERATION, PODER LATINX, UNIDOSUS (KARPATKIN, JEREMY) (Entered: 05/28/2021) |
| 05/28/2021 | 14 | MOTION to Appear Pro Hac Vice by Sam I Ferenc.( Filing fee $ 208 receipt number AFLNDC-6113008.) by EQUAL GROUND EDUCATION FUND, FAITH IN FLORIDA, FLORIDA RISING TOGETHER, HISPANIC FEDERATION, PODER LATINX, UNIDOSUS. (FERENC, SAMUEL) (Entered: 05/28/2021) |
| 05/28/2021 | 15 | MOTION to Appear Pro Hac Vice by John A. Freedman.( Filing fee $ 208 receipt number AFLNDC-6113081.) by EQUAL GROUND EDUCATION FUND, FAITH IN FLORIDA, FLORIDA RISING TOGETHER, HISPANIC FEDERATION, PODER LATINX, UNIDOSUS. (FREEDMAN, JOHN) (Entered: 05/28/2021) |
| 05/28/2021 | 16 | MOTION to Appear Pro Hac Vice by Aaron Stiefel.( Filing fee $ 208 receipt number AFLNDC-6113131.) by EQUAL GROUND EDUCATION FUND, FAITH IN FLORIDA, FLORIDA RISING TOGETHER, HISPANIC FEDERATION, PODER LATINX, UNIDOSUS. (STIEFEL, AARON) (Entered: 05/28/2021) |
| 05/28/2021 | 17 | MOTION to Appear Pro Hac Vice by Elisabeth S. Theodore.( Filing fee $ 208 receipt number AFLNDC-6113240.) by EQUAL GROUND EDUCATION FUND, FAITH IN FLORIDA, FLORIDA RISING TOGETHER, HISPANIC FEDERATION, PODER LATINX, UNIDOSUS. (THEODORE, ELISABETH) (Entered: 05/28/2021) |
| 05/28/2021 | 18 | MOTION to Appear Pro Hac Vice by Daniel R. Bernstein.( Filing fee $ 208 receipt number AFLNDC-6113307.) by EQUAL GROUND EDUCATION FUND, FAITH IN FLORIDA, FLORIDA RISING TOGETHER, HISPANIC FEDERATION, PODER LATINX, UNIDOSUS. (BERNSTEIN, DANIEL) (Entered: 05/28/2021) |
| 05/28/2021 | 19 | MOTION to Appear Pro Hac Vice by Jeffrey A. Miller.( Filing fee $ 208 receipt number AFLNDC-6113990.) by EQUAL GROUND EDUCATION FUND, FAITH IN FLORIDA, FLORIDA RISING TOGETHER, HISPANIC FEDERATION, PODER LATINX, UNIDOSUS. (MILLER, JEFFREY) (Entered: 05/28/2021) |
| 06/01/2021 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE MICHAEL J FRANK notified that action is needed Re: 14 , 15 , 16 , 17 , 18 , and 19 MOTIONS to Appear Pro Hac Vice - Referred to MICHAEL J FRANK. (tss) (Entered: 06/01/2021) |
| 06/01/2021 | 20 | ORDER granting 17 Motion to Appear Pro Hac Vice. Attorney Elisabeth S. Theodore is admitted pro hac vice to represent Plaintiffs pursuant to Local Rule 11.1(C). Signed by MAGISTRATE JUDGE MICHAEL J FRANK on 6/1/2021. (jcw) (Entered: 06/02/2021) |
| 06/01/2021 | 21 | ORDER granting 18 Motion to Appear Pro Hac Vice. Attorney Daniel R. Bernstein is admitted pro hac vice to represent Plaintiffs pursuant to Local Rule 11.1(C). Signed by MAGISTRATE JUDGE MICHAEL J FRANK on 6/1/2021. (jcw) (Entered: 06/02/2021) |
| 06/01/2021 | 22 | ORDER granting 19 Motion to Appear Pro Hac Vice. Attorney Jeffrey A. Miller is admitted pro hac |

| | | |
|---|---|---|
| | | vice to represent Plaintiffs pursuant to Local Rule 11.1(C). Signed by MAGISTRATE JUDGE MICHAEL J FRANK on 6/1/2021. (jcw) (Entered: 06/02/2021) |
| 06/01/2021 | [23](#) | ORDER granting [14](#) Motion to Appear Pro Hac Vice. Pursuant to Local Rule 11.1(C), attorney Sam I. Ferenc is admitted pro hac vice on behalf of Plaintiffs. Signed by MAGISTRATE JUDGE MICHAEL J FRANK on 6/1/2021. (jcw) (Entered: 06/02/2021) |
| 06/01/2021 | [24](#) | ORDER granting [15](#) Motion to Appear Pro Hac Vice. Pursuant to Local Rule 11.1(C), attorney John A. Freedman is admitted pro hac vice on behalf of Plaintiffs. Signed by MAGISTRATE JUDGE MICHAEL J FRANK on 6/1/2021. (jcw) (Entered: 06/02/2021) |
| 06/02/2021 | [25](#) | ORDER granting [16](#) Motion to Appear Pro Hac Vice. Attorney Aaron Stiefel is admitted pro hac vice to represent Plaintiffs pursuant to Local Rule 11.1(C). Signed by MAGISTRATE JUDGE MICHAEL J FRANK on 6/2/2021. (jcw) (Entered: 06/02/2021) |
| 06/08/2021 | [26](#) | MOTION to Intervene by REPUBLICAN NATIONAL COMMITTEE, NATIONAL REPUBLICAN SENATORIAL COMMITTEE. (NORDBY, DANIEL) (Entered: 06/08/2021) |
| 06/08/2021 | [27](#) | *Proposed* ANSWER to [1](#) Complaint, by NATIONAL REPUBLICAN SENATORIAL COMMITTEE, REPUBLICAN NATIONAL COMMITTEE. (NORDBY, DANIEL) (Entered: 06/08/2021) |
| 06/08/2021 | [28](#) | MEMORANDUM in Support re [26](#) MOTION to Intervene filed by NATIONAL REPUBLICAN SENATORIAL COMMITTEE, REPUBLICAN NATIONAL COMMITTEE. (NORDBY, DANIEL) (Entered: 06/08/2021) |
| 06/08/2021 | [29](#) | NOTICE *of Corrected Summons to be Issued* by EQUAL GROUND EDUCATION FUND, FAITH IN FLORIDA, FLORIDA RISING TOGETHER, HISPANIC FEDERATION, PODER LATINX, UNIDOSUS (Attachments: # [1](#) Exhibit Summons Penny Ogg) (ROMERO-CRAFT, KIRA) (Entered: 06/08/2021) |
| 06/08/2021 | [30](#) | WAIVER OF SERVICE Returned Executed by PODER LATINX, EQUAL GROUND EDUCATION FUND, UNIDOSUS, FAITH IN FLORIDA, FLORIDA RISING TOGETHER, HISPANIC FEDERATION. LAUREL M LEE waiver sent on 6/7/2021, answer due 8/6/2021. (ROMERO-CRAFT, KIRA) (Entered: 06/08/2021) |
| 06/09/2021 | [31](#) | Summons Issued as to PENNY OGG. (cle) (Entered: 06/09/2021) |
| 06/10/2021 | [32](#) | NOTICE of Appearance by MOHAMMAD OMAR JAZIL on behalf of LAUREL M LEE (JAZIL, MOHAMMAD) (Entered: 06/10/2021) |
| 06/14/2021 | [33](#) | NOTICE of Appearance by GARY VERGIL PERKO on behalf of LAUREL M LEE (PERKO, GARY) (Entered: 06/14/2021) |
| 06/15/2021 | [34](#) | MOTION to Appear Pro Hac Vice by Steven C. Begakis.( Filing fee $ 208 receipt number AFLNDC-6135583.) by NATIONAL REPUBLICAN SENATORIAL COMMITTEE, REPUBLICAN NATIONAL COMMITTEE. (Attachments: # [1](#) Exhibit A - Certificate of Good Standing) (NORDBY, DANIEL) (Entered: 06/15/2021) |
| 06/15/2021 | [35](#) | MOTION to Appear Pro Hac Vice by Cameron T. Norris.( Filing fee $ 208 receipt number AFLNDC-6135592.) by NATIONAL REPUBLICAN SENATORIAL COMMITTEE, REPUBLICAN NATIONAL COMMITTEE. (Attachments: # [1](#) Exhibit A - Certificate of Good Standing) (NORDBY, DANIEL) (Entered: 06/15/2021) |
| 06/15/2021 | [36](#) | NOTICE of Appearance by AMBER STONER NUNNALLY on behalf of NATIONAL REPUBLICAN SENATORIAL COMMITTEE, REPUBLICAN NATIONAL COMMITTEE (NUNNALLY, AMBER) (Entered: 06/15/2021) |
| 06/15/2021 | [37](#) | WAIVER OF SERVICE Returned Executed by CRAIG LATIMER. CRAIG LATIMER waiver sent on 6/7/2021, answer due 8/6/2021. (TODD, STEPHEN) (Entered: 06/15/2021) |
| 06/16/2021 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE MICHAEL J FRANK notified that action is needed re: [34](#) MOTION to Appear Pro Hac Vice by |

| | | |
|---|---|---|
| | | Steven C. Begakis and 35 MOTION to Appear Pro Hac Vice by Cameron T. Norris. Referred to MICHAEL J FRANK. (cle) (Entered: 06/16/2021) |
| 06/16/2021 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE ALLEN C WINSOR notified that action is needed re: This case is ready for an ISO to be prepared. (cle) (Entered: 06/16/2021) |
| 06/16/2021 | 38 | NOTICE of Appearance by DANIEL JOSEPH SHAPIRO on behalf of NATIONAL REPUBLICAN SENATORIAL COMMITTEE, REPUBLICAN NATIONAL COMMITTEE (SHAPIRO, DANIEL) (Entered: 06/16/2021) |
| 06/16/2021 | 39 | MOTION to Consolidate Cases by LAUREL M LEE. (JAZIL, MOHAMMAD) (Entered: 06/16/2021) |
| 06/16/2021 | 40 | MOTION to Appear Pro Hac Vice by Tyler Green.( Filing fee $ 208 receipt number AFLNDC-6138131.) by NATIONAL REPUBLICAN SENATORIAL COMMITTEE, REPUBLICAN NATIONAL COMMITTEE. (Attachments: # 1 Exhibit A - Certificate of Good Standing) (NORDBY, DANIEL) Modified on 10/4/2021 (jcw). (Entered: 06/16/2021) |
| 06/16/2021 | 41 | ORDER granting 34 Motion to Appear Pro Hac Vice. Pursuant to Local Rule 11.1(C), attorney Steven C. Begakis is admitted pro hac vice on behalf of the proposed intervenor-defendants. (Appointed STEVEN CHRISTOPHER BEGAKIS for NATIONAL REPUBLICAN SENATORIAL COMMITTEE, REPUBLICAN NATIONAL COMMITTEE.) Signed by MAGISTRATE JUDGE MICHAEL J FRANK on 6/16/2021. (jcw) Modified on 10/4/2021 to link to 34 Motion(jcw). (Entered: 06/17/2021) |
| 06/16/2021 | 42 | ORDER granting 35 Motion to Appear Pro Hac Vice. Pursuant to Local Rule 11.1(C), attorney Cameron T. Norris is admitted pro hac vice on behalf of the proposed intervenor-defendants. (Appointed CAMERON THOMAS NORRIS for NATIONAL REPUBLICAN SENATORIAL COMMITTEE, REPUBLICAN NATIONAL COMMITTEE.) Signed by MAGISTRATE JUDGE MICHAEL J FRANK on 6/16/2021. (jcw) (Entered: 06/17/2021) |
| 06/17/2021 | | ACTION REQUIRED BY MAGISTRATE JUDGE: Chambers of MAGISTRATE JUDGE MICHAEL J FRANK notified that action is needed re: 40 MOTION to Appear Pro Hac Vice by Tyler Green. Referred to MICHAEL J FRANK. (cle) (Entered: 06/17/2021) |
| 06/21/2021 | 43 | MOTION to Transfer Case to Chief Judge Walker *(UNOPPOSED MOTION TO TRANSFER FOR CONSOLIDATION WITH RELATED CASES)* by EQUAL GROUND EDUCATION FUND, FAITH IN FLORIDA, FLORIDA RISING TOGETHER, HISPANIC FEDERATION, PODER LATINX, UNIDOSUS. (Internal deadline for referral to judge if response not filed earlier: **7/6/2021**). (FREEDMAN, JOHN) (Entered: 06/21/2021) |
| 06/21/2021 | 44 | Amended MOTION to Transfer Case to Chief Judge Walker *(UNOPPOSED MOTION TO TRANSFER FOR CONSOLIDATION WITH RELATED CASES)* by EQUAL GROUND EDUCATION FUND, FAITH IN FLORIDA, FLORIDA RISING TOGETHER, HISPANIC FEDERATION, PODER LATINX, UNIDOSUS. (Internal deadline for referral to judge if response not filed earlier: **7/6/2021**). (FREEDMAN, JOHN) (Entered: 06/21/2021) |
| 06/22/2021 | 45 | RESPONSE in Opposition re 26 MOTION to Intervene *Plaintiffs' Opposition to Motion to Intervene* filed by EQUAL GROUND EDUCATION FUND, FAITH IN FLORIDA, FLORIDA RISING TOGETHER, HISPANIC FEDERATION, PODER LATINX, UNIDOSUS. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2) (FREEDMAN, JOHN) (Entered: 06/22/2021) |
| 06/24/2021 | 46 | MOTION for Leave to File Excess Pages by LAUREL M LEE. (JAZIL, MOHAMMAD) (Entered: 06/24/2021) |
| 06/25/2021 | 47 | NOTICE of Appearance by FRANK MICHAEL MARI on behalf of PENNY OGG (MARI, FRANK) (Entered: 06/25/2021) |
| 06/25/2021 | 48 | WAIVER OF SERVICE Returned Executed by PODER LATINX, EQUAL GROUND EDUCATION FUND, UNIDOSUS, FAITH IN FLORIDA, FLORIDA RISING TOGETHER, HISPANIC FEDERATION. PENNY OGG waiver sent on 6/17/2021, answer due 8/16/2021. (FREEDMAN, JOHN) (Entered: 06/25/2021) |
| 06/25/2021 | 49 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by LAUREL M LEE. (Attachments: |

| | | |
|---|---|---|
| | | # 1 Memo. in Support, # 2 Exhibit A) (JAZIL, MOHAMMAD) (Entered: 06/25/2021) |
| 07/02/2021 | 50 | ORDER REGARDING CONSOLIDATION. Plaintiffs now seek a transfer to allow this fourth case to join those. ECF No. 44 . That motion, which is unopposed, is GRANTED. The clerk will transfer this case to the Chief Judge. Signed by JUDGE ALLEN C WINSOR on 7/2/2021. (kjw) *Case reassigned to CHIEF JUDGE MARK E WALKER for all further proceedings. JUDGE ALLEN C WINSOR no longer assigned to case. Please use the new judge's initials on all future filings: 4:21cv201-MW/MJF. (Entered: 07/02/2021) |
| 07/06/2021 | 51 | ORDER GRANTING MOTION TO EXCEED WORD LIMITS. This Court has considered, without hearing, Defendant Lee's Motion to Exceed Word Limits. ECF No. 46 . That motion is GRANTED. Defendant Lee may use up to 12,000 words for her memorandum of law. Signed by CHIEF JUDGE MARK E WALKER on 7/6/2021. (kjw) (Entered: 07/06/2021) |
| 07/06/2021 | 52 | ORDER GRANTING MOTION TO INTERVENE. This Court has considered, without hearing, the Republican National Committee and National Republican Senatorial Committee's ("Proposed Intervenors") Motion to Intervene. ECF No. 26 . The motion is GRANTED. Signed by CHIEF JUDGE MARK E WALKER on 7/6/2021. (kjw) (Entered: 07/06/2021) |
| 07/06/2021 | 53 | ORDER GRANTING MOTION TO CONSOLIDATE, re: 39 Motion to Consolidate Cases. The motion is GRANTED in part and DENIED in part. This case is consolidated with the above-listed cases for discovery purposes only. Signed by CHIEF JUDGE MARK E WALKER on 7/6/2021. (kjw) (Entered: 07/06/2021) |
| 07/06/2021 | 54 | MOTION to Appear Pro Hac Vice by Brenda Wright.( Filing fee $ 208 receipt number BFLNDC-6167761.) by EQUAL GROUND EDUCATION FUND, FAITH IN FLORIDA, FLORIDA RISING TOGETHER, HISPANIC FEDERATION, PODER LATINX, UNIDOSUS. (Attachments: # 1 Exhibit Certificate of Good Standing) (ROMERO-CRAFT, KIRA) (Entered: 07/06/2021) |
| 07/06/2021 | 55 | STATUS REPORT *Florida Rising Together Plaintiffs' Status Report* by EQUAL GROUND EDUCATION FUND, FAITH IN FLORIDA, FLORIDA RISING TOGETHER, HISPANIC FEDERATION, PODER LATINX, UNIDOSUS. (FREEDMAN, JOHN) (Entered: 07/06/2021) |
| 07/07/2021 | | Set Deadlines/Hearings: Joint Status Report due by **8/6/2021**. (kjw) (Entered: 07/07/2021) |
| 07/07/2021 | 56 | ORDER ADMITTING BRENDA WRIGHT PRO HAC VICE. This Court has considered, without hearing, the motion to admit Brenda Wright pro hac vice, ECF No. 54 . The motion is GRANTED. Signed by CHIEF JUDGE MARK E WALKER on 7/7/2021. (kjw) (Entered: 07/07/2021) |
| 07/07/2021 | 57 | WAIVER OF SERVICE Returned Executed as to SHIRLEY GREEN KNIGHT by PODER LATINX, EQUAL GROUND EDUCATION FUND, UNIDOSUS, FAITH IN FLORIDA, FLORIDA RISING TOGETHER, HISPANIC FEDERATION. (ROMERO-CRAFT, KIRA) Modified on 7/8/2021 to reflect the Defendant's name. (kjw) (Entered: 07/07/2021) |
| 07/07/2021 | 58 | WAIVER OF SERVICE Returned Executed as to MARY JANE ARRINGTON by PODER LATINX, EQUAL GROUND EDUCATION FUND, UNIDOSUS, FAITH IN FLORIDA, FLORIDA RISING TOGETHER, HISPANIC FEDERATION. (ROMERO-CRAFT, KIRA) Modified on 7/8/2021 to reflect the Defendant's name. (kjw) (Entered: 07/07/2021) |
| 07/08/2021 | | Set Deadlines/Hearings: MARY JANE ARRINGTON answer due 8/6/2021; SHIRLEY G KNIGHT answer due 8/6/2021 per 57 and 58 Waivers of Service. (kjw) (Entered: 07/08/2021) |
| 07/09/2021 | 59 | FIRST AMENDED COMPLAINT against All Defendants All Defendants., filed by PODER LATINX, EQUAL GROUND EDUCATION FUND, UNIDOSUS, FAITH IN FLORIDA, FLORIDA RISING TOGETHER, HISPANIC FEDERATION. (Attachments: # 1 Exhibit Summons Barton, # 2 Exhibit Summons Milton, # 3 Exhibit Summons Anderson, # 4 Exhibit Summons Seyfang, # 5 Exhibit Summons Scott, # 6 Exhibit Summons Scott, # 7 Exhibit Summons Chason, # 8 Exhibit Summons Stamoulis, # 9 Exhibit Summons Baird, # 10 Exhibit Summons Chambless, # 11 Exhibit Summons Edwards, # 12 Exhibit Summons Brown, # 13 Exhibit Summons Negley, # 14 Exhibit Summons Cannon, # 15 Exhibit Summons Hogan, # 16 Exhibit Summons Stafford, # 17 Exhibit Summons Lenhart, # 18 Exhibit Summons Riley, # 19 Exhibit Summons Sanchez, # 20 Exhibit Summons Farnam, # 21 Exhibit Summons Hanlon, # 22 Exhibit Summons Hutto, # 23 Exhibit Summons Smith, # 24 Exhibit Summons Hoots, # 25 Exhibit Summons Anderson, # 26 Exhibit |

| | | |
|---|---|---|
| | | Summons Meadows, # [27](#) Exhibit Summons Swan, # [28](#) Exhibit Summons Dunaway, # [29](#) Exhibit Summons Bishop, # [30](#) Exhibit Summons Hart, # [31](#) Exhibit Summons Hays, # [32](#) Exhibit Summons Doyle, # [33](#) Exhibit Summons Early, # [34](#) Exhibit Summons Oust, # [35](#) Exhibit Summons Conyers, # [36](#) Exhibit Summons Driggers, # [37](#) Exhibit Summons Bennett, # [38](#) Exhibit Summons Wilcox, # [39](#) Exhibit Summons Davis, # [40](#) Exhibit Summons White, # [41](#) Exhibit Summons Griffin, # [42](#) Exhibit Summons Adkins, # [43](#) Exhibit Summons Arnold, # [44](#) Exhibit Summons Cowles, # [45](#) Exhibit Summons Link, # [46](#) Exhibit Summons Corley, # [47](#) Exhibit Summons Marcus, # [48](#) Exhibit Summons Edwards, # [49](#) Exhibit Summons Overturf, # [50](#) Exhibit Summons Villane, # [51](#) Exhibit Summons Turner, # [52](#) Exhibit Summons Anderson, # [53](#) Exhibit Summons Oakes, # [54](#) Exhibit Summons Walker, # [55](#) Exhibit Summons Keen, # [56](#) Exhibit Summons Kinsey, # [57](#) Exhibit Summons Southerland, # [58](#) Exhibit Summons Osborne, # [59](#) Exhibit Summons Lewis, # [60](#) Exhibit Summons Morgan, # [61](#) Exhibit Summons Beasley, # [62](#) Exhibit Summons Finch Rudd, # [63](#) Exhibit Summons Lux) (ROMERO-CRAFT, KIRA) (Entered: 07/09/2021) |
| 07/09/2021 | [60](#) | RESPONSE in Opposition re [49](#) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by EQUAL GROUND EDUCATION FUND, FAITH IN FLORIDA, FLORIDA RISING TOGETHER, HISPANIC FEDERATION, PODER LATINX, HAITIAN NEIGHBORHOOD CENTER SANT LA, MI FAMILIA VOTA EDUCATION FUND. (Attachments: # [1](#) Exhibit Amended Complaint) (ROMERO-CRAFT, KIRA) (Entered: 07/09/2021) |
| 07/09/2021 | [61](#) | Corporate Disclosure Statement/Certificate of Interested Persons by HAITIAN NEIGHBORHOOD CENTER SANT LA. (ROMERO-CRAFT, KIRA) (Entered: 07/09/2021) |
| 07/09/2021 | [62](#) | Corporate Disclosure Statement/Certificate of Interested Persons by MI FAMILIA VOTA EDUCATION FUND. (ROMERO-CRAFT, KIRA) (Entered: 07/09/2021) |
| 07/12/2021 | [63](#) | ORDER DENYING MOTION TO DISMISS AS MOOT. Pending before this Court is Defendant Lee's motion to dismiss. ECF No. [49](#) . The Plaintiffs have since filed their first amended complaint. ECF No. [59](#) . Accordingly, Defendant Lee's motion to dismiss, ECF No. [49](#) , is DENIED as moot. Signed by CHIEF JUDGE MARK E WALKER on 7/12/2021. (kjw) (Entered: 07/12/2021) |
| 07/12/2021 | [64](#) | NOTICE of Appearance by ASHLEY E DAVIS on behalf of LAUREL M LEE (DAVIS, ASHLEY) (Entered: 07/12/2021) |
| 07/12/2021 | [65](#) | NOTICE of Appearance by BRADLEY ROBERT MCVAY on behalf of LAUREL M LEE (MCVAY, BRADLEY) (Entered: 07/12/2021) |
| 07/12/2021 | [66](#) | NOTICE of Appearance by COLLEEN E O'BRIEN on behalf of LAUREL M LEE (O'BRIEN, COLLEEN) (Entered: 07/12/2021) |
| 07/19/2021 | [67](#) | RULE 26 Disclosures by EQUAL GROUND EDUCATION FUND, FAITH IN FLORIDA, FLORIDA RISING TOGETHER, HAITIAN NEIGHBORHOOD CENTER SANT LA, HISPANIC FEDERATION, MI FAMILIA VOTA EDUCATION FUND, PODER LATINX, UNIDOSUS. (ROMERO-CRAFT, KIRA) (Entered: 07/19/2021) |
| 07/20/2021 | [68](#) | NOTICE of Appearance by KIA M JOHNSON on behalf of DAVID H STAFFORD (JOHNSON, KIA) (Entered: 07/20/2021) |
| 07/20/2021 | [69](#) | MOTION to Appear Pro Hac Vice by Phillip M. Gordon.( Filing fee $ 208 receipt number AFLNDC-6192708.) by LAUREL M LEE. (Attachments: # [1](#) Exhibit Exhibit A) (JAZIL, MOHAMMAD) (Entered: 07/20/2021) |
| 07/20/2021 | [70](#) | WAIVER OF SERVICE Returned Executed by HAITIAN NEIGHBORHOOD CENTER SANT LA, MI FAMILIA VOTA EDUCATION FUND, UNIDOSUS, FLORIDA RISING TOGETHER, PODER LATINX, EQUAL GROUND EDUCATION FUND, FAITH IN FLORIDA, HISPANIC FEDERATION. SHIRLEY ANDERSON waiver sent on 7/16/2021, answer due 9/14/2021. (FREEDMAN, JOHN) (Entered: 07/20/2021) |
| 07/20/2021 | [71](#) | WAIVER OF SERVICE Returned Executed by HAITIAN NEIGHBORHOOD CENTER SANT LA, MI FAMILIA VOTA EDUCATION FUND, UNIDOSUS, FLORIDA RISING TOGETHER, PODER LATINX, EQUAL GROUND EDUCATION FUND, FAITH IN FLORIDA, HISPANIC FEDERATION. MARK F NEGLEY waiver sent on 7/16/2021, answer due 9/14/2021. (FREEDMAN, JOHN) (Entered: 07/20/2021) |

| | | |
|---|---|---|
| 07/20/2021 | 72 | WAIVER OF SERVICE Returned Executed by HAITIAN NEIGHBORHOOD CENTER SANT LA, MI FAMILIA VOTA EDUCATION FUND, UNIDOSUS, FLORIDA RISING TOGETHER, PODER LATINX, EQUAL GROUND EDUCATION FUND, FAITH IN FLORIDA, HISPANIC FEDERATION. LORI A SCOTT waiver sent on 7/16/2021, answer due 9/14/2021. (FREEDMAN, JOHN) (Entered: 07/20/2021) |
| 07/20/2021 | 73 | WAIVER OF SERVICE Returned Executed by HAITIAN NEIGHBORHOOD CENTER SANT LA, MI FAMILIA VOTA EDUCATION FUND, UNIDOSUS, FLORIDA RISING TOGETHER, PODER LATINX, EQUAL GROUND EDUCATION FUND, FAITH IN FLORIDA, HISPANIC FEDERATION. KAITI LENHART waiver sent on 7/16/2021, answer due 9/14/2021. (FREEDMAN, JOHN) (Entered: 07/20/2021) |
| 07/20/2021 | 74 | WAIVER OF SERVICE Returned Executed by HAITIAN NEIGHBORHOOD CENTER SANT LA, MI FAMILIA VOTA EDUCATION FUND, UNIDOSUS, FLORIDA RISING TOGETHER, PODER LATINX, EQUAL GROUND EDUCATION FUND, FAITH IN FLORIDA, HISPANIC FEDERATION. JOHN HANLON waiver sent on 7/16/2021, answer due 9/14/2021. (FREEDMAN, JOHN) (Entered: 07/20/2021) |
| 07/20/2021 | 75 | WAIVER OF SERVICE Returned Executed by HAITIAN NEIGHBORHOOD CENTER SANT LA, MI FAMILIA VOTA EDUCATION FUND, UNIDOSUS, FLORIDA RISING TOGETHER, PODER LATINX, EQUAL GROUND EDUCATION FUND, FAITH IN FLORIDA, HISPANIC FEDERATION. DAVID H STAFFORD waiver sent on 7/16/2021, answer due 9/14/2021. (FREEDMAN, JOHN) (Entered: 07/20/2021) |
| 07/20/2021 | 76 | WAIVER OF SERVICE Returned Executed by HAITIAN NEIGHBORHOOD CENTER SANT LA, MI FAMILIA VOTA EDUCATION FUND, UNIDOSUS, FLORIDA RISING TOGETHER, PODER LATINX, EQUAL GROUND EDUCATION FUND, FAITH IN FLORIDA, HISPANIC FEDERATION. KIM A BARTON waiver sent on 7/16/2021, answer due 9/14/2021. (FREEDMAN, JOHN) (Entered: 07/20/2021) |
| 07/20/2021 | 77 | NOTICE of Appearance by NATHANIEL ADAM KLITSBERG on behalf of JOE SCOTT (KLITSBERG, NATHANIEL) (Entered: 07/20/2021) |
| 07/20/2021 | 78 | NOTICE of Appearance by BENJAMIN SALZILLO on behalf of JOE SCOTT (SALZILLO, BENJAMIN) (Entered: 07/20/2021) |
| 07/20/2021 | 96 | ORDER ADMITTING PHILLIP GORDON PRO HAC VICE - The motion to admit Phillip M. Gordon pro hac vice, ECF No. 69 , is GRANTED. Phillip M. Gordon is admitted pro hac vice as counsel for Defendant Lee. Signed by CHIEF JUDGE MARK E WALKER on 7/20/2021. (cle) (Entered: 07/21/2021) |
| 07/21/2021 | 79 | NOTICE of Appearance by KELLY LYNN VICARI on behalf of JULIE MARCUS (VICARI, KELLY) (Entered: 07/21/2021) |
| 07/21/2021 | 80 | WAIVER OF SERVICE Returned Executed by HAITIAN NEIGHBORHOOD CENTER SANT LA, MI FAMILIA VOTA EDUCATION FUND, UNIDOSUS, FLORIDA RISING TOGETHER, PODER LATINX, EQUAL GROUND EDUCATION FUND, FAITH IN FLORIDA, HISPANIC FEDERATION. WESLEY WILCOX waiver sent on 7/16/2021, answer due 9/14/2021. (FREEDMAN, JOHN) (Entered: 07/21/2021) |
| 07/21/2021 | 81 | WAIVER OF SERVICE Returned Executed by HAITIAN NEIGHBORHOOD CENTER SANT LA, MI FAMILIA VOTA EDUCATION FUND, UNIDOSUS, FLORIDA RISING TOGETHER, PODER LATINX, EQUAL GROUND EDUCATION FUND, FAITH IN FLORIDA, HISPANIC FEDERATION. TOMMY DOYLE waiver sent on 7/16/2021, answer due 9/14/2021. (FREEDMAN, JOHN) (Entered: 07/21/2021) |
| 07/21/2021 | 82 | WAIVER OF SERVICE Returned Executed by HAITIAN NEIGHBORHOOD CENTER SANT LA, MI FAMILIA VOTA EDUCATION FUND, UNIDOSUS, FLORIDA RISING TOGETHER, PODER LATINX, EQUAL GROUND EDUCATION FUND, FAITH IN FLORIDA, HISPANIC FEDERATION. PAUL STAMOULIS waiver sent on 7/16/2021, answer due 9/14/2021. (FREEDMAN, JOHN) (Entered: 07/21/2021) |
| 07/21/2021 | 83 | WAIVER OF SERVICE Returned Executed by HAITIAN NEIGHBORHOOD CENTER SANT LA, |

| | | MI FAMILIA VOTA EDUCATION FUND, UNIDOSUS, FLORIDA RISING TOGETHER, PODER LATINX, EQUAL GROUND EDUCATION FUND, FAITH IN FLORIDA, HISPANIC FEDERATION. MICHAEL BENNETT waiver sent on 7/16/2021, answer due 9/14/2021. (FREEDMAN, JOHN) (Entered: 07/21/2021) |
|---|---|---|
| 07/21/2021 | 84 | WAIVER OF SERVICE Returned Executed by HAITIAN NEIGHBORHOOD CENTER SANT LA, MI FAMILIA VOTA EDUCATION FUND, UNIDOSUS, FLORIDA RISING TOGETHER, PODER LATINX, EQUAL GROUND EDUCATION FUND, FAITH IN FLORIDA, HISPANIC FEDERATION. LISA LEWIS waiver sent on 7/16/2021, answer due 9/14/2021. (FREEDMAN, JOHN) (Entered: 07/21/2021) |
| 07/21/2021 | 85 | WAIVER OF SERVICE Returned Executed by HAITIAN NEIGHBORHOOD CENTER SANT LA, MI FAMILIA VOTA EDUCATION FUND, UNIDOSUS, FLORIDA RISING TOGETHER, PODER LATINX, EQUAL GROUND EDUCATION FUND, FAITH IN FLORIDA, HISPANIC FEDERATION. LESLIE SWAN waiver sent on 7/16/2021, answer due 9/14/2021. (FREEDMAN, JOHN) (Entered: 07/21/2021) |
| 07/21/2021 | 86 | WAIVER OF SERVICE Returned Executed by HAITIAN NEIGHBORHOOD CENTER SANT LA, MI FAMILIA VOTA EDUCATION FUND, UNIDOSUS, FLORIDA RISING TOGETHER, PODER LATINX, EQUAL GROUND EDUCATION FUND, FAITH IN FLORIDA, HISPANIC FEDERATION. JULIE MARCUS waiver sent on 7/16/2021, answer due 9/14/2021. (FREEDMAN, JOHN) (Entered: 07/21/2021) |
| 07/21/2021 | 87 | WAIVER OF SERVICE Returned Executed by HAITIAN NEIGHBORHOOD CENTER SANT LA, MI FAMILIA VOTA EDUCATION FUND, UNIDOSUS, FLORIDA RISING TOGETHER, PODER LATINX, EQUAL GROUND EDUCATION FUND, FAITH IN FLORIDA, HISPANIC FEDERATION. JOYCE GRIFFIN waiver sent on 7/16/2021, answer due 9/14/2021. (FREEDMAN, JOHN) (Entered: 07/21/2021) |
| 07/21/2021 | 88 | WAIVER OF SERVICE Returned Executed by HAITIAN NEIGHBORHOOD CENTER SANT LA, MI FAMILIA VOTA EDUCATION FUND, UNIDOSUS, FLORIDA RISING TOGETHER, PODER LATINX, EQUAL GROUND EDUCATION FUND, FAITH IN FLORIDA, HISPANIC FEDERATION. JOE SCOTT waiver sent on 7/16/2021, answer due 9/14/2021. (FREEDMAN, JOHN) (Entered: 07/21/2021) |
| 07/21/2021 | 89 | WAIVER OF SERVICE Returned Executed by HAITIAN NEIGHBORHOOD CENTER SANT LA, MI FAMILIA VOTA EDUCATION FUND, UNIDOSUS, FLORIDA RISING TOGETHER, PODER LATINX, EQUAL GROUND EDUCATION FUND, FAITH IN FLORIDA, HISPANIC FEDERATION. JENNIFER J EDWARDS waiver sent on 7/16/2021, answer due 9/14/2021. (FREEDMAN, JOHN) (Entered: 07/21/2021) |
| 07/21/2021 | 90 | WAIVER OF SERVICE Returned Executed by HAITIAN NEIGHBORHOOD CENTER SANT LA, MI FAMILIA VOTA EDUCATION FUND, UNIDOSUS, FLORIDA RISING TOGETHER, PODER LATINX, EQUAL GROUND EDUCATION FUND, FAITH IN FLORIDA, HISPANIC FEDERATION. CHRISTOPHER ANDERSON waiver sent on 7/16/2021, answer due 9/14/2021. (FREEDMAN, JOHN) (Entered: 07/21/2021) |
| 07/21/2021 | 91 | WAIVER OF SERVICE Returned Executed by HAITIAN NEIGHBORHOOD CENTER SANT LA, MI FAMILIA VOTA EDUCATION FUND, UNIDOSUS, FLORIDA RISING TOGETHER, PODER LATINX, EQUAL GROUND EDUCATION FUND, FAITH IN FLORIDA, HISPANIC FEDERATION. ALAN HAYS waiver sent on 7/16/2021, answer due 9/14/2021. (FREEDMAN, JOHN) (Entered: 07/21/2021) |
| 07/21/2021 | 92 | WAIVER OF SERVICE Returned Executed by HAITIAN NEIGHBORHOOD CENTER SANT LA, MI FAMILIA VOTA EDUCATION FUND, UNIDOSUS, FLORIDA RISING TOGETHER, PODER LATINX, EQUAL GROUND EDUCATION FUND, FAITH IN FLORIDA, HISPANIC FEDERATION. MIKE HOGAN waiver sent on 7/16/2021, answer due 9/14/2021. (FREEDMAN, JOHN) (Entered: 07/21/2021) |
| 07/21/2021 | 93 | WAIVER OF SERVICE Returned Executed by HAITIAN NEIGHBORHOOD CENTER SANT LA, MI FAMILIA VOTA EDUCATION FUND, UNIDOSUS, FLORIDA RISING TOGETHER, PODER LATINX, EQUAL GROUND EDUCATION FUND, FAITH IN FLORIDA, HISPANIC |

| | | |
|---|---|---|
| | | FEDERATION. MARK EARLEY waiver sent on 7/16/2021, answer due 9/14/2021. (FREEDMAN, JOHN) (Entered: 07/21/2021) |
| 07/21/2021 | 94 | WAIVER OF SERVICE Returned Executed by HAITIAN NEIGHBORHOOD CENTER SANT LA, MI FAMILIA VOTA EDUCATION FUND, UNIDOSUS, FLORIDA RISING TOGETHER, PODER LATINX, EQUAL GROUND EDUCATION FUND, FAITH IN FLORIDA, HISPANIC FEDERATION. BILL COWLES waiver sent on 7/16/2021, answer due 9/14/2021. (FREEDMAN, JOHN) (Entered: 07/21/2021) |
| 07/21/2021 | 95 | WAIVER OF SERVICE Returned Executed by HAITIAN NEIGHBORHOOD CENTER SANT LA, MI FAMILIA VOTA EDUCATION FUND, UNIDOSUS, FLORIDA RISING TOGETHER, PODER LATINX, EQUAL GROUND EDUCATION FUND, FAITH IN FLORIDA, HISPANIC FEDERATION. BRIAN CORLEY waiver sent on 7/16/2021, answer due 9/14/2021. (FREEDMAN, JOHN) (Entered: 07/21/2021) |
| 07/21/2021 | 97 | SECRETARY OF STATE LAUREL M. LEE'S UNOPPOSED MOTION TO ALIGN RESPONSIVE PLEADING DEADLINES, filed by LAUREL M LEE. (GORDON, PHILLIP) Modified on 7/22/2021 to amend title of document. (cle) (Entered: 07/21/2021) |
| 07/22/2021 | 98 | Summons Issued as to JANET H ADKINS, MARK ANDERSEN, CHRISTOPHER ANDERSON, SHIRLEY ANDERSON, MELISSA ARNOLD, MARY JANE ARRINGTON, MAUREEN BAIRD, KIM A BARTON, BOBBY BEASLEY, MICHAEL BENNETT, MARTY BISHOP, TOMI S BROWN, STARLET CANNON, SHARON CHASON, GRANT CONYERS, BRIAN CORLEY, BILL COWLES, VICKI DAVIS, TOMMY DOYLE, HEATH DRIGGERS, CAROL DUNAWAY, MARK EARLEY, JENNIFER J EDWARDS, LORI EDWARDS, ALETRIS FARNAM, CAROL FINCH RUDD, JOYCE GRIFFIN, JOHN HANLON, TRAVIS HART, ALAN HAYS, MIKE HOGAN, BRENDA HOOTS, LAURA HUTTO, TAMMY JONES, WILLIAM KEEN, JENNIFER M KINSEY, SHIRLEY G KNIGHT, CRAIG LATIMER, LAUREL M LEE, KAITI LENHART, LISA LEWIS, WENDY LINK, PAUL A LUX, JULIE MARCUS, THERISA MEADOWS, CHRIS MILTON, JOSEPH MORGAN, MARK F NEGLEY, VICKY OAKES, PENNY OGG, DEBORAH OSBORNE, CHARLES OVERTURF, HEATHER RILEY, CONNIE SANCHEZ, JOE SCOTT, LORI A SCOTT, AMANDA SEYFANG, DIANE SMITH, DANA SOUTHERLAND, DAVID H STAFFORD, PAUL STAMOULIS, LESLIE SWAN, RON TURNER, TAPPIE A VILLANE, GERTRUDE WALKER, CHRISTINA WHITE, and WESLEY WILCOX. (Attachments: # 1 SUMMONS, # 2 SUMMONS, # 3 SUMMONS, # 4 SUMMONS, # 5 SUMMONS, # 6 SUMMONS, # 7 SUMMONS, # 8 SUMMONS, # 9 SUMMONS, # 10 SUMMONS, # 11 SUMMONS, # 12 SUMMONS, # 13 SUMMONS, # 14 SUMMONS, # 15 SUMMONS, # 16 SUMMONS, # 17 SUMMONS, # 18 SUMMONS, # 19 SUMMONS, # 20 SUMMONS, # 21 SUMMONS, # 22 SUMMONS, # 23 SUMMONS, # 24 SUMMONS, # 25 SUMMONS, # 26 SUMMONS, # 27 SUMMONS, # 28 SUMMONS, # 29 SUMMONS, # 30 SUMMONS, # 31 SUMMONS, # 32 SUMMONS, # 33 SUMMONS, # 34 SUMMONS, # 35 SUMMONS, # 36 SUMMONS, # 37 SUMMONS, # 38 SUMMONS, # 39 SUMMONS, # 40 SUMMONS, # 41 SUMMONS, # 42 SUMMONS, # 43 SUMMONS, # 44 SUMMONS, # 45 SUMMONS, # 46 SUMMONS, # 47 SUMMONS, # 48 SUMMONS, # 49 SUMMONS, # 50 SUMMONS, # 51 SUMMONS, # 52 SUMMONS, # 53 SUMMONS, # 54 SUMMONS, # 55 SUMMONS, # 56 SUMMONS, # 57 SUMMONS, # 58 SUMMONS, # 59 SUMMONS, # 60 SUMMONS, # 61 SUMMONS, # 62 SUMMONS) (cle) (Entered: 07/22/2021) |
| 07/22/2021 | 99 | ORDER GRANTING MOTION TO ALIGN DEADLINES - re: 97 SECRETARY OF STATE LAUREL M. LEE'S UNOPPOSED MOTION TO ALIGN RESPONSIVE PLEADING DEADLINES. The motion is GRANTED. Defendant Lee may respond to Plaintiff's First Amended Complaint on or before **7/30/2021**. Signed by CHIEF JUDGE MARK E WALKER on 7/22/2021. (cle) (Entered: 07/22/2021) |
| 07/22/2021 | 100 | PROTECTIVE ORDER - The parties jointly move for the entry of a protective order. (Doc. 157 in 4:21-cv-186.) The motion is GRANTED. Signed by CHIEF JUDGE MARK E WALKER on 7/22/2021. (cle) (Entered: 07/22/2021) |
| 07/23/2021 | 101 | SCHEDULING AND MEDIATION ORDER - re: 161 Report of Rule 26(f) Planning Meeting in case number: 4:21-cv-186. Discovery due by **10/22/2021**. Dispositive Motions to be filed by **11/12/2021**. Bench Trial set for **1/31/2022 at 8:15 AM** in U.S. Courthouse Tallahassee before CHIEF |

| | | JUDGE MARK E WALKER. Case referred to mediation. Mediation Report due by **12/3/2021**. Signed by CHIEF JUDGE MARK E WALKER on 7/23/2021. (cle) (Entered: 07/23/2021) |
|---|---|---|
| 07/23/2021 | 102 | NOTICE of Appearance by ROBERT C SHEARMAN on behalf of MELISSA ARNOLD, ALETRIS FARNAM, BRENDA HOOTS, TAMMY JONES, THERISA MEADOWS, DIANE SMITH (SHEARMAN, ROBERT) (Entered: 07/23/2021) |
| 07/23/2021 | 103 | *Intervenor-Defendants'* ANSWER to 59 Amended Complaint,,,,,,, by NATIONAL REPUBLICAN SENATORIAL COMMITTEE, REPUBLICAN NATIONAL COMMITTEE. (NORDBY, DANIEL) (Entered: 07/23/2021) |
| 07/23/2021 | 104 | RULE 26 Disclosures by NATIONAL REPUBLICAN SENATORIAL COMMITTEE, REPUBLICAN NATIONAL COMMITTEE. (NORDBY, DANIEL) (Entered: 07/23/2021) |
| 07/23/2021 | 105 | MOTION for Protective Order by EQUAL GROUND EDUCATION FUND, FAITH IN FLORIDA, FLORIDA RISING TOGETHER, HAITIAN NEIGHBORHOOD CENTER SANT LA, HISPANIC FEDERATION, MI FAMILIA VOTA EDUCATION FUND, PODER LATINX, UNIDOSUS. (Attachments: # 1 Exhibit) (ROMERO-CRAFT, KIRA) (Entered: 07/23/2021) |
| 07/23/2021 | 106 | WAIVER OF SERVICE Returned Executed by HAITIAN NEIGHBORHOOD CENTER SANT LA, MI FAMILIA VOTA EDUCATION FUND, UNIDOSUS, FLORIDA RISING TOGETHER, PODER LATINX, EQUAL GROUND EDUCATION FUND, FAITH IN FLORIDA, HISPANIC FEDERATION. MARTY BISHOP waiver sent on 7/16/2021, answer due 9/14/2021. (FREEDMAN, JOHN) (Entered: 07/23/2021) |
| 07/23/2021 | 107 | WAIVER OF SERVICE Returned Executed by HAITIAN NEIGHBORHOOD CENTER SANT LA, MI FAMILIA VOTA EDUCATION FUND, UNIDOSUS, FLORIDA RISING TOGETHER, PODER LATINX, EQUAL GROUND EDUCATION FUND, FAITH IN FLORIDA, HISPANIC FEDERATION. HEATH DRIGGERS waiver sent on 7/16/2021, answer due 9/14/2021. (FREEDMAN, JOHN) (Entered: 07/23/2021) |
| 07/23/2021 | 108 | WAIVER OF SERVICE Returned Executed by HAITIAN NEIGHBORHOOD CENTER SANT LA, MI FAMILIA VOTA EDUCATION FUND, UNIDOSUS, FLORIDA RISING TOGETHER, PODER LATINX, EQUAL GROUND EDUCATION FUND, FAITH IN FLORIDA, HISPANIC FEDERATION. CONNIE SANCHEZ waiver sent on 7/16/2021, answer due 9/14/2021. (FREEDMAN, JOHN) (Entered: 07/23/2021) |
| 07/23/2021 | 109 | WAIVER OF SERVICE Returned Executed by HAITIAN NEIGHBORHOOD CENTER SANT LA, MI FAMILIA VOTA EDUCATION FUND, UNIDOSUS, FLORIDA RISING TOGETHER, PODER LATINX, EQUAL GROUND EDUCATION FUND, FAITH IN FLORIDA, HISPANIC FEDERATION. THERISA MEADOWS waiver sent on 7/16/2021, answer due 9/14/2021. (FREEDMAN, JOHN) (Entered: 07/23/2021) |
| 07/23/2021 | 110 | WAIVER OF SERVICE Returned Executed by HAITIAN NEIGHBORHOOD CENTER SANT LA, MI FAMILIA VOTA EDUCATION FUND, UNIDOSUS, FLORIDA RISING TOGETHER, PODER LATINX, EQUAL GROUND EDUCATION FUND, FAITH IN FLORIDA, HISPANIC FEDERATION. TAMMY JONES waiver sent on 7/16/2021, answer due 9/14/2021. (FREEDMAN, JOHN) (Entered: 07/23/2021) |
| 07/23/2021 | 111 | WAIVER OF SERVICE Returned Executed by HAITIAN NEIGHBORHOOD CENTER SANT LA, MI FAMILIA VOTA EDUCATION FUND, UNIDOSUS, FLORIDA RISING TOGETHER, PODER LATINX, EQUAL GROUND EDUCATION FUND, FAITH IN FLORIDA, HISPANIC FEDERATION. MELISSA ARNOLD waiver sent on 7/16/2021, answer due 9/14/2021. (FREEDMAN, JOHN) (Entered: 07/23/2021) |
| 07/23/2021 | 112 | WAIVER OF SERVICE Returned Executed by HAITIAN NEIGHBORHOOD CENTER SANT LA, MI FAMILIA VOTA EDUCATION FUND, UNIDOSUS, FLORIDA RISING TOGETHER, PODER LATINX, EQUAL GROUND EDUCATION FUND, FAITH IN FLORIDA, HISPANIC FEDERATION. DIANE SMITH waiver sent on 7/16/2021, answer due 9/14/2021. (FREEDMAN, JOHN) (Entered: 07/23/2021) |
| 07/23/2021 | 113 | WAIVER OF SERVICE Returned Executed by HAITIAN NEIGHBORHOOD CENTER SANT LA, MI FAMILIA VOTA EDUCATION FUND, UNIDOSUS, FLORIDA RISING TOGETHER, |

| | | |
|---|---|---|
| | | PODER LATINX, EQUAL GROUND EDUCATION FUND, FAITH IN FLORIDA, HISPANIC FEDERATION. BRENDA HOOTS waiver sent on 7/16/2021, answer due 9/14/2021. (FREEDMAN, JOHN) (Entered: 07/23/2021) |
| 07/23/2021 | 114 | WAIVER OF SERVICE Returned Executed by HAITIAN NEIGHBORHOOD CENTER SANT LA, MI FAMILIA VOTA EDUCATION FUND, UNIDOSUS, FLORIDA RISING TOGETHER, PODER LATINX, EQUAL GROUND EDUCATION FUND, FAITH IN FLORIDA, HISPANIC FEDERATION. ALETRIS FARNAM waiver sent on 7/16/2021, answer due 9/14/2021. (FREEDMAN, JOHN) (Entered: 07/23/2021) |
| 07/23/2021 | 115 | RESPONSE TO ORDER TO SHOW CAUSE by LAUREL M LEE. (Attachments: # 1 Exhibit A-2021-11, Laws of FL) (JAZIL, MOHAMMAD) (Entered: 07/23/2021) |
| 07/26/2021 | 116 | PROTECTIVE ORDER - Plaintiffs and the Defendant Supervisors of Elections (the "Supervisors") jointly move for the entry of a protective order. ECF No. 105 . The motion is GRANTED. Signed by CHIEF JUDGE MARK E WALKER on 7/26/2021. (cle) (Entered: 07/26/2021) |
| 07/27/2021 | 117 | ORDER ACKNOWLEDGING SUPPLEMENTAL RULE 26 REPORT - This Order acknowledges the supplemental report, ECF No. 164 (in case number 4:21-cv-186), and notes that the deadlines set by this Court's Scheduling and Mediation Order, ECF No. 162 (in case number 4:21-cv-186), remain in place. Signed by CHIEF JUDGE MARK E WALKER on 7/27/2021. (cle) (Entered: 07/27/2021) |
| 07/28/2021 | 118 | NOTICE of Appearance by DIANA MASTERS JOHNSON on behalf of KIM A BARTON (JOHNSON, DIANA) (Entered: 07/28/2021) |
| 07/29/2021 | 119 | NOTICE of Appearance by ANDY V BARDOS on behalf of CHRISTOPHER ANDERSON, MICHAEL BENNETT, BRIAN CORLEY, TOMMY DOYLE, JENNIFER J EDWARDS, JOYCE GRIFFIN, ALAN HAYS, PAUL STAMOULIS, LESLIE SWAN, WESLEY WILCOX (BARDOS, ANDY) (Entered: 07/29/2021) |
| 07/30/2021 | 120 | MOTION for Leave to File Excess Pages by LAUREL M LEE. (GORDON, PHILLIP) (Entered: 07/30/2021) |
| 07/30/2021 | 121 | ORDER GRANTING 120 LEAVE TO EXCEED WORD LIMIT. The 120 motion is GRANTED. Signed by CHIEF JUDGE MARK E WALKER on 07/30/2021. (rcb) (Entered: 07/30/2021) |
| 07/30/2021 | 122 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by LAUREL M LEE. (Attachments: # 1 Memo. in Support, # 2 Exhibit A) (JAZIL, MOHAMMAD) (Entered: 07/30/2021) |
| 08/01/2021 | 123 | NOTICE of Appearance by NICHOLAS ARI SHANNIN on behalf of BILL COWLES (SHANNIN, NICHOLAS) (Entered: 08/01/2021) |
| 08/02/2021 | 124 | NOTICE of Appearance by ROBERT CHARLES SWAIN on behalf of KIM A BARTON (SWAIN, ROBERT) (Entered: 08/02/2021) |
| 08/03/2021 | 125 | ANSWER to 59 Amended Complaint,,,,,,,, by CRAIG LATIMER. (TODD, STEPHEN) (Entered: 08/03/2021) |
| 08/06/2021 | 126 | NOTICE of Appearance by JON A JOUBEN on behalf of SHIRLEY ANDERSON (JOUBEN, JON) (Entered: 08/06/2021) |
| 08/09/2021 | 127 | ANSWER to 59 Amended Complaint,,,,,,,, by SHIRLEY ANDERSON. (JOUBEN, JON) (Entered: 08/09/2021) |
| 08/09/2021 | 128 | NOTICE of Appearance by KYLE J BENDA on behalf of SHIRLEY ANDERSON (BENDA, KYLE) (Entered: 08/09/2021) |
| 08/13/2021 | 129 | NOTICE of Appearance by FRANK MICHAEL MARI on behalf of HEATH DRIGGERS, JOHN HANLON, KAITI LENHART, MARK F NEGLEY, PENNY OGG, CONNIE SANCHEZ, LORI A SCOTT (MARI, FRANK) (Entered: 08/13/2021) |
| 08/13/2021 | 130 | RESPONSE in Opposition re 122 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by EQUAL GROUND EDUCATION FUND, FAITH IN FLORIDA, FLORIDA RISING TOGETHER, HAITIAN NEIGHBORHOOD CENTER SANT LA, HISPANIC FEDERATION, MI |

| | | |
|---|---|---|
| | | FAMILIA VOTA EDUCATION FUND, PODER LATINX, UNIDOSUS. (ROMERO-CRAFT, KIRA) (Entered: 08/13/2021) |
| 08/13/2021 | 131 | ANSWER to 59 Amended Complaint,,,,,,,, *and Affirmative Defenses* by CHRISTINA WHITE. (VALDES, MICHAEL) (Entered: 08/13/2021) |
| 08/16/2021 | 132 | WAIVER OF SERVICE Returned Executed by HAITIAN NEIGHBORHOOD CENTER SANT LA, MI FAMILIA VOTA EDUCATION FUND, UNIDOSUS, FLORIDA RISING TOGETHER, PODER LATINX, EQUAL GROUND EDUCATION FUND, FAITH IN FLORIDA, HISPANIC FEDERATION. MAUREEN BAIRD waiver sent on 7/16/2021, answer due 9/14/2021. (FREEDMAN, JOHN) (Entered: 08/16/2021) |
| 08/16/2021 | 133 | WAIVER OF SERVICE Returned Executed by HAITIAN NEIGHBORHOOD CENTER SANT LA, MI FAMILIA VOTA EDUCATION FUND, UNIDOSUS, FLORIDA RISING TOGETHER, PODER LATINX, EQUAL GROUND EDUCATION FUND, FAITH IN FLORIDA, HISPANIC FEDERATION. RON TURNER waiver sent on 7/16/2021, answer due 9/14/2021. (FREEDMAN, JOHN) (Entered: 08/16/2021) |
| 08/16/2021 | 134 | ANSWER to 59 Amended Complaint,,,,,,,, by PENNY OGG. (MARI, FRANK) (Entered: 08/16/2021) |
| 08/16/2021 | 135 | ANSWER to 59 Amended Complaint,,,,,,,, by MARTY BISHOP. (MARI, FRANK) (Entered: 08/16/2021) |
| 08/16/2021 | 136 | ANSWER to 59 Amended Complaint,,,,,,,, by HEATH DRIGGERS. (MARI, FRANK) (Entered: 08/16/2021) |
| 08/16/2021 | 137 | ANSWER to 59 Amended Complaint,,,,,,,, by JOHN HANLON. (MARI, FRANK) (Entered: 08/16/2021) |
| 08/16/2021 | 138 | ANSWER to 59 Amended Complaint,,,,,,,, by KAITI LENHART. (MARI, FRANK) (Entered: 08/16/2021) |
| 08/16/2021 | 139 | ANSWER to 59 Amended Complaint,,,,,,,, by MARK F NEGLEY. (MARI, FRANK) (Entered: 08/16/2021) |
| 08/16/2021 | 140 | ANSWER to 59 Amended Complaint,,,,,,,, by CONNIE SANCHEZ. (MARI, FRANK) (Entered: 08/16/2021) |
| 08/16/2021 | 141 | ANSWER to 59 Amended Complaint,,,,,,,, by LORI A SCOTT. (MARI, FRANK) (Entered: 08/16/2021) |
| 08/17/2021 | 142 | NOTICE of Appearance by RONALD A LABASKY on behalf of MARY JANE ARRINGTON, VICKI DAVIS, LORI EDWARDS, GERTRUDE WALKER, chris chambles (LABASKY, RONALD) (Entered: 08/17/2021) |
| 08/18/2021 | 143 | NOTICE of Appearance by JOHN M JANOUSEK on behalf of MARTY BISHOP, HEATH DRIGGERS, JOHN HANLON, KAITI LENHART, MARK F NEGLEY, PENNY OGG, CONNIE SANCHEZ, LORI A SCOTT (JANOUSEK, JOHN) (Entered: 08/18/2021) |
| 08/26/2021 | 144 | NOTICE of Appearance by JOSEPH K JARONE on behalf of JOE SCOTT (JARONE, JOSEPH) (Entered: 08/26/2021) |
| 09/02/2021 | 145 | NOTICE of Appearance by FRANK A ZACHERL on behalf of NATIONAL REPUBLICAN SENATORIAL COMMITTEE, REPUBLICAN NATIONAL COMMITTEE (ZACHERL, FRANK) (Entered: 09/02/2021) |
| 09/02/2021 | 146 | ANSWER to 59 First Amended Complaint by JULIE MARCUS. (VICARI, KELLY) (Entered: 09/02/2021) |
| 09/03/2021 | 147 | ANSWER to 59 Amended Complaint by LESLIE SWAN. (BARDOS, ANDY) (Entered: 09/03/2021) |
| 09/03/2021 | 148 | ANSWER to 59 Amended Complaint by BRIAN CORLEY. (BARDOS, ANDY) (Entered: 09/03/2021) |

| | | |
|---|---|---|
| 09/03/2021 | 149 | ANSWER to 59 Amended Complaint by TOMMY DOYLE. (BARDOS, ANDY) (Entered: 09/03/2021) |
| 09/08/2021 | 150 | ANSWER and Affirmative Defenses to 59 First Amended Complaint by ALETRIS FARNAM. (OLIVO, GERALDO) (Entered: 09/08/2021) |
| 09/08/2021 | 151 | ANSWER and Affirmative Defenses to 59 First Amended Complaint by TAMMY JONES. (OLIVO, GERALDO) (Entered: 09/08/2021) |
| 09/08/2021 | 152 | ANSWER and Affirmative Defenses to 59 First Amended Complaint by THERISA MEADOWS. (OLIVO, GERALDO) (Entered: 09/08/2021) |
| 09/08/2021 | 153 | ANSWER and Affirmative Defenses to 59 First Amended Complaint by BRENDA HOOTS. (OLIVO, GERALDO) (Entered: 09/08/2021) |
| 09/08/2021 | 154 | ANSWER and Affirmative Defenses to 59 First Amended Complaint by MELISSA ARNOLD. (OLIVO, GERALDO) (Entered: 09/08/2021) |
| 09/08/2021 | 155 | ANSWER and Affirmative Defenses to 59 First Amended Complaint by DIANE SMITH. (OLIVO, GERALDO) (Entered: 09/08/2021) |
| 09/10/2021 | 156 | NOTICE *Concerning Interpretation of Section 97.0575, Florida Statutes* by LAUREL M LEE (JAZIL, MOHAMMAD) (Entered: 09/10/2021) |
| 09/13/2021 | 157 | ANSWER to 59 Amended Complaint,,,,,,,, by PAUL STAMOULIS. (BARDOS, ANDY) (Entered: 09/13/2021) |
| 09/13/2021 | 158 | ANSWER to 59 Amended Complaint,,,,,,,, by CHRISTOPHER ANDERSON. (BARDOS, ANDY) (Entered: 09/13/2021) |
| 09/13/2021 | 159 | ANSWER to 59 Amended Complaint,,,,,,,, by JENNIFER J EDWARDS. (BARDOS, ANDY) (Entered: 09/13/2021) |
| 09/13/2021 | 160 | *CLAY COUNTY SUPERVISOR OF ELECTIONS* ANSWER to 59 Amended Complaint,,,,,,,, by chris chambles. (LABASKY, RONALD) (Entered: 09/13/2021) |
| 09/13/2021 | 161 | *MARTIN COUNTY SUPERVISOR OF ELECTIONS* ANSWER to 59 Amended Complaint,,,,,,,, by VICKI DAVIS. (LABASKY, RONALD) (Entered: 09/13/2021) |
| 09/13/2021 | 162 | *POLK COUNTY SUPERVISOR OF ELECTIONS* ANSWER to 59 Amended Complaint,,,,,,,, by LORI EDWARDS. (LABASKY, RONALD) (Entered: 09/13/2021) |
| 09/13/2021 | 163 | ANSWER to 59 Amended Complaint,,,,,,,, by JOE SCOTT. (JARONE, JOSEPH) (Entered: 09/13/2021) |
| 09/14/2021 | 164 | ANSWER to 59 Amended Complaint,,,,,,,, by JOYCE GRIFFIN. (BARDOS, ANDY) (Entered: 09/14/2021) |
| 09/14/2021 | 165 | ANSWER to 59 Amended Complaint,,,,,,,, by ALAN HAYS. (BARDOS, ANDY) (Entered: 09/14/2021) |
| 09/14/2021 | 166 | ANSWER to 59 Amended Complaint,,,,,,,, by MICHAEL BENNETT. (BARDOS, ANDY) (Entered: 09/14/2021) |
| 09/14/2021 | 167 | ANSWER to 59 Amended Complaint,,,,,,,, by WESLEY WILCOX. (BARDOS, ANDY) (Entered: 09/14/2021) |
| 09/14/2021 | 168 | *OSCEOLA COUNTY SUPERVISOR OF ELECTIONS* ANSWER to 59 Amended Complaint,,,,,,,, by MARY JANE ARRINGTON. (LABASKY, RONALD) (Entered: 09/14/2021) |
| 09/14/2021 | 169 | *ST. LUCIE COUNTY SUPERVISOR OF ELECTIONS* ANSWER to 59 Amended Complaint,,,,,,,, by GERTRUDE WALKER. (LABASKY, RONALD) (Entered: 09/14/2021) |
| 09/14/2021 | 170 | ANSWER to 59 Amended Complaint,,,,,,,, by KIM A BARTON. (SWAIN, ROBERT) (Entered: 09/14/2021) |
| 09/14/2021 | 171 | NOTICE of Appearance by SUSAN SMITH ERDELYI on behalf of JANET H ADKINS, MARK |

| | | |
|---|---|---|
| | | ANDERSEN, BOBBY BEASLEY, TOMI S BROWN, STARLET CANNON, SHARON CHASON, GRANT CONYERS, CAROL DUNAWAY, TRAVIS HART, LAURA HUTTO, WILLIAM KEEN, JENNIFER M KINSEY, SHIRLEY G KNIGHT, CHRIS MILTON, JOSEPH MORGAN, VICKY OAKES, DEBORAH OSBORNE, CHARLES OVERTURF, HEATHER RILEY, AMANDA SEYFANG, DANA SOUTHERLAND, TAPPIE A VILLANE (ERDELYI, SUSAN) (Entered: 09/14/2021) |
| 09/14/2021 | 172 | ANSWER to 59 Amended Complaint,,,,,,,, by LISA LEWIS. (OTT, LONDON) (Entered: 09/14/2021) |
| 09/14/2021 | 173 | ANSWER to 59 Amended Complaint,,,,,,,, by DAVID H STAFFORD. (JOHNSON, KIA) (Entered: 09/14/2021) |
| 09/14/2021 | 174 | ANSWER to 59 Amended Complaint,,,,,,,, by MIKE HOGAN. (FEISER, CRAIG) (Entered: 09/14/2021) |
| 09/15/2021 | 175 | *Twenty-Three Supervisors of Elections'* ANSWER to 59 Amended Complaint,,,,,,,, by JANET H ADKINS, MARK ANDERSEN, BOBBY BEASLEY, TOMI S BROWN, STARLET CANNON, SHARON CHASON, GRANT CONYERS, CAROL DUNAWAY, TRAVIS HART, LAURA HUTTO, WILLIAM KEEN, JENNIFER M KINSEY, SHIRLEY G KNIGHT, CHRIS MILTON, JOSEPH MORGAN, VICKY OAKES, DEBORAH OSBORNE, CHARLES OVERTURF, HEATHER RILEY, AMANDA SEYFANG, DANA SOUTHERLAND, TAPPIE A VILLANE. (ERDELYI, SUSAN) (Entered: 09/15/2021) |
| 09/17/2021 | 176 | *Orange County Supervisor of Elections'* ANSWER to 59 Amended Complaint,,,,,,,, by BILL COWLES. (SHANNIN, NICHOLAS) (Entered: 09/17/2021) |
| 09/20/2021 | 177 | WAIVER OF SERVICE Returned Executed by HAITIAN NEIGHBORHOOD CENTER SANT LA, MI FAMILIA VOTA EDUCATION FUND, UNIDOSUS, FLORIDA RISING TOGETHER, PODER LATINX, EQUAL GROUND EDUCATION FUND, FAITH IN FLORIDA, HISPANIC FEDERATION. WENDY LINK waiver sent on 7/16/2021, answer due 9/14/2021. (FREEDMAN, JOHN) (Entered: 09/20/2021) |
| 09/20/2021 | 178 | AFFIDAVIT of Service for Summons in a Civil Action and Amended Complaint for Injunctive and Declaratory Relief served on Christina White, Supervisor of Elections, Miami-Dade County on 07/23/2021, filed by EQUAL GROUND EDUCATION FUND, FAITH IN FLORIDA, FLORIDA RISING TOGETHER, HAITIAN NEIGHBORHOOD CENTER SANT LA, HISPANIC FEDERATION, MI FAMILIA VOTA EDUCATION FUND, PODER LATINX, UNIDOSUS. (FREEDMAN, JOHN) (Entered: 09/20/2021) |
| 09/23/2021 | 179 | NOTICE of Appearance by MARK HERRON on behalf of MARK EARLEY (HERRON, MARK) (Entered: 09/23/2021) |
| 09/23/2021 | 180 | ANSWER to 59 Amended Complaint,,,,,,,, by MARK EARLEY. (HERRON, MARK) (Entered: 09/23/2021) |
| 09/29/2021 | 181 | MOTION to Appear Pro Hac Vice by Miranda Galindo.( Filing fee $ 208 receipt number AFLNDC-6376062.) by EQUAL GROUND EDUCATION FUND, FAITH IN FLORIDA, FLORIDA RISING TOGETHER, HAITIAN NEIGHBORHOOD CENTER SANT LA, HISPANIC FEDERATION, MI FAMILIA VOTA EDUCATION FUND, PODER LATINX, UNIDOSUS. (Attachments: # 1 Exhibit certificate of good standing) (GALINDO, EMILY) (Entered: 09/29/2021) |
| 09/29/2021 | 182 | MOTION to Appear Pro Hac Vice by Kenneth C. Daines.( Filing fee $ 208 receipt number AFLNDC-6380187.) by LAUREL M LEE. (Attachments: # 1 Exhibit Certificate of Good Standing) (JAZIL, MOHAMMAD) (Entered: 09/29/2021) |
| 09/29/2021 | 183 | ORDER ADMITTING MIRANDA GALINDO PRO HAC VICE (granting 181 Motion to Appear Pro Hac Vice) (Appointed EMILY MIRANDA GALINDO for Plaintiffs) Signed by CHIEF JUDGE MARK E WALKER on 9/29/2021. (ckm) (Entered: 09/30/2021) |
| 09/30/2021 | 184 | *Ron Turner, Sarasota County's* ANSWER to 59 Amended Complaint,,,,,,,, by RON TURNER. (BENTLEY, MORGAN) (Entered: 09/30/2021) |
| 09/30/2021 | 185 | ORDER ADMITTING KENNETH DAINES PRO HAC VICE (granting 182 Motion to Appear Pro |

| | | |
|---|---|---|
| | | Hac Vice). Signed by CHIEF JUDGE MARK E WALKER on 9/30/2021. (ckm) (Entered: 09/30/2021) |
| 10/01/2021 | 186 | MOTION to Appear Pro Hac Vice by Dallin B. Holt.( Filing fee $ 208 receipt number AFLNDC-6395590.) by LAUREL M LEE. (Attachments: # 1 Exhibit Certificate of Good Standing) (JAZIL, MOHAMMAD) (Entered: 10/01/2021) |
| 10/01/2021 | 187 | ORDER ADMITTING DALLIN B. HOLT PRO HAC VICE (granting 186 Motion to Appear Pro Hac Vice) (Appointed DALLIN B HOLT for LAUREL M LEE). Signed by CHIEF JUDGE MARK E WALKER on 10/1/2021. (ckm) (Entered: 10/01/2021) |
| 10/01/2021 | 188 | MOTION to Appear Pro Hac Vice by John J. Cycon.( Filing fee $ 208 receipt number AFLNDC-6399925.) by LAUREL M LEE. (Attachments: # 1 Exhibit Certificate of Good Standing) (JAZIL, MOHAMMAD) (Entered: 10/01/2021) |
| 10/01/2021 | 189 | NOTICE *Regarding Mediation and Unopposed Motion to Waive Mediation Requirement* by EQUAL GROUND EDUCATION FUND, FAITH IN FLORIDA, FLORIDA RISING TOGETHER, HAITIAN NEIGHBORHOOD CENTER SANT LA, HISPANIC FEDERATION, MI FAMILIA VOTA EDUCATION FUND, PODER LATINX, UNIDOSUS (ROMERO-CRAFT, KIRA) Modified on 10/4/2021 to change to motion (ckm). (Entered: 10/01/2021) |
| 10/01/2021 | 190 | ORDER ADMITTING JOHN J. CYCON PRO HAC VICE (granting 188 Motion to Appear Pro Hac Vice) (Appointed JOHN J CYCON for LAUREL M LEE). Signed by CHIEF JUDGE MARK E WALKER on 10/1/2021. (ckm) (Entered: 10/04/2021) |
| 10/04/2021 | 191 | ORDER GRANTING 189 MOTION TO WAIVE MEDIATION REQUIREMENTS. Signed by CHIEF JUDGE MARK E WALKER on 10/4/2021. (ckm) (Entered: 10/04/2021) |
| 10/04/2021 | 192 | MOTION to Appear Pro Hac Vice by Ryan D. Budhu.( Filing fee $ 208 receipt number AFLNDC-6415282.) by EQUAL GROUND EDUCATION FUND, FAITH IN FLORIDA, FLORIDA RISING TOGETHER, HAITIAN NEIGHBORHOOD CENTER SANT LA, HISPANIC FEDERATION, MI FAMILIA VOTA EDUCATION FUND, PODER LATINX, UNIDOSUS. (Attachments: # 1 Certificate of Good Standing State of New York) (BUDHU, RYAN) (Entered: 10/04/2021) |
| 10/04/2021 | 193 | MOTION to Appear Pro Hac Vice by Andrew R. Hirschel.( Filing fee $ 208 receipt number AFLNDC-6416313.) by EQUAL GROUND EDUCATION FUND, FAITH IN FLORIDA, FLORIDA RISING TOGETHER, HAITIAN NEIGHBORHOOD CENTER SANT LA, HISPANIC FEDERATION, MI FAMILIA VOTA EDUCATION FUND, PODER LATINX, UNIDOSUS. (Attachments: # 1 Certificate of Good Standing State of New York) (HIRSCHEL, ANDREW) (Entered: 10/04/2021) |
| 10/04/2021 | 194 | MOTION to Appear Pro Hac Vice by Janine M. Lopez.( Filing fee $ 208 receipt number AFLNDC-6416703.) by EQUAL GROUND EDUCATION FUND, FAITH IN FLORIDA, FLORIDA RISING TOGETHER, HAITIAN NEIGHBORHOOD CENTER SANT LA, HISPANIC FEDERATION, MI FAMILIA VOTA EDUCATION FUND, PODER LATINX, UNIDOSUS. (Attachments: # 1 Certificate of Good Standing from the District of Columbia) (LOPEZ, JANINE) (Entered: 10/04/2021) |
| 10/05/2021 | 195 | ORDER ADMITTING RYAN BUDHU PRO HAC VICE (granting 192 Motion to Appear Pro Hac Vice) (Appointed RYAN D BUDHU for FLORIDA RISING TOGETHER). Signed by CHIEF JUDGE MARK E WALKER on 10/5/2021. (ckm) (Entered: 10/05/2021) |
| 10/05/2021 | 196 | ORDER ADMITTING ANDREW HIRSCHEL PRO HAC VICE (granting 193 Motion to Appear Pro Hac Vice) (Appointed ANDREW RICHARD HIRSCHEL for Plaintiffs). Signed by CHIEF JUDGE MARK E WALKER on 10/5/2021. (ckm) (Entered: 10/05/2021) |
| 10/05/2021 | 197 | ORDER ADMITTING JANINE LOPEZ PRO HAC VICE (granting 194 Motion to Appear Pro Hac Vice) (Appointed JANINE MARIE LOPEZ for Plaintiffs). Signed by CHIEF JUDGE MARK E WALKER on 10/5/2021. (ckm) (Entered: 10/05/2021) |
| 10/05/2021 | 198 | ORDER ADMITTING TYLER GREEN PRO HAC VICE (granting 40 Motion to Appear Pro Hac Vice) (Appointed TYLER R GREEN for Intervenor-Defendants). Signed by CHIEF JUDGE MARK E WALKER on 10/5/2021. (ckm) (Entered: 10/05/2021) |

| 10/05/2021 | 199 | ORDER GRANTING UNOPPOSED MOTION TO EXTEND EXPERT DEPOSITION DEADLINES. Signed by CHIEF JUDGE MARK E WALKER on 10/5/2021. (ckm) (Entered: 10/05/2021) |
| 10/06/2021 | 200 | WAIVER OF SERVICE Returned Executed by HAITIAN NEIGHBORHOOD CENTER SANT LA, MI FAMILIA VOTA EDUCATION FUND, UNIDOSUS, FLORIDA RISING TOGETHER, PODER LATINX, EQUAL GROUND EDUCATION FUND, FAITH IN FLORIDA, HISPANIC FEDERATION. PAUL A LUX waiver sent on 10/4/2021, answer due 12/3/2021. (FREEDMAN, JOHN) (Entered: 10/06/2021) |
| 10/08/2021 | 201 | ORDER ON MOTION TO DISMISS. Defendant Lee's motion to dismiss, ECF No. 122, is GRANTED in part and DENIED in part. Signed by CHIEF JUDGE MARK E WALKER on 10/8/2021. (kjw) (Entered: 10/08/2021) |
| 10/08/2021 | 202 | NOTICE of Appearance by GERALDO FRANCIS OLIVO, III on behalf of MELISSA ARNOLD, ALETRIS FARNAM, BRENDA HOOTS, TAMMY JONES, THERISA MEADOWS, DIANE SMITH (OLIVO, GERALDO) (Entered: 10/08/2021) |
| 10/08/2021 | 203 | NOTICE of Appearance by GREGORY THOMAS STEWART on behalf of PAUL A LUX (STEWART, GREGORY) (Entered: 10/08/2021) |
| 10/08/2021 | 204 | NOTICE of Appearance by ELIZABETH DESLOGE ELLIS on behalf of PAUL A LUX (ELLIS, ELIZABETH) (Entered: 10/08/2021) |
| 10/08/2021 | 205 | NOTICE of Appearance by KIRSTEN H MOOD on behalf of PAUL A LUX (MOOD, KIRSTEN) (Entered: 10/08/2021) |
| 10/08/2021 | 206 | NOTICE of Appearance by DALE A SCOTT on behalf of MAUREEN BAIRD (SCOTT, DALE) (Entered: 10/08/2021) |
| 10/08/2021 | 207 | ANSWER to 59 Amended Complaint,,,,,,,, by MAUREEN BAIRD. (SCOTT, DALE) (Entered: 10/08/2021) |
| 10/14/2021 | 208 | ORDER DENYING IN PART MOTION FOR PROTECTIVE ORDER AND REQUIRING EXPEDITED RESPONSE (Internal deadline for referral to judge if Plaintiffs' response not filed earlier: **10/22/2021**).) Signed by CHIEF JUDGE MARK E WALKER on 10/14/2021. (ckm) (Entered: 10/14/2021) |
| 10/14/2021 | 209 | MOTION to Appear Pro Hac Vice by Andrew Case.( Filing fee $ 208 receipt number AFLNDC-6468864.) by HAITIAN NEIGHBORHOOD CENTER SANT LA. (Attachments: # 1 Exhibit Certificate of Good Standing) (CASE, ANDREW) (Entered: 10/14/2021) |
| 10/15/2021 | 210 | ORDER ADMITTING ANDREW CASE PRO HAC VICE (granting 209 Motion to Appear Pro Hac Vice) (Appointed ANDREW C CASE for Plaintiffs). Signed by CHIEF JUDGE MARK E WALKER on 10/15/2021. (ckm) (Entered: 10/15/2021) |
| 10/16/2021 | 211 | MOTION to Appear Pro Hac Vice by Francisca Fajana.( Filing fee $ 208 receipt number AFLNDC-6479078.) by FLORIDA RISING TOGETHER. (Attachments: # 1 Certificate of Good Standing) (FAJANA, FRANCISCA) (Entered: 10/16/2021) |
| 10/18/2021 | 212 | ORDER ADMITTING FRANCISCA FAJANA PRO HAC VICE (granting 211 Motion to Appear Pro Hac Vice) (Appointed FRANCISCA D FAJANA for Plaintiffs). Signed by CHIEF JUDGE MARK E WALKER on 10/18/2021. (ckm) (Entered: 10/18/2021) |
| 10/19/2021 | 213 | MOTION to Appear Pro Hac Vice by Leslie C. Bailey.( Filing fee $ 208 receipt number AFLNDC-6497258.) by EQUAL GROUND EDUCATION FUND, FAITH IN FLORIDA, FLORIDA RISING TOGETHER, HAITIAN NEIGHBORHOOD CENTER SANT LA, HISPANIC FEDERATION, MI FAMILIA VOTA EDUCATION FUND, PODER LATINX, UNIDOSUS. (Attachments: # 1 DC Cert of Good Standing) (BAILEY, LESLIE) (Entered: 10/19/2021) |
| 10/19/2021 | 214 | ORDER ADMITTING LESLIE BAILEY PRO HAC VICE (granting 213 Motion to Appear Pro Hac Vice) (Appointed LESLIE CLAIRE BAILEY for Plaintiffs). Signed by CHIEF JUDGE MARK E WALKER on 10/19/2021. (ckm) (Entered: 10/19/2021) |
| | | |

| | | |
|---|---|---|
| 10/19/2021 | 218 | ORDER ON MOTION FOR PROTECTIVE ORDER. Signed by CHIEF JUDGE MARK E WALKER on 10/19/2021. (ckm) (Entered: 10/21/2021) |
| 10/20/2021 | 215 | NOTICE of Appearance by EVAN MATTHEW EZRAY on behalf of Jeff Brandes, Joe Gruters, Kathleen Passidomo, Dennis Baxley, Jim Boyd, Blaise Ingoglia, Erin Grall (EZRAY, EVAN) (Entered: 10/20/2021) |
| 10/20/2021 | 216 | Opposition to Secretary Lee and Intervenor-Defendants' Joint Omnibus Motion for Protective Order by EQUAL GROUND EDUCATION FUND, FAITH IN FLORIDA, FLORIDA RISING TOGETHER, HAITIAN NEIGHBORHOOD CENTER SANT LA, HISPANIC FEDERATION, MI FAMILIA VOTA EDUCATION FUND, PODER LATINX, UNIDOSUS (re 208 Order *including opposition to 21-cv-186 ECF 276 Joint Omnibus Motion for Protective Order*). (Attachments: # 1 Exhibit Rule 26 Disclosures by Laurel Lee, # 2 Exhibit Rule 26 Disclosures by National Republican Senatorial Committee, Republican National Committee, # 3 Exhibit October 1 email from Defense Counsel, # 4 Exhibit Plaintiffs Response, # 5 Exhibit FRT Plaintiffs Request for Admission to Secretary of State, # 6 Exhibit FRT Plaintiffs Request for Admissions to Intervenors, # 7 Exhibit Correspondence of Secretary of State Personnel regarding legislative deliberations over SB 90, # 8 Exhibit Correspondence of Intervenors Counsel with Representative Ingoglia, # 9 Exhibit Correspondence of Secretary of State Personnel regarding Supervisor of Elections position on SB 90, # 10 Exhibit Correspondence between Governor DeSantis and Secretary of State Personnel regarding drop boxes, # 11 Exhibit Secretary Lee's Guidance on SB 90) (ROMERO-CRAFT, KIRA) Modified on 10/21/2021 to reflect document title (ckm). (Entered: 10/20/2021) |
| 10/20/2021 | 217 | MOTION to Quash Subpoenas for the Deposition Testimony of Seven Members of the Florida Legislature and Incorporated Memorandum of Law by Dennis Baxley, Jim Boyd, Jeff Brandes, Erin Grall, Joe Gruters, Blaise Ingoglia, Kathleen Passidomo. (Attachments: # 1 Exhibit Brandes Deposition Subpoena, # 2 Exhibit Grall Deposition Subpoena, # 3 Exhibit Gruters Deposition Subpoena, # 4 Exhibit Ingoglia Deposition Subpoena, # 5 Exhibit Passidomo Deposition Subpoena, # 6 Exhibit Baxley Deposition Subpoena, # 7 Exhibit Boyd Deposition Subpoena, # 8 Exhibit Brandes Document Subpoena, # 9 Exhibit Grall Document Subpoena, # 10 Exhibit Gruters Document Subpoena, # 11 Exhibit Ingoglia Document Subpoena, # 12 Exhibit Passidomo Document Subpoena, # 13 Exhibit Baxley Document Subpoena, # 14 Exhibit Boyd Document Subpoena) (EZRAY, EVAN) Modified on 10/21/2021 to reflect document title (ckm). (Entered: 10/20/2021) |
| 10/20/2021 | | Set Response Deadline as to 217 MOTION to Quash. (Internal deadline for referral to judge if response not filed earlier: **11/3/2021**). (ckm) (Entered: 10/21/2021) |
| 10/21/2021 | 219 | ORDER REQUIRING EXPEDITED RESPONSE (re 217 Motion to Quash) - Plaintiffs are ordered to file an expedited response to the motion to quash on or before **10/28/2021**. Signed by CHIEF JUDGE MARK E WALKER on 10/21/2021. (ckm) (Entered: 10/21/2021) |
| 10/21/2021 | 220 | MOTION to Quash *Non-Party Subpoena* by GOVERNOR OF FLORIDA. (Attachments: # 1 Exhibit Original Subpoena, # 2 Exhibit Amended Subpoena, # 3 Exhibit Governor's Office Objections) (JAZIL, MOHAMMAD) (Entered: 10/21/2021) |
| 10/22/2021 | 221 | ORDER REQUIRING EXPEDITED RESPONSE - Plaintiffs in Case No.: 4:21cv201 are ordered to file an expedited response to the ( 220 ) motion to quash on or before **10/29/2021**. Signed by CHIEF JUDGE MARK E WALKER on 10/22/2021. (ckm) (Entered: 10/22/2021) |
| 10/22/2021 | 222 | ORDER ON MOTION FOR PROTECTIVE ORDER - Defendant Lee's motion for a protective order, ECF No. 276 , is DENIED in part as to all requests except request 93 and GRANTED in part as to request 93 (filed in 4:21cv186-MW-MAF). Signed by CHIEF JUDGE MARK E WALKER on 10/22/2021. (vkm) (Entered: 10/22/2021) |
| 10/22/2021 | 223 | ORDER REQUIRING EXPEDITED RESPONSE - Defendant Lee is ordered to file an expedited response to Plaintiffs' 260 motion on or before **10/29/2021** (filed in 4:21cv187-MW-MAF). Signed by CHIEF JUDGE MARK E WALKER on 10/22/2021. (vkm) (Entered: 10/22/2021) |
| 10/22/2021 | 224 | MOTION for Leave to Depose Non-Parties *After Close of Fact Discovery* by EQUAL GROUND EDUCATION FUND, FAITH IN FLORIDA, FLORIDA RISING TOGETHER, HAITIAN NEIGHBORHOOD CENTER SANT LA, HISPANIC FEDERATION, MI FAMILIA VOTA EDUCATION FUND, PODER LATINX, UNIDOSUS. (Attachments: # 1 Exhibit Email notice from |

| | | NAACP and FRT plaintiffs intention to file motion for leave to depose non-parties after close of discovery, # 2 Exhibit Opposition to filing) (ROMERO-CRAFT, KIRA) Modified on 11/1/2021 to reflect document title (ckm) (Entered: 10/22/2021) |
|---|---|---|
| 10/22/2021 | 225 | ANSWER to 59 Amended Complaint,,,,,,,, by LAUREL M LEE. (JAZIL, MOHAMMAD) (Entered: 10/22/2021) |
| 10/25/2021 | 226 | ORDER REQUIRING EXPEDITED RESPONSE. Defendant Lee and any other party who opposes the motion is ordered to file an expedited response to Plaintiffs' motion on or before **10/29/2021**. Signed by CHIEF JUDGE MARK E WALKER on 10/25/2021. (rcb) (Entered: 10/25/2021) |
| 10/28/2021 | 227 | Unopposed MOTION to Voluntarily Dismiss Plaintiff Faith in Florida by EQUAL GROUND EDUCATION FUND, FAITH IN FLORIDA, FLORIDA RISING TOGETHER, HAITIAN NEIGHBORHOOD CENTER SANT LA, HISPANIC FEDERATION, MI FAMILIA VOTA EDUCATION FUND, PODER LATINX, UNIDOSUS. (ROMERO-CRAFT, KIRA) (Entered: 10/28/2021) |
| 10/28/2021 | 228 | RESPONSE in Opposition re 217 MOTION to Quash *the Deposition Subpoenas to Seven Members of the Florida Legislature* filed by EQUAL GROUND EDUCATION FUND, FAITH IN FLORIDA, FLORIDA RISING TOGETHER, HAITIAN NEIGHBORHOOD CENTER SANT LA, HISPANIC FEDERATION, MI FAMILIA VOTA EDUCATION FUND, PODER LATINX, UNIDOSUS. (ROMERO-CRAFT, KIRA) (Entered: 10/28/2021) |
| 10/29/2021 | 229 | ORDER OF DISMISSAL (granting 227 Motion to Voluntarily Dismiss) - Faith in Florida's claims are dismissed without prejudice with each side to bear its own fees and costs. (Plaintiff FAITH IN FLORIDA terminated.) Signed by CHIEF JUDGE MARK E WALKER on 10/29/2021. (ckm) (Entered: 10/29/2021) |
| 10/29/2021 | 230 | Unopposed MOTION to File a Reply Brief in Support of 217 Motion to Quash Subpoenas for the Deposition Testimony of Seven Members of the Florida Legislature by Dennis Baxley, Jim Boyd, Jeff Brandes, Erin Grall, Joe Gruters, Blaise Ingoglia, Kathleen Passidomo. (EZRAY, EVAN) Modified on 11/1/2021 to reflect document title (ckm). (Entered: 10/29/2021) |
| 10/29/2021 | 231 | RESPONSE in Opposition re 220 MOTION to Quash *Non-Party Subpoena to Governor's Office* filed by EQUAL GROUND EDUCATION FUND, FLORIDA RISING TOGETHER, HAITIAN NEIGHBORHOOD CENTER SANT LA, HISPANIC FEDERATION, MI FAMILIA VOTA EDUCATION FUND, PODER LATINX, UNIDOSUS. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F) (ROMERO-CRAFT, KIRA) (Entered: 10/29/2021) |
| 10/29/2021 | 232 | Notice of Filing RESPONSE to Plaintiffs' 224 Motion for Leave to Depose Non-Parties *After Close of Fact Discovery ***NOTICE OF FILED RESPONSE IN 4:21-cv-186)* *** filed by LAUREL M LEE. (JAZIL, MOHAMMAD) Modified on 11/1/2021 to reflect document title (ckm). (Entered: 10/29/2021) |
| 11/01/2021 | 233 | ORDER GRANTING 230 MOTION TO FILE REPLY - The Legislators must file their reply brief on or before 5:00 p.m. **11/2/2021**. Signed by CHIEF JUDGE MARK E WALKER on 11/1/2021. (ckm) (Entered: 11/01/2021) |
| 11/02/2021 | 234 | REPLY Memorandum in Support of 217 Motion to Quash Subpoenas for the Deposition Testimony of Seven Members of the Florida Legislature filed by Dennis Baxley, Jim Boyd, Jeff Brandes, Erin Grall, Joe Gruters, Blaise Ingoglia, Kathleen Passidomo. (EZRAY, EVAN) (Entered: 11/02/2021) |
| 11/04/2021 | 235 | OMNIBUS ORDER ON MOTIONS TO QUASH - The Legislators' mirroring motions to quash, ECF No. 257 in Case No. 4:21cv187 and ECF No. 217 in Case No. 4:21cv201, are GRANTED. The Governor's office's mirroring motions to quash, ECF No. 287 in Case No. 4:21cv186 and ECF No. 220 in Case No. 4:21cv201, are GRANTED. Given this Court's order quashing the subpoenas at issue, Plaintiffs' mirroring motions for leave to depose non-parties after the close of discovery, ECF No. 265 in Case No. 4:21cv187 and ECF No. 224 in Case No. 4:21cv201, are DENIED as moot. Signed by CHIEF JUDGE MARK E WALKER on 11/4/2021. (ckm) (Entered: 11/04/2021) |
| 11/12/2021 | 236 | NOTICE *of Filing Exhibits in Support of Motion for Summary Judgment* by CRAIG LATIMER (Attachments: # 1 Exhibit, # 2 Exhibit) (TODD, STEPHEN) (Entered: 11/12/2021) |

| 11/12/2021 | [237](#) | MOTION for Summary Judgment by CRAIG LATIMER. (Internal deadline for referral to judge if response to summary judgment not filed earlier: **12/3/2021**). (TODD, STEPHEN) (Entered: 11/12/2021) |
|---|---|---|
| 11/12/2021 | [238](#) | NOTICE *of Filing Exhibits in Support of Motion for Partial Summary Judgement* by EQUAL GROUND EDUCATION FUND, FLORIDA RISING TOGETHER, HAITIAN NEIGHBORHOOD CENTER SANT LA, HISPANIC FEDERATION, MI FAMILIA VOTA EDUCATION FUND, PODER LATINX, UNIDOSUS (Attachments: # [1](#) Exhibit April 19, 2021 Florida Legislature Session House State Affairs Committee, House Bill 7041, # [2](#) Exhibit April 20, 2021 Florida Legislature Session Rules Committee on SB90, # [3](#) Exhibit April 22, 2021 Florida Legislature Session Florida Senate Floor Debate, Senate Bill 90, # [4](#) Exhibit April 27, 2021 Florida Legislature Session House Debate, Senate Bill 90, # [5](#) Exhibit April 28, 2021 Florida Legislature Session House in Session, Senate Bill 90 Third Reading, # [6](#) Exhibit Florida Secretary of States Response and Objections to the Florida League of Women Voters, et al.s First Set of Interrogatories, # [7](#) Exhibit Opening Expert Report of Sharon Austin, Ph.D., # [8](#) Exhibit J. Morgan Kousser Ph.D. Expert Report, # [9](#) Exhibit Daniel Smith, Ph.D. Expert Report, # [10](#) Exhibit Deposition of Christina White, # [11](#) Exhibit Deposition of Alan Hays, # [12](#) Exhibit Deposition of Michael Bennett, # [13](#) Exhibit Deposition of Mark Earley, # [14](#) Exhibit Deposition of Craig Latimer, # [15](#) Exhibit Deposition of Joe Scott, # [16](#) Exhibit Deposition of Tommy Doyle, # [17](#) Exhibit Deposition of Kaiti Lenhart, # [18](#) Exhibit Declaration of Michael McDonald, # [19](#) Exhibit Deposition of Brian Corley, # [20](#) Exhibit Deposition of Julie Marcus, # [21](#) Exhibit Deposition of Gepsie Metellus, # [22](#) Exhibit Declaration in Lieu of Deposition of Wendy Sartory Link, Supervisor of Elections for Palm Beach County, # [23](#) Exhibit Deposition of Jasmine Burney-Clark, # [24](#) Exhibit Deposition of Andrea Mercado (Volume 1), # [25](#) Exhibit Deposition of Soraya Marquez, # [26](#) Exhibit Deposition of Maria Matthews, # [27](#) Exhibit Deposition of Andrea Mercado (Volume 2), # [28](#) Exhibit Declaration in Lieu of Deposition of Bill Cowles, Supervisor of Elections for Orange County, # [29](#) Exhibit Deposition of Jared Nordlund, # [30](#) Exhibit Deposition of Esteban Garces, # [31](#) Exhibit Deposition of Yanidsi Velez, # [32](#) Exhibit Deposition of Quentin Kidd, # [33](#) Exhibit November 1, 2021 Compendium of the RFA responses from County Supervisors) (ROMERO-CRAFT, KIRA) (Entered: 11/12/2021) |
| 11/12/2021 | [239](#) | MOTION to Exceed Word Limit by LAUREL M LEE. (JAZIL, MOHAMMAD) (Entered: 11/12/2021) |
| 11/12/2021 | [240](#) | NOTICE *of Supplemental Filing Exhibits in Support of Motion for Partial Summary Judgement* by EQUAL GROUND EDUCATION FUND, FLORIDA RISING TOGETHER, HAITIAN NEIGHBORHOOD CENTER SANT LA, HISPANIC FEDERATION, MI FAMILIA VOTA EDUCATION FUND, UNIDOSUS re [238](#) Notice (Other),,,,,,,,,, (Attachments: # [1](#) Exhibit Declaration of Jasmine Burney-Clark, # [2](#) Exhibit Declaration of Laudi Campo, # [3](#) Exhibit Declaration of Esteban Garces, # [4](#) Exhibit Declaration of Soraya Marquez, # [5](#) Exhibit Declaration of Jared Nordlund) (ROMERO-CRAFT, KIRA) (Entered: 11/12/2021) |
| 11/12/2021 | [241](#) | MOTION for Summary Judgment by EQUAL GROUND EDUCATION FUND, FLORIDA RISING TOGETHER, HAITIAN NEIGHBORHOOD CENTER SANT LA, HISPANIC FEDERATION, MI FAMILIA VOTA EDUCATION FUND, PODER LATINX, UNIDOSUS. (Internal deadline for referral to judge if response to summary judgment not filed earlier: **12/3/2021**). (Attachments: # [1](#) Exhibit Memorandum of Law in Support of Motion for Partial Summary Judgement) (ROMERO-CRAFT, KIRA) (Entered: 11/12/2021) |
| 11/12/2021 | [242](#) | MOTION for Summary Judgment by LAUREL M LEE. (Internal deadline for referral to judge if response to summary judgment not filed earlier: **12/3/2021**). (Attachments: # [1](#) Memo. in Support) (JAZIL, MOHAMMAD) (Entered: 11/12/2021) |
| 11/12/2021 | [243](#) | RESPONSE in Support re [242](#) MOTION for Summary Judgment *Joinder* filed by NATIONAL REPUBLICAN SENATORIAL COMMITTEE, REPUBLICAN NATIONAL COMMITTEE. (GREEN, TYLER) (Entered: 11/12/2021) |
| 11/12/2021 | [247](#) | ORDER GRANTING MOTION TO EXCEED WORD LIMIT [239](#) . Signed by CHIEF JUDGE MARK E WALKER on 11/12/2021. (tpm) (Entered: 11/15/2021) |
| 11/13/2021 | [244](#) | NOTICE by LAUREL M LEE (Attachments: # [1](#) Exhibit EX-001, # [2](#) Exhibit EX-002, # [3](#) Exhibit EX-003, # [4](#) Exhibit EX-004, # [5](#) Exhibit EX-005, # [6](#) Exhibit EX-006, # [7](#) Exhibit EX-007, # [8](#) |

| | | |
|---|---|---|
| | | Exhibit EX-008, # 9 Exhibit EX-009, # 10 Exhibit EX-010, # 11 Exhibit EX-011, # 12 Exhibit EX-012, # 13 Exhibit EX-013, # 14 Exhibit EX-014, # 15 Exhibit EX-015, # 16 Exhibit EX-016, # 17 Exhibit EX-017, # 18 Exhibit EX-023, # 19 Exhibit EX-024 # 20 Exhibit EX-028, # 21 Exhibit EX-029, # 22 Exhibit EX-030, # 23 Exhibit EX-037, # 24 Exhibit EX-038, # 25 Exhibit EX-039, # 26 Exhibit EX-040 PT 1, # 27 Exhibit EX-040 PT 2, # 28 Exhibit EX-041, # 29 Exhibit EX-044, # 30 Exhibit EX-048, # 31 Exhibit EX-049, # 32 Exhibit EX-051, # 33 Exhibit EX-052, # 34 Exhibit EX-053, # 35 Exhibit EX-101, # 36 Exhibit EX-119) (JAZIL, MOHAMMAD) (Entered: 11/13/2021) |
| 11/13/2021 | 245 | MOTION for Summary Judgment *Corrected* by LAUREL M LEE. (Internal deadline for referral to judge if response to summary judgment not filed earlier: **12/6/2021**). (Attachments: # 1 Corrected Memo. in Support) (JAZIL, MOHAMMAD) (Entered: 11/13/2021) |
| 11/13/2021 | 246 | RESPONSE in Support re 245 MOTION for Summary Judgment *Corrected Joinder* filed by NATIONAL REPUBLICAN SENATORIAL COMMITTEE, REPUBLICAN NATIONAL COMMITTEE. (GREEN, TYLER) (Entered: 11/13/2021) |
| 11/15/2021 | 248 | RESPONSE in Opposition re 239 MOTION to Exceed Word Limit *and Cross-Motion to Strike Secretary Lee's Non-Compliant Summary Judgement Brief (ECF No. 245-1)* filed by EQUAL GROUND EDUCATION FUND, FLORIDA RISING TOGETHER, HAITIAN NEIGHBORHOOD CENTER SANT LA, HISPANIC FEDERATION, MI FAMILIA VOTA EDUCATION FUND, PODER LATINX, UNIDOSUS. (Attachments: # 1 Exhibit FRT Plaintiffs' Email Response Opposing Defendant Lee's Request to Exceed MSJ Word Limit) (ROMERO-CRAFT, KIRA) (Entered: 11/15/2021) |
| 11/15/2021 | 249 | ORDER DENYING MOTION FOR SUMMARY JUDGMENT AS MOOT 242 . Signed by CHIEF JUDGE MARK E WALKER on 11/15/2021. (tpm) (Entered: 11/15/2021) |
| 11/15/2021 | 250 | NOTICE of Appearance by WILLIAM DAVID CHAPPELL on behalf of LAUREL M LEE (CHAPPELL, WILLIAM) (Entered: 11/15/2021) |
| 11/15/2021 | 251 | ORDER FOR PRETRIAL CONFERENCE. Signed by CHIEF JUDGE MARK E WALKER on 11/15/2021. Attorney Conference to take place by **12/20/2021**. Pretrial Stipulation due by **12/27/2021**. Pretrial Conference set for **1/3/2022 09:00 AM** in U.S. Courthouse Tallahassee before CHIEF JUDGE MARK E WALKER. Bench Trial set for **1/31/2022 08:15 AM** in U.S. Courthouse Tallahassee before CHIEF JUDGE MARK E WALKER. (tpm) (Entered: 11/15/2021) |
| 11/15/2021 | 252 | NOTICE *of Joinder* by CHRISTINA WHITE re 237 MOTION for Summary Judgment (VALDES, MICHAEL) (Entered: 11/15/2021) |
| 11/16/2021 | 253 | NOTICE *of Errata* by LAUREL M LEE re 242 MOTION for Summary Judgment (JAZIL, MOHAMMAD) (Entered: 11/16/2021) |
| 11/16/2021 | 254 | ORDER DENYING MOTION TO STRIKE: Plaintiffs' motion to strike, ECF No. 248 , is DENIED. Signed by CHIEF JUDGE MARK E WALKER on 11/16/2021. (tpm) (Entered: 11/16/2021) |
| 11/19/2021 | 255 | AMENDED ORDER FOR PRETRIAL CONFERENCE: Attorney Conference to take place by **12/20/2021**. Pretrial Stipulation due by **12/27/2021**. Bench Trial set for **1/31/2022 08:15 AM** in U.S. Courthouse Tallahassee before CHIEF JUDGE MARK E WALKER. IN PERSON Pretrial Conference set for **1/10/2022 09:00 AM** in U.S. Courthouse Tallahassee before CHIEF JUDGE MARK E WALKER.. Signed by CHIEF JUDGE MARK E WALKER on 11/19/2021. (vkm) (Entered: 11/19/2021) |
| 11/23/2021 | 256 | ORDER GRANTING MOTION FOR RELIEF FROM REQUIREMENT TO SUBMIT STATUS REPORTS (Re: 328 Motion filed in 4:21-cv-00186-MW-MAF) Signed by CHIEF JUDGE MARK E WALKER on 11/23/2021. (vkm). (Entered: 11/23/2021) |
| 11/23/2021 | 257 | ORDER TO SHOW CAUSE. Defendant Lee, Defendant Hays, Defendant Doyle, and Defendant White are ordered to SHOW CAUSE on an expedited basis why this Court should not strike the portions of Defendant Lee's motion for summary judgment defending statutes she lacks standing to defend as well as Defendants Hays, Doyle, and White's notices/motions adopting Defendant Lee's arguments. Plaintiffs and the other supervisors may also file responses if they so choose. All responses must be filed on or before November 30, 2021. Signed by CHIEF JUDGE MARK E WALKER on 11/23/2021. Show Cause Response due by **11/30/2021**. (mb) (Entered: 11/23/2021) |

| | | |
|---|---|---|
| 11/30/2021 | 258 | RESPONSE TO ORDER TO SHOW CAUSE re ECF 257 by TOMMY DOYLE, ALAN HAYS. (BARDOS, ANDY) Modified on 12/1/2021 (tpm). (Entered: 11/30/2021) |
| 11/30/2021 | 259 | RESPONSE TO ORDER TO SHOW CAUSE re ECF 257 by LAUREL M LEE. (JAZIL, MOHAMMAD) Modified on 12/1/2021 (tpm). (Entered: 11/30/2021) |
| 11/30/2021 | 260 | MOTION to Intervene by LAUREL M LEE. (Attachments: # 1 Memo. in Support) (JAZIL, MOHAMMAD) (Entered: 11/30/2021) |
| 11/30/2021 | | Set/Reset Deadlines as to 260 MOTION to Intervene . (Internal deadline for referral to judge if response not filed earlier: **12/14/2021**). (tpm) (Entered: 12/01/2021) |
| 12/01/2021 | 261 | ORDER FOR EXPEDITED RESPONSE: Defendants Lee, Doyle, and Hayes have filed responses to this Court's Order to Show Cause (ECF Nos. 258 and 259 ). In addition, Defendant Lee has filed a motion to intervene (ECF No. 260 ). Plaintiffs must file an expedited response by 5:30 PM (ET) today, **12/1/2021**, informing this Court (1) whether they oppose Defendant Lee's motion to intervene, and (2) if they wish to be heard on the responses to this Court's Order to Show Cause. Signed by CHIEF JUDGE MARK E WALKER on 12/01/2021. (tpm) (Entered: 12/01/2021) |
| 12/01/2021 | 262 | ORDER DENYING WITHOUT PREJUDICE JOINT MOTION TO CONSOLIDATE CASES FOR TRIAL re 334 in 4:21cv186-MW/MAF. Signed by CHIEF JUDGE MARK E WALKER on 12/01/2021. (sjb) (Entered: 12/01/2021) |
| 12/01/2021 | 263 | FLORIDA RISING PLAINTIFFS' RESPONSE TO COURT'S DECEMBER 1, 2021 ORDER, ECF 261 FOR EXPEDITED RESPONSE (KARPATKIN, JEREMY) Modified 12/2/2021 (tpm). (Entered: 12/01/2021) |
| 12/02/2021 | 264 | ANSWER AND AFFIRMATIVE DEFENSES re: 59 Amended Complaint by PAUL A LUX. (STEWART, GREGORY) Modified on 12/3/2021 to edit title (tpm). (Entered: 12/02/2021) |
| 12/02/2021 | 265 | OPPOSITION TO DEFENDANT LEE'S MOTION TO INTERVENE AND RESPONSE TO THE RESPONSES TO THE COURT'S ORDER TO SHOW CAUSE re 260 MOTION to Intervene filed by EQUAL GROUND EDUCATION FUND, FLORIDA RISING TOGETHER, HAITIAN NEIGHBORHOOD CENTER SANT LA, HISPANIC FEDERATION, MI FAMILIA VOTA EDUCATION FUND, PODER LATINX, UNIDOSUS. (ROMERO-CRAFT, KIRA) Modified on 12/3/2021 to edit title (tpm). (Entered: 12/02/2021) |
| 12/03/2021 | 266 | MOTION to Exclude Expert Testimony *of Dr. Quentin Kidd* by EQUAL GROUND EDUCATION FUND, FLORIDA RISING TOGETHER, HAITIAN NEIGHBORHOOD CENTER SANT LA, HISPANIC FEDERATION, MI FAMILIA VOTA EDUCATION FUND, PODER LATINX, UNIDOSUS. (Attachments: # 1 Exhibit Memorandum in Support of Exclusion of Expert Testimony of Dr. Quentin Kidd, # 2 Exhibit Dr. Quentin Kidd Final Report, # 3 Exhibit Deposition of Dr. Quentin Kidd, # 4 Exhibit Response and Supplemental Declaration of Dr. Quentin Kidd, # 5 Exhibit Declaration of Dr. Michael McDonald) (ROMERO-CRAFT, KIRA) (Entered: 12/03/2021) |
| 12/03/2021 | 267 | RESPONSE to Motion re 241 MOTION for Summary Judgment filed by BILL COWLES, MARK EARLEY, MIKE HOGAN, PAUL A LUX, JOE SCOTT. (KLITSBERG, NATHANIEL) (Entered: 12/03/2021) |
| 12/03/2021 | 268 | ORDER ACKNOWLEDGING RESPONSE re 260 MOTION to Intervene: The motion to intervene, however, is more complex. Accordingly, this Court will take that motion under advisement and issue an order addressing it at a later date. Signed by CHIEF JUDGE MARK E WALKER on 12/03/2021. (tpm) (Entered: 12/03/2021) |
| 12/03/2021 | 269 | RESPONSE in Opposition re 241 MOTION for Summary Judgment filed by MELISSA ARNOLD, ALETRIS FARNAM, BRENDA HOOTS, TAMMY JONES, THERISA MEADOWS, DIANE SMITH, RON TURNER. (OLIVO, GERALDO) (Entered: 12/03/2021) |
| 12/03/2021 | 270 | RESPONSE to Motion re 241 MOTION for Summary Judgment filed by JANET H ADKINS, MARK ANDERSEN, CHRISTOPHER ANDERSON, SHIRLEY ANDERSON, MARY JANE ARRINGTON, MAUREEN BAIRD, KIM A BARTON, BOBBY BEASLEY, MICHAEL BENNETT, MARTY BISHOP, TOMI S BROWN, STARLET CANNON, CHRIS H CHAMBLESS, SHARON CHASON, GRANT CONYERS, BRIAN CORLEY, VICKI DAVIS, HEATH |

DRIGGERS, CAROL DUNAWAY, LORI EDWARDS, CAROL FINCH RUDD, JOYCE GRIFFIN, JOHN HANLON, TRAVIS HART, LAURA HUTTO, WILLIAM KEEN, JENNIFER M KINSEY, SHIRLEY V KNIGHT, KATHLEEN HART, LISA LEWIS, WENDY LINK, JOE E MARCUS, CHRIS MILTON, JOSEPH MORGAN, MARK F NEGLEY, VICKY OAKES, PENNY OGG, DEBORAH OSBORNE, CHARLES OVERTURF, HEATHER RILEY, CONNIE SANCHEZ, LORI A SCOTT, AMANDA SEYFANG, DANA SOUTHERLAND, DAVID H STAFFORD, LESLIE SWAN, TAPPIE A VILLANE, GERTRUDE WALKER, WESLEY WILCOX. (MARI, FRANK) (Entered: 12/03/2021)

| 12/03/2021 | 271 | NOTICE *of Filing Exhibits in Support of Memoranda in Opposition to Motions for Summary Judgment (ECF 245-1, ECF 237 & ECF 252)* by EQUAL GROUND EDUCATION FUND, FLORIDA RISING TOGETHER, HAITIAN NEIGHBORHOOD CENTER SANT LA, HISPANIC FEDERATION, MI FAMILIA VOTA EDUCATION FUND, PODER LATINX, UNIDOSUS (Attachments: # 1 Exhibit February 16, 2021 Transcript Florida Legislature Session Committee on Ethics and Elections, Senate Bill 90, # 2 Exhibit March 10, 2021 Transcript Florida Legislature Session Senate Committee on Governmental Oversight and Accountability, Senate Bill 90, # 3 Exhibit March 22, 2021 Transcript Florida Legislature Session House Public Integrity and Elections Committee, House Bill 7041, # 4 Exhibit April 6-9, 2021 Email chain between Don Rubottom and Pierce Schuesslser, # 5 Exhibit April 8, 2021 Transcript Florida Legislature Sessions House Appropriations Committee on Bill 7041, # 6 Exhibit April 14, 2021 Transcript Florida Legislature Sessions Committee on Rules, Senate Bill 90, # 7 Exhibit April 19, 2021 Transcript Florida Legislature Session House State Affairs Committee, House Bill 7041, # 8 Exhibit April 20, 2021 Transcript Florida Legislature Session Rules Committee on SB90, # 9 Exhibit April 22, 2021 Transcript Florida Legislature Session Florida Senate Floor Debate, Senate Bill 90, # 10 Exhibit April 23, 2021 Association of Supervisors of Elections Statement, # 11 Exhibit April 26, 2021 Transcript Florida Legislature Session Committee on Ethics and Elections, Senate Bill 90, # 12 Exhibit April 27, 2021 Transcript Florida Legislature Session House Debate, Senate Bill 90, # 13 Exhibit April 28, 2021 Transcript Florida Legislature Session House in Session, Senate Bill 90 Third Reading, # 14 Exhibit April 29, 2021 Transcript Florida Legislature Session House in Session, Senate Bill 90, # 15 Exhibit April 29, 2021 Transcript Florida Legislature Session Senate in Session, Senate Bill 90, # 16 Exhibit April 30, 2021 Email from Supervisor Hays to V. Davis, # 17 Exhibit April 30, 2021 Statement from Craig Latimer, Hillsborough County Supervisor of Elections and President of the Florida Supervisors of Elections, # 18 Exhibit May 5, 2021 Email from Supervisor Hays to Supervisors of Election, # 19 Exhibit May 6, 2021 Florida SB 90 (Signing V ersion), # 20 Exhibit June 2021 Florida SoS Presentation Slide Vote-by -Mail Requests - SoS000054, # 21 Exhibit June 25, 2021 Affidavit of Peg Resse (Hillsborough County) in Response to League Plaintiffs RFP, # 22 Exhibit July 7, 2021 Florida Secretary of States Response and Objections to the Florida League of Women Voters, et al.s First Set of Interrogatories, # 23 Exhibit August, 8, 2021 Miami-Dade Response to League Plaintiffs Interrogatories, # 24 Exhibit September 1, 2021 Opening Expert Report of Sharon Austin, Ph.D., # 25 Exhibit September 1, 2021 Dr. Traci R. Burch, Ph.D. Expert Report, # 26 Exhibit September 1, 2021 J. Morgan Kousser Ph.D. Expert Report, # 27 Exhibit September 1, 2021 Daniel Smith, Ph.D. Expert Report, # 28 Exhibit September 27, 2021 Deposition of Christina White, # 29 Exhibit October 6, 2021 Deposition of Alan Hays, # 30 Exhibit October 7, 2021 Deposition of Michael Bennett, # 31 Exhibit October 8, 2021 Deposition of Mark Earley, # 32 Exhibit October 11, 2021 Deposition of Craig Latimer, # 33 Exhibit October 12, 2021 Deposition of Joe Scott, # 34 Exhibit October 13, 2021 Deposition of Tommy Doyle, # 35 Exhibit October 13, 2021 J. Morgan Kousser Ph.D. Rebuttal and Supplemental Declaration, # 36 Exhibit October 13, 2021 Deposition of Kaiti Lenhart, # 37 Exhibit October 13, 2021 Daniel Smith, Ph.D. Supplemental and Rebuttal Expert Report, # 38 Exhibit October 14, 2021 Deposition of Brian Corley, # 39 Exhibit October 15, 2021 Deposition of Julie Marcus, # 40 Exhibit October 18, 2021 Deposition of Gepsie Metellus, # 41 Exhibit October 18, 2021 Declaration in Lieu of Deposition of Wendy Sartory Link, Supervisor of Elections for Palm Beach County, # 42 Exhibit October 19, 2021 Deposition of Jasmine Burney-Clark, # 43 Exhibit October 19, 2021 Deposition of Andrea Mercado (Volume 1), # 44 Exhibit October 20, 2021 Deposition of Soraya Marquez, # 45 Exhibit October 20, 2021 Deposition of Maria Matthews, # 46 Exhibit October 20, 2021 Deposition of Andrea Mercado (Volume 2), # 47 Exhibit October 20, 2021 Declaration in Lieu of Deposition of Bill Cowles, Supervisor of Elections for Orange County, # 48 Exhibit October 21, 2021 Deposition of Jared Nordlund, # 49 Exhibit October 22, 2021 Deposition of Esteban Garces, # 50 Exhibit October 22, 2021 Hillsborough County Supervisor of Election's Response to League Plaintiff's Request for |

| | | |
|---|---|---|
| | | Admissions, # 51 Exhibit October 22, 2021 Deposition of Y anidsi V elez, # 52 Exhibit November 12, 2021 Declaration of Jasmine Burney-Clark, # 53 Exhibit November 12, 2021 Declaration of Cecile Scoon, # 54 Exhibit November 12, 2021 Declaration of Susan Pynchon, # 55 Exhibit November 12, 2021 Declaration of Soraya Marquez, # 56 Exhibit November 22, 2021 Secretary of States Amended Response to Florida Rising Together Plaintiffs Request for Admissions, # 57 Exhibit December 2, 2021 Declaration of Jared Nordlund, # 58 Exhibit December 3, 2021 Declaration of Andrea Mercado, # 59 Exhibit December 3, 2021 Daniel Smith, Ph.D. Second Supplemental Expert Report, # 60 Exhibit October 14, 2021 - November 1, 2021 Compendium of the RFA responses from County Supervisors) (ROMERO-CRAFT, KIRA) (Entered: 12/03/2021) |
| 12/03/2021 | 272 | NOTICE *of Exhibits in Support of Response to Plaintiffs' Motion for Partial Summary Judgment* by LAUREL M LEE (Attachments: # 1 Exhibit Declaration of Alan Hays, # 2 Exhibit Deposition of Mark Earley, # 3 Exhibit Deposition of Alan Hays, # 4 Exhibit Deposition of Wendy Link, # 5 Exhibit Deposition of Julie Marcus, # 6 Exhibit Deposition of Victricia Simmons) (JAZIL, MOHAMMAD) (Entered: 12/03/2021) |
| 12/03/2021 | 273 | MOTION for Leave to File *Brief for Amici Curiae States* by District of Columbia. (Attachments: # 1 Amicus Brief) (TUETKEN, ADAM) (Entered: 12/03/2021) |
| 12/03/2021 | 274 | RESPONSE in Opposition re 241 MOTION for Summary Judgment filed by LAUREL M LEE. (JAZIL, MOHAMMAD) (Entered: 12/03/2021) |
| 12/03/2021 | 275 | RESPONSE in Opposition re 241 MOTION for Summary Judgment filed by CHRISTINA WHITE. (VALDES, MICHAEL) (Entered: 12/03/2021) |
| 12/03/2021 | 276 | RESPONSE in Opposition re 237 MOTION for Summary Judgment *by Defendant Craig Latimer* filed by EQUAL GROUND EDUCATION FUND, FLORIDA RISING TOGETHER, HAITIAN NEIGHBORHOOD CENTER SANT LA, HISPANIC FEDERATION, MI FAMILIA VOTA EDUCATION FUND, PODER LATINX, UNIDOSUS. (ROMERO-CRAFT, KIRA) (Entered: 12/03/2021) |
| 12/03/2021 | 277 | NOTICE *of Joinder of Defendants' Opposition to Plaintiffs' Motion for Summary Judgment* by NATIONAL REPUBLICAN SENATORIAL COMMITTEE, REPUBLICAN NATIONAL COMMITTEE re 274 Response in Opposition to Motion (GREEN, TYLER) (Entered: 12/03/2021) |
| 12/03/2021 | 278 | NOTICE *of Supplemental Filing Exhibits in Support of Memoranda in Opposition to Motions for Summary Judgment (ECF 245-1, ECF 237 & ECF 252)* by EQUAL GROUND EDUCATION FUND, FLORIDA RISING TOGETHER, HAITIAN NEIGHBORHOOD CENTER SANT LA, HISPANIC FEDERATION, MI FAMILIA VOTA EDUCATION FUND, PODER LATINX, UNIDOSUS (Attachments: # 1 Exhibit Declaration of Soraya Marquez) (ROMERO-CRAFT, KIRA) (Entered: 12/03/2021) |
| 12/03/2021 | 279 | RESPONSE in Opposition re 237 MOTION for Summary Judgment *CORRECTED FILING* filed by EQUAL GROUND EDUCATION FUND, FLORIDA RISING TOGETHER, HAITIAN NEIGHBORHOOD CENTER SANT LA, HISPANIC FEDERATION, MI FAMILIA VOTA EDUCATION FUND, PODER LATINX, UNIDOSUS. (ROMERO-CRAFT, KIRA) (Entered: 12/03/2021) |
| 12/03/2021 | 280 | RESPONSE in Opposition re 245 MOTION for Summary Judgment *Corrected* filed by EQUAL GROUND EDUCATION FUND, FLORIDA RISING TOGETHER, HAITIAN NEIGHBORHOOD CENTER SANT LA, HISPANIC FEDERATION, MI FAMILIA VOTA EDUCATION FUND, PODER LATINX, UNIDOSUS. (ROMERO-CRAFT, KIRA) (Entered: 12/03/2021) |
| 12/06/2021 | 281 | ORDER GRANTING MOTION FOR LEAVE TO FILE AS AMICUS CURIAE - Accordingly, the motion is GRANTED, and the amicus curiae brief attached to the motion, ECF No. 273 -1, is accepted as filed. Signed by CHIEF JUDGE MARK E WALKER on 12/6/2021. Signed by CHIEF JUDGE MARK E WALKER on 12/6/2021. (jcw) (Entered: 12/06/2021) |
| 12/06/2021 | 282 | ORDER GRANTING MOTION TO INTERVENE re: ECF No. 260 . Signed by CHIEF JUDGE MARK E WALKER on 12/06/2021. (tpm) (Entered: 12/06/2021) |
| 12/06/2021 | 283 | MOTION to Dispense with Pretrial Briefing and Permit Post-Trial Briefing by EQUAL GROUND EDUCATION FUND, FLORIDA RISING TOGETHER, HAITIAN NEIGHBORHOOD CENTER |

| | | SANT LA, HISPANIC FEDERATION, MI FAMILIA VOTA EDUCATION FUND, PODER LATINX, UNIDOSUS. (ROMERO-CRAFT, KIRA) (Entered: 12/06/2021) |
|---|---|---|

| 12/06/2021 | 284 | ORDER DENYING PLAINTIFFS' MOTION TO EXCLUDE EXPERT TESTIMONY, ECF No. 266 : This Court will determine what weight, if any, to give Dr. Kidd's testimony after trial. Signed by CHIEF JUDGE MARK E WALKER on 12/06/2021. (tpm) (Entered: 12/07/2021) |
|---|---|---|
| 12/07/2021 | 285 | ORDER GRANTING MOTION TO DISPENSE WITH PRETRIAL BRIEFING, ECF No. 283 : The parties are relieved of their obligation to file pretrial briefing. They may, however, file post-trial briefing on a schedule to be set at the conclusion of the trial in this case. Signed by CHIEF JUDGE MARK E WALKER on 12/07/2021. (tpm) (Entered: 12/07/2021) |
| 12/07/2021 | 286 | NOTICE of Appearance by JAMES TIMOTHY MOORE, JR on behalf of CHRISTOPHER ANDERSON, MICHAEL BENNETT, BRIAN CORLEY, TOMMY DOYLE, JENNIFER J EDWARDS, JOYCE GRIFFIN, ALAN HAYS, PAUL STAMOULIS, LESLIE SWAN, WESLEY WILCOX (MOORE, JAMES) (Entered: 12/07/2021) |
| 12/08/2021 | 287 | NOTICE of Appearance by BRENDALYN EDWARDS on behalf of JOE SCOTT (EDWARDS, BRENDALYN) (Entered: 12/08/2021) |
| 12/08/2021 | 288 | ORDER CONSOLIDATING CASES FOR TRIAL: Case Nos. 4:21cv186, 4:21cv187, 4:21cv201, and 4:21cv242 are consolidated for trial under the lowest case number, 4:21cv186. Signed by CHIEF JUDGE MARK E WALKER on 12/08/2021. (tpm) (Entered: 12/08/2021) |
| 12/10/2021 | 289 | NOTICE *OF FILING DOCUMENTS FOR REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT* by LAUREL M LEE (Attachments: # 1 Exhibit Declaration of Alan Hays, # 2 Exhibit Declaration of Maria Matthews, # 3 Exhibit Deposition of Craig Latimer, # 4 Exhibit Deposition of Christina White 1 of 2, # 5 Exhibit Deposition of Christina White 2 of 2) (JAZIL, MOHAMMAD) (Entered: 12/10/2021) |
| 12/10/2021 | 290 | REPLY to Response to Motion re 245 MOTION for Summary Judgment *Corrected* filed by LAUREL M LEE. (JAZIL, MOHAMMAD) (Entered: 12/10/2021) |
| 12/10/2021 | 291 | MEMORANDUM in Support re 241 MOTION for Summary Judgment filed by EQUAL GROUND EDUCATION FUND, FLORIDA RISING TOGETHER, HAITIAN NEIGHBORHOOD CENTER SANT LA, HISPANIC FEDERATION, MI FAMILIA VOTA EDUCATION FUND, PODER LATINX, UNIDOSUS. (ROMERO-CRAFT, KIRA) (Entered: 12/10/2021) |
| 12/10/2021 | 292 | RESPONSE in Support re 245 MOTION for Summary Judgment *Corrected* filed by NATIONAL REPUBLICAN SENATORIAL COMMITTEE, REPUBLICAN NATIONAL COMMITTEE. (GREEN, TYLER) (Entered: 12/10/2021) |
| 12/17/2021 | 293 | ORDER ON DEFENDANT SUPERVISORS' MOTION FOR SUMMARY JUDGMENT: Defendant Latimer's motion, ECF No. 237 , is therefore GRANTED in part only as to Count V of the Amended Complaint to the extent Plaintiffs raise a facial challenge to the non-solicitation provision under the First Amendment, ECF No. 59 at 101.5 The motion is otherwise DENIED. It does not appear at this juncture that Plaintiffs need to amend their complaint to account for this kind of shift, but for this Courts convenience and to avoid prejudice to the Defendants, Plaintiffs need to tell this Court in advance how they intend to proceed at trial. Specifically, Plaintiffs must file with the pretrial stipulation due **12/27/2021**, a list of each claim they intend to pursue at trial and whether that claim is brought as a facial challenge, an as-applied challenge, or bothor if they state the designation is inapplicable, they must so state. Signed by CHIEF JUDGE MARK E WALKER on 12/17/2021. (tpm) (Entered: 12/17/2021) |
| 12/17/2021 | 294 | ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT: Defendants' motion for summary judgment, ECF No. 245 , is GRANTED in part and DENIED in part. The motion is granted only to the extent that Plaintiffs mount a facial challenge to the non-solicitation provision under the First Amendment. The motion is otherwise denied. Plaintiffs' motion for summary judgment, ECF No. 241 , is DENIED. Going forward, for the benefit of this Court and to avoid any prejudice to Defendants at trial, Plaintiffs shall include in their pretrial stipulation due **12/27/2021**, a list of each claim at issue and identify whether Plaintiffs are proceeding with an as-applied or facial challengeor bothas to each claim. If neither designation is applicable, the Plaintiffs must so state. This Court requires notice of |

the Plaintiffs' position ahead of trial for purposes of focusing this Court's attention during the presentation of evidence. Signed by CHIEF JUDGE MARK E WALKER on 12/17/2021. (tpm) (Entered: 12/17/2021)

USCA11 Case: 22-11143    Document: 111-1    Date Filed: 07/18/2022    Page: 62 of 250

| | | |
|---|---|---|
| 12/29/2021 | 295 | NOTICE OF RESCHEDULED HEARING:<br><br>**PLEASE NOTE ONLY THE HEARING TIME HAS CHANGED**<br><br>Pretrial Conference reset for **1/10/2022 10:00 AM** before CHIEF JUDGE MARK E WALKER. United States Courthouse, **Courtroom 5 West,** 111 North Adams St., Tallahassee, Florida 32301.<br><br>Per Administrative Order, to protect the health and safety of all occupants **all persons who enter any courthouse within the Northern District of Florida are required to wear face masks or other face coverings that cover the person's nose and mouth while in any public or common area within the facility.**<br><br>**Face masks are required in Courtroom 5 West.**<br><br>NOTE: If you or any party, witness or attorney in this matter has a disability that requires special accommodation, such as, a hearing impairment that requires a sign language interpreter or a wheelchair restriction that requires ramp access, please contact Victoria Milton McGee at 850-521-3510 in the Clerk's Office at least one week prior to the hearing (or as soon as possible) so arrangements can be made.<br><br>s/ Victoria Milton McGee<br>Courtroom Deputy Clerk (vkm) (Entered: 12/29/2021) |
| 12/30/2021 | 296 | NOTICE OF RESCHEDULED HEARING: Telephonic Pretrial Conference set for **1/10/2022 10:00 AM** before CHIEF JUDGE MARK E WALKER.<br><br>ALL PARTIES are directed to call the AT&T Conference Line (see below)<br><br>Conference Call Information<br><br>You may dial into the conference call up to five minutes before start time. Call in number: **888-684-8852** When prompted for an access code, enter: **3853136#** If you are asked to join as the host, just ignore and wait until you are asked for a security code. When asked for a security code, enter: **4565#** Say your name, when prompted. You are now in the conference call. Remember to mute your phone when you are not speaking. **The Court asks that counsel NOT use cell phones or speaker phones** during the call as the quality of the audio connection is comprised by these devices.<br><br>s/ Victoria Milton McGee<br>Courtroom Deputy Clerk (vkm) (Entered: 12/30/2021) |
| 01/04/2022 | 297 | NOTICE of Appearance by TARA R PRICE on behalf of NATIONAL REPUBLICAN SENATORIAL COMMITTEE, REPUBLICAN NATIONAL COMMITTEE (PRICE, TARA) (Entered: 01/04/2022) |
| 01/06/2022 | 298 | NOTICE of Appearance by MATTHEW REED SHAUD on behalf of DAVID H STAFFORD (SHAUD, MATTHEW) (Entered: 01/06/2022) |
| 01/10/2022 | 299 | MOTION to Appear Pro Hac Vice by Sabrina Khan.( Filing fee $ 208 receipt number AFLNDC-6619856.) by FLORIDA RISING TOGETHER. (Attachments: # 1 Letter of Good Standing) (KHAN, SABRINA) (Entered: 01/10/2022) |
| 01/10/2022 | 300 | Minute Entry for proceedings held before CHIEF JUDGE MARK E WALKER: Telephonic Pretrial Conference held on 1/10/2022. Parties discuss case status, trial protocols and Court hears argument regarding 424 Joint Motion to Hold Trial Remotely. Ruling by Court: 424 Joint Motion is granted. Parties must provide Court list of witnesses 48 hours in advance, include topics and the exhibits that are expected to be identified with each witness. Parties to provide Court with binders of stipulated trial exhibits by **1/24/2022**. Parties to coordinate with the Court's IT staff to address and resolve |

| | | issues related to conducting the bench trial remotely. Order to follow (Court Reporter Megan Hague). (vkm) (Entered: 01/13/2022) |
|---|---|---|
| 01/19/2022 | 301 | ORDER ADMITTING SABRINA KHAN PRO HAC VICE: This Court has considered, without hearing, the motion to admit Sabrina Khan pro hac vice, ECF No. 299 . The motion is GRANTED. Having fulfilled the requirements of the Local Rules for admission, Sabrina Khan is admitted pro hac vice as counsel for Plaintiffs. Signed by CHIEF JUDGE MARK E WALKER on 01/19/2022. (tpm) (Entered: 01/19/2022) |
| 01/20/2022 | 302 | NOTICE OF TELEPHONIC HEARING: Telephonic Status Conference set for **1/21/2022 09:00 AM** before CHIEF JUDGE MARK E WALKER.<br><br>ALL PARTIES are directed to call the AT&T Conference Line (see below)<br><br>Conference Call Information<br><br>You may dial into the conference call up to five minutes before start time. Call in number: **888-684-8852** When prompted for an access code, enter: **3853136#** If you are asked to join as the host, just ignore and wait until you are asked for a security code. When asked for a security code, enter: **4565#** Say your name, when prompted. You are now in the conference call. Remember to mute your phone when you are not speaking. **The Court asks that counsel NOT use cell phones or speaker phones** during the call as the quality of the audio connection is comprised by these devices.<br><br>s/ Victoria Milton McGee<br>Courtroom Deputy Clerk (vkm) (Entered: 01/20/2022) |
| 01/21/2022 | 303 | Minute Entry for proceedings held before CHIEF JUDGE MARK E WALKER: Telephonic Status Conference held on 1/21/2022. Parties discuss case status, exhibit and witness protocols. Ruling by Court: Parties to file separately unopposed admitted exhibits and unopposed exhibits admitted for a limited purpose. If necessary, unredacted exhibits may be filed under seal (Court Reporter Megan Hague). (vkm) (Entered: 01/25/2022) |
| 02/11/2022 | 304 | ORDER GRANTING MOTION FOR VOLUNTARY DISMISSAL: Plaintiffs' motion, ECF No. 596, is GRANTED. The Clerk must enter judgment in Case Nos. 4:21cv186 and 4:21cv201, stating, "Plaintiffs Mi Familia Vota Education Fund and Haitian Neighborhood Center Sant La's claims against Defendants are dismissed without prejudice. The parties will each bear their attorney's fees and costs." Signed by CHIEF JUDGE MARK E WALKER on 02/11/2022. (tpm) (Entered: 02/11/2022) |
| 02/11/2022 | 305 | CLERK'S JUDGMENT entered pursuant to ECF No. 304 Order Granting Motion for Voluntary Dismissal. (tpm) (Entered: 02/11/2022) |
| 03/23/2022 | 306 | NOTICE of Change of Address by KIRA ROMERO-CRAFT (ROMERO-CRAFT, KIRA) (Entered: 03/23/2022) |
| 03/30/2022 | 307 | ORDER GRANTING MOTION TO WITHDRAW AS COUNSEL: This motion is, therefore, GRANTED. Ms. Saunders, however, has only entered an appearance in Case No. 4:21cv187, so the Clerk shall disconnect Saunders from CM/ECF in Case No. 4:21cv187. Signed by CHIEF JUDGE MARK E WALKER on 03/30/2022. (tpm) (Attorney Saunders disconnected in 4:21cv187) Modified on 3/31/2022 (tpm). (Entered: 03/30/2022) |
| 03/31/2022 | 308 | FINAL ORDER FOLLOWING BENCH TRIAL. In Case No. 4:21cv201, the Clerk shall enter judgment stating: This Court hereby DECLARES that the drop box provision described in section 101.69(2)-(3), Florida Statutes (2021), as amended by SB 90, violates Plaintiffs rights under the Fourteenth and Fifteenth Amendments of the United States Constitution and section 2 of the Voting Rights Act. This Court GRANTS Plaintiffs request for a permanent injunction. Neither Defendant Lee nor the Defendant Supervisors of Elections, nor their successors in office, deputies, officers, employees, agents, nor any person in active participation or concert with Defendants Lee and the Supervisors of Elections shall enforce, nor permit enforcement of, the drop box provision described in section 101.69(2)-(3), Florida Statutes (2021), as amended by SB 90. Defendants Lee and the Supervisors of Elections, and their successors in office, as well as their deputies, officers, employees, agents, and any other person in active participation and concert with Defendants Lee and the |

Supervisors of Elections shall take all practicable measures within the scope of their official authority to ensure compliance with the terms of this Order. In addition, this Court DECLARES that the prohibition against engaging in any activity with the intent to influence or effect of influencing a voter under section 102.031(4)(a)(b), Florida Statutes (2021), as amended by SB 90, violates Plaintiffs rights under the First, Fourteenth, and Fifteenth Amendments of the United States Constitution and section 2 of the Voting Rights Act. This Court GRANTS Plaintiffs request for a permanent injunction. Neither Defendant Supervisors of Elections, nor their successors in office, deputies, officers, employees, agents, nor any person in active participation or concert with Defendant Supervisors of Elections shall enforce, nor permit enforcement of, the prohibition against engaging in any activity with the intent to influence or effect of influencing a voter as described in section 102.031(4)(a)-(b), Florida Statutes (2021), as amended by SB 90. Defendant Supervisors of Elections and their successors in office, as well as their deputies, officers, employees, agents, and any other person in active participation and concert with Defendant Supervisors of Elections shall take all practicable measures within the scope of their official authority to ensure compliance with the terms of this Order. In addition, this Court DECLARES that the registration delivery provision described in section 97.0575(3)(a), Fla. Stat. (2021), as amended by SB 90, violates Plaintiffs rights under the Fourteenth, and Fifteenth Amendments of the United States Constitution and section 2 of the Voting Rights Act. This Court GRANTS Plaintiffs request for a permanent injunction. Neither Defendant Lee nor Defendant Moody, nor their successors in office, deputies, officers, employees, agents, nor any person in active participation or concert with Defendants Lee and Moody shall enforce, nor permit enforcement of, the registration delivery provision described in section 97.0575(3)(a), Florida Statutes (2021), as amended by SB 90. Defendants Lee and Moody, and their successors in office, as well as their deputies, officers, employees, agents, and any other person in active participation and concert with Defendants Lee and Moody shall take all practicable measures within the scope of their official authority to ensure compliance with the terms of this Order. Finally, this Court DECLARES that the registration disclaimer provision described in section 97.0575(3)(a), Fla. Stat. (2021), as amended by SB 90, violates Plaintiffs rights under the First Amendment of the United States Constitution. This Court GRANTS Plaintiffs request for a permanent injunction. Neither Defendant Lee nor Defendant Moody, nor their successors in office, deputies, officers, employees, agents, nor any person in active participation or concert with Defendants Lee and Moody shall enforce, nor permit enforcement of, the registration disclaimer provision described in section 97.0575(3)(a), Florida Statutes (2021), as amended by SB 90. Defendants Lee and Moody, and their successors in office, as well as their deputies, officers, employees, agents, and any other person in active participation and concert with Defendants Lee and Moody shall take all practicable measures within the scope of their official authority to ensure compliance with the terms of this Order. Signed by CHIEF JUDGE MARK E WALKER on 3/31/22. (pll) (Entered: 03/31/2022)

| 03/31/2022 | 309 | CLERK'S JUDGMENT re 308 Order. 90 Day Exhibit Return Deadline set for **6/29/2022** (pll) (Entered: 03/31/2022) |
| 04/07/2022 | 310 | NOTICE OF APPEAL as to 309 Clerk's Judgment, 308 Order by LAUREL M LEE. ( Filing fee $505 Receipt Number AFLNDC-6914556.) (JAZIL, MOHAMMAD) Modified as to text on 5/4/2022 (tpm). (Entered: 04/07/2022) |
| 04/07/2022 | 313 | Appeal Instructions re: 310 Notice of Appeal : The Transcript Request Form is available on the Internet at http://www.flnd.uscourts.gov/forms/Attorney/ECCA_transcript_form_fillable.pdf **PLEASE NOTE** Separate forms must be filed for each court reporter in both the district court and the appeals court. Transcript Order Form due by **4/21/2022**. (tpm) (Entered: 04/11/2022) |
| 04/07/2022 | | Set Deadlines re 310 Notice of Appeal : Clerk to check status of Appeal on **7/6/2022**. Certificate of Readiness (FRAP 11) due by **4/25/2022**. (tpm) (Entered: 04/11/2022) |
| 04/08/2022 | 311 | SEALED ORDER regarding Court Reporter Fees. Signed by CHIEF JUDGE MARK E WALKER on 04/08/2022. (tpm) Modified on 4/8/2022 (tpm). (Entered: 04/08/2022) |
| 04/08/2022 | | Set Deadlines re ECF No. 311 SEALED ORDER: Show Cause Response due by **4/15/2022**. (tpm) (Entered: 04/14/2022) |
| 04/11/2022 | 312 | MOTION to Withdraw as Attorney by EQUAL GROUND EDUCATION FUND, FLORIDA RISING TOGETHER, HISPANIC FEDERATION, PODER LATINX, UNIDOSUS. (BAILEY, |

| Date | No. | Description |
|---|---|---|
| | | LESLIE) (Entered: 04/11/2022) |
| 04/11/2022 | 314 | Transmission of Notice of Appeal and Docket Sheet to US Court of Appeals re 310 Notice of Appeal (tpm) (Entered: 04/11/2022) |
| 04/11/2022 | 325 | USCA PROCEDURAL LETTER AND CASE NUMBER for 310 NOTICE OF APPEAL as to 309 Clerk's Judgment, 308 Order. USCA Case Number 22-11145-G. (tpm) (Entered: 05/04/2022) |
| 04/12/2022 | 315 | ORDER GRANTING MOTION TO WITHDRAW AS COUNSEL: This Court has considered, without hearing, the motion to withdraw Leslie C. Bailey as counsel for Plaintiffs. ECF No. 312 . Plaintiffs continue to be represented by counsel, and representation will continue uninterrupted. This motion is, therefore, GRANTED. Ms. Bailey, however, has only entered an appearance in Case No. 4:21cv201, so the Clerk shall disconnect Ms. Bailey from CM/ECF in Case No. 4:21cv201. Signed by CHIEF JUDGE MARK E WALKER on 04/12/2022. (tpm) ( Attorney LESLIE CLAIRE BAILEY terminated in case 4:21-cv-201) (Entered: 04/12/2022) |
| 04/13/2022 | 316 | TRANSCRIPT REQUEST by LAUREL M LEE for proceedings held on 1/31/2022 - 2/16/2022 before Judge Chief Judge Walker, Court Reporter:Megan Hague (JAZIL, MOHAMMAD) (Entered: 04/13/2022) |
| 04/14/2022 | 317 | MOTION for Attorney Fees *[FLORIDA RISING TOGETHER PLAINTIFFS MOTION TO DETERMINE ENTILEMENT TO ATTORNEYS FEES, EXPERT FEES, AND LITIGATION EXPENSES AND INCORPORATED MEMORANDUM OF LAW]* by EQUAL GROUND EDUCATION FUND, FLORIDA RISING TOGETHER, HISPANIC FEDERATION, PODER LATINX, UNIDOSUS. (KARPATKIN, JEREMY) (Entered: 04/14/2022) |
| 04/14/2022 | 318 | BILL OF COSTS by EQUAL GROUND EDUCATION FUND, FLORIDA RISING TOGETHER, HISPANIC FEDERATION, PODER LATINX, UNIDOSUS. (KARPATKIN, JEREMY) (Entered: 04/14/2022) |
| 04/14/2022 | 319 | Sealed Document. (tpm) (Entered: 04/15/2022) |
| 04/15/2022 | 320 | ORDER DIRECTING CLERK TO TERMINATE MOTION FOR ENTITLEMENT TO ATTORNEYS' FEES: The Clerk is directed to terminate the motion, ECF No. 317 , and this Court will re-gavel it, if necessary, once the appeal is final. Defendants need not respond to the motion at this time. If Plaintiffs believe there is an important reason to address the motion on the merits now, notwithstanding the pending appeal, they must file a supplemental brief explaining why on or before Friday, **4/22/2022**. Signed by CHIEF JUDGE MARK E WALKER on 04/15/2022. (tpm) (ECF No. 317 Motion for Attorney Fees has been terminated) (Entered: 04/15/2022) |
| 04/22/2022 | 321 | MOTION to Hold in Abeyance Proceedings Related to Bill of Costs by LAUREL M LEE. (JAZIL, MOHAMMAD) (Entered: 04/22/2022) |
| 04/22/2022 | 322 | ORDER GRANTING MOTION TO HOLD IN ABEYANCE: This Court has considered, without hearing, Defendant Lee's unopposed motion to hold in abeyance proceedings related to Plaintiffs' Bill of Costs until the pending appeal is resolved, ECF No. 321 . The motion is GRANTED. This Court holds in abeyance all proceedings related to Plaintiffs' Bill of Costs pending the resolution of Defendants' appeal. Signed by CHIEF JUDGE MARK E WALKER on 04/22/2022. (tpm) (Entered: 04/22/2022) |
| 04/28/2022 | 323 | MOTION to Withdraw as Attorney by EQUAL GROUND EDUCATION FUND, FLORIDA RISING TOGETHER, HISPANIC FEDERATION, PODER LATINX, UNIDOSUS. (LOPEZ, JANINE) (Entered: 04/28/2022) |
| 04/28/2022 | 324 | ORDER GRANTING MOTION TO WITHDRAW AS COUNSEL: This Court has considered, without hearing, the motion to withdraw Janine M. Lopez as counsel for Plaintiffs. ECF No. 323 . Plaintiffs continue to be represented by counsel, and representation will continue uninterrupted. This motion is, therefore, GRANTED. The Clerk shall disconnect Ms. Lopez from CM/ECF on this matter. Signed by CHIEF JUDGE MARK E WALKER on 04/28/2022. (tpm)(Attorney Janine M. Lopez terminated) (Entered: 04/29/2022) |
| 05/31/2022 | 326 | MOTION to Withdraw as Attorney *of Record, E. Paul Cuffe* by MARK ANDERSEN, BOBBY BEASLEY, TOMI S BROWN, STARLET CANNON, SHARON CHASON, GRANT CONYERS, |

| | | |
|---|---|---|
| | | CAROL DUNAWAY, CAROL FINCH RUDD, TRAVIS HART, LAURA HUTTO, WILLIAM KEEN, JENNIFER M KINSEY, SHIRLEY G KNIGHT, CHRIS MILTON, JOSEPH MORGAN, VICKY Z OAKES, DEBORAH OSBORNE, CHARLES OVERTURF, HEATHER RILEY, DANA SOUTHERLAND, TAPPIE A VILLANE. (CUFFE, EDWARD) (Entered: 05/31/2022) |
| 06/01/2022 | 327 | ORDER GRANTING MOTION TO WITHDRAW AS COUNSEL - This 326 motion is, therefore, GRANTED. The Clerk shall disconnect Mr. Cuffe from CM/ECF in Case No. 4:21cv201. Signed by CHIEF JUDGE MARK E WALKER on 6/1/22. (sjb) (Clerk will disconnect Mr. Cuffe as directed) (Entered: 06/01/2022) |
| 06/24/2022 | 328 | ORDER GRANTING MOTION TO WITHDRAW AS COUNSEL: This Court has considered, without hearing, the motion to withdraw Daniel Shapiro as counsel for Intervenor-Defendants. ECF No. 697, in Case No. 4:21cv186. The Defendants continue to be represented by counsel, and representation will continue uninterrupted. This motion is, therefore, GRANTED. The Clerk shall disconnect Mr. Shapiro from CM/ECF in Case No. 4:21CV201. Signed by CHIEF JUDGE MARK E WALKER on 06/24/2022. (tpm)(Attorney DANIEL JOSEPH SHAPIRO terminated.) (Entered: 06/24/2022) |

| PACER Service Center | | |
|---|---|---|
| Transaction Receipt | | |
| 07/06/2022 14:31:38 | | |
| PACER Login: | michaelbhgs | Client Code: | |
| Description: | Docket Report | Search Criteria: | 4:21-cv-00201-MW-MJF |
| Billable Pages: | 30 | Cost: | 3.00 |

1

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

| | |
|---|---|
| FLORIDA RISING TOGETHER, FAITH IN FLORIDA, UNIDOSUS, EQUAL GROUND EDUCATION FUND, HISPANIC FEDERATION, and PODER LATINX, | Case No. 4:21-cv-201 |
| Plaintiffs, | |
| v. | **CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** |
| LAUREL M. LEE, in her official capacity as the Secretary of State of Florida, and PENNY OGG, in her official capacity as Supervisor of Elections for Highlands County, Florida, SHIRLEY GREEN KNIGHT, in her official capacity as the Supervisor of Elections for Gadsden County, Florida, MARY JANE ARRINGTON, in her official capacity as Supervisor of Elections for Osceola County, Florida, and CRAIG LATIMER, in his official capacity as the Supervisor of Elections for Hillsborough County, Florida, on behalf of themselves and all those similarly situated, | |
| Defendants. | |

## **INTRODUCTION**

1.      The human body relies on a beating heart to survive.  Voting is "the beating heart of democracy."  *League of Women Voters of Fla., Inc. v. Detzner*, 314 F. Supp. 3d 1205, 1215 (N.D. Fla. 2018).  The right to vote is a "precious" right, *Harper v. State Bd. of Elections*, 383 U.S. 663, 670 (1966), "of the most fundamental significance under our constitutional structure," *Burdick v. Takushi*, 504 U.S. 428, 433 (1992) (internal quotation marks omitted).  Florida's recent legislation attacking the voting rights of its Black and Latino residents is like a virus attacking the human heart. Without a remedy to undo the effects, our democracy will die.

2.      Florida has a long history of imposing racially discriminatory voting requirements.  In recent decades, many courts have recognized this history in striking down Florida voting laws because they discriminated against Black and Latino residents.

3.      Unfortunately, the Florida legislature's efforts to discriminate against Black and brown Floridians continue to this day.  The state has engaged in repeated efforts over the last decade to discourage or prevent Black and Latino residents from voting.  These efforts include the enactment of HB 1335 in 2011, which targeted early voting, third-party voter registration efforts, and other mechanisms that mobilized Black and Latino residents to vote, and SB 7066 in 2019, which imposed onerous, wealth-based restrictions on returning citizens in an effort to blunt the effect

of a state constitutional referendum—supported by an overwhelming majority of Floridians—re-enfranchising them.

4.     SB 90, the target of this lawsuit, continues the legislature's discriminatory tradition.  Enacted earlier this month, SB 90 contains a series of measures that prohibit or restrict access to the ballot and voting mechanisms that Black and Latino voters used to great effect in the 2020 elections.  The diverse components of SB 90 are linked because they target these voting practices, including unprecedented use of mail ballots, unprecedented use of secure drop boxes, and significant organized efforts to support voters who encounter long lines or other obstacles to in-person voting.

5.     The Florida legislature enacted SB 90 against a backdrop of record turnout among Black and Latino voters during the 2020 general election.  In part through a massive investment of time and resources by organizations such as Plaintiffs Florida Rising Together, Hispanic Federation, Faith in Florida, Equal Ground, UnidosUS, and Poder Latinx, a record 1.38 million Black voters and 1.8 million Latino voters participated in the 2020 General Election.  Efforts to facilitate return of ballots (by promoting use of mail ballots and secure drop boxes and assisting voters with return of ballots) and to provide assistance to voters on election day directly resulted in this record turnout.

6.     SB 90 contains a series of provisions targeting precisely those strategies and mechanisms successfully employed by Plaintiffs and other similar organizations in the 2020 election to mobilize Black and Latino voters.  While SB 90 imposes unjustified burdens on all voters, it places disproportionate burdens on Black voters, Latino voters, disabled voters, and voters who face greater challenges in exercising the right to vote, even in the best of circumstances.  SB 90 imposes specific obstacles on voters' ability to cast ballots through in person voting, mail voting, and the use of secure drop-boxes for early voting.

7.     For example, SB 90 makes voting by mail more burdensome.  Prior to the 2020 election, white voters were more likely than voters of color to vote by mail.  But in 2020, Black and Latino voters voted by mail to an unprecedented degree.  In the 2020 General Election, approximately 40 percent of all votes cast by Black voters were cast by mail (double the percentage in 2016), and approximately 41% of all votes cast by Latino voters were cast by mail, an increase of more than 50% from 2016 levels.  The 2020 election thus represented the beginnings of a change in the historical distrust of mail voting in the Black and Latino communities.  The unprecedented usage of vote-by-mail by voters of color in 2020 and the change in the attitude of those voters toward this method of voting was widely reported both at the time of the election and during the debate on SB 90, and the Florida legislature was aware of it in adopting the bill.  In prior decades, when white voters were more

likely to vote by mail, and before voters of color voted by mail in unprecedented numbers in the 2020 election, the Florida legislature repeatedly made it easier to vote by mail.  SB 90 abruptly reverses course, requiring for the first time that voters provide a driver's license number, Florida identification card number, or the last four digits of a social security number to request a mail ballot, documentation that Florida legislators must have known voters of color disproportionately lack.

8.      SB 90 also curtails the availability of secure drop boxes, a method used by Black and Latino voters in the 2020 General Election to an unprecedented degree. Plaintiffs and other similar organizations encouraged Black and Latino voters to use secure drop boxes during the 2020 elections to facilitate voting amid a pandemic that fell hardest on people of color and to address longstanding patterns of long lines and poor mail service in  communities of color.  The unprecedented use of drop boxes (along with increased voting by mail) was critical in reducing the lines and wait times for in-person voting in Black and Latino communities.  By enacting SB 90, the Florida legislature limited the use of secure drop boxes to the times and hours of early voting, and prohibited Supervisors of Elections ("SOEs") from operating drop boxes after business hours, including, potentially, on the Sunday before Election Day when many voters of color had previously cast their ballots.  By making it harder for many voters to use secure drop boxes, the restrictions will increase the number of

voters who will vote in-person, which will increase the length of voting lines, particularly in Black and Latino communities.

9.     SB 90 also places new restrictions on third-party voter registration drives, requiring civic organizations to tell any voters they seek to register that their registration may not arrive in time to be valid, regardless of the organization's intention or ability to process and return registrations, or its record in timely submitting registrations to state or local officials.  These voter registration efforts have been critical to the expansion of Black and Latino voting in Florida.  SB 90's compelled disclaimer is intended to and will have a chilling effect on third-party voter registration campaigns and their ability to register qualified voters.

10.    SB 90 also prohibits churches and organizations such as the Plaintiffs from providing assistance to voters waiting in line to vote.  During the 2020 election, Plaintiffs and other similar organizations afforded assistance to voters (primarily Black, Latino, disabled, and elderly voters) who encountered long lines at in-person polling sites; for example, Plaintiffs Hispanic Federation and Faith in Florida provided assistance (including water, food, chairs, and umbrellas) to voters in Black and Latino communities to enable them to wait in sometimes hours-long lines.  By enacting SB 90, the Florida legislature attacks critical efforts to mobilize unprecedented turnout from Black and Latino voters during the 2020 Election.  SB 90 criminalizes such efforts:  Under SB 90, anyone who provides assistance to a

6

voter waiting in line faces prosecution, punishable by a fine of up to $1,000, up to a year in prison, or both.

11.     The legislature offered no plausible rationale for the new restrictions imposed by SB 90.  SB 90's sponsors identified no specific issues or flaws that SB 90 aimed to fix.   To the contrary, legislators and state officials universally acknowledged that Florida's 2020 election ran remarkably smoothly. Indeed, Florida Governor DeSantis (who signed SB 90) touted the 2020 Florida election as "the smoothest, most successful election of any state in the country."[1]   The Florida Supervisors of Elections, in assessing the 2020 General Election, stated that "In 2020, Florida was universally praised for our exemplary conduct of elections – from the very highest offices at the federal and state level to our most important stakeholders, voters."[2]

12.     The bill's lead sponsor, Senator Dennis Baxley, confirmed the absence of any legitimate state interest justifying SB 90's restrictions on voting.  When pressed for a justification for measures making voting more difficult, Senator Baxley stated: "Some people ask why and I say why not?  Let's try it."[3]

---

[1] Press Release, Governor Ron DeSantis, Governor Ron DeSantis Highlights Proposed Legislation to Strengthen Election Integrity and Transparency Measures (Feb. 19, 2021), https://flgov.com/2021/02/19/governor-ron-desantis-highlights-proposed-legislation-to-strengthen-election-integrity-and-transparency-measures/.

[2] Fla. Supervisors of Elections, Florida Supervisors of Elections Statement on PCB-PIE 21-05 (Mar. 22, 2021), https://www.myfloridaelections.com/portals/fsase/Documents/Public%20Policy/FSE_Statement_032221.pdf.

[3] Fla. S. Comm. on Ethics and Elections Hearing (Feb. 16, 2021).

13.     Other sponsors invoked fanciful theories or hypothetical examples of fraud.  But the bill sponsors provided no evidence of any actual fraud or abuse in any actual Florida election that SB 90's provisions would address.  Florida's 67 Supervisors of Elections, who were surveyed regarding fraud or issues in the 2020 General Election, identified very few instances of possible fraud or irregularities over the past four years.[4]  The legislature thus enacted a series of burdensome rules with no plausible purpose other than to prevent voters—and Black and Latino voters in particular—from voting.

14.     Given the absence of any plausible justification for SB 90, Florida's long history of imposing racially discriminatory voting restrictions, and the fact that many of SB 90's provisions target voting practices successfully employed during the 2020 election by Black, Latino, and disabled voters or organizations such as Plaintiffs that mobilize or assist such voters, SB 90 was intended to and will place a discriminatory burden on voters of color, especially Black and Latino voters.

15.     Indeed, SB 90 is the classic case of "solutions in search of a problem" that has been found to indicate impermissible race-based voter suppression.  *See N.C. State Conference of NAACP v. McCrory*, 831 F.3d 204, 238 (4th Cir. 2016).

---

[4] Patricia Mazzei & Nick Corasaniti, Florida Republicans Pass Voting Limits in Broad Elections Bill, N.Y. TIMES (Apr. 29, 2021), https://www.nytimes.com/2021/04/29/us/politics/florida-voting-rights-bill.html.

16.     This Complaint challenges the following provisions of SB 90 that, individually and cumulatively, make voting more burdensome, particularly for Black, Latino, and disabled voters:

- **Secure Drop Box Restriction** (SB 90 Section 28). Reducing the availability, hours and days of secure drop boxes, which are relied on particularly by voters who work during the day and by those seeking to avoid excessive lines at polling places.

- **Voter Registration Disclaimer** (SB 90 Section 7). Requiring third-party voter registration organizations to inform registrants, at best misleadingly, that their completed registrations might not arrive in time to be valid, a measure which will have a chilling effect on independent voter registration efforts.

- **Vote-By-Mail Application Restriction** (SB 90 Section 24). Requiring a driver's license, ID card, or social security number for requesting a mail ballot, which will reduce the availability and use of mail ballots at precisely the time other elements of SB 90 are creating obstacles to in-person voting.

- **Line Warming Restriction** (SB 90 Section 29). Barring and imposing criminal penalties for "engaging in any activity with the intent to influence or effect of influencing a voter," which will in effect ban

persons from providing food, blankets, water, chairs, or umbrellas or from providing translation or other assistance to voters, disproportionately Black and Latino, waiting on line to vote due to crowding at their polling places. The Line Warming Restriction also disproportionately impacts disabled voters unable to stand in line without assistance.

17. Each of these changes individually imposes an unjustified burden on voting. Cumulatively, they impose a significant burden, in some cases leading to the wholesale disenfranchisement of voters. By restricting access to vote-by-mail ballots and restricting the availability of drop boxes, SB 90 will force more voters to the polls, on election day and during early voting times, making already long lines in Black and Latino neighborhoods even longer. At the same time, SB 90 undermines voter registration efforts and makes in-person voting more onerous by prohibiting persons (including Plaintiffs and their members) from offering food, water, or other assistance to voters standing in long lines. While for some this may be a mere inconvenience, for Black and Latino voters and members of other historically disenfranchised communities, who already must contend with unusually long lines, these impacts could be intolerable, particularly when many of the voters who relied most heavily on the methods of voting SB 90 takes away, including elderly and disabled voters, are those least able to weather long lines without

assistance.  The Florida legislature identified no state interest sufficient to justify these added burdens.

18.    In addition to impermissibly burdening voters and discriminating against voters on the basis of race or ethnicity, the challenged provisions of SB 90 violate numerous provisions of federal law. For example:

- The Vote-By-Mail Application Restriction and the Secure Drop Box Restriction place disproportionate burdens on voters of color, intentionally denying them an equal opportunity to participate in the political process.  They thus violate Section 2 of the Voting Rights Act and the Fourteenth and Fifteenth Amendments to the United States Constitution.

- The Line Warming Restriction interferes with the ability of voters, like Plaintiffs' members, to seek assistance in voting from a person of their choosing.  It thus violates Section 208 of the Voting Rights Act, 52 U.S.C. § 10508. It also violates the First Amendment to the U.S. Constitution, by limiting protected election-related expressive activities.  *Meyer v. Grant*, 486 U.S. 414, 422-23 (1988).

- Even apart from their racially discriminatory motive and impact, the challenged provisions of SB 90 also place an unjustified burden on the ability of all Florida voters to exercise their fundamental right to vote.

Any state restriction on the right to vote "must be justified by relevant and legitimate state interests sufficiently weighty to justify the limitation." *Crawford v. Marion County Election Bd.*, 553 U.S. 181, 191 (2008) (Stevens, J., controlling op.) (internal quotation marks omitted). SB 90 imposes severe burdens on the right to vote without any legitimate justification, and thus violates the First and Fourteenth Amendments to the Constitution.

- The Voter Registration Disclaimer constitutes an infringement on free speech, prohibited by the First Amendment to the Constitution, by compelling Plaintiffs and similar organizations to make statements to potential registrants that they do not believe and that will undermine their efforts to engage voters in the political process. Laws regulating protected speech or compelling speech are subject to strict scrutiny, but the Voter Registration Disclaimer is not narrowly tailored and does not serve any compelling state interest.

19.     For all of these reasons, SB 90 violates the U.S. Constitution and federal law and endangers the right to vote of all Floridians, and in particular voters of color. The Court should enjoin the Vote-By-Mail Application Restriction, the Secure Drop Box Restriction, the Voter Registration Disclaimer, and the Line Warming Restriction.

## THE PARTIES

### Plaintiffs

20.   Plaintiff FLORIDA RISING TOGETHER ("FRT") is a 501(c)(3) organization with a mission to increase the voting and political power of marginalized and excluded constituencies.  FRT's principal office is in Miami, and the organization engages with voters throughout the state, most extensively in Orange, Hillsborough, Osceola, Pinellas, Miami-Dade, Broward, Palm Beach, Duval, Leon, Gadsden, and Seminole Counties.  Founded in January 2021 as the merger and continuation of New Florida Majority and Organize Florida, FRT's central focus is to expand democracy by ensuring that every eligible voter in the state, regardless of party affiliation, is able to exercise his or her fundamental and constitutionally protected right to vote.  To achieve its goal, FRT conducts massive voter registration, voter education, voter engagement, and election protection programs.

21.   During the 2020 primary and general elections, FRT's predecessor organization, New Florida Majority, ran the largest independent voter education and mobilization campaign in Florida led by Latina and Black women. Specifically, the organization engaged in 18 million calls, had over 1 million conversations with voters, sent over 3 million pieces of voter education mail, placed approximately 9,000 radio ads with voting information in English, Spanish, and Haitian Creole, and

turned out more than 2 million voters of color, 44% of whom chose to vote by mail. FRT's 2020 voter education materials highlighted information related to drop boxes including, but not limited to, their locations, hours of operation, and how to use them.

22.    FRT aims to rapidly expand outreach to voters to educate them on SB 90's sweeping changes to Florida's election laws.  FRT is concerned that the communities it serves will be confused about how to participate in future elections, and may even refrain from voting altogether.  As a result, FRT is already planning to shift how it engages with voters at every stage of the voting process, from registration to education and assistance at polling places.  This will require new voter education materials as well as updated training sessions for staff and volunteers in its election protection program, all of which will entail significant time to develop and costs to promulgate.

23.    Plaintiff FAITH IN FLORIDA is a 501(c)(3) organization with a mission to build a powerful, multicultural, nonpartisan network of over 800 congregation community organizations in Florida that address systemic racial and economic issues, including voter education, voter registration, and voter engagement throughout the State of Florida.

24.    Faith in Florida has staff organizers and regularly conducts voting-related activities in 30 counties throughout the state, including Miami-Dade, Broward, Palm Beach, Leon, and Hillsborough Counties, and maintains satellite

14

offices in Miami and Miami Gardens.  The organization also conducts legislative advocacy to protect and advance voting rights throughout the state.

25.    In prior elections, including in 2020, Faith in Florida worked very closely with SOEs to make sure that drop boxes were placed in practical and accessible locations for community members.  In addition, Faith in Florida widely distributed information on delivering ballots and where drop boxes were located. Faith in Florida also provided ponchos and umbrellas to voters in lines during prior elections, including in 2020.  The organization also provided food and drinks to voters who waited in particularly long lines to make their experiences more comfortable.  These activities are intended to encourage voters to remain in line and cast their ballots, but Faith in Florida does not seek to influence how voters vote.

26.    Due to SB 90, Faith in Florida will have to start its voting work earlier, more than double its voter education and voter engagement efforts, and update all of its voter education materials.  For example, it will expand from four months of voter education to a full year, its staff will have to triple to cover more ground in less time, and it will have to create new voter education materials, including bilingual materials, and trainings, to include training of new staff and current staff on the changes in the law.  And SB 90 will significantly interfere with and may altogether preclude Faith in Florida's voter assistance efforts to voters in long lines.

27.     Plaintiff UnidosUS is a nonprofit organization and the nation's largest Latino civil rights and advocacy organization.  UnidosUS has offices in Florida and has 17 member-affiliate organizations based or working in Broward, Collier, DeSoto, Flagler, Glades, Hardee, Hendry, Highlands, Hillsborough, Indian River, Lake, Lee, Manatee, Marion, Miami-Dade, Monroe, Palm Beach, Pasco, Polk, Putnam, Orange, Osceola, Sarasota, Seminole, and Volusia Counties.  UnidosUS works to build a stronger America through a unique combination of research, advocacy, programs, and supporting the work of community-based Affiliate member organizations across the State of Florida and the nation, to simultaneously challenge the social, economic, and political barriers that affect Latinos in the United States. UnidosUS also conducts voter registration by community canvassing in high-traffic commercial areas or events, placement of digital ads, mailers and contacting voters directly.   In addition, UnidosUS provides support and technical assistance to Affiliated non-profit members to conduct voter registration with their existing members.

28.     During the 2020 elections, UnidosUS was responsible for 71,160 voter registrations, 25,459 vote-by-mail ballots cast and 60,012 pledges to vote. UnidosUS's Get Out the Vote campaign during the 2020 elections resulted in 167,784 (c)(3) mailers, 208,069 vote reminder telephone calls, 251,174 SMS texts reminders and 38,854 vote-by-mail chase calls.   UnidosUS's voter education

program included providing ballot box location information to voters needing to return vote-by-mail ballots as well as direct mailing over 10,000 vote-by-mail request forms directly to voters who could not navigate their respective county websites to request a vote-by-mail ballot online.  UnidosUS's activities targeting vote-by-mail education and mobilization toward Latino communities resulted in over 29,000 vote-by-mail requests from voters.  As a result of Defendants' failure to ensure access to vote-by-mail ballots and assistance to voters waiting in line with a specific focus on limited English proficient voters, UnidosUS is diverting its limited resources from other projects to translate instructions to voters regarding the changes made by the passage of SB 90 and provide Spanish-language assistance to Spanish-speaking Florida voters.

29.     Plaintiff EQUAL GROUND EDUCATION FUND ("EG") is a 501(c)(3) organization with a mission to register, educate, and increase engagement among Black voters in Florida's I-4 corridor.  EG's principal office is in Orlando, but the organization engages voters throughout the state, most extensively in Orange, Pinellas, Seminole, and Volusia Counties.  Founded in May 2019 to give the rising American electorate greater influence on issues that affect them, EG focuses on ensuring equal access to democracy in underserved communities.  To achieve its goal, EG conducts extensive voter education, voter registration, and voter

engagement work directly through its staff and in alliance with hundreds of faith partners throughout the state.

30.    During the 2020 primary and general elections, EG launched extensive voter registration and voter engagement efforts in numerous counties across the state of Florida.  Specifically, EG collected 2,800 in-person voter registration applications in a one-month span before the COVID-19 pandemic halted its canvassing operation. The organization continued to facilitate online voter registration and provide voter education by partnering with faith-based institutions and organizations.  EG also worked with partners to host a robust Souls to the Polls program in 21 Florida counties.  Through this program, EG coordinated drop box locations and availability for people with limited access to drop box options.  EG also transported voters to polling precincts and provided food, music, and live entertainment near polling locations to assist voters waiting in long lines.

31.    Due to SB 90, EG is currently strategizing shifts in staffing, funding, and programming.  It anticipates creating new voter education guides, staff trainings, and community events to update voters on the changes wrought by SB 90.  EG also foresees SB 90's restrictions on drop boxes and voter assistance near a polling place having a massive impact on its Souls to the Polls programming.  As a result, the organization is planning to significantly alter its Souls to the Polls efforts and line warming traditions.

32.     Plaintiff HISPANIC FEDERATION ("HF") is a 501(c)(3) nonprofit, nonpartisan, community organizing, and advocacy organization with an office in central Florida.  HF's mission is to empower and advance the Hispanic community, support Hispanic families, and strengthen Latino institutions through work in the areas of education, health, immigration, civic engagement, economic empowerment, and the environment, including by promoting voter engagement.  HF works locally, state-wide, and nationally to strengthen Latino nonprofits, promote public policy advocacy, and bring to scale a portfolio of innovative community programs through three essential service pillars: membership services, advocacy services, and community assistance programs.

33.     HF carries out its voter engagement work through all three essential service pillars.  This work assists the Hispanic electorate register to vote, apply for vote-by-mail ballots, and cast ballots during election day and early voting.   In addition, HF assists Florida voters waiting in long lines within 150 feet of poll sites and early voting locations to engage them while waiting to fulfill their civic duty despite extended wait times and any disabilities they may have.  The voter assistance strategy includes voter protection, specifically in communities of color and low voting propensity, and provides entertainment for families with children, snacks, soft drinks, water, and phone charge stations.  HF's Florida voter engagement work is

conducted in Duval, Alachua, Seminole, Volusia, Lake, Orange, Osceola, Polk, Hillsborough, Pinellas, Manatee, Sarasota, Broward, Miami-Dade Counties.

34.     In furtherance of its mission, HF fortifies a network of grassroots nonprofits through capacity-building grants that support core operational needs, graduate-level management classes, leadership development trainings, board recruitment and placement, executive fundraising workshops, and other technical assistance seminars.  HF's nonprofit members use this support to assist Hispanic voters with registering to vote, applying for and delivering vote-by-mail ballots, and other voter engagement activities.  For example, the voter engagement work of HF's nonprofit partner, Justice should be for All, assists senior voters, many of whom no longer drive and therefore lack a Florida driver's license and have difficulty waiting in long lines to vote without assistance.

35.     HF's Florida voter engagement work is focused on advancing the interests and aspirations of Latinos and their community-based organizations through coalition-building, policy research, public education, advocacy, voter mobilization, and regranting.  HF has offered more than 100 civic engagement trainings for Latino agencies, including trainings in Florida, so that they can become community-based centers of voter registration and outreach.  HF launched a partnership program in 2012, *Movimiento Hispano*, a collaborative representing

nearly 1,000 councils, labor chapters, and community-based organizations that are able to reach and conduct voter registration, education, and turnout.

36.    HF's community assistance program provides direct voter engagement services to ensure all citizens are actively engaged in our democratic process.  HF's non-partisan efforts not only increase Latino voter registration and participation throughout the nation but also encourage active involvement in the issues that affect Latino voters, their families, and their neighborhoods.  HF carries out this work through promoting and staffing a voter information hotline, operating a team of canvassers, sending voter education text messages about the vote-by-mail process, having election protection workers on the ground during early voting and on election day, and assessing the voting habits and obstacles of the Latino electorate.  For example, HF observed long lines in Hispanic precincts in Miami-Dade, Orange, and Broward counties during the 2018 election, long lines in Miami-Dade County in the 2020 election and predicts that SB 90 will result in Hispanic precincts having longer lines in future elections, especially due to new restrictions on drop box availability. HF also observed an increase in Hispanic vote-by-mail use in 2020 compared to 2018.  HF's "*Get Out the Vote*" campaigns explain the importance of voting and encourage Latinos to head to the polls.

37.    HF works to mobilize and educate Hispanic voters about the voting process and devotes staff and financial resources toward ensuring that the Hispanic

electorate has access to information necessary to vote.  In response to SB 90, HF will dedicate a portion of its limited staff time and resources to reeducating voters on how to overcome new restrictions on requesting and casting vote-by-mail ballots despite new identification requirements and restrictions on drop box availability, and on overhauling, and in some cases, dismantling its programming as a result of new restrictions on assisting voters.  HF will also have to retrain its workers on new disclaimer language when registering voters and on new restrictions for assisting voters within 150 feet of polling sites and drop boxes.  To do so, HF will have to divert funds and staff time from its other election activities toward educational activities such as sending additional rounds of text messages and revising educational materials about the vote-by-mail process to include the new restrictions on applying for vote-by-mail ballots and new limitations on the availability of drop boxes, holding additional community educational forums, and providing one-on-one support to voters who interact with its hotline; and this will still not be enough to reeducate the community on the changes that have been made to the traditional system that was in place for decades.  For example, Hispanic seniors and Puerto Rican voters in Florida are less likely to possess a Florida driver's license or state ID card, or to possess or know their social security number, which will require more of HF's voter education and outreach resources to overcome the new restrictions on requesting vote-by-mail ballots.

38.     In past elections, HF's voting assistance program has included providing funding to partner organizations to provide language assistance to Spanish-speaking voters waiting in line to vote at polling sites and early voting locations.   The Line Warming Restriction in SB 90 will require HF to make numerous changes to its voting assistance program, including potentially increasing the resources devoted to its voter assistance hotline and using canvassers to promote the hotline so voters can call HF agents to get answers to voting-related questions in lieu of having someone accompany them to the polling place, and diverting resources and training time to train canvassers in the new rules and restrictions on voter assistance.

39.     Plaintiff PODER LATINX is a fiscally sponsored project of Tides Advocacy, a California nonprofit public benefit corporation.  Poder Latinx is a social justice, organizing, and civic engagement organization whose mission is to build a political wave where Latinx communities, inclusive of immigrants and people of color, are decision-makers in our democracy and play a vital role in the transformation of our country.  Poder Latinx works locally and statewide in Florida, Georgia, and Arizona to expand the electorate by conducting year-round civic engagement activities, community empowerment and leadership development and issue-based organizing with a focus on three key issues: immigrant justice, climate justice and economic justice.  Poder Latinx carries out its mission to expand the

23

electorate by registering people to vote through in-person activities, via digital campaigns, and telephone banking.  Poder Latinx's civic engagement work is focused on educating voters on how to vote, the accepted types of identification necessary to vote, how to request vote-by-mail ballots and how to return their ballots. Poder Latinx's voter registration, voter education and civic engagement work is carried out throughout the state of Florida with a specific focus on Orange, Osceola, Polk, Lake, Volusia, Seminole, Lee and Palm Beach Counties.

40.     Poder Latinx also engaged in election protection activities by having bilingual poll monitors in Orange and Osceola County at precincts with high populations of Latino voters during the 2020 elections.  Poder Latinx's election protection program included providing "Know Your Rights" information to voters, handing out food and drinks to voters waiting in line and providing assistance to voters with a special focus on assisting Spanish-language dominant voters.  Poder Latinx's "Get Out the Vote" campaign focuses on the importance of voting and ensuring that voters know how to vote.

41.     During the 2020 election cycle, Poder Latinx's civic engagement program targeting voters was responsible for 1,560,722 calls, 4,873,989 text messages, and registered over 40,516 new voters in Florida.  Poder Latinx focused on vote-by-mail ballot education during the 2020 election, because many voters were unable to leave their homes due to the COVID-19 pandemic and due to age or

disability had to learn for the first time how to request a ballot and had to rely on community or family members to drop off their ballots.   Poder Latinx's voter education work was also aimed at ensuring voters knew about ballot box availability. Poder Latinx is particularly concerned about how the lack of access to ballot boxes will impact Florida communities because so many voters used this option during the 2020 election.

42.   In response to the changes made by SB 90, Poder Latinx will have to divert limited resources and staff to update their staff training materials as well as update materials to educate voters about the changes made to the law that will impact ballot delivery options and ballot box access and require the use of Florida identification numbers or social security numbers to request a vote-by-mail ballot. In addition, Poder Latinx is grappling with how to address the new requirement to provide voters notice of a potential delay in delivery of a voter registration application, which will undoubtedly require additional training and resources to counter the chilling effect this required notice will have on voters seeking to register to vote for the first time.

**Defendants**

43.   Defendant LAUREL M. LEE is sued in her official capacity as Florida Secretary of State.   Defendant Lee is a person within the meaning of 42 U.S.C. § 1983 and acts under color of state law.   Pursuant to Fla. Stat. § 97.012 (2020), the

Secretary of State is the chief elections officer of the State and is responsible for the administration of state laws affecting voting, including the registration and oversight of third-party voter registration organizations. *See* Fla. Stat. § 97.0575 (2020). Defendant Lee receives "administrative support" from the Florida Department of State's Division of Elections "to ensure that Florida has fair and accurate elections."[5] The Division of Elections, established by statute as a division of the Department of State, Fla. Stat. § 20.10(a)(2) (2020), is charged with implementing and enforcing Section 28 of SB 90, the Secure Drop Box Restriction, Fla. Stat. Ann. § 101.69(3) (West 2021). Accordingly, Defendant Lee, through the Division of Elections, is responsible for assessing fines against SOEs who violate Section 28's restrictions on drop-box availability.

44.    Defendant PENNY OGG is the Supervisor of Elections for Highlands County and is named herein in her official capacity as Supervisor of Elections.  As Supervisor of Highlands County, Defendant Ogg is charged by law with enforcing the Secure Drop Box Restriction, Fla. Stat. Ann. 101.69(2) (West 2021), with enforcing the identification requirements in the Vote-By-Mail Application Restriction, Fla. Stat. Ann. § 101.62 (West 2021), and with enforcing the Line Warming Restriction, Fla. Stat. Ann. § 102.031(4)(c) (West 2021).  Pursuant to

---

[5] Fla. Dep't of State, Div. of Elections, *About Us*, https://dos.myflorida.com/elections/about-us/ (last visited May 17, 2021).

Federal Rule of Civil Procedure 23, Defendant Ogg is sued as a representative of a class of all Florida Supervisors of Elections.

45.     Defendant SHIRLEY GREEN KNIGHT is the Supervisor of Elections for Gadsden County and is named herein in her official capacity as Supervisor of Elections.  As Supervisor of Highlands County, Defendant Knight is charged by law with enforcing the Secure Drop Box Restriction, Fla. Stat. Ann. 101.69(2) (West 2021), with enforcing the identification requirements in the Vote-By-Mail Application Restriction, Fla. Stat. Ann. § 101.62 (West 2021), and with enforcing the Line Warming Restriction, Fla. Stat. Ann. § 102.031(4)(c) (West 2021). Pursuant to Federal Rule of Civil Procedure 23, Defendant Knight is sued as a representative of a class of all Florida Supervisors of Elections.

46.     Defendant MARY JANE ARRINGTON is the Supervisor of Elections for Osceola County and is named herein in her official capacity as Supervisor of Elections.  As Supervisor of Osceola County, Defendant Arrington is charged by law with enforcing the Secure Drop Box Restriction, Fla. Stat. Ann. 101.69(2) (West 2021), with enforcing the identification requirements in the Vote-By-Mail Application Restriction, Fla. Stat. Ann. § 101.62 (West 2021), and with enforcing the Line Warming Restriction, Fla. Stat. Ann. § 102.031(4)(c) (West 2021). Pursuant to Federal Rule of Civil Procedure 23, Defendant Arrington is sued as a representative of a class of all Florida Supervisors of Elections.

47.    Defendant CRAIG LATIMER is the Supervisor of Elections for Hillsborough County and is named herein in his official capacity as Supervisor of Elections.  As Supervisor of Hillsborough County, Defendant Latimer is charged by law with enforcing the Secure Drop Box Restriction, Fla. Stat. Ann. 101.69(2) (West 2021), with enforcing the identification requirements in the Vote-By-Mail Application Restriction, Fla. Stat. Ann. § 101.62 (West 2021), and with enforcing the Line Warming Restriction, Fla. Stat. Ann. § 102.031(4)(c) (West 2021). Pursuant to Federal Rule of Civil Procedure 23, Defendant Latimer is sued as a representative of a class of all Florida Supervisors of Elections.

## JURISDICTION AND VENUE

48.    Plaintiffs bring this action under 42 U.S.C. § 1983 to redress the deprivation under color of state law of rights secured by Sections 2 and 208 of the Voting Rights Act, 52 U.S.C. §§ 10301, 10508; and under the First, Fourteenth and Fifteenth Amendments of the United States Constitution.

49.    The Court has subject matter jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 because the matters in controversy arise under the Constitution and laws of the United States, and specifically, laws and Constitutional provisions protecting the right to vote.  Plaintiffs bring this action to redress the deprivation, under color of state law, of rights, privileges, and immunities secured by the Constitution of the United States and federal law.  Plaintiffs bring this

action to secure equitable relief under federal law providing for the protection of voting rights, pursuant to 28 U.S.C. §§ 2201 and 2202.

50.    This Court has personal jurisdiction over Defendants, who are sued only in their official capacities as officers of the State of Florida or its political subdivisions.

51.    Venue is proper in this Court under 28 U.S.C. § 1391(b).  Defendant Lee resides and does business in Leon County, Florida and Defendant Knight resides and does business in Gadsden County, Florida.  In addition, Plaintiffs Florida Rising Together, Faith in Florida, and Hispanic Federation conduct voter engagement activities in this district that are now prohibited or restricted as a result of the enactment of SB 90, and thus, a substantial part of the events that gave rise to Plaintiffs' claims occurred in this judicial district.

52.    This Court has the authority to enter a declaratory judgment and to provide preliminary injunctive relief pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202.

## FACTUAL ALLEGATIONS

### A.    Florida's History of Racially Discriminatory Voting Practices

53.    The passage of SB 90 is the latest chapter in Florida's long history of racially discriminatory voting restrictions that dates back over 100 years.  As federal courts in Florida have repeatedly recognized, "Florida has a history of discrimination

against Black citizens with respect to the franchise." *Nipper v. Chiles*, 795 F. Supp. 1525, 1535 (M.D. Fla. 1992). The devices employed over time "to disfranchise or discriminate against [B]lack citizens included: (1) the expungement of [B]lack voters from the voting lists in the 1880s; (2) a poll tax, enacted in 1889; (3) a multiple ballot statute, enacted in 1889; (4) the direct primary (also known as the 'white primary'), adopted in 1901, whereby [B]lacks were excluded from participating in nominating the Democratic Party candidate; and, (5) a requirement that officeholders post bonds, adopted in 1885." *Id.*

54.    As the Court stated in *DeGrandy v. Wetherell*, 794 F. Supp. 1076, 1079 (N.D. Fla. 1992): "A longstanding general history of official discrimination against minorities has influenced Florida's electoral process. . . . As recently as 1967, § 350.20, Fla. Stat. provided in part: 'The Florida Public Service Commissioners may prescribe reasonable rules and regulations relating to the separation of white and colored passengers in passenger cars being operated in this state by any railroad company or other common carrier.' Additionally, § 1.01(6), Fla. Stat. (1967) provided that 'the words "Negro," "colored," "colored persons," "mulatto," or "persons of color," when applied to persons, include every person having one-eighth or more of African or Negro blood.'"

55.    Despite becoming the most urbanized southern state with the most northern immigrants by 1920, Florida remained a segregated, largely one-party

plutocracy until the early 1960s, and Black citizens remained largely disfranchised until the passage of the federal Voting Rights Act in 1965.

56.     Starting in 1972, multiple counties in Florida were required under Section 5 of the Voting Rights Act to seek federal clearance for changes to their election laws; these requirements remained in place until the Supreme Court's 2013 decision in *Shelby County v. Holder*, 570 U.S. 529 (2013), ended the pre-clearance requirement.  Florida's racially discriminatory practices, including practices similar to those included in SB 90, required federal intervention at least five times during this period.[6]  For example, in 1985, the Department of Justice objected to a restriction on assisting voters casting absentee ballots as a violation of Section 208 of the Voting Rights Act,[7] while in 1998 the Department declined to preclear a requirement to include a social security number on submitted absentee ballots because of the requirement's racially discriminatory impact.[8]  And in 2012, the United States sued the state to stop a voter purge that this Court found likely discriminated against

---

[6] Civil Rights Div., U.S. Dep't of Justice, *Jurisdictions Previously Covered by Section 5*, https://www.justice.gov/crt/jurisdictions-previously-covered-section-5 (last updated Sept. 11, 2020).

[7] Letter from W. Bradford Reynolds, Assistant Attorney General, Civil Rights Div., U.S. Dep't of Justice, to Jim Smith, Attorney General, State of Florida (Jan. 15 1985), https://www.justice.gov/sites/default/files/crt/legacy/2014/05/30/FL-1010.pdf.

[8] Letter from Bill Lane Lee, Acting Assistant Attorney General, Civil Rights Div., U.S. Dep't of Justice, to Robert A. Butterworth, Attorney General, State of Florida (Aug. 14, 1998), https://www.justice.gov/sites/default/files/crt/legacy/2014/05/30/FL-1030.pdf.

naturalized citizens. *See United States v. Florida*, 870 F. Supp. 2d 1346, 1350 (N.D. Fla. 2012).

57.     Even while subject to Section 5's pre-clearance requirement, the state continued to block Black residents from exercising political power by such devices as at-large elections.  Since 1983, scores of legal actions have been brought against the state, county, or municipal governments of Florida, under the Fourteenth Amendment, the Fifteenth Amendment, and/or the Voting Rights Act.  At least 57 such actions have resulted in findings of discrimination, including 37 under Section 2 of the Voting Rights Act and six under Section 5.

58.     The new century did not bring any abatement in Florida's efforts to discriminate against Black residents.  For example, in 2000 the state improperly removed at least 1,100 eligible voters from the voting rolls after identifying them as convicted felons.[9]  As a result, many eligible voters were turned away at the polls.[10] Statewide, of the voters dropped from the rolls in this voter purge, 41% were Black. In Miami-Dade County, "more than 65 percent of the names on the purge list were Blacks, who represented only 20.4 percent of the population."[11]  After a lawsuit, a

---

[9] *Study Shows 1,100 Voters Wrongly Purged from Rolls*, TAMPA BAY TIMES (Sept. 9, 2005) https://www.tampabay.com/archive/2001/05/27/study-shows-1100-voters-wrongly-purged-from-rolls.

[10] Katie Sanders, *Florida Voters Mistakenly Purged in 2000*, TAMPA BAY TIMES (June 14, 2012), https://www.tampabay.com/news/politics/stateroundup/florida-voters-mistakenly-purged-in-2000/1235456/.

[11] U.S. Comm'n on Civil Rights, *Voting Irregularities in Florida During the 2000 Presidential Election* (June 2001), https://www.usccr.gov/pubs/vote2000/report/exesum.htm.

court ordered Florida to revamp its program for identifying potential voters with felony convictions, and to restore hundreds of voters to the voting rolls.[12]

59.     Indeed, ever since the chaos of the 2000 presidential election, Florida has been ground zero for restricting access to the polls. After Congress passed the Help America Vote Act of 2002, 42 U.S.C. § 15301 *et seq.*, ostensibly intended to streamline statewide voter registration systems, Florida implemented rigid matching requirements for voter registration that could pointlessly disenfranchise eligible voters based on a typo or other minor mismatch error.  In 2006 and 2007, Florida's law disenfranchised tens of thousands of otherwise eligible voters, disproportionately voters of color.  *See Fla. State Conference of the NAACP v. Browning*, 522 F.3d 1153, 1176 (11th Cir. 2008) (Barkett, J., concurring in part and dissenting in part).  Even though Latino communities comprised only 15 percent of the applicant pool and Blacks only 13 percent, 65 percent of the rejected applicants were Latino (39 percent) or Black (26 percent).  *See id.* at 1176 n.4.

60.     While there were some reforms in the early 2000s (such as expansions in early voting and court injunctions allowing increased opportunities for voter registration, which allowed Black and Latino voters to vote in high numbers), those

---

[12] Katie Sanders, *Florida Voters Mistakenly Purged in 2000*, Tampa Bay Times (June 14, 2012), https://www.tampabay.com/news/politics/stateroundup/florida-voters-mistakenly-purged-in-2000/1235456/.

measures quickly came under attack once it became clear that voters of color were making use of them.

61.     In particular, in 2008, Black and Latino voters had record turnout, and Black voters used early voting at high rates: "More than half of African-American votes in Florida were cast during the early voting period" in 2008.[13]

62.     Florida lawmakers responded in 2011 with HB 1355, which cut early voting—and eliminated early voting the final Sunday before election day, when "Souls to the Polls" programs had expanded Black voter turnout.  HB 1355 also placed onerous restrictions on third party voter registration efforts and created additional hurdles for voters who had moved—measures that all were intended to have and had a disparate impact on voters of color.  Invoking the then-active Voting Rights Act preclearance requirement, the United States Department of Justice successfully moved to block the rules from taking effect in Collier, Hendry, Hardee, Hillsborough, and Monroe Counties.  *See Florida v. United States*, 885 F. Supp. 2d 299, 303, 305-06 (D.D.C. 2012) (per curiam) (holding that "the State has failed to satisfy its burden of proving that those changes will not have a retrogressive effect on minority voters").

---

[13] Michael Ellement, Note, *Blocking the Ballot: Why Florida's New Voting Restrictions Demonstrate A Need for Continued Enforcement of the Voting Rights Act Preclearance Requirement,* 62 CATH. U. L. REV. 541, 556 (2013).

63.     Social scientists concluded that HB1355 resulted in a precipitous drop in voter registrations leading into the 2012 elections, particularly among Black voters.[14]

64.     Florida's voting laws continue to show a particularized pattern of disenfranchisement of voters. *See Democratic Exec. Comm. v. Lee*, 915 F.3d 1312, 1326-27 (11th Cir. 2019) (finding Florida's signature match requirement likely unconstitutional and upholding a district court injunction allowing up to 48 hours for a voter to cure a signature mismatch); *Rivera Madera v. Detzner*, 325 F. Supp. 3d 1269, 1278-84 (N.D. Fla. 2018) (requiring Florida to provide Spanish language voting materials, as its failure to do so violated the Voting Rights Act); *League of Women Voters*, 314 F. Supp. 3d at 1210 (finding Florida's bar on use of university or college campuses as early voting sites unconstitutional).

65.     And when Florida's citizens voted overwhelmingly to end felony disenfranchisement—a relic of the Reconstruction Era that disproportionately impacts Black and Latino voters—the Florida legislature quickly took steps to limit the vote's impact and preserve as much as possible the racially discriminatory practice.  Prior to 2019, Florida's constitution permanently disenfranchised all citizens who had been convicted of any felony offense unless the Clemency Board

---

[14] Michael C. Herron and Daniel A. Smith, *The Effects of House Bill 1355 on Voter Registration in Florida*, 13 ST. POL. & POL'Y Q. 279, 297 (2013).

restored their voting rights—making Florida one of only four states to impose a lifetime voting ban for a felony conviction.  Disenfranchisement based on criminal conviction, which has been called the "new Jim Crow," is "inextricably tied to the United States' history of racial discrimination," and Florida adopted this constitutional provision "in the post-Civil War era as a means to disenfranchise former slaves who had been granted the right to vote under the Reconstruction Amendments."[15]  By 2016, the provision disenfranchised an estimated 1.6 million Floridians. In 2018, Florida voters addressed this longstanding discrimination by approving Amendment 4, which automatically restored voting rights to as many as 1.4 million Floridians who had completed the terms of their sentence.

66.     The Florida legislature responded with SB 7066, prohibiting returning citizens from voting unless they pay off all legal financial obligations imposed by a court pursuant to a felony conviction, even if they cannot afford to pay.  According to a 2020 report issued by The Sentencing Project, nearly 900,000 Floridians who would otherwise have been eligible to vote under Amendment 4 were disenfranchised by the law.  In all, more than 1.1 million Floridians are unable to vote because they have felony convictions or owe court debts, making Florida the nation's disenfranchisement leader.  Reportedly, about 15 percent of the state's

---

[15] Dalia Figueredo, *Affording The Franchise: Amendment 4 & The Senate Bill 7066 Litigation*, 72 FLA. L. REV. 1135, 1136 (2020).

Black voting-age population is disenfranchised because of a conviction history, compared to about 6 percent for the state's non-Black population.[16]

67.    Until very recently, the ability of Black voters and other qualified voters in Florida to cast ballots was also threatened by unchecked discretion held by election officials to reject vote-by-mail ballots from eligible voters deemed "noncompliant."  As this Court has held, this absolute power to throw out votes was facially unconstitutional because it unduly burdened the fundamental right of Florida citizens to vote and have their votes counted.  *See Democratic Exec. Comm. of Fla. v. Detzner*, 347 F. Supp. 3d 1017, 1022 (N.D. Fla. 2018) ("The precise issue in this case is whether Florida's law that allows county election officials to reject vote-by-mail and provisional ballots for mismatched signatures—with no standards, an illusory process to cure, and no process to challenge the rejection—passes constitutional muster.  The answer is simple.  It does not."), *appeal dismissed as moot*, 950 F.3d 790 (11th Cir. 2020).

68.    In sum, the Florida legislature has a long and sordid history of passing legislation that is intended to disenfranchise or severely burden Black and Latino voters.  The enactment of disenfranchising legislation has frequently been in direct

---

[16] Christopher Uggen et al., The Sentencing Project, *Locked Out 2020: Estimates of People Denied Voting Rights Due to a Felony Conviction* 17 (Oct. 15, 2020), https://www.sentencingproject.org/wp-content/uploads/2020/10/Locked-Out-2020.pdf#page=17.

response to successful efforts of Black and Latino voters to mobilize and turn out for elections.

**B.**     **Legislative History of SB 90**

69.     The Florida 2020 General Election was heralded for being one of the smoothest elections in Florida's history by state officials.

- According to the Florida Association of Supervisors of Elections, "In 2020, Florida was universally praised for our exemplary conduct of elections – from the very highest offices at the federal and state level to our most important stakeholders, voters."[17]

- According to Governor Ron DeSantis, the November 2020 General Election in Florida was "the smoothest, most successful election of any state in the country."[18]

- According to Representative Blaise Ingoglia: "In [the] last election cycle Florida administered one of the smoothest elections.  It was

---

[17] Fla. Supervisors of Elections, Florida Supervisors of Elections Statement on PCB-PIE 21-05 (Mar. 22, 2021), https://www.myfloridaelections.com/portals/fsase/Documents/Public%20Policy/FSE_Statement_032221.pdf.

[18] Press Release, Governor Ron DeSantis, Governor Ron DeSantis Highlights Proposed Legislation to Strengthen Election Integrity and Transparency Measures (Feb. 19, 2021), https://flgov.com/2021/02/19/governor-ron-desantis-highlights-proposed-legislation-to-strengthen-election-integrity-and-transparency-measures/.

heralded as the standard on how elections should be run across the United States."[19]

- According to Secretary of State Laurel Lee, the 2020 General Election in Florida "ran as smoothly as possible and inspired confidence on the part of Florida's voters."[20]

- According to Senator Dennis Baxley: "We have a very high customer satisfaction rate right now with Floridians on how the election was run."[21]

70.     Among other successes of the 2020 election in Florida, Black and Latino voters achieved record turnout due to the massive investment of time and resources by organizations such as Plaintiffs.  A record 1.38 million Black voters and 1.8 million Latino voters participated in the 2020 General Election.

71.     In response to this unprecedented Black and Latino turnout, and in spite of the fact that Florida's election was well-administered, safe and secure, the Florida legislature, with the support of Florida's governor, began work to change Florida's election procedures to make it harder for Black and Latino persons to vote.

---

[19] Fla. H.R. Comm. on Pub. Integrity and Elections (Apr. 19, 2021).

[20] Fla. S. Comm. on Ethics and Elections Hearing (Feb. 16, 2021).

[21] *Id.*

72.    The bill that became SB 90 began as two separate bills to revise the electoral code in the wake of the 2020 elections.  SB 90 was introduced in the Florida Senate on February 3, 2021, and HB 7041 was introduced in the Florida House of Representatives March 23, 2021.

73.    Throughout the debate on SB 90 and HB 7041, legislators were expressly warned that the bills would create obstacles to voting and would suppress votes:

- Senator Randolph Bracy warned his colleagues that Florida "has had the worst record of voter suppression in the country by far," and characterized SB 90 as an effort by "a party that's in control doing whatever they can to keep it." [22]

- Senator Bracy further warned that SB 90 "is clearly going to reduce vote-by-mail in Democratic counties."[23]

- Senator Perry Thurston described the bill as part of Florida's "sordid history of us trying to stop people from voting, trying to make it harder for people to vote."[24]

---

[22] *Id.*

[23] *Id.*

[24] Fla. S. Comm. on Rules Hearing (Apr. 14, 2021).

40

- The Florida Supervisors of Elections warned lawmakers that "several of the proposed provisions in the bill will negatively impact the voter experience" and that "calling for unnecessary election reforms . . . risks destroying the voter confidence that we have worked so hard to earn."[25]

74.    Several legislators specifically advised their colleagues that the bills were targeting voting practices increasingly relied upon by Black and Latino voters:

- Senator Bobby Powell advised the Senate Rules Committee that the restrictions on voting by mail would impact Black voter turnout.[26]

- Senator Lori Berman, during Senate floor debate on SB 90, cited analysis of Florida voting data from the Stanford-MIT Health Elections Project that concluded that Black voters were the group with the greatest increase in mail voting in the 2020 elections, and warned that the bill would have a "disparate impact on Black voters."[27]

- Senator Victor Torres warned that as a result of SB 90: "Seniors, minority groups including those of the Latino community, and residents

---

[25] Fla. Supervisors of Elections, Florida Supervisors of Elections Statement on PCB-PIE 21-05 (Mar. 22, 2021), https://www.myfloridaelections.com/portals/fsase/Documents/Public%20Policy/FSE_Statement_032221.pdf.

[26] Fla. S. Comm. on Rules Hearing (Apr. 14, 2021).

[27] Fla. S. Floor Debate (Apr. 22, 2021).

41

who have physical disabilities will find more barriers to casting their vote and less opportunities to participate in the election process."[28]

- Senator Gary Farmer told the Senate Committee on Ethics and Elections that the identification requirements in SB 90 would disproportionately impact Black and Latino voters because they tend to disproportionately lack the required identification.[29]

- Representative Christopher Benjamin pointed out that the restrictions on line warming and collecting ballots would have a disparate impact on the Black community.[30]

75.   Numerous advocacy organizations also advised the legislature of the discriminatory impact of the bill. For example:

- Ida V. Eskamani, on behalf of Plaintiff Florida Rising Together, informed the Senate Government Oversight Committee that SB 90 represented "one of the most serious attempts to restrict the rights of certain Americans to vote since the days of Jim Crow," and described the bill as "voter suppression" directed at "Seniors and veterans,"

---

[28]Fla. S. Comm. on Ethics and Elections Hearing (Apr. 26, 2021).

[29] *Id.*

[30] Fla. H.R. Floor Debate (Apr. 28, 2021).

"people with disabilities", "folks with health ailments, and also folks that are already marginalized."[31]

- LatinoJustice and Advancement Project wrote to the Florida Senate April 26, 2021, advising that the proposals to require identification for vote-by-mail applications, the restrictions on line warming, and the restrictions on returning ballots would disproportionately impact Black and Latino voters.

- Brad Ashwell of All Voting is Local testified that SB 90 "really can't be seen as anything other than an attack on voting rights" and pointed out that "seniors and veterans with disabilities … will be disproportionately impacted by this bill."[32]

- Carrie Boyd, of SPLC Action Fund, informed the Senate Rules Committee that SB 90 "will undoubtedly make it extremely difficult for older people and people with disabilities to vote."[33]

76.   In both the House and the Senate, legislators were presented with amendments that would have reduced the racially discriminatory impact of SB 90. For example:

---

[31] Fla. S. Comm. on Gov't Oversight and Accountability Hearing (Mar. 10, 2021).

[32] *Id.*

[33] Fla. S. Comm. on Rules Hearing (Apr. 14, 2021).

- Senator Gary Farmer offered an amendment in the Senate Rules Committee that would have deleted the ban on providing line assistance, allowing the practice of "giving water or sustenance to those who are waiting in line."[34]

- Representative Omari Hardy offered an amendment allowing voters to use their name, address, and date of birth to obtain a mail ballot.[35]

- Representative Dotie Joseph offered an amendment to allow completed ballots to be returned by anyone registered to vote at the same address as the voter.[36]

- Representative Anna Eskamani offered an amendment that would have allowed line warming by volunteers with a nonprofit organization or civic group.  Another amendment would have relaxed the restrictions on returning sealed, completed, mail ballots. [37]

- Several amendments were offered to reduce the restrictions on secure drop boxes.

All of these amendments were defeated.

---

[34] *Id.*

[35] Fla. H.R. Floor Debate (Apr. 27, 2021).

[36] Fla. H.R. Floor Debate (Apr. 29, 2021).

[37] *Id.*

77.     The Florida legislature's decision to change Florida's election laws, despite the fact that those laws succeeded in enabling a safe and secure 2020 election, was not made in a vacuum.  Legislatures across the country, particularly legislatures with Republican majorities, began in the immediate aftermath of the 2020 election to  debate new laws that would make voting more difficult, particularly for Blacks, Latinos, and other minorities.  The backdrop for these efforts was false accusations and wild conspiracy theories that spread both during and after the 2020 November election, almost all of which were aimed at disputing the validity of votes made in Black, Latino, and other minority communities.

78.     Florida was no exception.  The Florida legislature hurriedly began to develop SB 90 notwithstanding that Donald Trump won Florida and in the absence of any credible allegations of voter fraud in the state.  Indeed, the sponsors of SB 90 explicitly stated that the bill was motivated, not by issues that arose in the 2020 Florida election, but by the unsupported allegations of fraud in other parts of the country.  Senator Baxley stated at one hearing that "We are doing this bill because it becomes clear as you look across the country that there is a lot of confusion from many people on different fronts."[38]  Senator Baxley added "We had a lot of things

---

[38] Fla. S. Comm. on Rules Hearing (Apr. 14, 2021).

happening across the country this year for whatever reasons."[39]  During full Senate consideration of SB 90, Senator Baxley explained that the bill was needed even in the absence of any Florida-specific issues to address "some [issues] going on around the country, different places, and we want to be proactive and prevent things from going awry, rather than waiting to have some kind of debacle to recover from."[40]

79.   Throughout the debate and enactment of SB 90, bill sponsors struggled to set forth a rationale justifying sweeping changes to Florida's election code.  For example:

- Bill sponsors were not able to identify any specific evidence of abuses or voter fraud that the provisions of SB 90 or HB 7041 were designed to address.

- Defendant Secretary of State Laurel Lee testified before the Senate Committee on Ethics and Elections that she was unaware of any examples of a vote-by-mail ballot being sent to the wrong individual who used the ballot to vote.[41]

---

[39] *Id.*

[40] Fla. S. Floor Debate (Apr. 22, 2021).

[41] Fla. S. Comm. on Ethics and Elections Hearing (Feb. 16, 2021).

- When challenged to identify "anybody doing irregularities to necessitate this bill," Senator Baxley did not offer any examples of such irregularities.[42]

- When asked by Senator Linda Stewart "have we ever had any widespread issues with voter fraud on the vote-by-mail ballots," Senator Baxley conceded that "I don't know of widespread complaints."[43]

80.     Senator Baxley similarly conceded that there is no problem with security of election drop boxes requiring a legislative remedy.  Senator Baxley, asked to identify "a single instance of a VBM drop box being tampered with," responded: "I'm not trying to present a case that there's a problem" and "I've never made the case that there's box tampering."[44]

81.     Indeed, Senator Baxley essentially conceded that the issue SB 90 was intended to address was purely hypothetical.  During one Committee hearing, Senator Randolph Bracy held a colloquy with Senator Baxley to try to clarify Senator Baxley's position on the need for SB 90:

---

[42] *Id.*

[43] Fla. S. Comm. on Gov't Oversight and Accountability Hearing (Mar. 10, 2021).

[44] Fla. S. Comm. on Rules Hearing (Apr. 14, 2021).

Senator Bracy:

"I just want to clarify that you're saying that you agree that there is not a problem.  There never has been.  That is what the supervisors of elections have said and yet you believe we need to change.  Make these changes to drop boxes and the voting hours because of what could happen.  Even though there never had been a problem in the history of this state when it comes to drop boxes.  I just want to clarify that is what you're saying."

Senator Baxley:

"Substantively, yeah."[45]

82.     Representative Blaise Ingoglia, the lead House sponsor of HB 7041, who represents portions of Hernando County, similarly admitted that he knew of no instances of voter fraud, but was in favor of SB 90 regardless of the facts.  When asked if there was illegal ballot collection in Florida, Representative Ingoglia stated "I don't know, but I'm sure it was going on."  Representative Ingoglia went on to state that "Just the fact that they weren't caught doesn't necessarily mean that it's not happening."[46]

83.     Over the last decade, Florida has experienced almost no voter fraud.  According to the Heritage Foundation, since 2010, there have been only seventeen (17) criminal convictions, one (1) official finding and one (1) civil penalty for

---

[45] Id.

[46] Patricia Mazzei & Nick Corasaniti, Florida Republicans Pass Voting Limits in Broad Elections Bill, N.Y. TIMES (Apr. 29, 2021), https://www.nytimes.com/2021/04/29/us/politics/florida-voting-rights-bill.html.

election fraud.[47]  Since 2010, almost 49 million ballots have been cast, resulting in a fraud rate of 0.00000035%.   Not a single instance of voter fraud has been documented in Florida in the 2020 election.

84.     In fact, the only substantiated allegation of fraud connected with the 2020 election stems from the arrest of former Republican Senator Frank Artiles, "accused of recruiting and paying a no party candidate in Miami-Dade's Senate District 37 to siphon votes away from the Democratic candidate"—a type of fraud SB 90 does virtually nothing to address. [48]

85.     During the consideration of HB 7041, the House Public Integrity and Elections Committee surveyed all 67 County Supervisors of Elections to obtain their assessment of suspected voter fraud in Florida.  The SOEs reported 386 *suspected* cases of voter fraud over the last four years, estimated to constitute a rate of possible fraud of 0.0001%.[49]  In contrast, in Pinellas County alone, approximately 28,000 voters lack a driver's license, state ID card, or social security number on file in the voter registration system.[50]  SB 90 precludes all of these voters—in the name of

---

[47] The Heritage Found., Election Fraud Cases, https://www.heritage.org/voterfraud/search?state=FL (last visited May 17, 2021).

[48] Lawrence Mower, *Mail Ballots, Drop Boxes Targeted In Voting Bill Passed By Legislature*, MIAMI HERALD (Apr. 29, 2021), https://www.miamiherald.com/article251051919.html.

[49] Fla. S. Floor Debate (Apr. 21, 2021).

[50] Mitch Perry, *In St. Pete, Voting And Civil Rights Advocates Speak Out Against Florida Elections Bill*, BAY NEWS 9 (May 11, 2021), https://www.baynews9.com/fl/tampa/politics/2021/05/11/voting-and-civil-rights-advocates-speak-out-against-florida-elections-bill; Fla. S. Comm. on Rules Hearing (Apr. 14, 2021).

combatting this miniscule, unconfirmed threat of fraud—from obtaining a mail ballot.

## C.   SB 90 Was the Culmination of a Flawed and Rushed Process

86.   SB 90 was enacted as a result of a rushed process that afforded little opportunity for public participation.

87.   Despite the fact that the legislature met during a time of COVID restrictions, neither the House nor the Senate allowed members of the public to testify remotely from their homes.  Members of the public were required to travel to the Leon County Civic Center and testify from a remote viewing room.  During hearings in both Chambers, time for public comment was severely limited.  For example, public comment during the Senate Rules Committee consideration of SB 90 was limited to one minute per commenter, with members of the public abruptly cut off when their minute expired.[51]  Ida Eskamani, commenting on behalf of Plaintiff Florida Rising Together, was among the witnesses cut off after one minute of testimony.[52]  At the Hearing of the House Committee on State Affairs on April 19, 2021, debate on the bill was limited to 30 seconds per member, and no live public testimony was permitted at all.[53]

---

[51] Fla. S. Comm. on Rules (Apr. 14, 2021).

[52] *Id.*

[53] Fla. H.R. Comm. on State Affairs (Apr. 19, 2021).

88.    The final days of the passage of SB 90 gave way to a chaotic process that allowed little time for public testimony or for legislative consideration.  For example, at 1:33am on April 27, 2021, Rep. Ingoglia introduced a "strike all" amendment to SB 90 to be considered on the House Floor, essentially replacing the entirety of SB 90 with new and expanded text.  This amendment was considered and adopted that same day.  The debate was so rushed that legislators were afforded only a few minutes to introduce, explain, debate and vote on each proposed amendment.[54] Representative Omari Hardy said of this rushed process:

> "It's very interesting that we should be given just five minutes to open, question, debate, and close amendments on this bill which is about the heart of our democracy in this state, one of the most important states in the United States of America. I can't begin my discussion of this amendment without expressing how I feel about having this debate essentially canceled or truncated because we happened to have filed lots of amendments on this very objectionable piece of legislation."[55]

89.    The House passed an amended version of SB 90 on April 28, and formally sent it to the Senate for consideration.  On April 29, the Senate considered another "strike all" amendment offered by Senator Hutson; the amendment was passed by the Senate a few hours later.

---

[54] Fla. H.R. Floor Debate (Apr. 27, 2021).

[55] *Id.*

90.     When the House considered the Senate bill on April 29, 2021, it had little time to review a bill that contained significant changes.  Representative Tracie Davis pointed out that there had been "less than three hours" to review "a 48 page document."[56]  Representative Joseph Geller observed that members "barely know what's coming back" in the Senate bill, and asserted that "The Senate sends some stuff over. We barely have time to find out what it is, whether it's right, whether it's a good idea."[57]  Representative Geller said that most members had no idea what was in the bill they were preparing to vote for.

91.     The bill passed the House April 29 after one hour of debate, and was signed by the Governor May 6.

**D.     The Impact of SB 90**

92.     SB 90 includes numerous provisions that impact or burden the right to vote, and particularly the right to vote of historically disenfranchised voters and disabled voters.  This Complaint challenges four of these provisions: (i) the Secure Drop Box Restriction; (ii) the Voter Registration Disclaimer; (iii) the Vote-By-Mail Application Restriction, and (iv) the Line Warming Restriction.

---

[56] Fla. H.R. Floor Debate (Apr. 29, 2021).

[57] *Id.*

93.    **Secure Drop Box Restriction.** SB 90 significantly restricts the use of secure drop boxes for early return of mail ballots.

94.    Voting via secure drop boxes in the November 2020 General Election was widely praised as a core element of an efficiently run election. Defendant Secretary of State Laurel Lee testified to the Senate Committee on Ethics and Elections that one of the elements of the success of the 2020 General Election was informing voters concerned that their ballots might not arrive in time to be counted if sent by regular mail that "if they were concerned that they'd waited too long, they could drop them off, that there were multiple methods to return those ballots."[58] According to Craig Latimer, the President of the Florida Supervisors of Elections: "In 2020 our voters overwhelmingly appreciated the peace of mind that came from dropping their mail ballot off in a secure drop box, because they knew that by using the drop box instead of a mailbox, their ballot would be received on time."[59]

95.    Of the 4.85 million mail ballots cast in Florida in 2020, approximately 31 percent (1.5 million) were cast in secure drop boxes.[60]

---

[58] Fla. S. Comm. on Ethics and Elections Hearing (Feb. 16, 2021)..

[59] Lawrence Mower, *Election Supervisors Say New Florida Law Makes It Harder To Use Mail Ballots, Drop Boxes*, MIAMI HERALD (Apr. 30, 2021), https://www.miamiherald.com/news/politics-government/state-politics/article251063359.html.

[60] Fla. Supervisors of Elections, Florida Supervisors of Elections Statement on PCB-PIE 21-05 (Mar. 22, 2021), https://www.myfloridaelections.com/portals/fsase/Documents/Public%20Policy/FSE_Statement_032221.pdf.

96.     According to Mark Earley, Supervisor of Elections of Leon County, "Supervised drop boxes are the gold standard of the chain of custody for receiving voter ballots."[61]

97.     The reliance on secure drop boxes in the 2020 election was of particular significance and importance to the Black and Latino communities.  In the November 2020 General Election, Floridians voted by mail in record numbers.  Of 11.1 million votes cast, 4.85 million were cast by mail, a record in percentage and in absolute numbers of votes.  Approximately 550,000 Black voters and 740,000 Latino voters voted by mail in the 2020 election, and a large percentage of these ballots were returned to drop boxes.

98.     The widespread use of mail voting, and in particular the use of secure drop boxes, was recognized as a major factor that helped reduce the long lines at polling places on election day in Black and Latino communities, a problem widely noted in the 2016 and 2018 elections.  For example, according to Representative Christopher Benjamin, "in 2020, we had unprecedented numbers of Black voters participate in our elections. They used drop boxes. . . We used people to assist our

---

[61] Fla. S. Comm. on Gov't Oversight and Accountability Hearing (Mar. 10, 2021).

elderly in getting their votes to the drop boxes or getting them to the polls. . . we know that [restricting drop boxes] will have a disparate impact on folks like me." [62]

99.   Prior to enactment of SB 90, Florida law required SOEs to allow voters to return their mail ballots to secure drop boxes "at the main office of the supervisor, at each branch office of the supervisor and at each early voting site."  Fla. Stat. § 101.69(2) (2020).

100.   Supervisors also had the discretion to place secure drop boxes at any other site that could qualify as an early voting site—such as a city hall, permanent public library facility, fairground, civic center, courthouse, county commission building, stadium, convention center, government-owned senior center, or government-owned community center—provided that any such site be staffed by the supervisor's office or by a law enforcement officer. *Id.*

101.   Prior to enactment of SB 90, Supervisors had the discretion to allow access to secure drop boxes 24 hours a day.  Moreover, drop boxes were available the Sunday before election day, a critical day for early voting, and a boon to voters who wanted to cast a mail ballot and be confident that their ballot would arrive in time to be counted.

---

[62] Fla. H.R. Floor Debate (Apr. 28, 2021).

102.    SB 90 made several changes to restrict the use of secure drop boxes. For example, SB 90 requires election supervisors to operate most drop boxes only during the hours of operation for in-person early voting, *see* Fla. Stat. Ann. § 101.69(2)(a) (West 2021), which is between 8 and 12 hours a day.  Counties may only make a secure drop box available for voting outside of early voting hours if the drop box is at the Supervisor's main office or permanent branch office. *See id.*  Since most counties only have a single such office, this means that most counties will have only a single drop box available beyond early voting hours.

103.    This is particularly burdensome for voters who cannot get time off of work to vote, since they may be unable to access the drop box during business hours. As stated by Representative Patricia Williams, the Secure Drop Box Restriction and other provisions of SB 90 "deter[] people of color from voting.  Number one, because we work more, our hours are longer. . . The number of hours we work, because of the drop box that would not be there 24 hours as it normally would be, that deters us from voting." [63]

104.    SB 90 also prohibits election supervisors from operating drop boxes on the Sunday before election day, unless they elect to also have early voting on that Sunday or to divert staff to monitoring drop boxes at SOE offices during the critical

---

[63] *Id.*

final preparations for election day.  Fla. Stat. Ann. § 101.69(2)(a) (West 2021); *see* Fla. Stat. § 101.657(1)(d) (2020).  This restriction will significantly diminish programs like those of Plaintiff Equal Ground, which engages in "Souls to the Polls" campaigns on the Sunday before Election Day to encourage people to drop their ballots in secure drop boxes after Sunday church services.

105.   Also, SB 90 requires that all secure drop boxes be "monitored in person by an employee of the supervisor's office."  Fla. Stat. Ann. § 101.69(2)(a) (West 2021).  As a practical matter, this will severely limit the number of drop boxes available to voters, due to the costs of continuously staffing drop boxes.  Plaintiff Hispanic Federation predicts that having fewer drop boxes with more limited hours of operation will exacerbate long wait times in Latino precincts at early voting sites and on election day.

106.   If any supervisor leaves a drop box accessible for ballot receipt other than in the manner prescribed by SB 90, the supervisor is subject to a civil penalty of $25,000.  Fla. Stat. Ann. § 101.69(3) (West 2021).  The Division of Elections, tasked with providing "administrative support" to Defendant Lee "to ensure that Florida has fair and accurate elections,"[64] is authorized to enforce the penalty provision. *Id.*

---

[64] Fla. Dep't of State, Div. of Elections, *About Us*, https://dos.myflorida.com/elections/about-us/ (last visited May 17, 2021).

107.   SB 90's restrictions will discourage the use of drop boxes, defeating their purpose of reducing the volume of in-person voters crowding into early voting sites and reducing hours-long lines on Election Day.

108.   The Secure Drop Box Restriction imposes a particular burden on voters of color and others who disproportionately rely on secure drop boxes to vote after work, to vote on the Sunday before Election Day, or to avoid disproportionately long lines at their local precincts during in-person voting.  The use of drop boxes has become increasingly important as the mail service becomes less reliable, particularly in communities of color.  As Representative Geraldine Thompson, a Black member of Florida's House, observed: "[B]ecause it was people like me who used drop boxes in the last election more than they ever had and who made their voices heard, we are today considering a bill that would restrict the use of drop boxes."[65]

109.   During the legislative debate over SB 90, the bill's lead sponsor confirmed the absence of any legitimate justification for the restrictions on secure drop boxes: "I'm not trying to present a case that there's a problem" and "I've never made the case that there's box tampering."[66]  No state interest outweighs the burden on voting imposed by the Secure Drop Box Restriction.

---

[65] Fla. H.R. Floor Debate (Apr. 28, 2021).

[66] Fla. S. Comm. on Rules Hearing (Apr. 14, 2021).

110.   **Voter Registration Disclaimer.**  Section 7 of SB 90 requires third party voter registration organizations to inform registrants that their registrations may not arrive on time to enable them to vote, a disclaimer that is intended to and will have a chilling effect on third party voter registration organizations.

111.   Independent voter registration organizations, like Plaintiffs Florida Rising Together, Equal Ground, Hispanic Federation, and Poder Latinx have engaged in extensive voter registration drives in recent years, and particularly during the 2018 and 2020 General Elections.

112.   These voter registration efforts are particularly important to reaching historically disenfranchised voters, including Black and Latino voters, and helping them exercise their right to vote.

113.   In part as a result of these efforts, voter registration among Florida's Black and Latino voters has risen significantly over the last several years, culminating in a record turnout in the 2020 General Election.

114.   Under Florida law the activities of independent voter registration organizations are governed by an extensive regulatory regime.  They are required to register with the Division of Elections, provide information on their officers, registered agents, and the individuals registering voters for the organization, and provide a sworn statement from each individual registering voters for the

organization that they will obey all state laws governing voter registration.  *See* Fla. Stat. § 97.0575(1)(a)-(d) (2020).

115.   SB 90 imposes a series of changes that will drastically impair the ability of organizations to register new voters, in particular Black and Latino voters.  SB 90 revises Fla. Stat. § 97.0575(3)(a) to require that an organization deliver a completed registration to the County SOE where the applicant resides or to the Division of Elections within "14 days after complet[ion] by the applicant, but not after registration closes for the next ensuing election."  Fla. Stat. Ann. § 97.0575(3)(a) (West 2021).  Moreover, SB 90 also requires the organization to (i) inform the applicant that the organization might not deliver the completed application on time; and (ii) inform the applicant of other ways to register to vote.  *See id.*

116.   These compelled statements, forcing the organization to suggest that it may not return the registrations on time, directly discourages the activity of such organizations.

117.   During the debate on SB 90, legislators were advised of the impact of this forced disclaimer.  Representative Geraldine Thompson informed the House of Representatives that "[W]e're shaking confidence in voter registration by having to inform people that the ballot might not get there in time."[67]

---

[67] Fla. H.R. Floor Debate (Apr. 28, 2021).

118.   Senator Shevrin Jones, during Senate floor debate on SB 90, advised that this provision "will likely have a chilling effect on the willingness of potential electors to participate in voter registration drives."   Senator Jones offered an amendment striking this language, specifically informing his colleagues that "we know that minorities are more likely to vote through third party voter organizations." The amendment was defeated.[68]

119.   **Vote-By-Mail Application Restriction.**  Section 24 of SB 90 imposes a series of restrictions on requesting mail ballots.

120.   The legislature, after years of making voting by mail easier, enacted these new restrictions after an election in which Black and Latino voters made unprecedented use of mail ballots—specifically, 40 percent of Black voters voted by mail in the 2020 election, double the percentage from 2016, and Latino voters almost doubled their use of mail ballots over the same period from 26.7% in 2016 to 42.1% in 2020.

121.   Under prior Florida law, a voter could request a vote-by-mail ballot by phone, by mail, or in person, without providing identification.  *See* Fla. Stat. § 101.62(1)(a)-(b) (2020).  A written request with a signature was required if the voter was requesting that the ballot be sent to an address other than the one at which

---

[68] Fla. S. Floor Debate (Apr. 22, 2021).

they were registered.  *See id.* § 101.62(1)(b).  Identification was needed only when a voter directed the SOE to accept a request by a member of the voter's immediate family or a legal guardian, in which case the application had to contain the voter's name, address, and date of birth, and the requestor's name, address, driver's license number if available, and the requestor's relation to the voter.  *See id.*

122.   Similarly, prior to the enactment of SB 90, vote-by-mail ballots, once returned, were checked by the SOE or the County Canvassing Board ("CCB") to verify that the signature on the vote-by-mail ballot matched the signature in the registration books and that the voter was "duly registered in the County." Fla. Stat. § 101.68(2)(c)(1) (2020).  If the SOE or the CCB found that a signature was missing or did not match the signature on file, the SOE notified the voter and the voter had an opportunity to provide a cure affidavit with a valid signature and one of several forms of identification.  Fla. Stat. § 101.68(4)(a)-(d) (2020).

123.   The processes for applying for and reviewing vote-by-mail ballots were praised widely by the Secretary of State and Florida lawmakers as an essential element of the success of the 2020 Elections in Florida.  Defendant Secretary of State Lee testified to the Senate Committee on Ethics and Elections that the signature match is "to verify that their ballot is coming from the intended voter," that the number of signature mismatches was "very low," and that the very low number was

"a credit to the work" of the Supervisors of Elections.[69]  Moreover, for the past several years, the Secretary of State has offered training on signature matching to local officials to ensure it is conducted in a rigorous and objective manner.  Secretary Lee did not identify any issue or problem with voting by mail that would require additional restrictions or precautions.

124.   SB 90 imposes onerous new requirements on voters applying for a vote-by-mail ballot.  Under Section 24 of SB 90, both the voter seeking a vote-by-mail ballot and anyone making a request for a vote-by-mail ballot on behalf of the voter must provide their Florida driver's license number, their Florida identification card number, or the last four digits of the voter's and the requestor's social security numbers.  *See* Fla. Stat. Ann. §§ 101.62(1)(b), (3) (West 2021).  SB 90 requires SOEs to verify that the information provided with a vote-by-mail request matches the information in the county's voter registration records.  *See id.* § 101.62(1)(b).  SB 90 expressly bars SOEs from providing vote-by-mail ballots to any voter unless these requirements are satisfied.  *See id.* § 101.62(7).

125.   These added requirements for voters to provide identifying information, and for SOEs to verify the identification, are completely unnecessary and will lead to the arbitrary rejection of mail ballot requests.  There has been no

---

[69] Fla. S. Comm. on Ethics and Elections Hearing (Feb. 16, 2021).

evidence of fraud or abuse from voters using vote-by-mail ballots, and no evidence of individuals impersonating other voters to obtain a vote-by-mail ballot—the specific kind of abuse that imposing this ID requirement or signature match requirement would theoretically address.  At numerous times during the hearings and floor consideration of SB 90, bill sponsors—pressed on whether they were aware of any abuses or irregularities related to voting by mail in 2020—could identify no such instances. During a Senate Ethics and Elections Committee hearing, Brad Ashwell, Florida State Director of All Voting is Local, specifically challenged the lead sponsor of SB 90, Senator Baxley, to "point out anybody doing irregularities to necessitate this bill."[70]  Senator Baxley failed to identify any specific instances of irregularities. Florida Secretary of State Laurel Lee, in her testimony before the Senate Committee on Ethics and Elections, stated she was not aware of any abuse with respect to mail ballots.[71]

126.   The Vote-By-Mail Application Restriction will prevent many voters in Florida from obtaining a vote-by-mail ballot, because many voters in Florida registered to vote without providing either a driver's license or ID card number or a social security number, and lack those documents.  Other voters will be barred from

---

[70] Fla. S. Comm. on Ethics and Elections Hearing (Feb. 16, 2021).

[71] *Id.*

obtaining a vote-by-mail ballot because they do not remember the document that they used when registering to vote. For example, a new Florida voter may register using a social security number before obtaining a driver's license or ID card in the state. Many years later, when applying for a vote-by-mail ballot, if that voter supplies her subsequently obtained driver's license number, the request will be rejected. SB 90's ID requirement for requesting a vote-by-mail ballot will impose an unnecessary burden on voting for all voters, but will have a disproportionate effect on voters of color.

127. Given the extensive reporting on the increasing use of mail ballots by Black and Latino voters during and after the 2020 election, the Florida legislature was aware of the increased use of mail ballots by Black voters, and was aware that imposing restrictions on mail ballots would likely impact Black voter participation. And the legislature was aware that the identification requirements pose a particular burden on voters who lack these forms of ID, including Black and Latino voters. According to the 2012 American National Elections Study, Black and Latino voters are more than twice as likely to lack photo IDs than white voters. Black voters are less likely to have a driver's license or a state identification. Throughout Florida, tens of thousands of voters lack photo IDs or social security numbers, and these voters are disproportionately Black and Latino. In Pinellas County alone, 28,000

voters lack identification or social security numbers.[72]   Under the Vote-By-Mail Application Restriction, these voters will be unable to obtain vote by mail ballots.

128.   **Line Warming Restriction**.  Section 29 of SB 90 in effect criminalizes the practice of providing food, water, language assistance, and other assistance to voters waiting in line to vote.

129.   Plaintiff Hispanic Federation has since 2018 and Plaintiff Faith in Florida has since 2012 engaged in non-partisan efforts to support and encourage voters waiting in extended lines to remain in line.  These activities, commonly referred to as "Line Warming," have included providing food, water, chairs, umbrellas and other services.  Hispanic Federation has also in past elections offered language assistance to voters waiting in polling place lines.  In the 2020 General Election, Plaintiff Faith in Florida engaged in line warming activities such as providing food and water to voters to alleviate their exhaustion while waiting in particularly long lines at polling places.  In prior years, Plaintiff Faith in Florida provided voters with ponchos and umbrellas to encourage voters to remain in line in rainy conditions.  In 2020, Plaintiff Equal Ground's get out the vote efforts included bringing people to the polls as well as providing food, water, and entertainment for

---

[72] Mitch Perry, *In St. Pete, Voting and Civil Rights Advocates Speak Out Against Florida Elections Bill*, Bay News 9 (May 11, 2021), https://www.baynews9.com/fl/tampa/politics/2021/05/11/voting-and-civil-rights-advocates-speak-out-against-florida-elections-bill; Fla. S. Comm. on Rules Hearing (Apr. 14, 2021).

voters waiting in line at polling places.   In prior elections, Plaintiff Hispanic Federation provided entertainment for families with children, snacks, soft drinks, water, and phone charge stations to encourage voters to remain in line to vote.

130.   Prior to SB 90, Florida law barred "solicitation" of voters within 150 feet of a polling place.  Solicitation was defined as "seeking or attempting to seek any vote, fact, opinion, or contribution; distributing or attempting to distribute any political or campaign material, leaflet, or handout; conducting a poll except as specified in this paragraph [exempting exit polling]; seeking or attempting to seek a signature on any petition; and selling or attempting to sell any item."  Fla. Stat. § 102.031(4)(b) (2020).

131.   "Solicitation" prior to enactment of SB 90 did not encompass providing of food, water, chairs, umbrellas, or other support intended to encourage voters not to leave voting lines and make it easier for them to stay in line and cast a ballot.

132.   SB 90 added language to Fla. Stat. § 102.031 expanding the definition of "soliciting" or "solicitation" to include "engaging in any activity with the intent to influence or effect of influencing a voter."  Fla. Stat. Ann. § 102.031(4)(b) (West 2021).  There is no definition of what "influencing a voter" means, and nothing in the law restricts it to attempting to influence how a voter votes.  Thus, this provision would have the effect of barring activities, such as the programs implemented by Plaintiffs Hispanic Federation, Faith in Florida, and Equal Ground in the 2020

elections (and which they intend to offer in future elections), to provide food, water or other support to voters to encourage them to remain in line and exercise their right to vote. It would similarly bar the language assistance that Hispanic Federation has offered in past elections and intends to offer again.

133.   Line warming was particularly important in mobilizing the Black vote in the 2020 General Elections. Representative Christopher Benjamin during House Floor Debate on SB 90 described the numerous efforts to turn out the Black vote in the 2020 General Elections, including using "volunteers to tend to people in the lines," and that banning line warming will have a "disparate impact" on Black voters.[73]

134.   Similarly, Senator Audrey Gibson observed during Senate Floor debate:

> "Restricting food and water, it's totally obvious why that happens. Because many of us engaged, in our minority communities in particular, may have food trucks or activities of food near – it'll be more than 150 feet, but we may take a plate over to those who are 150 feet away from the entrance to the polling place."[74]

135.   Several amendments were offered to SB 90, in Committee and on the floor, to remove the Line Warming Ban. These amendments were all rejected.[75]

---

[73] Fla. H.R. Floor Debate (Apr. 28, 2021).

[74] Fla. S. Floor Debate (Apr. 29, 2021).

[75] Fla. S. Comm. on Rules Hearing (Apr. 14, 2021); Fla. H.R. Floor Debate (Apr. 29, 2021).

136.   In enacting SB 90, the Florida legislature was aware that historically, voting lines in precincts with larger numbers of Black and Latino voters have had longer wait times than other precincts, and that churches and community organizations that support Black and Latino voters have traditionally provided support to voters in line, including distributing food, water, chairs, and umbrellas, providing language assistance, and assisting elderly and disabled voters who may not be able to stand in line for long periods of time.   Thus, the Line Warming Restriction will disproportionately impact Black and Latino voters.

## THE NEED FOR SECTION 3(C) RELIEF

137.   Over time, the Florida legislature and the Defendants have employed a variety of devices to restrict voters of color's access to the franchise, up to and including the recent enactment of SB 90.

138.   Plaintiffs are "aggrieved persons" within the meaning of Section 3(c) of the Voting Rights Act, 52 U.S.C § 10302(c).

139.   In the absence of relief under Section 3(c) of the Voting Rights Act, 52 U.S.C. § 10302(c), the Florida legislature will continue to violate the Voting Rights Act and the voting guarantees of the Fourteenth Amendment in the future.

## DEFENDANT CLASS ACTION ALLEGATIONS

### Defendant Class Supervisors of Elections

140.   This action is brought against Defendants Ogg, Knight, Arrington and Latimer as representatives of a defendant class comprised of all county Supervisors of Elections in the State of Florida.  Supervisors of Elections, including Defendants Ogg, Knight, Arrington and Latimer, are charged by law with the duty to implement the Secure Drop Box Restriction, the Vote-By-Mail Application Restriction and the Line Warming Restriction.

141.   The persons comprising the class are so numerous that joinder of all members is impractical.  Joining 67 individual County Supervisors of Elections from across the state would cause inefficient and duplicative proceedings that would be difficult and impracticable to manage.  The questions of law common to the class are whether the Secure Drop Box Restriction, the Vote-By-Mail Application Restriction and the Line Warming Restriction violate the First, Fourteenth and Fifteenth Amendments to the U.S. Constitution and Sections 2 and 208 of the Voting Rights Act, as alleged in this Complaint.  Questions of fact common to the class include the impact of the challenged restrictions on Florida voters.

142.   The defenses Defendants Ogg, Knight, Arrington and Latimer are likely to assert are typical of the defenses of the class.  Defendants Ogg, Knight, Arrington and Latimer and the class member County Supervisors of Elections are

public officers with identical public duties under Florida election law, the Voting Rights Act, and the U.S. Constitution.

143. Defendants Ogg, Knight, Arrington and Latimer as Supervisor of Elections of their respective Counties, will fairly and adequately protect the interests of the class. Because Defendants Ogg, Knight, Arrington and Latimer are empowered with the same election law enforcement and oversight functions as every other county Supervisor of Elections, they can fairly and adequately protect the interests of the defendant class of Supervisors. As public officers, Defendants Ogg, Knight, Arrington and Latimer can be expected to litigate this action with the vigor and forthrightness required of a representative party.

144. This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(1)(A) in that the prosecution of separate actions against individual members of the class would create a risk of inconsistent or varied adjudication with respect to individual members of the class which would establish incompatible standards of conduct for the Defendants.

145. A defendant class is independently appropriate under Federal Rule of Civil Procedure 23(b)(1)(B) because adjudications with respect to individual class members, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede the ability of the other nonparty members to protect their interests. All of

the proposed defendant class members have identical election-related responsibilities under SB 90. Thus, if this case were brought only against Defendants Ogg, Knight, Arrington and Latimer, all County Supervisors of Elections in the proposed defendant class would risk running afoul of federal law if they continued to apply and enforce any of the challenged restrictions enjoined by any court order in this case.

146. In the alternative, this action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(2) in that the relief Plaintiffs seek—namely, an injunction prohibiting application or enforcement of the challenged restrictions—is identical as to each member of the defendant class and makes final injunctive relief or corresponding declaratory relief appropriate with respect to the class as a whole.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Violation of Section 2 of the Voting Rights Act
52 U.S.C. § 10301, *et seq.*
(Intentional Racial Discrimination and Discriminatory Results)
(Secure Drop Box Restriction, Vote-By-Mail Application Restriction, and
Line Warming Restriction)
Against Supervisor Defendant Class (All Provisions)
Against Defendant Lee (Secure Drop Box Restriction)**

147. Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint as though fully set forth herein.

148.   Section 2 of the Voting Rights Act, 52 U.S.C. § 10301(a), provides in pertinent part:

> No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color . . . .

149.   In direct violation of Section 2, SB 90: (1) restricts the availability of secure drop boxes for early voting (the Secure Drop Box Restriction); (2) requires that voters provide state identification or the last four digits of their Social Security number in order to request a vote-by-mail ballot (the Vote-By-Mail Application Restriction); and (3) prohibits Plaintiffs Florida Rising Together, Faith in Florida, Equal Ground, UnidosUS, Hispanic Federation and other civic and religious organizations from providing food, water, and other necessities to voters within the no-solicitation zone surrounding polling places (the Line Warming Restriction).

150.   SB 90 violates Section 2 of the Voting Rights Act because these provisions were adopted for the purpose of denying voters of color full and equal access to the political process.

151.   These provisions would violate Section 2 even in the absence of discriminatory intent, because, by their discriminatory impact, they will "result in a denial or abridgement" of the right of voters of color to vote and to participate equally in the democratic process.

152.   A voting qualification, prerequisite, practice, or procedure violates Section 2 "if, based on the totality of circumstances," election processes "are not equally open to participation" by protected classes of citizens, in that they "have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice."  52 U.S.C. § 10301(b).

153.   SB 90 violates Section 2 of the Voting Rights Act because, given the "totality of circumstances," including the long history of racial discrimination in Florida, the challenged provisions, individually and cumulatively, will disproportionately deny voters of color, including Black and Latino voters, an equal opportunity to participate in the political process and to elect representatives of their choice.

154.   The members of the Supervisor Defendant Class are charged with the implementation and enforcement of the Secure Drop Box Restriction, the Vote-by-Mail Application Restriction, and the Line Warming Restriction, and Defendant Lee is charged with enforcement of the Secure Drop Box Restriction through the assessment of fines against Supervisors who violate it.  Accordingly, the Supervisor Defendant Class must be enjoined from implementing or enforcing the challenged restrictions, and Defendant Lee must be enjoined from assessing fines for violation of the Secure Drop Box Restriction.

## SECOND CLAIM FOR RELIEF
**Fourteenth Amendment**
**U.S. Const. amend., XIV; 42 U.S.C. § 1983**
**(Intentional Racial Discrimination)**
**(Secure Drop Box Restriction, Vote-By-Mail Application Restriction, and**
**Line Warming Restriction)**
**Against Supervisor Defendant Class (All Provisions)**
**Against Defendant Lee (Secure Drop Box Restriction)**

155.    Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint as though fully set forth herein.

156.    42 U.S.C. § 1983 provides a cause of action, including for declaratory or injunctive relief, against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage … subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws…."

157.    The Secure Drop Box Restriction, the Vote-By-Mail Application Restriction, and the Line Warming Restriction violate the Fourteenth Amendment to the United States Constitution because they were purposefully enacted and operate to deny, abridge, or suppress the right to vote of otherwise eligible voters on account of race or color.

158.    The facts alleged herein reveal that race was a motivating factor in the enactment of SB 90, which was adopted with the racially discriminatory intent to

raise obstacles to voting for people of color, including Black and Latino voters. *See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977).

159.   Florida's long history of racial discrimination in the context of voting, the known and reasonably foreseeable discriminatory impact of SB 90, the bill's legislative history, and the tenuous and pretextual nature of the stated justifications for the bill raise a strong inference that it was enacted with a discriminatory purpose in violation of the Fourteenth Amendment.

### THIRD CLAIM FOR RELIEF
**Fifteenth Amendment**
**U.S. Const. amend., XV; 42 U.S.C. § 1983**
**(Intentional Racial Discrimination in Voting)**
**(Secure Drop Box Restriction, Vote-By-Mail Application Restriction, and Line Warming Restriction)**
**Against Supervisor Defendant Class (All Provisions)**
**Against Defendant Lee (Secure Drop Box Restriction)**

160.   Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint as though fully set forth herein.

161.   42 U.S.C. § 1983 provides a cause of action, including for declaratory or injunctive relief, against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage… subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws…."

162.   Section 1 of the Fifteenth Amendment to the United State Constitution prohibits states from denying or abridging the right of American citizens to vote on account of their race or color.

163.   SB 90 violates the Fifteenth Amendment to the United States Constitution because Defendants intentionally enacted and intend to administer and enforce the Secure Drop Box Restriction, the Vote-By-Mail Application Restriction, and the Line Warming Restriction to deny and abridge the right to vote on account of race or color.

### FOURTH CLAIM FOR RELIEF
**First and Fourteenth Amendments**
**U.S. Const. amends. I, XIV; 42 U.S.C. § 1983**
**(Undue Burden on the Right to Vote)**
**(Secure Drop Box Restriction, Vote-By-Mail Application Restriction, and Line Warming Restriction)**
**Against Supervisor Defendant Class (All Provisions)**
**Against Defendant Lee (Secure Drop Box Restriction)**

164.   Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint as though fully set forth herein.

165.   42 U.S.C. § 1983 provides a cause of action, including for declaratory or injunctive relief, against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage…subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the

deprivation of any rights, privileges, or immunities secured by the Constitution and laws….”

166.   The right to vote is a fundamental constitutional right protected by both the First and Fourteenth Amendments to the United States Constitution.

167.   State election laws may not place burdens upon the constitutional right to vote unless relevant and legitimate state interests of sufficient weight necessarily justify the magnitude and character of the burdens imposed.  *See Burdick v. Takushi*, 504 U.S. 428, 434 (1992); *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983).

168.   Any burden on the constitutional right to vote—even a slight one— “must be justified by relevant and legitimate state interests sufficiently weighty to justify the limitation.”  *Crawford v. Marion County Election Bd.*, 553 U.S. 181, 191 (2008) (Stevens, J., controlling op.) (internal quotation marks omitted).

169.   The more a challenged law burdens the right to vote, the more strictly must it be scrutinized.  *See Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1318-19 (11th Cir. 2019).

170.   The Secure Drop Box Restriction, the Vote-By-Mail Application Restriction and the Line Warming Restriction individually and collectively impose severe burdens or, at a minimum, significant burdens, on the voting rights of eligible Floridians, including on Plaintiffs and members of Plaintiffs’ organizations.

171.   Given that the sponsors of SB 90 were unable to point to any substantial evidence of the problems the challenged provisions purportedly address, none of the burdens the law imposes are necessary to achieve, nor are they reasonably related to, any sufficiently weighty legitimate state interest.  These burdens accordingly lack any constitutionally adequate justification and the challenges provisions of SB 90 must be enjoined.

**FIFTH CLAIM FOR RELIEF**
**Freedom of Speech/Expression and Unconstitutional Overbreadth and**
**Vagueness**
**U.S. Const. amend. I; 42 U.S.C. § 1983**
**(Line Warming Restriction)**
**Against Supervisor Defendant Class**

172.   Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint as though fully set forth herein.

173.   42 U.S.C. § 1983 provides a cause of action, including for declaratory or injunctive relief, against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage…subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws…."

174.   Plaintiffs Hispanic Federation, Faith in Florida, Equal Ground, and Poder Latinx enjoy rights under the First Amendment to the United States

Constitution, as applied to the states by the Fourteenth Amendment, to engage in protected speech and expression.

175.   Plaintiffs regularly engage, and intend to continue engaging, in protected speech by communicating with voters waiting in long polling place lines to convey a message about the importance of staying in line, the value of each individual's vote, and each individual's inherent value as a person and a participant in our democracy.

176.   Plaintiffs also provide food, water, seating, and other support to voters waiting in long lines at polling places as an expressive manifestation of Plaintiffs' central message concerning the importance of voting.

177.   Plaintiffs' "line warming" activities fall squarely within the protections of the First Amendment.  Encouraging participation in the political process in the face of obstacles is "the type of interactive communication concerning political change that is appropriately described as 'core political speech.'" *Meyer v. Grant*, 486 U.S. 414, 421-23 (1988).

178.   SB 90's Line Warming Restriction is squarely aimed at the line warming activities of Plaintiffs and similar organizations and individuals and unconstitutionally targets protected speech and expression, and must therefore be enjoined.

179.   The Line Warming Restriction is also impermissibly overbroad.

180.   A statute is overbroad and thus facially invalid if it prohibits a substantial amount of protected speech, even if some of the speech it proscribes may permissibly be restricted.  *See United States v. Williams*, 553 U.S. 285, 292 (2008); *NAACP v. Button*, 371 U.S. 415, 433 (1963); *Thornhill v. Alabama*, 310 U.S. 88, 101-02 (1940).

181.   Plaintiffs' line-warming activities involve speech and expressive conduct that is protected by the First Amendment.  Nonetheless, that speech and conduct appear to be banned by SB 90's Line Warming Restriction.

182.   Whatever activity (if any) might fall within the legitimate sweep of the Line Warming Restriction, a substantial number of the Line Warming Restriction's applications, including to Plaintiffs' line-warming speech and expressive conduct, are unconstitutional.  The Line Warming Restriction must therefore be invalidated as overbroad.  *See United States v. Stevens*, 559 U.S. 460, 473 (2010).

183.   The Line Warming Restriction is also unconstitutionally vague.

184.   The Due Process Clause of the Fourteenth Amendment incorporates the "fundamental principle in our legal system" that "laws which regulate persons or entities must give fair notice of conduct that is forbidden or required."  *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012); *see Kolender v. Lawson*, 461 U.S. 352, 357-58 (1983).  Laws must be drafted so that regulated parties "know what is required of them so they may act accordingly."  *Fox Television Stations*, 567 U.S.

at 253.  And "precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way." *Id.*

185.   "When speech is involved, rigorous adherence to those requirements is necessary to ensure that ambiguity does not chill protected speech." *Id.* at 253-54; *see Button*, 371 U.S. at 432 ("[S]tandards of permissible statutory vagueness are strict in the area of free expression.").

186.   The Due Process Clause "requires the invalidation of laws that are impermissibly vague." *Fox Television Stations*, 567 U.S. at 253.

187.   The Line Warming Restriction prohibits "engaging in any activity with the intent to influence or effect of influencing a voter."  But it fails to define "activity" or "influence," two general words with myriad conceivable meanings and applications.  Nor does it clarify what conduct has the "effect of influencing a voter," nor how one would determine that a voter has been influenced.

188.   As a result of the Line Warming Restriction's vagueness, Plaintiffs will be unable to determine whether, for example, tasking volunteers with urging voters to stay in line and vote or offering food, water, seating, and other items to voters would be a directive to violate the law, putting volunteers at risk of criminal prosecution.  And local law enforcement will be unable to determine whether such conduct requires their intervention, inviting confusion and chaos at polling places.

189.   The inevitable result of the Line Warming Restriction's irredeemable vagueness is the chilling of protected political speech and expression.

190.   Because the Line Warming Restriction fails to adequately identify the speech and conduct it prohibits, and because its lack of constitutionally necessary "precision and guidance" invites arbitrary, selective, and discriminatory enforcement, the Line Warming Restriction is unconstitutionally vague and must be enjoined.  *See Fox Television Stations*, 567 U.S. at 253.

## SIXTH CLAIM FOR RELIEF
**Violation of Section 208 of the Voting Rights Act of 1965, 52 U.S.C. § 10508
Preemption
(Line Warming Restriction)
Against Supervisor Defendant Class**

191.   Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint as though fully set forth herein.

192.   Section 208 of the Voting Rights Act provides that "[a]ny voter who requires assistance to vote by reason of blindness, disability, or inability to read or write may be given assistance by a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union."  The Voting Rights Act defines "vote" to include "all action necessary to make a vote effective in any primary, special, or general election, including, but not limited to, registration, listing pursuant to this chapter, or other action required by law prerequisite to voting, casting a ballot, and having such ballot counted properly."  52

U.S.C. § 10310(c)(1).  Section 208 thus guarantees any voter who requires aid in casting an absentee ballot the right to assistance by a person of their choice, other than an agent of the voter's employer or union.

193.   The Line Warming Restriction conflicts directly with and violates Section 208 and is therefore preempted and invalid.

194.   The Line Warming Restriction bars assisting a voter by providing a chair or bringing water.  If a voter requests assistance from a friend or family member in order to continue waiting on line to vote, the Line Warming Restriction bars the chosen person from assisting the voter and, indeed, criminalizes such assistance.  The voter has thus been deprived of her right to assistance by the person of her choice under Section 208.

195.   The Line Warming Restriction also bars providing language assistance to voters waiting in line.  If a voter requests assistance from a volunteer who has offered language assistance, of the kind that Plaintiff Hispanic Federation has offered in past elections and intends to provide in the future, the Line Warming Restriction makes it unlawful for the volunteer to provide the requested assistance, because doing so might influence the voter to remain in line and cast a ballot.  The voter has thus been deprived of her right to assistance by the person of her choice under Section 208.

196.    The Line Warming Restriction criminalizes the precise conduct that is contemplated and encouraged by Section 208, depriving voters of their federally guaranteed right to assistance in casting their ballot.  Accordingly, the Line Warming Restriction is preempted and invalidated by federal law.

**SEVENTH CLAIM FOR RELIEF**
**Freedom of Speech and Compelled Speech**
**U.S. Const. amend. I; 42 U.S.C. § 1983**
**(Voter Registration Disclaimer)**
**Against Defendant Lee**

197.    Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint as though fully set forth herein.

198.    42 U.S.C. § 1983 provides a cause of action, including for declaratory or injunctive relief, against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage…subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws…."

199.    Plaintiffs Florida Rising Together, UnidosUS,  Faith in Florida, Equal Ground, Hispanic Federation, and Poder Latinx enjoy rights under the First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, to engage in protected speech and expression, including political speech.

200.   In engaging in organized voter registration activities, Plaintiff Florida Rising Together, Equal Ground, UnidosUS, Faith in Florida, Hispanic Federation, and Poder Latinx engage in speech and expression protected by the First Amendment.

201.   Plaintiffs' voter registration activities, including their conversations with voters in the course of those activities, constitute speech and expressive conduct intended to share Plaintiffs' belief in the importance of participation by all eligible citizens, including marginalized and excluded constituencies, in the democratic process.  Advocating for that belief by working to persuade Floridians to vote and to assist eligible voters in registering to vote is core political speech and expression. *See Meyer*, 486 U.S. at 421-23.

202.   Restrictions on protected political speech and expression violate the First Amendment when they "significantly inhibit" election-related speech and association and are "not warranted by the state interests … alleged to justify [the] restrictions."  *Buckley v. Am. Constitutional Law Found.*, 525 U.S. 182, 192 (1999). Laws that burden core political speech are subject to "exacting scrutiny" and will be upheld only if the restrictions are "narrowly tailored to serve an overriding state interest."  *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 346-47 (1995).

203.  The Voter Registration Disclaimer infringes on Plaintiffs' First Amendment rights because it chills the protected speech and expression that occurs

during voter registration activities.  By requiring Plaintiffs to warn voters that Plaintiffs "might not deliver" their registration forms in time to be processed, the Voter Registration Disclaimer will dissuade eligible voters from registering to vote with Plaintiffs by giving them the incorrect impression that Plaintiffs cannot be trusted to handle their registration materials.  In fact, Plaintiffs take great care and pride in their secure and efficient collection and submission of voter registration applications in compliance with Florida law, and have been successfully doing so under the very tight deadlines that have applied in recent election cycles.

204.   The intent and effect of the Voter Registration Disclaimer is to diminish and impair Plaintiffs' ability to engage in protected political speech and expression by assisting eligible Floridians with voter registration.

205.   The Voter Registration Disclaimer is not warranted by any sufficiently weighty state interest.  The State lacks any legitimate interest in sowing doubt and uncertainty among eligible Florida voters about the trustworthiness and reliability of third-party voter registration organizations like Plaintiffs.  And any valid interest the State may have in ensuring that such organizations promptly submit voter registration materials can be accomplished by other means consistent with the U.S. Constitution, including the fines for late submission that are already part of Florida law.

206. The Voter Registration Disclaimer therefore represents an unconstitutional restriction on political speech and expression and should be enjoined.

207. The Voter Registration Disclaimer also unconstitutionally compels Plaintiff Florida Rising Together, Equal Ground, UnidosUS, Faith in Florida, Hispanic Federation, and Poder Latinx and other third-party voter registration organizations to engage in speech in violation of their First Amendment rights.

208. Plaintiffs enjoy rights under the First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, to be free from government mandates to engage in speech and expression of the government's choosing.

209. "Some of [the Supreme] Court's leading First Amendment precedents have established the principle that freedom of speech prohibits the government from telling people what they must say." *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 61 (2006). A law that "compel[s] individuals to speak a particular message" is a content-based regulation of speech and is therefore "presumptively unconstitutional." *Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361, 2371 (2018).

210. The Voter Registration Disclaimer unconstitutionally forces Plaintiffs and other persons and entities engaging in voter registration to speak for the

government by making a disclaimer or warning that Plaintiffs would not otherwise recite. The disclaimer constitutes speech (specifically, confusing, misleading, and dissuading speech); Plaintiffs object to the government imposing such speech upon them; and the speech will be readily associated with Plaintiffs and tied to their name when Plaintiffs involuntarily warn voters that they "might not deliver" their voter registration forms timely and effectively.

211. The Voter Registration Disclaimer compels Plaintiffs to undermine their own credibility by forcing Plaintiffs to tell potential voters that, in effect, Plaintiffs cannot be trusted with their registration forms. Such statements will be inaccurate because Plaintiffs take great care and pride in their secure and efficient collection and submission of voter registration applications in compliance with Florida law.

212. The Voter Registration Disclaimer is not narrowly tailored to serve any compelling or overriding state interest. To the extent the government believes that the Voter Registration Disclaimer is needed, the government must speak for itself. The State may not coopt Plaintiffs and other civic organizations to speak in furtherance of the State's own attempts to discourage voter registration. Because the Voter Registration Disclaimer forces Plaintiffs to deliver that message on the State's behalf without a sufficiently compelling reason, the Voter Registration Disclaimer violates the First Amendment and should be enjoined.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs respectfully request that this Court:

    a. Issue a declaratory judgment, pursuant to 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57, declaring that the Secure Drop Box Restriction, the Vote-By-Mail Application Restriction, the Line Warming Restriction, and the Voter Registration Disclaimer are illegal and unconstitutional in violation of Sections 2 and 208 of the Voting Rights Act of 1965, 52 U.S.C. §§ 10301 and 10508, and the First, Fourteenth, and Fifteenth Amendments to the United States Constitution;

    b. Preliminarily and permanently enjoin Defendants, their respective agents, officers, employees, and successors, and all persons acting in concert with each or any of them, from enforcing the Secure Drop Box, the Vote-By-Mail Application Restriction, the Line Warming Restriction, and the Voter Registration Disclaimer;

    c. Retain jurisdiction and subject Defendants to a preclearance requirement pursuant to Section 3(c) of the Voting Rights Act, 52 U.S.C. § 10302(c);

    d. Issue an order requiring Defendants to pay Plaintiffs' costs, expenses, and reasonable attorneys' fees incurred in the prosecution of this action, as authorized by, *inter alia*, 42 U.S.C. § 1988 and other applicable laws; and;

    e. Grant such other and further relief as may be just and equitable.

Dated:  May 17, 2021

Respectfully submitted,

s/     *Kira Romero-Craft*

KIRA ROMERO-CRAFT
Florida Bar No. 49927
MIRANDA GALINDO*
LatinoJustice, PRLDEF
523 W Colonial Dr.
Orlando, FL 32804
(321) 418-6354
Kromero@latinojustice.org
Mgalindo@latinojustice.org

JOHN A. FREEDMAN*
JEREMY C. KARPATKIN
ELISABETH S. THEODORE*
SAM I. FERENC*
Arnold and Porter Kaye Scholer LLP
601 Massachusetts Ave., NW
Washington, D.C. 20001-3743
202-942-5000
John.Freedman@arnoldporter.com
Jeremy.Karpatkin@arnoldporter.com
Elisabeth.Theodore@arnoldporter.com
Sam.Ferenc@arnoldporter.com

BRENDA WRIGHT*
STUART NAIFEH*
DEMOS
80 Broad St, 4th Flr
New York, NY 10004
(212) 633-1405
bwright@demos.org
snaifeh@demos.org

JEFFREY A. MILLER*
Arnold and Porter Kaye Scholer LLP
3000 El Camino Road
Five Palo Alto Square, Suite 500
Palo Alto, CA 94306-3807
(650)-319-4500
Jeffrey.Miller@arnoldporter.com

JUDITH BROWNE DIANIS*
GILDA R. DANIELS
JORGE VASQUEZ*
SABRINA KHAN*
ESPERANZA SEGARRA
Florida Bar No. 527211
SHARION SCOTT*
ADVANCEMENT PROJECT
1220 L Street, N.W., Suite 850
Washington, DC 20005
(202) 728-9557
Jbrowne@advancementproject.org
Gdaniels@advancementproject.org
Jvasquez@advancementproject.org
Skhan@advancementproject.org
Esegarra@advancementproject.org
Sscott@advancementproject.org

AARON STIEFEL*
Arnold and Porter Kaye Scholer LLP
250 West 55th Street
New York, NY 10019-9710
(212) 836-8000
Aaron.Stiefel@arnoldporter.com

*Attorneys for Plaintiffs*

*\*Application for admission pro hac vice forthcoming*

JS 44 (Rev. 06/17)

Case 4:21-cv-00201-AW-MJF   Document 1-1   Filed 05/17/21   Page 1 of 2
USCA11 Case: 22-11143     Document: 111-1     Date Filed: 07/18/2022     Page: 159 of 250

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Florida Rising Together; Hispanic Federation; Equal Ground Education Fund; Faith in Florida; Poder Latinx; and UnidosUS

## DEFENDANTS

Laurel Lee, Secretary of State of Florida; Craig Latimer, Supervisor of Elections for Hillsborough County; Mary Jane Arrington, Supervisor of Elections for Osceola County; Penny Ogg, Supervisor of Elections for Highlands County; and Shirley Knight, Supervisor of Elections for

**(b)**   County of Residence of First Listed Plaintiff   Miami-Dade
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Leon
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)**   Attorneys *(Firm Name, Address, and Telephone Number)*
Kira Romero-Craft, LatinoJustice PRLDEF
523 West Colonial Drive, Orlando, FL 32804
(321) 418-6354

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1   U.S. Government
  Plaintiff
- ☐ 2   U.S. Government
  Defendant
- ☒ 3   Federal Question
  *(U.S. Government Not a Party)*
- ☐ 4   Diversity
  *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | | ☐ 893 Environmental Matters |
| | Medical Malpractice | | Leave Act | | ☐ 895 Freedom of Information |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☒ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | or Defendant) | ☐ 899 Administrative Procedure |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | Act/Review or Appeal of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | Agency Decision |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | State Statutes |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1   Original Proceeding
- ☐ 2   Removed from State Court
- ☐ 3   Remanded from Appellate Court
- ☐ 4   Reinstated or Reopened
- ☐ 5   Transferred from Another District *(specify)*
- ☐ 6   Multidistrict Litigation - Transfer
- ☐ 8   Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. s. 1983; 52 U.S.C. s. 10301; 52 U.S.C. s. 10508; U.S. Const. Amends. I, XIV, XV
Brief description of cause:
Violations of Voting Rights Act, First, Fourteenth, and Fifteenth Amendment protections for speech and voting rights

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A **CLASS ACTION**
UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE   Mark Walker

DOCKET NUMBER   4:21-cv-186; 4:21-cv-187

DATE
5/17/2021

SIGNATURE OF ATTORNEY OF RECORD
s/ Kira Romero-Craft

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

| Print | Save As... | Reset |
|---|---|---|

**INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44**

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

I.(a)  **Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   (b)  **County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   (c)  **Attorneys.**  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II.  **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.
United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked.  (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

III.  **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

IV.  **Nature of Suit.**  Place an "X" in the appropriate box.  If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable.  Click here for: Nature of Suit Code Descriptions.

V.  **Origin.**  Place an "X" in one of the seven boxes.
Original Proceedings.  (1) Cases which originate in the United States district courts.
Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.  When the petition for removal is granted, check this box.
Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.
Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.
Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File.  (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.**  Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

VI.  **Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

VII.  **Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

VIII.  **Related Cases.**  This section of the JS 44 is used to reference related pending cases, if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of Florida

| | |
|---|---|
| FLORIDA RISING TOGETHER, et al. | ) <br> ) <br> ) <br> ) |
| _____ | ) |
| *Plaintiff(s)* | ) |
| v. | )    Civil Action No.  4:21-cv-201 |
| LAUREL LEE, et al. | ) |
| | ) |
| _____ | ) |
| *Defendant(s)* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   Secretary of State Laurel M. Lee
Department of State
R.A. Gray Building
500 South Bronough Street
Tallahassee, Florida 32399-0250

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Kira Romero-Craft
(FL SBN 49927)
LatinoJustice PRLDEF
523 West Colonial Drive
Orlando, Florida 32804
(321) 418-6354

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____
                                                                                  *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.  4:21-cv-201

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of Florida

| | |
|---|---|
| FLORIDA RISING TOGETHER, et al. | ) |
| | ) |
| | ) |
| | ) |
| *Plaintiff(s)* | ) |
| v. | ) |
| LAUREL LEE, et al. | ) |
| | ) |
| | ) |
| | ) |
| *Defendant(s)* | ) |

Civil Action No.  4:21-cv-201

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*    Shirley Green Knight
Supervisor of Elections
Gadsden County
7498 Anglewood Lane
Tallahassee, FL 32309

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:    Kira Romero-Craft
(FL SBN 49927)
LatinoJustice PRLDEF
523 West Colonial Drive
Orlando, Florida 32804
(321) 418-6354

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.  4:21-cv-201

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)*

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.


Date: _____               _____
                                              *Server's signature*

                                      _____
                                              *Printed name and title*

                                      _____
                                              *Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of Florida

| | |
|---|---|
| FLORIDA RISING TOGETHER, et al. | ) |
| | ) |
| | ) |
| | ) |
| *Plaintiff(s)* | ) |
| v. | ) Civil Action No. 4:21-cv-201 |
| LAUREL LEE, et al. | ) |
| | ) |
| | ) |
| | ) |
| *Defendant(s)* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Mary Jane Arrington
Supervisor Of Elections
Osceola County
2509 E. Irlo Bronson Memorial Hwy.
Kissimmee, Florida 34744

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Kira Romero-Craft
(FL SBN 49927)
LatinoJustice PRLDEF
523 West Colonial Drive
Orlando, Florida 32804
(321) 418-6354

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.   4:21-cv-201

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of Florida

| | |
|---|---|
| FLORIDA RISING TOGETHER, et al. | ) ) ) ) |
| *Plaintiff(s)* | ) |
| v. | ) |
| LAUREL LEE, et al. | ) ) ) ) ) |
| *Defendant(s)* | ) |

Civil Action No.  4:21-cv-201

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Penny Ogg
In her official capacity as Supervisor of Elections Clay County
729 Parker Street,
Jacksonville, FL 32202

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:  Kira Romero-Craft
(FL SBN 49927)
LatinoJustice PRLDEF
523 West Colonial Drive
Orlando, Florida 32804
(321) 418-6354

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____     _____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.  4:21-cv-201

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)*

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

Case 4:21-cv-00201-AW-MJF   Document 1-6   Filed 05/17/21   Page 1 of 2
USCA11 Case: 22-11143   Document: 111-1   Date Filed: 07/18/2022   Page: 169 of 250
AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of Florida

| | |
|---|---|
| FLORIDA RISING TOGETHER, et al. | ) |
| | ) |
| | ) |
| | ) |
| _____ | ) |
| *Plaintiff(s)* | ) |
| v. | ) |
| LAUREL LEE, et al. | ) |
| | ) |
| | ) |
| _____ | ) |
| *Defendant(s)* | ) |

Civil Action No.   4:21-cv-201

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   Craig Latimer
Supervisor of Elections Hillsborough County
County Center 601 E. Kennedy Blvd., 16th Fl.
Tampa, Florida 33602

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Kira Romero-Craft
(FL SBN 49927)
LatinoJustice PRLDEF
523 West Colonial Drive
Orlando, Florida 32804
(321) 418-6354

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.   4:21-cv-201

### PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
### TALLAHASSEE DIVISION

| | |
|---|---|
| FLORIDA RISING TOGETHER, FAITH IN FLORIDA, UNIDOSUS, EQUAL GROUND EDUCATION FUND, HISPANIC FEDERATION, PODER LATINX, HAITIAN NEIGHBORHOOD CENTER SANT LA, and MI FAMILIA VOTA EDUCATION FUND, | Case No. 4:21-cv-201-MW-MJF |
| Plaintiffs, | |
| v. | **AMENDED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** |
| LAUREL M. LEE, in her official capacity as the Secretary of State of Florida, KIM BARTON, in her official capacity as Supervisor of Elections for ALACHUA County, CHRIS MILTON, in his official capacity as Supervisor of Elections for BAKER County, MARK ANDERSEN, in his official capacity as Supervisor of Elections for BAY County, AMANDA SEYFANG, in her official capacity as Supervisor of Elections for BRADFORD County, LORI SCOTT, in her official capacity as Supervisor of Elections for BREVARD County, JOE SCOTT, in his official capacity as Supervisor of Elections for BROWARD County, SHARON CHASON, in her official capacity as Supervisor of Elections for CALHOUN County, PAUL A. STAMOULIS, in his official capacity as Supervisor of Elections for CHARLOTTE County, MAUREEN "MO" BAIRD, in her official capacity as Supervisor of Elections for CITRUS County, | |

CHRIS H. CHAMBLESS, in his official
capacity as Supervisor of Elections for
CLAY County, JENNIFER J. EDWARDS, in
her official capacity as Supervisor of
Elections for COLLIER County, TOMI S.
BROWN, in her official capacity as
Supervisor of Elections for COLUMBIA
County, MARK NEGLEY, in his official
capacity as Supervisor of Elections for
DESOTO County, STARLET CANNON, in
her official capacity as Supervisor of
Elections for DIXIE County, MIKE
HOGAN, in his official capacity as
Supervisor of Elections for DUVAL County,
DAVID H. STAFFORD, in his official
capacity as Supervisor of Elections for
ESCAMBIA County, KAITI LENHART, in
her official capacity as Supervisor of
Elections for FLAGLER County, HEATHER
RILEY, in her official capacity as Supervisor
of Elections for FRANKLIN County,
SHIRLEY KNIGHT, in her official capacity
as Supervisor of Elections for GADSDEN
County, CONNIE SANCHEZ, in her official
capacity as Supervisor of Elections for
GILCHRIST County, ALETRIS FARNAM,
in her official capacity as Supervisor of
Elections for GLADES County, JOHN
HANLON, in his official capacity as
Supervisor of Elections for GULF County,
LAURA HUTTO, in her official capacity as
Supervisor of Elections for HAMILTON
County, DIANE SMITH, in her official
capacity as Supervisor of Elections for
HARDEE County, BRENDA HOOTS, in her
official capacity as Supervisor of Elections
for HENDRY County, SHIRLEY
ANDERSON, in her official capacity as
Supervisor of Elections for HERNANDO

2

County, PENNY OGG, in her official
capacity as Supervisor of Elections for
HIGHLANDS County, CRAIG LATIMER,
in his official capacity as Supervisor of
Elections for HILLSBOROUGH County,
THERISA MEADOWS, in her official
capacity as Supervisor of Elections for
HOLMES County, LESLIE R. SWAN, in her
official capacity as Supervisor of Elections
for INDIAN RIVER County, CAROL A.
DUNAWAY, in her official capacity as
Supervisor of Elections for JACKSON
County, MARTY BISHOP, in his official
capacity as Supervisor of Elections for
JEFFERSON County, TRAVIS HART, in his
official capacity as Supervisor of Elections
for LAFAYETTE County, ALAN HAYS, in
his official capacity as Supervisor of
Elections for LAKE County, TOMMY
DOYLE, in his official capacity as
Supervisor of Elections for LEE County,
MARK EARLEY, in his official capacity as
Supervisor of Elections for LEON County,
TAMMY JONES, in her official capacity as
Supervisor of Elections for LEVY County,
GRANT CONYERS, in his official capacity
as Supervisor of Elections for LIBERTY
County, HEATH DRIGGERS, in his official
capacity as Supervisor of Elections for
MADISON County, MICHAEL BENNETT,
in his official capacity as Supervisor of
Elections for MANATEE County, WESLEY
WILCOX, in his official capacity as
Supervisor of Elections for MARION
County, VICKI DAVIS, in her official
capacity as Supervisor of Elections for
MARTIN County, CHRISTINA WHITE, in
her official capacity as Supervisor of
Elections for MIAMI-DADE County,

3

JOYCE GRIFFIN, in her official capacity as
Supervisor of Elections for MONROE
County, JANET H. ADKINS, in her official
capacity as Supervisor of Elections for
NASSAU County, PAUL A. LUX, in his
official capacity as Supervisor of Elections
for OKALOOSA County, MELISSA
ARNOLD, in her official capacity as
Supervisor of Elections for OKEECHOBEE
County, BILL COWLES, in his official
capacity as Supervisor of Elections for
ORANGE County, MARY JANE
ARRINGTON, in her official capacity as
Supervisor of Elections for OSCEOLA
County, WENDY LINK, in her official
capacity as Supervisor of Elections for
PALM BEACH County, BRIAN CORLEY,
in his official capacity as Supervisor of
Elections for PASCO County, JULIE
MARCUS, in her official capacity as
Supervisor of Elections for PINELLAS
County, LORI EDWARDS, in her official
capacity as Supervisor of Elections for POLK
County, CHARLES OVERTURF, in his
official capacity as Supervisor of Elections
for PUTNAM County, TAPPIE
A.VILLANE, in her official capacity as
Supervisor of Elections for SANTA ROSA
County, RON TURNER, in his official
capacity as Supervisor of Elections for
SARASOTA County, CHRISTOPHER
ANDERSON, in his official capacity as
Supervisor of Elections for SEMINOLE
County, VICKY OAKES, in her official
capacity as Supervisor of Elections for ST.
JOHNS County, GERTRUDE WALKER, in
her official capacity as Supervisor of
Elections for ST. LUCIE County, WILLIAM
KEEN, in his official capacity as Supervisor

of Elections for SUMTER County,
JENNIFER M. KINSEY, in her official
capacity as Supervisor of Elections for
SUWANNEE County, DANA
SOUTHERLAND, in her official capacity as
Supervisor of Elections for TAYLOR
County, DEBORAH OSBORNE, in her
official capacity as Supervisor of Elections
for UNION County, LISA LEWIS, in her
official capacity as Supervisor of Elections
for VOLUSIA County, JOSEPH R.
MORGAN, in his official capacity as
Supervisor of Elections for WAKULLA
County, BOBBY BEASLEY, in his official
capacity as Supervisor of Elections for
WALTON County, and CAROL FINCH
RUDD, in her official capacity as Supervisor
of Elections for WASHINGTON County,

                              Defendants.

**INTRODUCTION**

1.      The human body relies on a beating heart to survive.  Voting is "the beating heart of democracy." *League of Women Voters of Fla., Inc. v. Detzner*, 314 F. Supp. 3d 1205, 1215 (N.D. Fla. 2018).  The right to vote is a "precious" right, *Harper v. State Bd. of Elections*, 383 U.S. 663, 670 (1966), "of the most fundamental significance under our constitutional structure," *Burdick v. Takushi*, 504 U.S. 428, 433 (1992) (internal quotation marks omitted).  Florida's recent legislation attacking the voting rights of its Black and Latino residents is like a virus attacking the human heart. Without a remedy to undo the effects, our democracy will die.

2.      Florida has a long history of imposing racially discriminatory voting requirements.  In recent decades, many courts have recognized this history in striking down Florida voting laws because they discriminated against Black and Latino residents.

3.      Unfortunately, the Florida legislature's efforts to discriminate against Black and brown Floridians continue to this day.  The state has engaged in repeated efforts over the last decade to discourage or prevent Black and Latino residents from voting.  These efforts include the enactment of HB 1335 in 2011, which targeted early voting, third-party voter registration efforts, and other mechanisms that mobilized Black and Latino residents to vote, and SB 7066 in 2019, which imposed onerous, wealth-based restrictions on returning citizens in an effort to blunt the effect

of a state constitutional referendum—supported by an overwhelming majority of Floridians—re-enfranchising them.

4.      SB 90, the target of this lawsuit, continues the legislature's discriminatory tradition.  Enacted last month, SB 90 contains a series of measures that prohibit or restrict access to the ballot and voting mechanisms that Black and Latino voters used to great effect in the 2020 elections.  The diverse components of SB 90 are linked because they target these voting practices, including unprecedented use of mail ballots, unprecedented use of secure drop boxes, and significant organized efforts to register voters and support voters who encounter long lines or other obstacles to in-person voting.

5.      The Florida legislature enacted SB 90 against a backdrop of record turnout among Black and Latino voters during the 2020 General Election.  In part through a massive investment of time and resources by organizations such as Plaintiffs Florida Rising Together, Hispanic Federation, Faith in Florida, Equal Ground, UnidosUS, Poder Latinx, Sant La, and Mi Familia Vota Education Fund, a record 1.38 million Black voters and 1.8 million Latino voters participated in the 2020 General Election.  Efforts to facilitate return of ballots (by promoting use of mail ballots and secure drop boxes and assisting voters with return of ballots) and to provide assistance to voters in registering to vote and on election day directly resulted in this record turnout of Black and Latino voters.

6.     SB 90 contains a series of provisions targeting precisely those strategies and mechanisms successfully employed by Plaintiffs and other similar organizations in the 2020 election to mobilize Black and Latino voters.  While SB 90 imposes unjustified burdens on all voters, it places disproportionate burdens on Black voters, Latino voters, disabled voters, and voters who face greater challenges in exercising the right to vote, even in the best of circumstances.  SB 90 imposes specific obstacles on voters' ability to cast ballots through in-person voting, mail voting, and the use of secure drop boxes for early voting, and reduces opportunities for voters to register to vote or receive assistance in casting their ballots.

7.     For example, SB 90 makes voting by mail more burdensome.  Prior to the 2020 election, white voters were more likely than voters of color to vote-by-mail.  But in 2020, Black and Latino voters voted by mail to an unprecedented degree.  In the 2020 General Election, approximately 40 percent of all votes cast by Black voters were cast by mail (double the percentage in 2016), and approximately 41% of all votes cast by Latino voters were cast by mail, an increase of more than 50% from 2016 levels.  The 2020 election thus represented the beginnings of a change in the historical distrust of mail voting in the Black and Latino communities.  The unprecedented usage of vote-by-mail by voters of color in 2020 and the change in the attitude of those voters toward this method of voting was widely reported both at the time of the election and during the debate on SB 90, and the Florida legislature

was aware of it in adopting the bill.  In prior decades, when white voters were more

likely to vote-by-mail, and before voters of color voted by mail in unprecedented

numbers in the 2020 election, the Florida legislature repeatedly made it easier to

vote-by-mail.  SB 90 abruptly reverses course, requiring for the first time that voters

provide a driver's license number, Florida identification card number, or the last four

digits of a social security number to request a mail ballot, documentation that Florida

legislators must have known voters of color disproportionately lack.

     8.     SB 90 also curtails the availability of secure drop boxes, a method used

by Black and Latino voters in the 2020 General Election to an unprecedented degree.

Plaintiffs and other similar organizations encouraged Black and Latino voters to use

secure drop boxes during the 2020 elections to facilitate voting amid a pandemic that

fell hardest on people of color and to address longstanding patterns of long lines and

poor mail service in communities of color.  The unprecedented use of drop boxes

(along with increased voting by mail) was critical in reducing the lines and wait

times for in-person voting in Black and Latino communities.  By enacting SB 90,

the Florida legislature limited the use of secure drop boxes to the times and hours of

early voting, and prohibited Supervisors of Elections ("SOEs") from operating drop

boxes after business hours, including, potentially, on the Sunday before Election Day

when many voters of color had previously cast their ballots.  By making it harder for

many voters to use secure drop boxes, the restrictions will increase the number of

voters who will vote in-person, which will increase the length of voting lines, particularly in Black and Latino communities.

9.     SB 90 also places new restrictions on third-party voter registration drives, imposing onerous fines on civic organizations that deliver voter registration applications to Supervisors in counties other than where the applicant resides or outside a 14-day window after the application is complete, and requiring civic organizations to tell any voters they seek to register that their registrations may not arrive in time to be valid, regardless of the organization's intention or ability to process and return registrations, or its record in timely submitting registrations to state or local officials.   These voter registration efforts have been critical to the expansion of Black and Latino voting in Florida.   SB 90's compelled disclaimer is intended to and will have a chilling effect on third-party voter registration campaigns and their ability to register qualified voters.

10.     SB 90 also prohibits churches and organizations such as the Plaintiffs from providing assistance to voters waiting in line to vote.   During the 2020 election, Plaintiffs and other similar organizations afforded assistance to voters (primarily Black, Latino, disabled, and elderly voters) who encountered long lines at in-person polling sites; for example, Plaintiffs Hispanic Federation, Faith in Florida, and Mi Familia Vota Education Fund provided assistance (including water, food, chairs, and umbrellas) to voters in Black and Latino communities to enable them to wait in

10

sometimes hours-long lines.  Likewise, Sant La provides voters with translation assistance at polling places and with returning ballots to drop boxes, which requires providing assistance to those voters within the no-solicitation zone to enable them to remain in line and cast their ballots. By enacting SB 90, the Florida legislature attacks critical efforts to mobilize unprecedented turnout from Black and Latino voters during the 2020 Election.  SB 90 criminalizes such efforts:  Under SB 90, anyone who provides assistance to a voter waiting in line faces prosecution, punishable by a fine of up to $1,000, up to a year in prison, or both.

11.    The legislature offered no plausible rationale for the new restrictions imposed by SB 90.  SB 90's sponsors identified no specific issues or flaws that SB 90 aimed to fix.   To the contrary, legislators and state officials universally acknowledged that Florida's 2020 election ran remarkably smoothly. Indeed, Florida Governor DeSantis (who signed SB 90) touted the 2020 Florida election as "the smoothest, most successful election of any state in the country."[1]  The Florida Supervisors of Elections, in assessing the 2020 General Election, stated that "In 2020, Florida was universally praised for our exemplary conduct of elections – from

---

[1] Press Release, Governor Ron DeSantis, Governor Ron DeSantis Highlights Proposed Legislation to Strengthen Election Integrity and Transparency Measures (Feb. 19, 2021), https://flgov.com/2021/02/19/governor-ron-desantis-highlights-proposed-legislation-to-strengthen-election-integrity-and-transparency-measures/.

the very highest offices at the federal and state level to our most important stakeholders, voters."[2]

12.     The bill's lead sponsor, Senator Dennis Baxley, confirmed the absence of any legitimate state interest justifying SB 90's restrictions on voting.   When pressed for a justification for measures making voting more difficult, Senator Baxley stated: "Some people ask why and I say why not?  Let's try it."[3]

13.     No bill sponsor identified any instances of actual fraud or abuse in any Florida election that SB 90's provisions would address.  Florida's 67 Supervisors of Elections, who were surveyed regarding fraud or other issues in the 2020 General Election, identified very few instances of possible fraud or irregularities over the past four years.[4]  The legislature thus enacted a series of burdensome rules with no plausible purpose other than to prevent voters—and Black and Latino voters in particular—from voting.

14.     Given the absence of any plausible justification for SB 90, Florida's long history of imposing racially discriminatory voting restrictions, and the fact that many of SB 90's provisions target voting practices successfully employed during

---

[2] Fla. Supervisors of Elections, Florida Supervisors of Elections Statement on PCB-PIE 21-05 (Mar. 22, 2021), https://www.myfloridaelections.com/portals/fsase/Documents/Public%20Policy/FSE_Statement_032221.pdf.

[3] Fla. S. Comm. on Ethics and Elections Hearing (Feb. 16, 2021).

[4] Patricia Mazzei & Nick Corasaniti, Florida Republicans Pass Voting Limits in Broad Elections Bill, N.Y. TIMES (Apr. 29, 2021), https://www.nytimes.com/2021/04/29/us/politics/florida-voting-rights-bill.html.

the 2020 election by Black, Latino, and disabled voters or organizations such as Plaintiffs that mobilize or assist such voters, SB 90 was intended to and will place a discriminatory burden on voters of color, especially Black and Latino voters.

15.   Indeed, SB 90 is the classic case of "solutions in search of a problem" that has been found to indicate impermissible race-based voter suppression.   *See N.C. State Conference of NAACP v. McCrory*, 831 F.3d 204, 238 (4th Cir. 2016).

16.   This Complaint challenges the following provisions of SB 90 that, individually and cumulatively, make voting more burdensome, particularly for Black, Latino, and disabled voters:

- **Secure Drop Box Restriction** (SB 90 Section 28). Reducing the availability, hours and days of secure drop boxes, which are relied on particularly by voters who work during the day and by those seeking to avoid excessive lines at polling places.

- **Voter Registration Disclaimer** (SB 90 Section 7). Requiring third-party voter registration organizations to inform registrants, at best misleadingly, that their completed registrations might not arrive in time to be valid, a measure which will have a chilling effect on independent voter registration efforts.

- **Voter Registration Delivery Restriction** (SB 90 Section 7). Imposing significant fines on third-party voter registration organizations that fail

to deliver voter registration applications to the Supervisor where the voter resides within 14 days of completion of the application, a measure that will have a chilling effect on organized voter registration efforts and will reduce opportunities for voters of color to register to vote.

- **Vote-By-Mail Application Restriction** (SB 90 Section 24). Requiring a driver's license, ID card, or social security number for requesting a mail ballot, which will reduce the availability and use of mail ballots at precisely the time other elements of SB 90 are creating obstacles to in-person voting.

- **Line Warming Restriction** (SB 90 Section 29). Barring and imposing criminal penalties for "engaging in any activity with the intent to influence or effect of influencing a voter," which will in effect ban persons from providing food, blankets, water, chairs, or umbrellas or from providing translation or other assistance to voters, disproportionately Black and Latino, waiting on line to vote due to crowding at their polling places. The Line Warming Restriction also disproportionately impacts disabled voters unable to stand in line without assistance.

17. Each of these changes individually imposes an unjustified burden on voting. Cumulatively, they impose a significant burden, in some cases leading to

the wholesale disenfranchisement of voters.  By restricting access to vote-by-mail ballots and restricting the availability of drop boxes, SB 90 will force more voters to the polls, on election day and during early voting times, making already long lines in Black and Latino neighborhoods even longer.  At the same time, SB 90 undermines voter registration efforts and makes in-person voting more onerous by prohibiting persons (including Plaintiffs and their members) from offering food, water, translation, or other assistance to voters standing in long lines.  While for some this may be a mere inconvenience, for Black and Latino voters and members of other historically disenfranchised communities, who already must contend with unusually long lines, these impacts could be intolerable, particularly when many of the voters who relied most heavily on the methods of voting SB 90 takes away, including elderly and disabled voters, are those least able to weather long lines without assistance.  The Florida legislature identified no state interest sufficient to justify these added burdens.

18.    In addition to impermissibly burdening voters and discriminating against voters on the basis of race or ethnicity, the challenged provisions of SB 90 violate numerous provisions of federal law. For example:

- The Vote-By-Mail Application Restriction and the Secure Drop Box Restriction place disproportionate burdens on voters of color, intentionally denying them an equal opportunity to participate in the

political process.  They thus violate Section 2 of the Voting Rights Act and the Fourteenth and Fifteenth Amendments to the United States Constitution.

- The Line Warming Restriction interferes with the ability of voters, like Plaintiffs' members, to seek assistance in voting from a person of their choosing.  It thus violates Section 208 of the Voting Rights Act, 52 U.S.C. § 10508. It also violates the First Amendment to the U.S. Constitution, by limiting protected election-related expressive activities. *Meyer v. Grant*, 486 U.S. 414, 422-23 (1988).

- Even apart from their racially discriminatory motive and impact, the challenged provisions of SB 90 also place an unjustified burden on the ability of all Florida voters to exercise their fundamental right to vote. Any state restriction on the right to vote "must be justified by relevant and legitimate state interests sufficiently weighty to justify the limitation." *Crawford v. Marion County Election Bd.*, 553 U.S. 181, 191 (2008) (Stevens, J., controlling op.) (internal quotation marks omitted)*.*  SB 90 imposes severe burdens on the right to vote without any legitimate justification, and thus violates the First and Fourteenth Amendments to the Constitution.

- The Voter Registration Disclaimer constitutes an infringement on free speech, prohibited by the First Amendment to the Constitution, by compelling Plaintiffs and similar organizations to make statements to potential registrants that they do not believe and that will undermine their efforts to engage voters in the political process. Laws regulating protected speech or compelling speech are subject to strict scrutiny, but the Voter Registration Disclaimer is not narrowly tailored and does not serve any compelling state interest.

- The Voter Registration Delivery Restriction impermissibly burdens registration activities by third-party organizations in violation of the First Amendment, and places disproportionate burdens on the ability of voters of color to register, intentionally denying them an equal opportunity to participate in the political process in violation of the Voting Rights Act and the Fourteenth Amendment.

19.     For all of these reasons, SB 90 violates the U.S. Constitution and federal law and endangers the right to vote of all Floridians, and in particular voters of color. The Court should enjoin the Vote-By-Mail Application Restriction, the Secure Drop Box Restriction, the Voter Registration Disclaimer, the Voter Registration Delivery Restriction, and the Line Warming Restriction.

## THE PARTIES

### Plaintiffs

20.    Plaintiff FLORIDA RISING TOGETHER ("FRT") is a 501(c)(3) organization with a mission to increase the voting and political power of marginalized and excluded constituencies.  FRT's principal office is in Miami, and the organization engages with voters throughout the state, most extensively in Orange, Hillsborough, Osceola, Pinellas, Miami-Dade, Broward, Palm Beach, Duval, Leon, Gadsden, and Seminole Counties.  Founded in January 2021 as the merger and continuation of New Florida Majority and Organize Florida, FRT's central focus is to expand democracy by ensuring that every eligible voter in the state, regardless of party affiliation, is able to exercise his or her fundamental and constitutionally protected right to vote.  To achieve its goal, FRT conducts massive voter registration, voter education, voter engagement, and election protection programs.

21.    During the 2020 primary and general elections, FRT's predecessor organization, New Florida Majority, ran the largest independent voter education and mobilization campaign in Florida led by Latina and Black women. Specifically, the organization engaged in 18 million calls, had over 1 million conversations with voters, sent over 3 million pieces of voter education mail, placed approximately 9,000 radio ads with voting information in English, Spanish, and Haitian Creole, and

turned out more than 2 million voters of color, 44% of whom chose to vote by mail. FRT's 2020 voter education materials highlighted information related to drop boxes including, but not limited to, their locations, hours of operation, and how to use them.

22.    FRT aims to rapidly expand outreach to voters to educate them on SB 90's sweeping changes to Florida's election laws.  FRT is concerned that the communities it serves will be confused about how to participate in future elections, and may even refrain from voting altogether.  As a result, FRT is already planning to shift how it engages with voters at every stage of the voting process, from registration to education and assistance at polling places.  This will require new voter education materials as well as updated training sessions for staff and volunteers in its election protection program, all of which will entail significant time to develop and costs to promulgate.  FRT has also altered its budget to account for extra costs associated with mailing voter registration forms in compliance with the new requirement to submit completed registration forms to the county where the applicant resides within fourteen days.

23.    Plaintiff FAITH IN FLORIDA is a 501(c)(3) organization with a mission to build a powerful, multicultural, nonpartisan network of over 800 congregation community organizations in Florida that address systemic racial and economic issues, including voter education, voter registration, and voter engagement throughout the State of Florida.

24.   Faith in Florida has staff organizers and regularly conducts voting-related activities in 30 counties throughout the state, including Miami-Dade, Broward, Palm Beach, Leon, and Hillsborough Counties, and maintains satellite offices in Miami and Miami Gardens.  The organization also conducts legislative advocacy to protect and advance voting rights throughout the state.

25.   In prior elections, including in 2020, Faith in Florida worked very closely with SOEs to make sure that drop boxes were placed in practical and accessible locations for community members.  In addition, Faith in Florida widely distributed information on delivering ballots and where drop boxes were located. Faith in Florida also provided ponchos and umbrellas to voters in lines during prior elections, including in 2020.  The organization also provided food and drinks to voters who waited in particularly long lines to make their experiences more comfortable.  These activities are intended to encourage voters to remain in line and cast their ballots, but Faith in Florida does not seek to influence how voters vote.

26.   Due to SB 90, Faith in Florida will have to start its voting work earlier, more than double its voter education and voter engagement efforts, and update all of its voter education materials.  For example, it will expand from four months of voter education to a full year, its staff will have to triple to cover more ground in less time, and it will have to create new voter education materials, including bilingual materials, and trainings, to include training of new staff and current staff on the

changes in the law.  And SB 90 will significantly interfere with and may altogether preclude Faith in Florida's voter assistance efforts to voters in long lines.

27.    Plaintiff UNIDOSUS is a nonprofit organization and the nation's largest Latino civil rights and advocacy organization.  UnidosUS has offices in Florida and has 17 affiliated community-based nonprofit organizations (Affiliates) based or working in Broward, Collier, DeSoto, Flagler, Glades, Hardee, Hendry, Highlands, Hillsborough, Indian River, Lake, Lee, Manatee, Marion, Miami-Dade, Monroe, Palm Beach, Pasco, Polk, Putnam, Orange, Osceola, Sarasota, Seminole, and Volusia Counties.  UnidosUS works to build a stronger America through a unique combination of research, advocacy, programs, and supporting the work of local Affiliates in the State of Florida and nationally, to simultaneously challenge the social, economic, and political barriers that affect Latinos in the United States. As part of its work, UnidosUS also conducts voter registration by community canvassing in high-traffic commercial areas or events, placement of digital ads, mailers and contacting voters directly.  In addition, UnidosUS provides support and technical assistance to Affiliates to conduct voter registration with their existing members.

28.    During the 2020 elections, UnidosUS helped 71,160 eligible citizens in Florida register to vote and 25,459 voters register to vote-by-mail.  UnidosUS's nonpartisan Get Out the Vote campaign in 2020 resulted in 167,784 mailers, 208,069

vote reminder telephone calls, 251,174 SMS texts reminders and 38,854 vote-by-mail chase calls.  UnidosUS's voter education program included providing ballot box location information to voters needing to return vote-by-mail ballots as well as direct mailing over 10,000 vote-by-mail request forms directly to eligible voters who could not navigate their respective county websites to request a vote-by-mail ballot online.  In order to address the new legal requirement to submit completed registration forms to the county where the applicant lives within fourteen days, UnidosUS will have to divert resources from other projects to hire additional staff to handle the sorting, packaging and delivering of voter registration forms to the correct county, and will also have to add additional staff to triple check the county of all registrants.  Furthermore, staff will be needed to look up the counties of voters based on their street address, since voters are not required to provide county information on a voter registration form.

29.    As a result of Defendants' failure to ensure access to vote-by-mail ballots and assistance to voters waiting in line with a specific focus on limited English proficient voters, UnidosUS will have to divert its limited resources from other projects to translate instructions to voters regarding the changes made by the passage of SB 90 and provide Spanish-language assistance to Spanish-dominant Florida eligible voters.

30.    Plaintiff EQUAL GROUND EDUCATION FUND ("EG") is a 501(c)(3) organization with a mission to register, educate, and increase engagement among Black voters in Florida's I-4 corridor.  EG's principal office is in Orlando, but the organization engages voters throughout the state, most extensively in Orange, Pinellas, Seminole, and Volusia Counties.  Founded in May 2019 to give the rising American electorate greater influence on issues that affect them, EG focuses on ensuring equal access to democracy in underserved communities.  To achieve its goal, EG conducts extensive voter education, voter registration, and voter engagement work directly through its staff and in alliance with hundreds of faith partners throughout the state.

31.    During the 2020 primary and general elections, EG launched extensive voter registration and voter engagement efforts in numerous counties across the state of Florida.  Specifically, EG collected 2,800 in-person voter registration applications in a one-month span before the COVID-19 pandemic halted its canvassing operation. The organization continued to facilitate online voter registration and provide voter education by partnering with faith-based institutions and organizations.  EG also worked with partners to host a robust Souls to the Polls program in 21 Florida counties.  Through this program, EG coordinated drop box locations and availability for people with limited access to drop box options.  EG also transported voters to

polling precincts and provided food, music, and live entertainment near polling locations to assist voters waiting in long lines.

32.    Due to SB 90, EG is currently strategizing shifts in staffing, funding, and programming.  It anticipates creating new voter education guides, staff trainings, and community events to update voters on the changes wrought by SB 90.  EG also foresees SB 90's restrictions on drop boxes and voter assistance near a polling place having a massive impact on its Souls to the Polls programming.  As a result, the organization is planning to significantly alter its Souls to the Polls efforts and line warming traditions.

33.    Plaintiff HISPANIC FEDERATION ("HF") is a 501(c)(3) nonprofit, nonpartisan, community organizing, and advocacy organization with an office in central Florida.  HF's mission is to empower and advance the Hispanic community, support Hispanic families, and strengthen Latino institutions through work in the areas of education, health, immigration, civic engagement, economic empowerment, and the environment, including by promoting voter engagement.  HF works locally, state-wide, and nationally to strengthen Latino nonprofits, promote public policy advocacy, and bring to scale a portfolio of innovative community programs through three essential service pillars: membership services, advocacy services, and community assistance programs.

34.    HF carries out its voter engagement work through all three essential service pillars.  This work assists the Hispanic electorate to register to vote, apply for vote-by-mail ballots, and vote during election day and early voting.  In addition, HF assists Florida voters waiting in long lines within 150 feet of poll sites and early voting locations to engage them while waiting to fulfill their civic duty despite extended wait times and any disabilities they may have.  The voter assistance strategy includes voter protection, specifically in communities of color and low voting propensity, and provides entertainment for families with children, snacks, soft drinks, water, and phone charge stations.  HF's Florida voter engagement work is conducted in Duval, Alachua, Seminole, Volusia, Lake, Orange, Osceola, Polk, Hillsborough, Pinellas, Manatee, Sarasota, Broward, Miami-Dade Counties.

35.    HF's voter registration activities include collecting voter registration forms at college campuses, Hispanic-owned local businesses, partner agency sites, seasonal festivals, food bank pantries, churches, and events sponsored by HF.  Many of these events, such as La Sanse in Orlando, Three Kings Day in Sandford and Polk, and the Puerto Rican Parade in Orange and Osceola Counties, attract voters from numerous different counties, many of whom choose to register through HF's voter registration drive.  HF also registers voters from multiple counties during its registration drives on college campuses.

36.    In furtherance of its mission, HF fortifies a network of grassroots nonprofits through capacity-building grants that support core operational needs, graduate-level management classes, leadership development trainings, board recruitment and placement, executive fundraising workshops, and other technical assistance seminars.  HF's nonprofit members use this support to assist Hispanic voters with registering to vote, applying for and delivering vote-by-mail ballots, and other voter engagement activities.  For example, the voter engagement work of HF's nonprofit partner, Justice should be for All, assists senior voters, many of whom no longer drive and therefore lack a Florida driver's license and have difficulty waiting in long lines to vote without assistance.

37.    HF's Florida voter engagement work is focused on advancing the interests and aspirations of Latinos and their community-based organizations through coalition-building, policy research, public education, advocacy, voter mobilization, and regranting.  HF has offered more than 100 civic engagement trainings for Latino agencies, including trainings in Florida, so that they can become community-based centers of voter registration and outreach.  HF launched a partnership program in 2012, *Movimiento Hispano*, a collaborative representing nearly 1,000 councils, labor chapters, and community-based organizations that are able to reach and conduct voter registration, education, and turnout.

26

38.     HF's community assistance program provides direct voter engagement services to ensure all citizens are actively engaged in our democratic process.  HF's nonpartisan efforts not only increase Latino voter registration and participation throughout the nation but also encourage active involvement in the issues that affect Latino voters, their families, and their neighborhoods.  HF carries out this work through promoting and staffing a voter information hotline, operating a team of canvassers, sending voter education text messages about the vote-by-mail process, having election protection workers on the ground during early voting and on election day, and assessing the voting habits and obstacles of the Latino electorate.  For example, HF observed long lines in Hispanic precincts in Miami-Dade, Orange, and Broward counties during the 2018 election, long lines in Miami-Dade County in the 2020 election and predicts that SB 90 will result in Hispanic precincts having longer lines in future elections, especially due to new restrictions on drop box availability. HF also observed an increase in Hispanic vote-by-mail use in 2020 compared to 2018.  HF's "*Get Out the Vote*" campaigns explain the importance of voting and encourage Latinos to head to the polls.

39.     HF works to register, mobilize and educate Hispanic voters about the voting process and devotes staff and financial resources toward ensuring that the Hispanic electorate has access to information necessary to vote.  In response to SB 90, HF will dedicate a portion of its limited staff time and resources to reeducating

voters on how to overcome new restrictions on requesting and casting vote-by-mail ballots despite new identification requirements and restrictions on drop box availability, and on overhauling, and in some cases, dismantling its programming as a result of new restrictions on assisting voters.  HF will also have to retrain its workers on new disclaimer language when registering voters and on new restrictions for assisting voters within 150 feet of polling sites and drop boxes.  To do so, HF will have to divert funds and staff time from its other election activities toward educational activities such as sending additional rounds of text messages and revising educational materials about the vote-by-mail process to include the new restrictions on applying for vote-by-mail ballots and new limitations on the availability of drop boxes, holding additional community educational forums, and providing one-on-one support to voters who interact with its hotline; and this will still not be enough to reeducate the community on the changes that have been made to the traditional system that was in place for decades.  For example, Hispanic seniors and Puerto Rican voters in Florida are less likely to possess a Florida driver's license or state ID card, or to possess or know their social security number, which will require more of HF's voter education and outreach resources to overcome the new restrictions on requesting vote-by-mail ballots.  In addition, to meet the new requirement to return complete voter registration forms to the voter's home county, HF will have to divert resources to return voter registration forms to their offices for

sorting instead of delivering them directly to the Supervisor's office closest to the voter registration event, provide additional postage for mailing the registration forms to many different counties—including using express mail services to ensure the forms are delivered on time, or devote staff time to driving significant distances to hand deliver voter registration forms to counties distant from HF office locations.

40.    In past elections, HF's voting assistance program has included providing funding to partner organizations to provide language assistance to Spanish-speaking voters waiting in line to vote at polling sites and early voting locations.  The Line Warming Restriction in SB 90 will require HF to make numerous changes to its voting assistance program, including potentially increasing the resources devoted to its voter assistance hotline and using canvassers to promote the hotline so voters can call HF agents to get answers to voting-related questions in lieu of having someone accompany them to the polling place, and diverting resources and training time to train canvassers in the new rules and restrictions on voter assistance.

41.    Plaintiff PODER LATINX is a fiscally sponsored project of Tides Advocacy, a California nonprofit public benefit corporation.  Poder Latinx is a social justice, organizing, and civic engagement organization whose mission is to build a political wave where Latinx communities, inclusive of immigrants and people of color, are decision-makers in our democracy and play a vital role in the

transformation of our country.  Poder Latinx works locally and statewide in Florida, Georgia, and Arizona to expand the electorate by conducting year-round civic engagement activities, community empowerment and leadership development and issue-based organizing with a focus on three key issues: immigrant justice, climate justice and economic justice.  Poder Latinx carries out its mission to expand the electorate by encouraging people to register to vote through in-person activities, via digital campaigns, and telephone banking.  Poder Latinx's civic engagement work is focused on educating voters on how to exercise their right to vote, the accepted types of identification necessary to vote, how to request vote-by-mail ballots and how to return their ballots.  Poder Latinx's voter registration, voter education and civic engagement work is carried out throughout the state of Florida with a specific focus on Orange, Osceola, Polk, Lake, Volusia, Seminole, Lee and Palm Beach Counties.

42.   Poder Latinx conducts in-person door-knocking and site-based voter registration activities.  Poder Latinx canvassers visit grocery stores, restaurants, schools, bus stops and special events (such as concerts and festivals).  Poder Latinx canvassers also register voters door-to-door, typically six days a week.  After a rigorous review for quality control, Poder Latinx returns complete registration forms to an SOE office, twice a week. While Poder Latinx focuses its efforts in Central Florida, it registers voters who reside in numerous counties throughout the state who

may be visiting family members, attending concerts, or visiting theme parks, or who are college students.

43.    Poder Latinx also engaged in election protection activities by having bilingual poll monitors in Orange and Osceola County at precincts with high populations of Latino voters during the 2020 elections.  Poder Latinx's election protection program included providing "Know Your Rights" information to voters, handing out food and drinks to voters waiting in line and providing assistance to voters with a special focus on assisting Spanish-language dominant voters.  Poder Latinx's "Get Out the Vote" campaign focuses on the importance of voting and ensuring that voters know how to exercise their vote.

44.    During the 2020 election cycle, Poder Latinx's civic engagement program was responsible for 1,560,722 calls, 4,873,989 text messages, and registered over 40,516 new voters in Florida.  Poder Latinx focused on vote-by-mail ballot education during the 2020 election, because many voters were unable to leave their homes due to the COVID-19 pandemic and due to age or disability had to learn for the first time how to request a ballot and had to rely on community or family members to drop off their ballots.  Poder Latinx's voter education work was also aimed at ensuring voters knew about ballot box availability.  Poder Latinx is particularly concerned about how the lack of access to ballot boxes will impact

Florida communities because so many voters used this option during the 2020 election.

45.    In response to the changes made by SB 90, Poder Latinx will have to divert limited resources and staff to update their staff training materials as well as update materials to educate voters about the changes made to the law that will impact ballot delivery options and ballot box access and require the use of Florida identification numbers or social security numbers to request a vote-by-mail ballot. In addition, Poder Latinx is grappling with how to address the new requirement to provide voters notice of a potential delay in delivery of a voter registration application, which will undoubtedly require additional training and resources to counter the chilling effect this required notice will have on voters seeking to register to vote for the first time.  Poder Latinx will also have to divert additional time, money, and staff resources to delivering registration forms to distant counties, either in person, entailing far greater expense, or by mail, which risks losing oversight and control of the registration form, and may require express delivery, tracking, signatory confirmation, and other costly postal services to ensure forms are delivered reliably.  If the form is lost in the mail, Poder Latinx risks fines or losing its status as a third-party voter registration organization.  Moreover, if even a single form is lost in the mail, Poder Latinx risks its hard-earned trust in the community and potentially further disenfranchises already disenfranchised communities.

46.     Plaintiff HAITIAN NEIGHBORHOOD CENTER SANT LA ("Sant La") is a 501(c)(3) nonprofit organization headquartered in North Miami, Florida. Sant La's mission is to empower, strengthen, and uplift South Florida's Haitian community by providing free access to information and existing services to ensure its successful integration.   Sant La furthers its mission by partnering with community-based organizations, government agencies, and public and private institutions; providing cultural competence training for partner agencies that serve the Haitian community; working to strengthen neighborhood-level leadership and civic engagement; advocating for the Haitian community's needs and interests at local, state, and federal levels, and making relevant recommendations for policies and investments; and conducting assessments on emerging community needs and issues.

47.     Sant La works diligently to inform and educate Haitian residents about important initiatives and topical issues.  The organization's Haitian Creole-language educational television talk show, Teleskopi, has become a successful vehicle to inform, engage, and reach the community living in Miami-Dade County, Florida.

48.     Sant La conducts voter education and outreach as part of its civic engagement work.  The organization's focus with respect to voting is primarily on language access for Haitian Creole-speaking voters in Miami-Dade County.  While the County does provide Haitian Creole voting and election materials, Haitian Creole

33

translators are not always available to assist voters.  To remedy this deficit in services, Sant La staff members regularly walk voters to the polling location closest to the organization's office and furnish any assistance the voters request, including providing Haitian language assistance to voters while inside the polling location.

49.    Sant La also offers language assistance to potential voters who have not yet registered, and receives and responds to requests for help from voters seeking translation assistance in registering to vote, requesting ballots, delivering completed ballots to drop boxes and Supervisor of Elections offices, and tracking submitted ballots.

50.    For the 2020 General Election, Sant La assisted voters with registration in person at its offices and reached many more voters through its weekly radio programs, which aired from July to November 2020 and were aimed almost exclusively at voter education and registration.  Sant La also produced and distributed radio and television voter education announcements in Haitian Creole, designed and placed posters with voting information in the corridor in which the Haitian community lives and works, and conducted outreach to local faith-based organizations to support voter engagement among church members.

51.    Sant La also co-led an election protection and outreach program with another group, Haitian American Professionals Coalition, through which Sant La fielded calls from voters needing language assistance at the polls.  When relevant,

Sant La directed callers to poll monitors who could walk in to polling places with the voter to provide language assistance.

52.    SB 90's Line Warming Restriction effectively bars Sant La from continuing its voter and language assistance activities for Haitian Creole-speaking voters at polling places and drop boxes.   As a result of the Line Warming Restriction's impact on its voting programs, Sant La will be compelled to divert resources toward alternative and less effective means for supporting voting rights and ballot access for the Haitian community, which includes spending limited resources on training staff on changes made to voting laws by SB 90, creating printed materials regarding the impact of SB 90 on vote-by-mail requests and educating voters about restrictions on requesting assistance from volunteers positioned outside of the no-solicitation line, who were previously able to assist voters by providing translations and interpretation assistance in Haitian-Creole.

53.    Plaintiff MI FAMILIA VOTA EDUCATION FUND is a 501(c)(3) nonpartisan, nonprofit civic engagement organization, with offices in Florida, dedicated to empowering and engaging the Latino community in the democratic process.  Mi Familia Vota Education Fund's mission is to facilitate civic engagement by the Latino community.  In furtherance of that mission, Mi Familia Vota Education Fund, among other things, is one of the leading Latino outreach voter registration groups in Florida and conducts voter registration efforts, education, and citizen

workshops throughout Florida, with a special focus in Hillsborough, Osceola, and Orange Counties.

54.    Within the past two election cycles, encompassing both local, state, and national elections, Mi Familia Vota Education Fund has been responsible for registering 33,771 individuals, with 29,585 registrations in 2018 and 4,186 in 2020, respectively.  Additionally, Mi Familia Vota Education Fund sent 1,110 vote by mail applications to eligible voters in 2020.  Mi Familia Vota Education Fund also engaged in election protection efforts on the ground, with members present at 21 different polling locations across Osceola, Orange, and Hillsborough Counties. While at these locations, members assisted voters by encouraging people to remain in line to exercise their right to vote and even partnered with different local restaurants to provide food and beverages to individuals facing lines with wait times of upwards of two hours.

55.    Mi Familia Vota Education Fund extensively engaged in both the 2018 and 2020 election cycles in various capacities, including voter mobilization efforts that included individually speaking with members of the Latino community and assisting these members to register to vote, helping individuals request vote-by-mail ballots, and providing various educational and registration campaigns. Efforts of Mi Familia Vota Education Fund focused on predominantly Spanish-speaking communities, ensuring accessibility to all individuals by translating brochures and

specifically educating Puerto Ricans on the differences of voting in Florida as opposed to voting in Puerto Rico.

56.   During the 2020 election, Mi Familia Vota Education Fund's educational campaign focused on delivering all available information to individuals, including voting locations, information on how to register, and sending voter registration forms.  Moreover, Mi Familia Vota Education Fund provided integral clarification for individuals concerning the intersectionality of citizenship status and voting.  As a result of COVID-19, Mi Familia Vota Education Fund was able to reach communities despite adversities exacerbated by the pandemic and conducted online voter education with over 11 Facebook Live virtual events aimed at helping voters understand the election process.  Mi Familia Vota Education Fund is particularly concerned about the deep-rooted right to access information related to a person's fundamental right to vote and continually works towards safeguarding this sacred process through nonpartisan work.

57.   In response to the changes made by SB 90, Mi Familia Vota Education Fund will have to invest in new campaigns, more staff, and more resources, diverting and diminishing their current limited resources.  In addition, the barriers caused by the registration delivery restrictions are substantial as Mi Familia Vota Education Fund frequently conducts voter registration activities at events and in locales which border two or three counties or include participants from across the state.  Properly

37

identifying and sorting new voter registrations as well as delivering them in-person or mailing them will require staff to be re-trained and to expend additional resources to ensure that fines are not incurred.  This is in addition to the new tasks required by the changes made by SB 90 which will include re-education of voters who previously exercised the vote by mail option, increasing and expanding educational campaigns, ensuring access to polling locations, and assisting individuals to request vote by mail ballots to ensure that their vote is counted and their voices are heard.

**Defendants**

58.    Defendant LAUREL M. LEE is sued in her official capacity as Florida Secretary of State.  Defendant Lee is a person within the meaning of 42 U.S.C. § 1983 and acts under color of state law.  Pursuant to Fla. Stat. § 97.012 (2020), the Secretary of State is the chief election officer of the state.  Defendant Lee is thus responsible for "[o]btaining and maintain[ing] uniformity in the interpretation and implementation of the election laws," and may adopt "uniform standards for the proper and equitable interpretation and implementation" of the election laws, including each of the provisions of SB 90 challenged in this action.  Fla. Stat. § 97.012(1) (2020).    Defendant Lee's statutory responsibilities also include managing registration and oversight of third-party voter registration organizations. *See* Fla. Stat. § 97.0575 (2020).   These responsibilities extend to the Voter Registration Disclaimer and the Voter Registration Delivery Restriction.  *See* Fla.

Stat. § 97.0575(4) (2020). Defendant Lee also receives "administrative support" from the Florida Department of State's Division of Elections "to ensure that Florida has fair and accurate elections."[5] The Division of Elections, established by statute as a division of the Department of State, Fla. Stat. § 20.10(a)(2) (2020), is charged with implementing and enforcing Section 28 of SB 90, the Secure Drop Box Restriction, Fla. Stat. Ann. § 101.69(3) (West 2021). Accordingly, Defendant Lee, through the Division of Elections, is responsible for assessing fines against SOEs who violate Section 28's restrictions on drop box availability.

59. Defendants FLORIDA SUPERVISORS OF ELECTIONS ("Supervisor Defendants"), sued in their official capacity only, are elected officials in each of Florida's 67 counties who are responsible for administering elections in their respective counties. Among other election administration responsibilities, the Supervisor Defendants are charged by law with enforcing the Secure Drop Box Restriction, Fla. Stat. Ann. § 101.69(2) (West 2021), with enforcing the identification requirements in the Vote-By-Mail Application Restriction, Fla. Stat. Ann. § 101.62 (West 2021), and with enforcing the Line Warming Restriction, Fla. Stat. Ann. § 102.031(4)(c) (West 2021). The Supervisor Defendants are: KIM BARTON, in her official capacity as Supervisor of Elections for ALACHUA

---

[5] Fla. Dep't of State, Div. of Elections, *About Us*, https://dos.myflorida.com/elections/about-us/ (last visited May 17, 2021).

County, CHRIS MILTON, in his official capacity as Supervisor of Elections for

BAKER County, MARK ANDERSEN, in his official capacity as Supervisor of

Elections for BAY County, AMANDA SEYFANG, in her official capacity as

Supervisor of Elections for BRADFORD County, LORI SCOTT, in her official

capacity as Supervisor of Elections for BREVARD County, JOE SCOTT, in his

official capacity as Supervisor of Elections for BROWARD County, SHARON

CHASON, in her official capacity as Supervisor of Elections for CALHOUN

County, PAUL A. STAMOULIS, in his official capacity as Supervisor of Elections

for CHARLOTTE County, MAUREEN "MO" BAIRD, in her official capacity as

Supervisor of Elections for CITRUS County, CHRIS H. CHAMBLESS, in his

official capacity as Supervisor of Elections for CLAY County, JENNIFER J.

EDWARDS, in her official capacity as Supervisor of Elections for COLLIER

County, TOMI S. BROWN, in her official capacity as Supervisor of Elections for

COLUMBIA County, MARK NEGLEY, in his official capacity as Supervisor of

Elections for DESOTO County, STARLET CANNON, in her official capacity as

Supervisor of Elections for DIXIE County, MIKE HOGAN, in his official capacity

as Supervisor of Elections for DUVAL County, DAVID H. STAFFORD, in his

official capacity as Supervisor of Elections for ESCAMBIA County, KAITI

LENHART, in her official capacity as Supervisor of Elections for FLAGLER

County, HEATHER RILEY, in her official capacity as Supervisor of Elections for

FRANKLIN County, SHIRLEY KNIGHT, in her official capacity as Supervisor of

Elections for GADSDEN County, CONNIE SANCHEZ, in her official capacity as

Supervisor of Elections for GILCHRIST County, ALETRIS FARNAM, in her

official capacity as Supervisor of Elections for GLADES County, JOHN HANLON,

in his official capacity as Supervisor of Elections for GULF County, LAURA

HUTTO, in her official capacity as Supervisor of Elections for HAMILTON County,

DIANE SMITH, in her official capacity as Supervisor of Elections for HARDEE

County, BRENDA HOOTS, in her official capacity as Supervisor of Elections for

HENDRY County, SHIRLEY ANDERSON, in her official capacity as Supervisor

of Elections for HERNANDO County, PENNY OGG, in her official capacity as

Supervisor of Elections for HIGHLANDS County, CRAIG LATIMER, in his

official capacity as Supervisor of Elections for HILLSBOROUGH County,

THERISA MEADOWS, in her official capacity as Supervisor of Elections for

HOLMES County, LESLIE R. SWAN, in her official capacity as Supervisor of

Elections for INDIAN RIVER County, CAROL A. DUNAWAY, in her official

capacity as Supervisor of Elections for JACKSON County, MARTY BISHOP, in

his official capacity as Supervisor of Elections for JEFFERSON County, TRAVIS

HART, in his official capacity as Supervisor of Elections for LAFAYETTE County,

ALAN HAYS, in his official capacity as Supervisor of Elections for LAKE County,

TOMMY DOYLE, in his official capacity as Supervisor of Elections for LEE

County, MARK EARLEY, in his official capacity as Supervisor of Elections for

LEON County, TAMMY JONES, in her official capacity as Supervisor of Elections

for LEVY County, GRANT CONYERS, in his official capacity as Supervisor of

Elections for LIBERTY County, HEATH DRIGGERS, in his official capacity as

Supervisor of Elections for MADISON County, MICHAEL BENNETT, in his

official capacity as Supervisor of Elections for MANATEE County, WESLEY

WILCOX, in his official capacity as Supervisor of Elections for MARION County,

VICKI DAVIS, in her official capacity as Supervisor of Elections for MARTIN

County, CHRISTINA WHITE, in her official capacity as Supervisor of Elections for

MIAMI-DADE County, JOYCE GRIFFIN, in her official capacity as Supervisor of

Elections for MONROE County, JANET H. ADKINS, in her official capacity as

Supervisor of Elections for NASSAU County, PAUL A. LUX, in his official

capacity as Supervisor of Elections for OKALOOSA County, MELISSA ARNOLD,

in her official capacity as Supervisor of Elections for OKEECHOBEE County, BILL

COWLES, in his official capacity as Supervisor of Elections for ORANGE County,

MARY JANE ARRINGTON, in her official capacity as Supervisor of Elections for

OSCEOLA County, WENDY LINK, in her official capacity as Supervisor of

Elections for PALM BEACH County, BRIAN CORLEY, in his official capacity as

Supervisor of Elections for PASCO County, JULIE MARCUS, in her official

capacity as Supervisor of Elections for PINELLAS County, LORI EDWARDS, in

her official capacity as Supervisor of Elections for POLK County, CHARLES OVERTURF, in his official capacity as Supervisor of Elections for PUTNAM County, TAPPIE VILLANE, in her official capacity as Supervisor of Elections for SANTA ROSA County, RON TURNER, in his official capacity as Supervisor of Elections for SARASOTA County, CHRISTOPHER ANDERSON, in his official capacity as Supervisor of Elections for SEMINOLE County, VICKY OAKES, in her official capacity as Supervisor of Elections for ST. JOHNS County, GERTRUDE WALKER, in her official capacity as Supervisor of Elections for ST. LUCIE County, WILLIAM KEEN, in his official capacity as Supervisor of Elections for SUMTER County, JENNIFER M. KINSEY, in her official capacity as Supervisor of Elections for SUWANNEE County, DANA SOUTHERLAND, in her official capacity as Supervisor of Elections for TAYLOR County, DEBORAH OSBORNE, in her official capacity as Supervisor of Elections for UNION County, LISA LEWIS, in her official capacity as Supervisor of Elections for VOLUSIA County, JOSEPH R. MORGAN, in his official capacity as Supervisor of Elections for WAKULLA County, BOBBY BEASLEY, in his official capacity as Supervisor of Elections for WALTON County, and CAROL FINCH RUDD, in her official capacity as Supervisor of Elections for WASHINGTON County.

## JURISDICTION AND VENUE

60.     Plaintiffs bring this action under 42 U.S.C. § 1983 to redress the deprivation under color of state law of rights secured by Sections 2 and 208 of the Voting Rights Act, 52 U.S.C. §§ 10301, 10508; and under the First, Fourteenth and Fifteenth Amendments of the United States Constitution.

61.     The Court has subject matter jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 because the matters in controversy arise under the Constitution and laws of the United States, and specifically, laws and Constitutional provisions protecting the right to vote.  Plaintiffs bring this action to redress the deprivation, under color of state law, of rights, privileges, and immunities secured by the Constitution of the United States and federal law.  Plaintiffs bring this action to secure equitable relief under federal law providing for the protection of voting rights, pursuant to 28 U.S.C. §§ 2201 and 2202.

62.     This Court has personal jurisdiction over Defendants, who are sued only in their official capacities as officers of the State of Florida or its political subdivisions.

63.     Venue is proper in this Court under 28 U.S.C. § 1391(b).  Defendant Lee resides and does business in Leon County, Florida and each of the Defendant Supervisors of Elections for Alachua, Bay, Calhoun, Dixie, Escambia, Franklin, Gadsden, Gilchrist, Gulf, Holmes, Jackson, Jefferson, Lafayette, Leon, Levy,

Liberty, Madison, Okaloosa, Santa Rosa, Taylor, Wakulla, Walton, and Washington

Counties resides and does business in this district.  In addition, Plaintiffs Florida

Rising Together, Faith in Florida, and Hispanic Federation conduct voter

engagement activities in this district that are now prohibited or restricted as a result

of the enactment of SB 90, and thus, a substantial part of the events that gave rise to

Plaintiffs' claims occurred in this judicial district.

64.    This Court has the authority to enter a declaratory judgment and to

provide preliminary injunctive relief pursuant to Rules 57 and 65 of the Federal

Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202.

## **FACTUAL ALLEGATIONS**

### A.    **Florida's History of Racially Discriminatory Voting Practices**

65.    The passage of SB 90 is the latest chapter in Florida's long history of

racially discriminatory voting restrictions that dates back over 100 years.  As federal

courts in Florida have repeatedly recognized, "Florida has a history of discrimination

against Black citizens with respect to the franchise." *Nipper v. Chiles*, 795 F. Supp.

1525, 1535 (M.D. Fla. 1992).  The devices employed over time "to disfranchise or

discriminate against [B]lack citizens included: (1) the expungement of [B]lack

voters from the voting lists in the 1880s; (2) a poll tax, enacted in 1889; (3) a multiple

ballot statute, enacted in 1889; (4) the direct primary (also known as the 'white

primary'), adopted in 1901, whereby [B]lacks were excluded from participating in

nominating the Democratic Party candidate; and, (5) a requirement that officeholders post bonds, adopted in 1885." *Id.*

66.    As the Court stated in *DeGrandy v. Wetherell*, 794 F. Supp. 1076, 1079 (N.D. Fla. 1992): "A longstanding general history of official discrimination against minorities has influenced Florida's electoral process. . . . As recently as 1967, § 350.20, Fla. Stat. provided in part: 'The Florida Public Service Commissioners may prescribe reasonable rules and regulations relating to the separation of white and colored passengers in passenger cars being operated in this state by any railroad company or other common carrier.' Additionally, § 1.01(6), Fla. Stat. (1967) provided that 'the words "Negro," "colored," "colored persons," "mulatto," or "persons of color," when applied to persons, include every person having one-eighth or more of African or Negro blood.'"

67.    Despite becoming the most urbanized southern state with the most northern immigrants by 1920, Florida remained a segregated, largely one-party plutocracy until the early 1960s, and Black citizens remained largely disfranchised until the passage of the federal Voting Rights Act in 1965.

68.    Starting in 1972, multiple counties in Florida were required under Section 5 of the Voting Rights Act to seek federal clearance for changes to their election laws; these requirements remained in place until the Supreme Court's 2013 decision in *Shelby County v. Holder*, 570 U.S. 529 (2013), ended the pre-clearance

requirement.  Florida's racially discriminatory practices, including practices similar to those included in SB 90, required federal intervention at least five times during this period.[6]   For example, in 1985, the Department of Justice objected to a restriction on assisting voters casting absentee ballots as a violation of Section 208 of the Voting Rights Act,[7] while in 1998 the Department declined to preclear a requirement to include a social security number on submitted absentee ballots because of the requirement's racially discriminatory impact.[8]   And in 2012, the United States sued the state to stop a voter purge that this Court found likely discriminated against naturalized citizens. *See United States v. Florida*, 870 F. Supp. 2d 1346, 1350 (N.D. Fla. 2012).

69.     Even while subject to Section 5's pre-clearance requirement, the state continued to block Black residents from exercising political power by such devices as at-large elections.  Since 1983, scores of legal actions have been brought against the state, county, or municipal governments of Florida, under the Fourteenth Amendment, the Fifteenth Amendment, and/or the Voting Rights Act.  At least 57

---

[6] Civil Rights Div., U.S. Dep't of Justice, *Jurisdictions Previously Covered by Section 5*, https://www.justice.gov/crt/jurisdictions-previously-covered-section-5 (last updated Sept. 11, 2020).

[7] Letter from W. Bradford Reynolds, Assistant Attorney General, Civil Rights Div., U.S. Dep't of Justice, to Jim Smith, Attorney General, State of Florida (Jan. 15 1985), https://www.justice.gov/sites/default/files/crt/legacy/2014/05/30/FL-1010.pdf.

[8] Letter from Bill Lane Lee, Acting Assistant Attorney General, Civil Rights Div., U.S. Dep't of Justice, to Robert A. Butterworth, Attorney General, State of Florida (Aug. 14, 1998), https://www.justice.gov/sites/default/files/crt/legacy/2014/05/30/FL-1030.pdf.

such actions have resulted in findings of discrimination, including 37 under Section 2 of the Voting Rights Act and six under Section 5.

70.    The new century did not bring any abatement in Florida's efforts to discriminate against Black residents.  For example, in 2000 the state improperly removed at least 1,100 eligible voters from the voting rolls after identifying them as convicted felons.[9]  As a result, many eligible voters were turned away at the polls.[10]  Statewide, of the voters dropped from the rolls in this voter purge, 41% were Black. In Miami-Dade County, "more than 65 percent of the names on the purge list were Blacks, who represented only 20.4 percent of the population."[11]  After a lawsuit, a court ordered Florida to revamp its program for identifying potential voters with felony convictions, and to restore hundreds of voters to the voting rolls.[12]

71.    Indeed, ever since the chaos of the 2000 presidential election, Florida has been ground zero for restricting access to the polls. After Congress passed the Help America Vote Act of 2002, 42 U.S.C. § 15301 *et seq*., ostensibly intended to streamline statewide voter registration systems, Florida implemented rigid matching

---

[9] *Study Shows 1,100 Voters Wrongly Purged from Rolls*, TAMPA BAY TIMES (Sept. 9, 2005) https://www.tampabay.com/archive/2001/05/27/study-shows-1100-voters-wrongly-purged-from-rolls.

[10] Katie Sanders, *Florida Voters Mistakenly Purged in 2000*, TAMPA BAY TIMES (June 14, 2012), https://www.tampabay.com/news/politics/stateroundup/florida-voters-mistakenly-purged-in-2000/1235456/.

[11] U.S. Comm'n on Civil Rights, *Voting Irregularities in Florida During the 2000 Presidential Election* (June 2001), https://www.usccr.gov/pubs/vote2000/report/exesum.htm.

[12] Katie Sanders, *Florida Voters Mistakenly Purged in 2000*, TAMPA BAY TIMES (June 14, 2012), https://www.tampabay.com/news/politics/stateroundup/florida-voters-mistakenly-purged-in-2000/1235456/.

requirements for voter registration that could pointlessly disenfranchise eligible voters based on a typo or other minor mismatch error.  In 2006 and 2007, Florida's law disenfranchised tens of thousands of otherwise eligible voters, disproportionately voters of color.  *See Fla. State Conference of the NAACP v. Browning*, 522 F.3d 1153, 1176 (11th Cir. 2008) (Barkett, J., concurring in part and dissenting in part).  Even though Latino communities comprised only 15 percent of the applicant pool and Blacks only 13 percent, 65 percent of the rejected applicants were Latino (39 percent) or Black (26 percent).  *See id.* at 1176 n.4.

72.    While there were some reforms in the early 2000s (such as expansions in early voting and court injunctions allowing increased opportunities for voter registration, which allowed Black and Latino voters to vote in high numbers), those measures quickly came under attack once it became clear that voters of color were making use of them.

73.    In particular, in 2008, Black and Latino voters had record turnout, and Black voters used early voting at high rates: "More than half of African-American votes in Florida were cast during the early voting period" in 2008.[13]

74.    Florida lawmakers responded in 2011 with HB 1355, which cut early voting—and eliminated early voting the final Sunday before election day, when

---

[13] Michael Ellement, Note, *Blocking the Ballot: Why Florida's New Voting Restrictions Demonstrate A Need for Continued Enforcement of the Voting Rights Act Preclearance Requirement,* 62 CATH. U. L. REV. 541, 556 (2013).

"Souls to the Polls" programs had expanded Black voter turnout. HB 1355 also placed onerous restrictions on third-party voter registration efforts and created additional hurdles for voters who had moved—measures that all were intended to have and had a disparate impact on voters of color. Invoking the then-active Voting Rights Act preclearance requirement, the United States Department of Justice successfully moved to block the rules from taking effect in Collier, Hendry, Hardee, Hillsborough, and Monroe Counties. *See Florida v. United States*, 885 F. Supp. 2d 299, 303, 305-06 (D.D.C. 2012) (per curiam) (holding that "the State has failed to satisfy its burden of proving that those changes will not have a retrogressive effect on minority voters").

75.     Social scientists concluded that HB1355 resulted in a precipitous drop in voter registrations leading into the 2012 elections, particularly among Black voters.[14]

76.     Florida's voting laws continue to show a particularized pattern of disenfranchisement of voters. *See Democratic Exec. Comm. v. Lee*, 915 F.3d 1312, 1326-27 (11th Cir. 2019) (finding Florida's signature match requirement likely unconstitutional and upholding a district court injunction allowing up to 48 hours for a voter to cure a signature mismatch); *Rivera Madera v. Detzner*, 325 F. Supp.

---

[14] Michael C. Herron and Daniel A. Smith, *The Effects of House Bill 1355 on Voter Registration in Florida*, 13 St. Pol. & Pol'y Q. 279, 297 (2013).

3d 1269, 1278-84 (N.D. Fla. 2018) (requiring Florida to provide Spanish language voting materials, as its failure to do so violated the Voting Rights Act); *League of Women Voters*, 314 F. Supp. 3d at 1210 (finding Florida's bar on use of university or college campuses as early voting sites unconstitutional).

77.   And when Florida's citizens voted overwhelmingly to end felony disenfranchisement—a relic of the Reconstruction Era that disproportionately impacts Black and Latino voters—the Florida legislature quickly took steps to limit the vote's impact and preserve as much as possible the racially discriminatory practice.   Prior to 2019, Florida's constitution permanently disenfranchised all citizens who had been convicted of any felony offense unless the Clemency Board restored their voting rights—making Florida one of only four states to impose a lifetime voting ban for a felony conviction.   Disenfranchisement based on criminal conviction, which has been called the "new Jim Crow," is "inextricably tied to the United States' history of racial discrimination," and Florida adopted this constitutional provision "in the post-Civil War era as a means to disenfranchise former slaves who had been granted the right to vote under the Reconstruction Amendments."[15]   By 2016, the provision disenfranchised an estimated 1.6 million Floridians. In 2018, Florida voters addressed this longstanding discrimination by

---

[15] Dalia Figueredo, *Affording The Franchise: Amendment 4 & The Senate Bill 7066 Litigation*, 72 FLA. L. REV. 1135, 1136 (2020).

approving Amendment 4, which automatically restored voting rights to as many as 1.4 million Floridians who had completed the terms of their sentence.

78.     The Florida legislature responded with SB 7066, prohibiting returning citizens from voting unless they pay off all legal financial obligations imposed by a court pursuant to a felony conviction, even if they cannot afford to pay.  According to a 2020 report issued by The Sentencing Project, nearly 900,000 Floridians who would otherwise have been eligible to vote under Amendment 4 were disenfranchised by the law.  In all, more than 1.1 million Floridians are unable to vote because they have felony convictions or owe court debts, making Florida the nation's disenfranchisement leader.  Reportedly, about 15 percent of the state's Black voting-age population is disenfranchised because of a conviction history, compared to about 6 percent for the state's non-Black population.[16]

79.     Until very recently, the ability of Black voters and other qualified voters in Florida to cast ballots was also threatened by unchecked discretion held by election officials to reject vote-by-mail ballots from eligible voters deemed "noncompliant."  As this Court has held, this absolute power to throw out votes was facially unconstitutional because it unduly burdened the fundamental right of Florida

---

[16] Christopher Uggen et al., The Sentencing Project, *Locked Out 2020: Estimates of People Denied Voting Rights Due to a Felony Conviction* 17 (Oct. 15, 2020), https://www.sentencingproject.org/wp-content/uploads/2020/10/Locked-Out-2020.pdf#page=17.

citizens to vote and have their votes counted.  *See Democratic Exec. Comm. of Fla. v. Detzner*, 347 F. Supp. 3d 1017, 1022 (N.D. Fla. 2018) ("The precise issue in this case is whether Florida's law that allows county election officials to reject vote-by-mail and provisional ballots for mismatched signatures—with no standards, an illusory process to cure, and no process to challenge the rejection—passes constitutional muster.  The answer is simple.  It does not."), *appeal dismissed as moot*, 950 F.3d 790 (11th Cir. 2020).

80.     In sum, the Florida legislature has a long and sordid history of passing legislation that is intended to disenfranchise or severely burden Black and Latino voters.  The enactment of disenfranchising legislation has frequently been in direct response to successful efforts of Black and Latino voters to mobilize and turn out for elections.

**B.     Legislative History of SB 90**

81.     The Florida 2020 General Election was heralded for being one of the smoothest elections in Florida's history by state officials.

- According to the Florida Association of Supervisors of Elections, "In 2020, Florida was universally praised for our exemplary conduct of

elections – from the very highest offices at the federal and state level to our most important stakeholders, voters."[17]

- According to Governor Ron DeSantis, the November 2020 General Election in Florida was "the smoothest, most successful election of any state in the country."[18]

- According to Representative Blaise Ingoglia: "In [the] last election cycle Florida administered one of the smoothest elections.  It was heralded as the standard on how elections should be run across the United States."[19]

- According to Secretary of State Laurel Lee, the 2020 General Election in Florida "ran as smoothly as possible and inspired confidence on the part of Florida's voters."[20]

---

[17] Fla. Supervisors of Elections, Florida Supervisors of Elections Statement on PCB-PIE 21-05 (Mar. 22, 2021), https://www.myfloridaelections.com/portals/fsase/Documents/Public%20Policy/FSE_Statement_032221.pdf.

[18] Press Release, Governor Ron DeSantis, Governor Ron DeSantis Highlights Proposed Legislation to Strengthen Election Integrity and Transparency Measures (Feb. 19, 2021), https://flgov.com/2021/02/19/governor-ron-desantis-highlights-proposed-legislation-to-strengthen-election-integrity-and-transparency-measures/.

[19] Fla. H.R. Comm. on Pub. Integrity and Elections (Apr. 19, 2021).

[20] Fla. S. Comm. on Ethics and Elections Hearing (Feb. 16, 2021).

- According to Senator Dennis Baxley: "We have a very high customer satisfaction rate right now with Floridians on how the election was run."[21]

82.    Among other successes of the 2020 election in Florida, Black and Latino voters achieved record turnout due to the massive investment of time and resources by organizations such as Plaintiffs.  A record 1.38 million Black voters and 1.8 million Latino voters participated in the 2020 General Election.

83.    In response to this unprecedented Black and Latino turnout, and in spite of the fact that Florida's election was well-administered, safe and secure, the Florida legislature, with the support of Florida's governor, began work to change Florida's election procedures to make it harder for Black and Latino persons to vote.

84.    The bill that became SB 90 began as two separate bills to revise the electoral code in the wake of the 2020 elections.  SB 90 was introduced in the Florida Senate on February 3, 2021, and HB 7041 was introduced in the Florida House of Representatives March 23, 2021.

85.    Throughout the debate on SB 90 and HB 7041, legislators were expressly warned that the bills would create obstacles to voting and would suppress votes, both generally and from Black and Latino voters in particular.  It was thus

---

[21] *Id.*

55

foreseeable that SB 90 and HB 7041 would have a discriminatory impact on Black and Latino voters.  Specifically:

- Senator Randolph Bracy warned his colleagues that Florida "has had the worst record of voter suppression in the country by far," and characterized SB 90 as an effort by "a party that's in control doing whatever they can to keep it." [22]

- Senator Bracy further warned that SB 90 "is clearly going to reduce vote-by-mail in Democratic counties."[23]

- Senator Perry Thurston described the bill as part of Florida's "sordid history of us trying to stop people from voting, trying to make it harder for people to vote."[24]

- The Florida Supervisors of Elections warned lawmakers that "several of the proposed provisions in the bill will negatively impact the voter experience" and that "calling for unnecessary election reforms . . . risks destroying the voter confidence that we have worked so hard to earn."[25]

---

[22] *Id.*

[23] *Id.*

[24] Fla. S. Comm. on Rules Hearing (Apr. 14, 2021).

[25] Fla. Supervisors of Elections, Florida Supervisors of Elections Statement on PCB-PIE 21-05 (Mar. 22, 2021), https://www.myfloridaelections.com/portals/fsase/Documents/Public%20Policy/FSE_Statement_032221.pdf.

86.   Several legislators specifically advised their colleagues that the bills were targeting voting practices increasingly relied upon by Black and Latino voters:

- Senator Bobby Powell advised the Senate Rules Committee that the restrictions on voting by mail would impact Black voter turnout.[26]

- Senator Lori Berman, during Senate floor debate on SB 90, cited analysis of Florida voting data from the Stanford-MIT Health Elections Project that concluded that Black voters were the group with the greatest increase in mail voting in the 2020 elections, and warned that the bill would have a "disparate impact on Black voters."[27]

- Senator Victor Torres warned that as a result of SB 90: "Seniors, minority groups including those of the Latino community, and residents who have physical disabilities will find more barriers to casting their vote and less opportunities to participate in the election process."[28]

- Senator Gary Farmer told the Senate Committee on Ethics and Elections that the identification requirements in SB 90 would

---

[26] Fla. S. Comm. on Rules Hearing (Apr. 14, 2021).

[27] Fla. S. Floor Debate (Apr. 22, 2021).

[28] Fla. S. Comm. on Ethics and Elections Hearing (Apr. 26, 2021).

disproportionately impact Black and Latino voters because they tend to disproportionately lack the required identification.[29]

- Representative Christopher Benjamin pointed out that the restrictions on line warming and collecting ballots would have a disparate impact on the Black community.[30]

87.    Numerous advocacy organizations also advised the legislature of the discriminatory impact of the bill. For example:

- Ida V. Eskamani, on behalf of Plaintiff Florida Rising Together, informed the Senate Government Oversight Committee that SB 90 represented "one of the most serious attempts to restrict the rights of certain Americans to vote since the days of Jim Crow," and described the bill as "voter suppression" directed at "Seniors and veterans," "people with disabilities", "folks with health ailments, and also folks that are already marginalized."[31]

- LatinoJustice and Advancement Project wrote to the Florida Senate April 26, 2021, advising that the proposals to require identification for vote-by-mail applications, the restrictions on line warming, and the

---

[29] *Id.*

[30] Fla. H.R. Floor Debate (Apr. 28, 2021).

[31] Fla. S. Comm. on Gov't Oversight and Accountability Hearing (Mar. 10, 2021).

restrictions on returning ballots would disproportionately impact Black and Latino voters.

- Brad Ashwell of All Voting is Local testified that SB 90 "really can't be seen as anything other than an attack on voting rights" and pointed out that "seniors and veterans with disabilities … will be disproportionately impacted by this bill."[32]

- Carrie Boyd, of SPLC Action Fund, informed the Senate Rules Committee that SB 90 "will undoubtedly make it extremely difficult for older people and people with disabilities to vote."[33]

88.     During the consideration of HB 7041, the House Public Integrity and Elections Committee surveyed all 67 County Supervisors of Elections on key details concerning the 2020 General Election with particular focus on practices that were subsequently targeted in SB 90 and HB 7041, including voter registration, vote-by-mail applications, use of secure drop boxes, and in-person voting.  Specifically, on February 24, 2021, Representative Erin Grall sent a survey to all Supervisors of Elections seeking detailed data on certain election practices used during the 2020 elections.  Upon information and belief, Representative Grall was heavily involved

---

[32] *Id.*

[33] Fla. S. Comm. on Rules Hearing (Apr. 14, 2021).

in the process of drafting SB 90 and HB 7041, considered and utilized the information submitted by the Supervisors to target practices that had led to unprecedented turnout by Black and Latino voters, and could readily predict that SB 90 would have a discriminatory impact.

89.    In both the House and the Senate, legislators were presented with amendments that would have reduced the racially discriminatory impact of SB 90. The legislature rejected all these less discriminatory alternatives.  For example:

- Senator Gary Farmer offered an amendment in the Senate Rules Committee that would have deleted the ban on providing line assistance, allowing the practice of "giving water or sustenance to those who are waiting in line."[34]

- Representative Omari Hardy offered an amendment allowing voters to use their name, address, and date of birth to obtain a mail ballot.[35]

- Representative Dotie Joseph offered an amendment to allow completed ballots to be returned by anyone registered to vote at the same address as the voter.[36]

---

[34] *Id.*

[35] Fla. H.R. Floor Debate (Apr. 27, 2021).

[36] Fla. H.R. Floor Debate (Apr. 29, 2021).

- Representative Anna Eskamani offered an amendment that would have allowed line warming by volunteers with a nonprofit organization or civic group. Another amendment would have relaxed the restrictions on returning sealed, completed, mail ballots. [37]

- Several amendments were offered to reduce the restrictions on secure drop boxes.

All of these amendments were defeated.

90.   The Florida legislature's decision to change Florida's election laws, despite the fact that those laws yielded a safe and secure 2020 election, and to reject less discriminatory alternatives to those changes, was not made in a vacuum. Legislatures across the country, particularly legislatures with Republican majorities, began in the immediate aftermath of the 2020 election to debate new laws that would make voting more difficult, particularly for Blacks, Latinos, and other minorities. The backdrop for these efforts was false accusations and wild conspiracy theories that spread both during and after the 2020 November election, almost all of which were aimed at disputing the validity of votes made in Black, Latino, and other minority communities.

---

[37] *Id.*

91.    Florida was no exception.  The Florida legislature hurriedly began to develop SB 90 notwithstanding that Donald Trump won Florida and in the absence of any credible allegations of voter fraud in the state.  Indeed, the sponsors of SB 90 explicitly stated that the bill was motivated, not by issues that arose in the 2020 Florida election, but by unsupported concerns about election procedures in other parts of the country.  Senator Baxley stated at one hearing that "We are doing this bill because it becomes clear as you look across the country that there is a lot of confusion from many people on different fronts."[38]  Senator Baxley added "We had a lot of things happening across the country this year for whatever reasons."[39]  During full Senate consideration of SB 90, Senator Baxley explained that the bill was needed even in the absence of any Florida-specific issues to address "some [issues] going on around the country, different places, and we want to be proactive and prevent things from going awry, rather than waiting to have some kind of debacle to recover from."[40]

92.    Throughout the debate and enactment of SB 90, bill sponsors struggled to justify making sweeping changes to Florida's election code, while rejecting proposed less discriminatory amendments to the legislation.  For example:

---

[38] Fla. S. Comm. on Rules Hearing (Apr. 14, 2021).

[39] *Id.*

[40] Fla. S. Floor Debate (Apr. 22, 2021).

- Bill sponsors were not able to identify any specific evidence of abuses or voter fraud that the provisions of SB 90 or HB 7041 were designed to address.

- Defendant Secretary of State Laurel Lee testified before the Senate Committee on Ethics and Elections that she was unaware of any examples of a vote-by-mail ballot being sent to the wrong individual who used the ballot to vote.[41]

- When challenged to identify "anybody doing irregularities to necessitate this bill," Senator Baxley did not offer any examples of such irregularities.[42]

- When asked by Senator Linda Stewart "have we ever had any widespread issues with voter fraud on the vote-by-mail ballots," Senator Baxley conceded that "I don't know of widespread complaints."[43]

93.     Senator Baxley similarly conceded that there is no problem with security of election drop boxes requiring a legislative remedy.  Senator Baxley, asked to identify "a single instance of a VBM drop box being tampered with,"

---

[41] Fla. S. Comm. on Ethics and Elections Hearing (Feb. 16, 2021).

[42] *Id*.

[43] Fla. S. Comm. on Gov't Oversight and Accountability Hearing (Mar. 10, 2021).

responded: "I'm not trying to present a case that there's a problem" and "I've never

made the case that there's box tampering."[44]

94.     Indeed, Senator Baxley essentially conceded that SB 90 was aimed at

purely hypothetical problems.  During one Committee hearing, Senator Randolph

Bracy held a colloquy with Senator Baxley to try to clarify Senator Baxley's position

on the need for SB 90:

> Senator Bracy:
>
> "I just want to clarify that you're saying that you agree that there is
> not a problem.  There never has been.  That is what the supervisors of
> elections have said and yet you believe we need to change.  Make
> these changes to drop boxes and the voting hours because of what
> could happen.  Even though there never had been a problem in the
> history of this state when it comes to drop boxes.  I just want to clarify
> that is what you're saying."
>
> Senator Baxley:
>
> "Substantively, yeah."[45]

95.     Representative Blaise Ingoglia, the lead House sponsor of HB 7041,

who represents portions of Hernando County, similarly admitted that he knew of no

instances of voter fraud, but was in favor of SB 90 regardless of the facts.  When

asked if there was illegal ballot collection in Florida, Representative Ingoglia stated

---

[44] Fla. S. Comm. on Rules Hearing (Apr. 14, 2021).

[45] *Id.*

"I don't know, but I'm sure it was going on."  Representative Ingoglia went on to state that "Just the fact that they weren't caught doesn't necessarily mean that it's not happening."[46]

96.    Over the last decade, Florida has experienced almost no voter fraud. According to the Heritage Foundation, since 2010, there have been only seventeen (17) criminal convictions, one (1) official finding and one (1) civil penalty for election fraud.[47]  Since 2010, almost 49 million ballots have been cast, resulting in a fraud rate of 0.00000035%.  Not a single instance of voter fraud has been documented in Florida in the 2020 election.

97.    In fact, the only substantiated allegation of fraud connected with the 2020 election stems from the arrest of former Republican Senator Frank Artiles, "accused of recruiting and paying a no party candidate in Miami-Dade's Senate District 37 to siphon votes away from the Democratic candidate"—a type of fraud SB 90 does virtually nothing to address.[48]

98.    The House Public Integrity and Elections Committee survey (discussed above) collected data from all 67 County Supervisors of Elections to obtain their

---

[46] Patricia Mazzei & Nick Corasaniti, Florida Republicans Pass Voting Limits in Broad Elections Bill, N.Y. TIMES (Apr. 29, 2021), https://www.nytimes.com/2021/04/29/us/politics/florida-voting-rights-bill.html.

[47] The Heritage Found., Election Fraud Cases, https://www.heritage.org/voterfraud/search?state=FL (last visited May 17, 2021).

[48] Lawrence Mower, *Mail Ballots, Drop Boxes Targeted In Voting Bill Passed By Legislature*, MIAMI HERALD (Apr. 29, 2021), https://www.miamiherald.com/article251051919.html.

assessment of suspected voter fraud in Florida.  The SOEs reported 386 *suspected* cases of voter fraud over the last four years, estimated to constitute a rate of possible fraud of 0.0001%.[49]  In contrast, in Pinellas County alone, approximately 28,000 voters lack a driver's license, state ID card, or social security number on file in the voter registration system.[50]  SB 90 precludes all of these voters from obtaining a mail ballot.

## C.   SB 90 Was the Culmination of a Flawed and Rushed Process

99.   SB 90 was enacted as a result of a rushed process that afforded little opportunity for public participation.

100.   Despite the fact that the legislature met during a time of COVID restrictions, neither the House nor the Senate allowed members of the public to testify remotely from their homes.  Members of the public were required to travel to the Leon County Civic Center and testify from a remote viewing room.  During hearings in both Chambers, time for public comment was severely limited.  For example, public comment during the Senate Rules Committee consideration of SB 90 was limited to one minute per commenter, with members of the public abruptly

---

[49] Fla. S. Floor Debate (Apr. 21, 2021).

[50] Mitch Perry, *In St. Pete, Voting And Civil Rights Advocates Speak Out Against Florida Elections Bill*, BAY NEWS 9 (May 11, 2021), https://www.baynews9.com/fl/tampa/politics/2021/05/11/voting-and-civil-rights-advocates-speak-out-against-florida-elections-bill; Fla. S. Comm. on Rules Hearing (Apr. 14, 2021).

cut off when their minute expired.[51]   Ida Eskamani, commenting on behalf of

Plaintiff Florida Rising Together, was among the witnesses cut off after one minute

of testimony.[52]   At the Hearing of the House Committee on State Affairs on April

19, 2021, debate on the bill was limited to 30 seconds per member, and no live public

testimony was permitted at all.[53]

101.   The final days of the passage of SB 90 gave way to a chaotic process

that allowed little time for public testimony or for legislative consideration.   For

example, at 1:33am on April 27, 2021, Rep. Ingoglia introduced a "strike all"

amendment to SB 90 to be considered on the House Floor, essentially replacing the

entirety of SB 90 with new and expanded text.   This amendment was considered and

adopted that same day.   The debate was so rushed that legislators were afforded only

a few minutes to introduce, explain, debate and vote on each proposed amendment.[54]

Representative Omari Hardy said of this rushed process:

> "It's very interesting that we should be given just five minutes to
> open, question, debate, and close amendments on this bill which is
> about the heart of our democracy in this state, one of the most
> important states in the United States of America.   I can't begin my
> discussion of this amendment without expressing how I feel about
> having this debate essentially canceled or truncated because we
> happened to have filed lots of amendments on this very objectionable

---

[51] Fla. S. Comm. on Rules (Apr. 14, 2021).

[52] *Id.*

[53] Fla. H.R. Comm. on State Affairs (Apr. 19, 2021).

[54] Fla. H.R. Floor Debate (Apr. 27, 2021).

piece of legislation."[55]

102.   The House passed an amended version of SB 90 on April 28, and formally sent it to the Senate for consideration.  On April 29, the Senate considered another "strike all" amendment offered by Senator Hutson; the amendment was passed by the Senate a few hours later.

103.   When the House considered the Senate bill on April 29, 2021, it had little time to review a bill that contained significant changes.  Representative Tracie Davis pointed out that there had been "less than three hours" to review "a 48 page document."[56]  Representative Joseph Geller observed that members "barely know what's coming back" in the Senate bill, and asserted that "The Senate sends some stuff over. We barely have time to find out what it is, whether it's right, whether it's a good idea."[57]  Representative Geller said that most members had no idea what was in the bill they were preparing to vote for.

104.   The bill passed the House April 29 after one hour of debate, and was signed by the Governor May 6.

---

[55] *Id.*

[56] Fla. H.R. Floor Debate (Apr. 29, 2021).

[57] *Id.*

**D.    The Impact of SB 90**

105.   SB 90 includes numerous provisions that impact or burden the right to vote, and particularly the right to vote of historically disenfranchised voters and disabled voters.  This Complaint challenges five of these provisions: (i) the Secure Drop Box Restriction; (ii) the Voter Registration Delivery Restriction; (iii) the Voter Registration Disclaimer; (iv) the Vote-By-Mail Application Restriction; and (v) the Line Warming Restriction.

106.   **Secure Drop Box Restriction.**  SB 90 significantly restricts the use of secure drop boxes for early return of mail ballots.

107.   Voting via secure drop boxes in the November 2020 General Election was widely praised as a core element of an efficiently run election.  Defendant Secretary of State Laurel Lee testified to the Senate Committee on Ethics and Elections that one of the elements of the success of the 2020 General Election was informing voters concerned that their ballots might not arrive in time to be counted if sent by regular mail that "if they were concerned that they'd waited too long, they could drop them off, that there were multiple methods to return those ballots."[58] According to Craig Latimer, the President of the Florida Supervisors of Elections: "In 2020 our voters overwhelmingly appreciated the peace of mind that came from

---

[58] Fla. S. Comm. on Ethics and Elections Hearing (Feb. 16, 2021).

dropping their mail ballot off in a secure drop box, because they knew that by using the drop box instead of a mailbox, their ballot would be received on time."[59]

108.   Of the 4.85 million mail ballots cast in Florida in 2020, approximately 31 percent (1.5 million) were cast in secure drop boxes.[60]

109.   According to Mark Earley, Supervisor of Elections of Leon County, "Supervised drop boxes are the gold standard of the chain of custody for receiving voter ballots."[61]

110.   The reliance on secure drop boxes in the 2020 election was of particular significance and importance to the Black and Latino communities.  In the November 2020 General Election, Floridians voted by mail in record numbers.  Of 11.1 million votes cast, 4.85 million were cast by mail, a record in percentage and in absolute numbers of votes.  Approximately 550,000 Black voters and 740,000 Latino voters voted by mail in the 2020 election, and a large percentage of these ballots were returned to drop boxes.

111.   The widespread use of mail voting, and in particular the use of secure drop boxes, was recognized as a major factor that helped reduce the long lines at

---

[59] Lawrence Mower, *Election Supervisors Say New Florida Law Makes It Harder To Use Mail Ballots, Drop Boxes*, MIAMI HERALD (Apr. 30, 2021), https://www.miamiherald.com/news/politics-government/state-politics/article251063359.html.

[60] Fla. Supervisors of Elections, Florida Supervisors of Elections Statement on PCB-PIE 21-05 (Mar. 22, 2021), https://www.myfloridaelections.com/portals/fsase/Documents/Public%20Policy/FSE_Statement_032221.pdf.

[61] Fla. S. Comm. on Gov't Oversight and Accountability Hearing (Mar. 10, 2021).

polling places on election day in Black and Latino communities, a problem widely noted in the 2016 and 2018 elections.  For example, according to Representative Christopher Benjamin, "in 2020, we had unprecedented numbers of Black voters participate in our elections. They used drop boxes. . . We used people to assist our elderly in getting their votes to the drop boxes or getting them to the polls. . . we know that [restricting drop boxes] will have a disparate impact on folks like me."[62]

112.   Prior to enactment of SB 90, Florida law required SOEs to allow voters to return their mail ballots to secure drop boxes "at the main office of the supervisor, at each branch office of the supervisor and at each early voting site."  Fla. Stat. § 101.69(2) (2020).

113.   Supervisors also had the discretion to place secure drop boxes at any other site that could qualify as an early voting site—such as a city hall, permanent public library facility, fairground, civic center, courthouse, county commission building, stadium, convention center, government-owned senior center, or government-owned community center—provided that any such site be staffed by the supervisor's office or by a law enforcement officer.  *Id.*

114.   Prior to enactment of SB 90, Supervisors had the discretion to allow access to secure drop boxes 24 hours a day.  Moreover, drop boxes were available

---

[62] Fla. H.R. Floor Debate (Apr. 28, 2021).

the Sunday before election day, a critical day for early voting, and a boon to voters who wanted to cast a mail ballot and be confident that their ballot would arrive in time to be counted.

115.   SB 90 made several changes to restrict the use of secure drop boxes. For example, SB 90 requires election supervisors to operate most drop boxes only during the hours of operation for in-person early voting, *see* Fla. Stat. Ann. § 101.69(2)(a) (West 2021), which is between 8 and 12 hours a day.  Counties may only make a secure drop box available for voting outside of early voting hours if the drop box is at the Supervisor's main office or permanent branch office.  *See id.*  Since most counties only have a single such office, this means that most counties will have only a single drop box available beyond early voting hours.

116.   This is particularly burdensome for voters who cannot get time off of work to vote, since they may be unable to access the drop box during business hours. As stated by Representative Patricia Williams, the Secure Drop Box Restriction and other provisions of SB 90 "deter[] people of color from voting.  Number one, because we work more, our hours are longer. . . The number of hours we work, because of the drop box that would not be there 24 hours as it normally would be, that deters us from voting."[63]

---

[63] *Id.*

117.   SB 90 also prohibits election supervisors from operating drop boxes on the Sunday before election day, unless they elect to also have early voting on that Sunday or to divert staff to monitoring drop boxes at SOE offices during the critical final preparations for election day.  Fla. Stat. Ann. § 101.69(2)(a) (West 2021); *see* Fla. Stat. § 101.657(1)(d) (2020).   This restriction will significantly diminish programs like those of Plaintiff Equal Ground, which engages in "Souls to the Polls" campaigns on the Sunday before Election Day to encourage people to drop their ballots in secure drop boxes after Sunday church services.

118.   Also, SB 90 requires that all secure drop boxes be "monitored in person by an employee of the supervisor's office."  Fla. Stat. Ann. § 101.69(2)(a) (West 2021).   As a practical matter, this will severely limit the number of drop boxes available to voters, due to the costs of continuously staffing drop boxes.  Plaintiff Hispanic Federation predicts that having fewer drop boxes with more limited hours of operation will exacerbate long wait times in Latino precincts at early voting sites and on election day.

119.   If any supervisor leaves a drop box accessible for ballot receipt other than in the manner prescribed by SB 90, the supervisor is subject to a civil penalty of $25,000.  Fla. Stat. Ann. § 101.69(3) (West 2021).   The Division of Elections, tasked with providing "administrative support" to Defendant Lee "to ensure that

Florida has fair and accurate elections,"[64] is authorized to enforce the penalty provision. *Id*.

120.   SB 90's restrictions will discourage the use of drop boxes, defeating their purpose of reducing the volume of in-person voters crowding into early voting sites and reducing hours-long lines on Election Day.

121.   The Secure Drop Box Restriction imposes a particular burden on voters of color and others who disproportionately rely on secure drop boxes to vote after work, to vote on the Sunday before Election Day, or to avoid disproportionately long lines at their local precincts during in-person voting.  The use of drop boxes has become increasingly important as the mail service becomes less reliable, particularly in communities of color.  As Representative Geraldine Thompson, a Black member of Florida's House, observed: "[B]ecause it was people like me who used drop boxes in the last election more than they ever had and who made their voices heard, we are today considering a bill that would restrict the use of drop boxes."[65]

122.   During the legislative debate over SB 90, the bill's lead sponsor confirmed the absence of any legitimate justification for the restrictions on secure drop boxes: "I'm not trying to present a case that there's a problem" and "I've never

---

[64] Fla. Dep't of State, Div. of Elections, *About Us*, https://dos.myflorida.com/elections/about-us/ (last visited May 17, 2021).

[65] Fla. H.R. Floor Debate (Apr. 28, 2021).

made the case that there's box tampering."[66]  No state interest outweighs the burden on voting imposed by the Secure Drop Box Restriction.

123.   **Voter Registration Delivery Restriction.**  Section 7 of SB 90 imposes new requirements and restrictions on organizations that conduct third-party voter registration drives.

124.   Independent voter registration organizations, like Plaintiffs Florida Rising Together, Equal Ground, Hispanic Federation, Poder Latinx, and Mi Familia Vota Education Fund have engaged in extensive voter registration drives in recent years, and particularly during the 2018 and 2020 General Elections.

125.   These voter registration efforts are particularly important to reaching historically disenfranchised voters, including Black and Latino voters, and helping them exercise their right to vote.  An analysis of aggregate voter registration data from the Division of Elections shows that when third-party voter registration activity increases in relation to other registration activity, the proportion of newly registered Floridians who are Black also increases.

126.   In part as a result of these efforts, voter registration among Florida's Black and Latino voters has risen significantly over the last several years, culminating in a record turnout in the 2020 General Election.

---

[66] Fla. S. Comm. on Rules Hearing (Apr. 14, 2021).

127.   Section 7 of SB 90 is a marked departure from standard practice in Florida.  Prior to 2006, Florida did not regulate the activities of third-party voter registration organizations at all.  After Florida started regulating the activities of independent voter registration organizations, it required such organizations to register with the Division of Elections and provide information on their officers, registered agents, and the individuals registering voters for the organization, including those individuals' names, permanent addresses, and any temporary addresses.  *See* Fla. Stat. § 97.0575(1)(a)-(c) (2020).

128.   Prior to SB 90, organizations that conducted voter registration drives could generally deliver applications to any Supervisor of Elections.  Florida's statewide voter registration system ("FVRS") permits any Supervisor to enter a voter registration into the system regardless of whether the applicant resides in that Supervisor's county.  The Supervisor in the county where the applicant resides can then access that registration and can conduct the required address, identity, and other verifications, and then mail the applicant a disposition notice.

129.   SB 90 imposes a series of changes that will drastically chill the efforts of organizations to register new voters, in particular Black and Latino voters.  SB 90 severely penalizes the failure to meet new requirements added to Fla. Stat. § 97.0575(3)(a) that require that an organization (i) deliver a completed registration to the County SOE where the applicant resides or to the Division of Elections (ii)

within "14 days after complet[ion] by the applicant, but not after registration closes for the next ensuing election."  Fla. Stat. Ann. § 97.0575(3)(a) (West 2021).

130.   Section 7, for the first time, imposes fines for even the inadvertent delivery of a voter registration application to the wrong location.  Under Section 7, if a third-party voter registration organization delivers a voter registration application to a Supervisor for a county other than the one in which the applicant lives, even inadvertently, it is subject to a fine ranging from $500 to $1000 per misdelivered application (with a cap of $1000 in fines per calendar year).  Individual voters are not subject to SB 90's requirement to deliver their voter registration application to their county of residence.   An individual's voter registration application will be processed regardless of which Supervisor the individual submits the application to, and the voter is subject to no fines or other penalties for delivering their application to a Supervisor who is not their own.  Fla. Stat. § 97.053(1) (2020) ("Voter registration applications … must be accepted in the office of any supervisor, the division, a driver license office, a voter registration agency, or an armed forces recruitment office when hand delivered by the applicant or a third party during the hours that office is open or when mailed.")  Moreover, individuals may deliver third-party voter registration applications on behalf of specified family members to any Supervisor without any risk of fines or penalties.  Fla. Stat. § 97.021(40)(a) (2020).

131.   Organizations such as Plaintiffs frequently conduct voter registration drives that reach voters from many counties in a single event.  For example, Plaintiffs Florida Rising Together, Hispanic Federation and UnidosUS conduct voter registration drives on college campuses, which can reach students from all over the state of Florida, many of whom choose to register at their home addresses.   In addition, Plaintiff Florida Rising Together conducts voter registration at concerts and sporting events, Plaintiff Faith in Florida conducts voter registration at large-scale food and clothing bank events, and Plaintiffs Hispanic Federation and UnidosUS conduct voter registration at cultural festivals, including but not limited to Puerto Rican Day parades, all of which draw participants from across the state.

132.   These organizations collect and submit thousands, and sometimes tens of thousands, of registration applications each year.  It is extremely difficult, if not impossible, to ensure that no applications are inadvertently sent to the wrong county when processing a high volume of applications within the short timeframes needed to ensure voters are timely registered.  Plaintiffs such as Poder Latinx often submit voter registration applications in different counties that share zip codes, which further complicates the process they must use to sort and submit these forms under SB 90's Voter Registration Delivery Restriction.

133.   The requirement to sort registration forms and mail them to many different counties will impose additional burdens and costs on voter registration

## CERTIFICATE OF SERVICE

I e-filed this brief on ECF, which will email everyone requiring notice.

Dated: July 18, 2022                                    */s/ Mohammad O. Jazil*